**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 21, 2022**

**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| deeproot CAPITAL MANAGEMENT, | § | |
| LLC, ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| POLICY SERVICES, INC. | § | BANKRUPTCY NO. 21-51513 |
| | § | |
| DEBTOR. | § | JOINTLY ADMINISTERED |

ORDER APPROVING TRUSTEE'S MOTION TO APPROVE
(A) SALE PROCEDURES, STALKING HORSE AGREEMENT AND BID PROTECTIONS IN
CONNECTION WITH THE SALE OF PROPERTY OF THE ESTATE OF POLICY SERVICES, INC. AND
(B) THE FORM OF NOTICE FOR THE SALE OF PROPERTY
OF THE ESTATE OF POLICY SERVICES, INC.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Policy Services, Inc. (2864), Wizard Mode Media, LLC (3205), deeproot Pinball LLC (0320), deeproot Growth Runs Deep Fund, LLC (8046), deeproot 575 Fund, LLC (9404), deeproot 3 Year Bonus Income Debenture Fund, LLC (7731), deeproot Bonus Growth 5 Year Debenture Fund, LLC (9661), deeproot Tech LLC (9043), deeproot Funds LLC (9404), deeproot Studios LLC (6283), and deeproot Capital Management, LLC (2638).

Came on for consideration the *Trustee's Motion to Approve (A) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (B) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Motion**").[2]  Based on the representations made in the Sale Procedures Motion, the Court finds that (i) it has jurisdiction over the matters raised in the Sale Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order on the Sale Procedures Motion; (iii) the relief requested in the Sale Procedures Motion seeking the establishment of Sale Procedures and the approval of the Stalking Horse Agreement and the Bid Protections in connection with the sale of the property of the Estate of Policy Services, Inc. is in the best interests of the Estate and the creditors; (iv) proper and adequate notice of the Sale Procedures Motion has been given and no further notice is necessary; (v) all objections to the Sale Procedures Motion that were filed have been resolved or are hereby overruled; and (vi) based on the record herein, after due deliberation, good and sufficient cause exists for the granting of the Sale Procedures Motion in all respects, and pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014, the Court makes the additional **FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

**THE COURT FINDS THAT:**

A.    Notice of the Sale Procedures Motion and related hearing or matter was reasonable and sufficient and complied with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules in light of the circumstances and nature of the relief requested therein, and no other or further notice is necessary.  A reasonable and fair opportunity to object to the Sale Procedures Motion and all relief requested therein and granted in this Order has been afforded.

---

[2] Capitalized terms unless otherwise defined herein shall have the meaning as ascribed to them in the Sale Procedures Motion.

B.     The legal and factual basis set forth in the Sale Procedures Motion establish just cause for the relief granted herein. Granting the relief is in the best interests of the Estate and the creditors.

C.     Trustee has articulated good and sufficient reasons for this Court to grant the Sale Procedures Motion and to approve the Sale Notice, in substantially the same form as <u>Exhibit 1</u> to this Order, and the Sale Procedures, in substantially the same form as <u>Exhibit 2</u> to this Order.

D.     The Sale Procedures are reasonable and appropriate and designed to maximize the value of the property of the Estate.

**THEREFORE, IT IS ORDERED THAT:**

1.     The Sale Procedures Motion is approved and granted.

2.     Any objections to the Sale Procedures Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Sale Procedures Motion, are overruled in their entirety.

3.     The Sale Notice, attached as <u>Exhibit 1</u> to this Order, is approved.  Within three business days after the Court enters an Order approving this Sale Procedures Motion, Trustee shall serve the Sale Notice by (a) first-class United States mail, postage-prepaid on (i) the parties identified on the Creditor Matrix in these Cases at the addresses set forth therein, (ii) the parties that have filed proofs of claim in these Cases at the addresses set forth in the respective proofs of claim, and (iii) any other parties who have expressed an interest in acquiring the Property; and (b) the Court's electronic-filing system on those parties receiving electronic notice by such system. Service of such Sale Notice is proper, due, timely, good, and sufficient notice of, among other things, the Sale Procedures, the auction, the proposed Sale, and the procedure for objecting thereto.

4.      The Sale Procedures, attached as <u>Exhibit 2</u> to this Order, which relate to the sale of the Policies (the "**Sale**"), are approved.

5.      The Stalking Horse Agreement, attached as <u>Exhibit 3</u> to this Order, is approved.

6.      The Stalking Horse Bidder, TuYo Holdings, LLC, a Texas limited liability company, is approved.

7.      The Bid Protections, as amended by agreement of the Trustee and TuYo Holdings, LLC provided in the Stalking Horse Agreement, attached as Exhibit 3 to this Order, are approved. Specifically, the Stalking Horse Fee is limited to $40,000.00 and the reimbursement of reasonable and necessary expenses is capped at $15,000.00

8.      The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder.

9.      Any party wishing to participate as a qualified bidder should submit (a) a <u>sealed</u> bid for the Policies ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, marked against the Stalking Horse Agreement to show all changes requested by such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, and deposit Six Hundred Thousand and no/100 Dollars ($600,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, by no later than April **4 , 2022** (the "**Bid Deadline**").  Any such Bid submitted by the Bid Deadline shall be in the amount of at least One Million, Two Hundred Fifty Thousand and no/100 Dollars ($1,250,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**").  The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The

Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale.

10.     By no later than noon on **April 5, 2022**, Trustee will file a notice with the Court stating whether it has timely received a binding offer to purchase the Policies in a cash amount of at least $1,250,000.00.

11.     The Court shall hold a **hearing to approve a sale of the Policies to the Stalking Horse Bidder, or its assignee, or to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363, based on the Stalking Horse Agreement. Such hearing shall be held on April 11, 2022, at 2:00 P.M.. in Courtroom #1, 3rd Floor, 615 E. Houston Street, San Antonio, Texas.** (the "**Sale Hearing**").

12.     In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the Estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of the Qualified Bid and Trustee shall, in his absolute discretion, exercising only his best business judgment on behalf of the Estate, select the Successful Bidder.

13.     The closing of the sale of the Policies to the Successful Bidder shall occur no later than May 2, 2022 (the "**Closing Deadline**"). The Closing Deadline may be modified upon an agreement between Trustee and the Successful Bidder.

14.     If any Successful Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid (if any), as determined by the Trustee (the "**Back-Up Bidder(s)**"), will be deemed to be the Successful Bidder for the Policies and Trustee will be authorized to consummate the Sale of the Policies to such Back-Up Bidder without further order

{00570891;2 }

of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid.

15.     If any Successful Bidder fails to consummate the purchase of the Policies, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, 25% of the Deposit on Purchase Price of such Successful Bidder shall be forfeited to the estate.

16.     Any objection(s) filed to the sale of the Policies (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position and (ii) shall be filed with the Court on or before **April 4, 2022** (the "**Objection Deadline**").  Any person failing to timely file an objection to the Sale prior to the Objection Deadline shall be forever barred from objecting to the Sale, including the transferring of the Policies free and clear of any and all liens, claims and other interests.

17.     Trustee reserves the right to (i) determine in its discretion whether any Qualified Bid is a Successful Bid and (ii) reject, at any time prior to the entry of the Sale Order by the Bankruptcy Court, without liability, any Bid that Trustee in its discretion, determines to be inadequate, insufficient, not in conformity with the Sale Procedures or the Bankruptcy Code, or contrary to the best interests of the Estate.

18.     Trustee reserves the right to modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) requesting a continuance of the hearing on the Sale Motion; provided, however, that the Trustee may not alter any Bid Protections granted to the Stalking Horse Bidder, change the amount of a Qualified Bid, or change the Deposit Requirement of a Qualified Bidder.

19.     Nothing contained in the Sale Procedures or this Order shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by the Sale Procedures.

20.     Notwithstanding Bankruptcy Rule 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rule 6004(h) is hereby waived.

21.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

**ORDER SUBMITTED BY:**

Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**ATTORNEYS FOR CHAPTER 7 TRUSTEE**

# EXHIBIT 1

TO ORDER APPROVING SALE PROCEDURES

In the United States Bankruptcy Court
for the Western District of Texas
San Antonio Division

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| deeproot Capital Management, | § | |
| LLC, et al.,[1] | § | Bankruptcy No. 21-51523-MMP |
| | § | Lead Case |
| Debtors. | § | Jointly Administered |

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| Policy Services, Inc. | § | Bankruptcy No. 21-51513 |
| | § | |
| Debtor. | § | Jointly Administered |

**Trustee's Notice of Sale of the Property of the Estate of Policy Services, Inc.**

## PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED AS SET FORTH HEREIN.

On December 9, 2021 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The Court approved joint administration of Debtors listed in the captioned footnote on December 20, 2021. On December 21, 2021, John Patrick Lowe was appointed Chapter 7 Trustee (the "Trustee") of the estates of the Jointly Administered Debtors.

On March 18, 2022, Trustee filed *Trustee's Motion to Approve (A) Sale of Life Insurance Policies, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (C) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Motion**") seeking approval of certain procedures for the sale of and taking bids (the "**Sale Process**") on Policy Services, Inc.'s Estate's property. Through this Sale Process, Trustee seeks the highest and best offer(s) for the sale (the "**Sale**") of certain life insurance policies (the "**Policies**") free and clear of any and all liens, claims, rights, interests, and encumbrances in accordance with Section

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Policy Services, Inc. (2864), Wizard Mode Media, LLC (3205), deeproot Pinball LLC (0320), deeproot Growth Runs Deep Fund, LLC (8046), deeproot 575 Fund, LLC (9404), deeproot 3 Year Bonus Income Debenture Fund, LLC (7731), deeproot Bonus Growth 5 Year Debenture Fund, LLC (9661), deeproot Tech LLC (9043), deeproot Funds LLC (9404), deeproot Studios LLC (6283), and deeproot Capital Management, LLC (2638).

363(f) of the Bankruptcy Code, with such liens, claims, rights, interests, and encumbrances to attach to the sale proceeds. The Sale Process is subject to, and all offers must be in accordance with, the sale procedures approved by the Bankruptcy Court, which are attached hereto as **Exhibit A** (the "**Sale Procedures**").

On March 21, 2022, the Bankruptcy Court entered its *Order Approving Trustee's Motion to Approve (A)Sale Procedures and Bid Protections in Connection with the Sale of the Property of the Estate of Policy Services, Inc. and (B)the Form of Notice for the Sale of the Property of the Estate of Policy Services, Inc.* [Docket No. ___ (the "**Sales Procedures Order**") in which the Bankruptcy Court, among other things, (a) approved the Sales Procedures, (b) approved the Stalking Horse Agreement, (c) approved the form and manner of notice of the Sale Procedures, (d) set an Objection Deadline to the Sale, and (e) established the date for the Sale.

Any party wishing to participate as a qualified bidder should submit (a) a sealed bid for the Policies ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, marked against the Stalking Horse Agreement to show all changes requested by such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com, and deposit Six Hundred Thousand and no/100 Dollars ($600,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than **April 4, 2022 at 5:00 p.m. prevailing Central Time** (the "**Bid Deadline**"). Any such Bid submitted by the Bid Deadline shall be in the amount of at least One Million, Two Hundred Fifty Thousand and no/100 Dollars ($1,250,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**"). The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale.

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of a Qualified Bid and Trustee shall, in his absolute discretion, exercising only his best business judgment on behalf of the Estate, announce the Successful Bidder.

After announcing the Successful Bidder, Trustee shall request that the Court approval the Sale at a hearing to be held at Hipolito F. Garcia Federal Building and United State Courthouse, Courtroom No. 3, Fifth Floor, 615 E. Houston St., San Antonio, Texas 78205 on April 11, 2022 at 2:00 p.m., prevailing Central Time (the "**Sale Hearing**").

Objections, if any, to the consummation of the Sale, shall be filed with the Bankruptcy Court by no later than **April 4, 2022** (the "**Objection Deadline**"). Any person failing to timely file an objection to the Sale prior to the deadlines set forth in the Bid Procedures Order shall be forever barred from objecting to the Sale, including the transferring of the Policies free and clear of any and all liens, claims and other interests.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/Randall A. Pulman*
        Randall A. Pulman
        Texas State Bar No. 16393250
        rpulman@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

# EXHIBIT C

### SALE PROCEDURES

On December 9, 2021 (the "**Petition Date**"), Policy Services, Inc., one of the eleven jointly administered debtors ("**Debtor**"), the owner and sole beneficiary of the Policies (defined below), filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").

On December 21, 2021, J. Patrick Lowe, was appointed chapter 7 Trustee ("**Trustee**") for the estate of *In re Policy Services, Inc.*, Case No. 21-51513, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division, which case is being Jointly Administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division.

These Sale Procedures have been approved and authorized pursuant to the *Trustee's Motion to Approve (A) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (B) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Motion**") and the *Order Approving Trustee's Motion to Approve (A) Sale Procedures and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (B) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Order**"), entered by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

#### A. Assets to be Sold

Generally, the assets to be sold include the conveyance free and clear of all liens, claims, encumbrances, and interests in certain life insurance policies, as described on Exhibit A and Exhibit B attached hereto (collectively, the "**Policies**").

#### B. Stalking Horse Agreement

Subject to the provisions set forth herein, Trustee has entered into a certain Life Insurance Policy Purchase and Sale Agreement (the "Stalking Horse Agreement") with TuYo Holdings, LLC, a Texas limited liability company (the "Stalking Horse Bidder"), pursuant to which Trustee has agreed to sell and the Stalking Horse Bidder has agreed to purchase the Policies, subject to the receipt and acceptance of an otherwise better Qualified Bid from a Qualified Bidder, as provided herein**.**

The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder. Other than as provided by order of the Bankruptcy Court prior to the entry of the Sale Order, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Bankruptcy Court

#### C. Submission of Initial Qualifying Bids by Potential Purchasers

Any party wishing to participate as a qualified bidder should submit (a) a sealed bid for the Policies ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, marked against the Stalking Horse Agreement to show all changes

requested by such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com, and deposit Six Hundred Thousand and no/100 Dollars ($600,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than **April 4, 2022** (the "**Bid Deadline**").

Any such Bid submitted by the Bid Deadline shall be in the amount of at least One Million, Two Hundred Fifty Thousand and no/100 Dollars ($1,250,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**"). The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale

**The Bid should be sealed.**

## D.  The Selection of the Successful Bid

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of a Qualified Bid.

## E.  Objections to Sale

Any objection(s) filed to the sale of the Policies (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position; (ii) shall be filed with the Court on or before **April 4April 4, 2022** (the "**Objection Deadline**"). Any person failing to timely file an objection to the Sale prior to the Objection Deadline shall be forever barred from objecting to the Sale, including the transferring of the Property free and clear of any and all liens, claims and other interests.

## F.  Court Approval

The sale hearing will be held on  **April 11, 2022, at 2:00 P.M. before the Honorable Michael M. Parker, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom No. 1, Third Floor, 615 E. Houston St., San Antonio, Texas 78205** (the "**Sale Hearing**") where Trustee will seek approval of the sale of the Policies to the Stalking Horse Bidder or the Successful Bidder.

At the Sale Hearing, Trustee will seek entry of an order approving the sale of the Policies to the Successful Bidder pursuant to 11 U.S.C. §363(f) and free and clear of all liens, claims, encumbrances, and interests. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by Trustee with the approval of the Successful Bidder and without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

Trustee's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute Trustee's acceptance of the Bid. Trustee will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

**G. <u>Closing</u>**

The closing of the sale of the Policies shall occur no later than **May 2, 2022** (the "**Final Closing Deadline**"); provided, however, that this requirement may be waived upon an agreement between Trustee and the Successful Bidder.

**H. <u>Failure to Consummate Purchase</u>**

If any Successful Bidder fails to consummate the purchase of the Policies, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, 25% of the Deposit on Purchase Price of such Successful Bidder shall be forfeited to the Estate.

**I. <u>Back-Up Bidders</u>**

If any Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (if any), (the "**Back-Up Bidder(s)**") will be deemed to be the Successful Bidder for the Policies and Trustee will be authorized to consummate the Sale of the Policies to such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid. If any Qualified Bidder fails to consummate the sale because of a breach or failure to perform on the part of such Qualified Bidder or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Trustee until a Qualified Bidder shall consummate the sale.

**J. <u>Return of Earnest Money Deposit</u>**

The Earnest Money Deposit of all Qualified Bidders, who are not the Successful Bidder, will be returned, without interest, to each such Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale.

**K. <u>Reservation of Rights</u>**

1. <u>Determination of Successful Bid</u>. Trustee reserves the right to: (a) determine whether any Qualified Bid is a successful bid, and (b) reject, at any time prior to the entry of the Sale Order, any Bid that the Trustee in its discretion determines to be inadequate, insufficient, not in conformity with the Sales Procedures or the Bankruptcy Code, or contrary to the best interest of the Trustee and its Estate.

2. <u>Modification of Bidding Procedures</u>. Trustee may modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) adjourning the Sale Hearing; provided, however, that the Trustee may not alter any Bid Protections granted to the Stalking Horse

Bidder, change the amount of a Qualified Bid, or change the Deposit Requirement of a Qualified Bidder.

3.      Nothing contained in these Sale Procedures, or the court's order, shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by these Sale Procedures.

## L.  As Is, Where As Sale

The sale of the Policies shall be on an **"as is, where as"** basis and without representations or warranties of any kind, nature, or description by the Trustee, the Estate, or its agents and representatives. Except as otherwise expressly provided in these Sale Procedures, by submitting a Bid, each bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Policies prior to makings its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any and all documents and/or the Policies in making its bid, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Policies, or the completeness of any information provided in connection therewith by the Trustee or Trustee's counsel.

## M.  Trustee's 's Counsel

Any questions regarding these Sales Procedures should be addressed to Trustee's Counsel whose contact information is:

Randall A. Pulman
rpulman@pulmanlaw.com
W. Drew Mallender
dmallender@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

## Exhibit A to Sale Procedures

### IN FORCE POLICIES

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy | Acquisition Cost |
|---|---|---|---|---|---|---|
| Protective Life Insurance Company (West Coast Life) | ANDE75 | REDACTED | In-Force | REDACTED 575 | $2,000,000.00 | $1,212,121.21 |
| Brighthouse Life Insurance Company | JKN22A | REDACTED | In-Force | REDACTED 319 REDACTED | $2,500,000.00 | $1,648,351.65 |
| John Hancock Life Insurance Company | FEE287 | REDACTED | In-Force | REDACTED 287 | $500,000.00 | $338,983.05 |
| John Hancock Life Insurance Company | FEE548 | REDACTED | In-Force | REDACTED 548 | $500,000.00 | $338,983.05 |
| Occidental Life Insurance Company NC | MAR790 | REDACTED | In-Force | REDACTED 790 | $100,000.00 | $67,039.11 |
| Transamerica Life Insurance Company | JMD135 | REDACTED | In-Force | REDACTED 135 | $500,000.00 | $305,295.36 |
| Brighthouse Life Insurance Company | KFFN57 | REDACTED | In-Force | REDACTED 157 REDACTED | $500,000.00 | $254,104.00 |
| Protective Life Insurance Company | RID363 | REDACTED | In-Force | REDACTED 371 | $500,000.00 | $148,680.00 |

**Total Acquisition Cost:  $4,313,557.43**

**Purchase Price (25%):  $1,078,389.36**

## Exhibit B to Sale Procedures

### LAPSED POLICIES

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy |
|---|---|---|---|---|---|
| **Midland National Life** | GRR553 | REDACTED | Lapsed | REDACTED553 | $242,520.00 |
| **ING Reliastar Life (VOYA)** | PER437 | REDACTED | Lapsed | REDACTED378 | $1,000,000.00 |
| **SunLife Financial** | SUL428 | REDACTED | Lapsed | REDACTED428 | $300,000.00 |
| **SunLife Financial** | SUL429 | REDACTED | Lapsed | REDACTED429 | $300,000.00 |
| **US Life City NY** | UD33NL | REDACTED | Lapsed | REDACTED0NL | $750,000.00 |
| **Protective Life Insurance Company** | LW7116 | REDACTED | Lapsed | REDACTED116 | $1,100,000.00 |
| **American General Life** | JDE21L | REDACTED | Lapsed | REDACTED21L | $633,342.81 |
| **Transamerica Life** | SIE687 | REDACTED | Lapsed | REDACTED687 | $1,500,000.00 |
| **AXA Equitable Life** | FERN07 | REDACTED | Lapsed | REDACTED607 | $10,000,000.00 |
| **Mass Mutual** | HCS883 | REDACTED | Lapsed | REDACTED883 | $1,540,000.00 |
| **Principal** | ANDR62 | REDACTED | Lapsed | REDACTED262 | $1,000,000.00 |
| **Transamerica Life** | BASH82 | REDACTED | Lapsed | | $9,000,000.00 |

# EXHIBIT 2

TO ORDER APPROVING SALE PROCEDURES

## SALE PROCEDURES

On December 9, 2021 (the "**Petition Date**"), Policy Services, Inc., one of the eleven jointly administered debtors ("**Debtor**"), the owner and sole beneficiary of the Policies (defined below), filed a voluntary petition under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").

On December 21, 2021, J. Patrick Lowe, was appointed chapter 7 Trustee ("**Trustee**") for the estate of *In re Policy Services, Inc.*, Case No. 21-51513, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division, which case is being Jointly Administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division.

These Sale Procedures have been approved and authorized pursuant to the *Trustee's Motion to Approve (A) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (B) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Motion**") and the *Order Approving Trustee's Motion to Approve (A) Sale Procedures and Bid Protections in Connection with the Sale of Property of the Estate of Policy Services, Inc. and (B) the Form of Notice for the Sale of Property of the Estate of Policy Services, Inc.* (the "**Sale Procedures Order**"), entered by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

### A. Assets to be Sold

Generally, the assets to be sold include the conveyance free and clear of all liens, claims, encumbrances, and interests in certain life insurance policies, as described on Exhibit A and Exhibit B attached hereto (collectively, the "**Policies**").

### B. Stalking Horse Agreement

Subject to the provisions set forth herein, Trustee has entered into a certain Life Insurance Policy Purchase and Sale Agreement (the "Stalking Horse Agreement") with TuYo Holdings, LLC, a Texas limited liability company (the "Stalking Horse Bidder"), pursuant to which Trustee has agreed to sell and the Stalking Horse Bidder has agreed to purchase the Policies, subject to the receipt and acceptance of an otherwise better Qualified Bid from a Qualified Bidder, as provided herein**.**

The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder. Other than as provided by order of the Bankruptcy Court prior to the entry of the Sale Order, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Bankruptcy Court

### C. Submission of Initial Qualifying Bids by Potential Purchasers

Any party wishing to participate as a qualified bidder should submit (a) a sealed bid for the Policies ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, marked against the Stalking Horse Agreement to show all changes

requested by such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com, and deposit Six Hundred Thousand and no/100 Dollars ($600,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than **April 4, 2022** (the "**Bid Deadline**").

Any such Bid submitted by the Bid Deadline shall be in the amount of at least One Million, Two Hundred Fifty Thousand and no/100 Dollars ($1,250,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**").  The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale

**The Bid should be sealed.**

### D.  The Selection of the Successful Bid

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of a Qualified Bid.

### E.  Objections to Sale

Any objection(s) filed to the sale of the Policies (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position; (ii) shall be filed with the Court on or before **April 4April 4, 2022** (the "**Objection Deadline**").  Any person failing to timely file an objection to the Sale prior to the Objection Deadline shall be forever barred from objecting to the Sale, including the transferring of the Property free and clear of any and all liens, claims and other interests.

### F.  Court Approval

The sale hearing will be held on  **April 11, 2022, at 2:00 P.M. before the Honorable Michael M. Parker, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom No. 1, Third Floor, 615 E. Houston St., San Antonio, Texas 78205** (the "**Sale Hearing**") where Trustee will seek approval of the sale of the Policies to the Stalking Horse Bidder or the Successful Bidder.

At the Sale Hearing, Trustee will seek entry of an order approving the sale of the Policies to the Successful Bidder pursuant to 11 U.S.C. §363(f) and free and clear of all liens, claims, encumbrances, and interests.  The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by Trustee with the approval of the Successful Bidder and without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

Trustee's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute Trustee's acceptance of the Bid. Trustee will be deemed to have accepted a Bid only when the Bid has been approved by Order of the Bankruptcy Court.

## G. Closing

The closing of the sale of the Policies shall occur no later than **May 2, 2022** (the "**Final Closing Deadline**"); provided, however, that this requirement may be waived upon an agreement between Trustee and the Successful Bidder.

## H. Failure to Consummate Purchase

If any Successful Bidder fails to consummate the purchase of the Policies, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, 25% of the Deposit on Purchase Price of such Successful Bidder shall be forfeited to the Estate.

## I. Back-Up Bidders

If any Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (if any), (the "**Back-Up Bidder(s)**") will be deemed to be the Successful Bidder for the Policies and Trustee will be authorized to consummate the Sale of the Policies to such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid. If any Qualified Bidder fails to consummate the sale because of a breach or failure to perform on the part of such Qualified Bidder or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Trustee until a Qualified Bidder shall consummate the sale.

## J. Return of Earnest Money Deposit

The Earnest Money Deposit of all Qualified Bidders, who are not the Successful Bidder, will be returned, without interest, to each such Qualified Bidder as soon as reasonably practicable but in any event within ten (10) business days after the closing of the Sale.

## K. Reservation of Rights

1.    Determination of Successful Bid. Trustee reserves the right to: (a) determine whether any Qualified Bid is a successful bid, and (b) reject, at any time prior to the entry of the Sale Order, any Bid that the Trustee in its discretion determines to be inadequate, insufficient, not in conformity with the Sales Procedures or the Bankruptcy Code, or contrary to the best interest of the Trustee and its Estate.

2.    Modification of Bidding Procedures. Trustee may modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) adjourning the Sale Hearing; provided, however, that the Trustee may not alter any Bid Protections granted to the Stalking Horse

Bidder, change the amount of a Qualified Bid, or change the Deposit Requirement of a Qualified Bidder.

3.      Nothing contained in these Sale Procedures, or the court's order, shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by these Sale Procedures.

## L.  **As Is, Where As Sale**

The sale of the Policies shall be on an **"as is, where as"** basis and without representations or warranties of any kind, nature, or description by the Trustee, the Estate, or its agents and representatives. Except as otherwise expressly provided in these Sale Procedures, by submitting a Bid, each bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Policies prior to makings its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any and all documents and/or the Policies in making its bid, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Policies, or the completeness of any information provided in connection therewith by the Trustee or Trustee's counsel.

## M.  **Trustee's 's Counsel**

Any questions regarding these Sales Procedures should be addressed to Trustee's Counsel whose contact information is:

Randall A. Pulman
rpulman@pulmanlaw.com
W. Drew Mallender
dmallender@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

## Exhibit A to Sale Procedures

### IN FORCE POLICIES

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy | Acquisition Cost |
|---------|-----------|-----------|--------|---------------|----------------------|------------------|
| Protective Life Insurance Company (West Coast Life) | ANDE75 | REDACTED | In-Force | REDACTED 575 | $2,000,000.00 | $1,212,121.21 |
| Brighthouse Life Insurance Company | JKN22A | REDACTED | In-Force | REDACTED 319 REDACTED | $2,500,000.00 | $1,648,351.65 |
| John Hancock Life Insurance Company | FEE287 | REDACTED | In-Force | REDACTED 287 | $500,000.00 | $338,983.05 |
| John Hancock Life Insurance Company | FEE548 | REDACTED | In-Force | REDACTED 548 | $500,000.00 | $338,983.05 |
| Occidental Life Insurance Company NC | MAR790 | REDACTED | In-Force | REDACTED 790 | $100,000.00 | $67,039.11 |
| Transamerica Life Insurance Company | JMD135 | REDACTED | In-Force | REDACTED 135 | $500,000.00 | $305,295.36 |
| Brighthouse Life Insurance Company | KFFN57 | REDACTED | In-Force | REDACTED 157 REDACTED | $500,000.00 | $254,104.00 |
| Protective Life Insurance Company | RID363 | REDACTED | In-Force | REDACTED 371 | $500,000.00 | $148,680.00 |

Total Acquisition Cost:  **$4,313,557.43**

Purchase Price (25%):  **$1,078,389.36**

# Exhibit B to Sale Procedures

## LAPSED POLICIES

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy |
|---|---|---|---|---|---|
| **Midland National Life** | GRR553 | REDACTED | Lapsed | REDACTED 553 | $242,520.00 |
| **ING Reliastar Life (VOYA)** | PER437 | REDACTED | Lapsed | REDACTED 378 | $1,000,000.00 |
| **SunLife Financial** | SUL428 | REDACTED | Lapsed | REDACTED 428 | $300,000.00 |
| **SunLife Financial** | SUL429 | REDACTED | Lapsed | REDACTED 429 | $300,000.00 |
| **US Life City NY** | UD33NL | REDACTED | Lapsed | REDACTED 0NL | $750,000.00 |
| **Protective Life Insurance Company** | LW7116 | REDACTED | Lapsed | REDACTED 116 | $1,100,000.00 |
| **American General Life** | JDE21L | REDACTED | Lapsed | REDACTED 21L | $633,342.81 |
| **Transamerica Life** | SIE687 | REDACTED | Lapsed | REDACTED 687 | $1,500,000.00 |
| **AXA Equitable Life** | FERN07 | REDACTED | Lapsed | REDACTED 607 | $10,000,000.00 |
| **Mass Mutual** | HCS883 | REDACTED | Lapsed | REDACTED 883 | $1,540,000.00 |
| **Principal** | ANDR62 | REDACTED | Lapsed | REDACTED 262 | $1,000,000.00 |
| **Transamerica Life** | BASH82 | REDACTED | Lapsed | | $9,000,000.00 |

# EXHIBIT 3

TO ORDER APPROVING SALE PROCEDURES

### LIFE INSURANCE POLICY PURCHASE AND SALE AGREEMENT

This LIFE INSURANCE POLICY PURCHASE AND SALE AGREEMENT ("**Agreement**") is made and entered into as of March 15, 2022, by and between J. PATRICK LOWE, the chapter 7 Trustee for the estate of *In re Policy Services, Inc.*, Case No. 21-51513, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division, which case is being Jointly Administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division ("**Seller**" and/or "**Trustee**"), and TuYo Holdings, LLC, a Texas limited liability company ("**Purchaser**") (and together, the "**Parties**").

### RECITALS

A.  Policy Services, Inc., a Texas corporation, ("**Debtor**") the owner and sole beneficiary of the Policies (defined below), filed for Chapter 7 bankruptcy on December 9, 2021, in the United States Bankruptcy Court of the Western District of Texas, San Antonio, Division, Case No. 21-51513, which case is being Jointly Administered in said Court under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523 ("**Bankruptcy Case**").

B.  Debtor was in the business of purchasing and holding existing life insurance policies as investments. Some of the insurance policies purchased by Debtor have already lapsed due to non-payment of premium.

C.  Trustee, in connection with the performance of his statutory duties, and in the exercise of his best business judgement has determined that the sale of the life insurance policies believed to remain in force (described below) to Purchaser is in the best interests of the bankruptcy estate.

D.  Purchaser has paid directly to two insurance companies premiums totaling $28,079.66 which were due post-petition for the purpose of keeping these two insurance policies in a paid up status with the insurance companies.

E.  In connection with the purchase and sale of the life insurance policies, counsel to Trustee will prepare and file a Motion to Sell and other ancillary motions with the Court in the Bankruptcy Case. Each motion must be granted, and the requested relief ordered by the Court before the sale of the life insurance policies contemplated by this Agreement may be closed.

F.  Purchaser is aware of the risks associated with the purchase of existing and lapsed life insurance policies.

G.  Seller desires to sell to Purchaser the life insurance policies described on Exhibit A, attached hereto (each a "**Policy**" and collectively, the "**Policies**").

H.  Each of the Policies remaining in force require the ongoing payment of premiums in order to keep said Policies in force. Purchaser and Trustee have agreed on a mechanism for Purchaser to fund the payment of insurance premiums going forward from now until a sale is approved by the Bankruptcy Court.

I.  Trustee will also assign and convey to Purchaser all rights, title and interest (including the right to reinstatement) that Trustee or the Debtor holds in the lapsed insurance policies described on Exhibit B, attached hereto (each a "**Lapsed Policy**" and collectively, the "**Lapsed Policies**"). Purchaser intends to seek reinstatement of the Lapsed Policies through administrative and legal processes.

J. Purchaser desires to purchase all rights, title and interest in and to the Policies and the Lapsed Policies in accordance with the terms and conditions of this Agreement.

## AGREEMENT

NOW THEREFORE, for and in consideration of the RECITALS, which are incorporated into this Agreement, the mutual promises and covenants set further herein and for the other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties hereto agree as follows:

1. **Purchase Price; Closing.**

(a)       Purchaser hereby agrees to pay $1,078,389.36 ("Purchase Price") for the sole purpose of acquiring all rights, title and interest in and to the Policies and Lapsed Policies. Purchaser hereby agrees to immediately deposit into the IOLTA account of Trustee's counsel, acting on behalf of Seller, the sum of $540,000.00 ("Deposit on Purchase Price") for the sole purpose of acquiring all rights, title and interest in and to the Policies. Said funds shall be held in trust in an IOLTA account controlled by Trustee's counsel and shall be disbursed immediately to Seller upon the proper transfer of the ownership and beneficiary of the Policies to Purchaser (the "Closing"). The balance of the Purchase Price remaining unpaid after the Deposit has been made shall be paid by Purchaser to Seller at Closing. Purchaser shall cause the Deposit on Purchase Price and all other payments to the Seller to be wired to Trustee's counsel IOLTA account using the following instructions:

JP Morgan Chase Bank
712 Main Street
10th Floor South
Houston, Texas 77002
(713) 216-2041

# REDACTED

(b)       Purchaser will endeavor to reinstate each of the Lapsed Policies conveyed to it as part of this Agreement. As additional consideration and in addition to the Purchase Price listed above, Purchaser agrees to remit to Trustee fifty percent (50%) of the Net Insurance Benefits (as defined below) resulting from the successful reinstatement of a Lapsed Policy or its sale to a third party, subject to the terms and conditions herein. Purchaser shall not be required to exhaust any and all legal remedies available to it, but shall instead be entitled to exercise its business judgment in pursuing reinstatement of each individual Lapsed Policy. To the extent Purchaser is successful in reinstating any one Lapsed Policy and Purchaser receives payment of an associated insurance benefit or proceeds from the sale of the reinstated policy ("Gross Insurance Benefit"), Purchaser shall be entitled to reimburse itself for all expenses collectively incurred during Purchaser's reinstatement efforts for all of the Lapsed Polices. Within ten (10) days after receiving the Gross Insurance Benefits and reimbursing itself for its reimbursable expenses, Purchaser agrees to pay to Trustee an amount equal to fifty percent (50%) of the remaining insurance benefit actually received

("**Net Insurance Benefit**").  Purchaser's reimbursable expenses shall include, but will not be limited to, reasonable and necessary attorney's fees, costs of court, insurance premium payments, administrative fees, brokerage fees, and any other fees reasonably related to reinstatement and maintenance of the Lapsed Policy.  Reimbursable expenses do not include the costs and attorney's fees incurred by Purchaser in connection with this Agreement or acquiring the rights to the Policies or Lapsed Policies from Seller.

2. **Payment of Insurance Premiums prior to Closing**.

   a. Purchaser acknowledges that Trustee is without sufficient funds in the Policy Services, Inc. Estate to pay any insurance premiums going forward.  In the likely event that insurance premiums for the Policies come due before the Order approving the sale and granting the Motion becomes final, Trustee may use a portion of the Deposit on Purchase Price to pay any such life insurance premium then due, in an amount up to $25,000, only after receiving the written consent of the Purchaser, which shall not be unreasonably withheld for a period of thirty (30) days after the execution of this Agreement.  Alternatively, provided that Purchaser gives advance notice to Trustee and Trustee gives his written approval, which shall not be unreasonably withheld, Purchaser may directly pay the insurance premium then due using Purchaser's separate funds.   At Closing, Purchaser will receive a credit to the Purchase Price for any premiums paid directly by Purchaser.

   b. If Trustee's Motion to Sell (defined below) is denied by the Bankruptcy Court, then the Deposit on Purchase Price, less any premiums paid therefrom by the Trustee, shall be refunded to Purchaser eleven (11) days from the date that the Bankruptcy Court's denial of Trustee's Motion becomes final. In such event this Agreement shall terminate.  In such event, Purchaser waives its right to apply to the court for the reimbursement of an administrative expense pursuant to 11 U.S.C Section 503 or for repayment of a post-petition loan pursuant to 11 U.S.C. 364, or under any like statute or legal theory.

   c. If Trustee's Motion to Sell is granted by the Bankruptcy Court, but a third-party outbids Purchaser and such third-party is subsequently approved as the purchaser, then the Deposit on Purchase Price (including all premiums paid by the Trustee therefrom and any premiums directly paid by Purchaser) shall be treated as an administrative expense of the Policy Services, Inc. Estate pursuant to 11 U.S.C. Section 503 and refunded to Purchaser. In such event, Purchaser shall also receive the Stalking Horse Fee (described below) and reasonable and necessary attorney's fees as approved by the Bankruptcy Court, and this Agreement shall terminate.

3. **Motion to Sell, and Stalking Horse Bid and Procedures**.

   (a) Seller agrees to file a motion to sell the Policies and Lapsed Policies pursuant to 11 U.S.C Sections 363 and to the extent necessary Section 364 in order to authorize the payment of insurance premiums by the Purchaser prior to closing  (the "**Motion to Sell**"), within three (3) business days after the effective date of this Agreement, seeking entry of an order of the Bankruptcy Court ("**Order**") approving the sale pursuant to the terms of this Agreement.  If entry of the Order approving the sale has not occurred ~~within 30 days after the effective date of~~ *by May 3, 2022* *[initials]*

~~the Agreement~~, Purchaser may terminate the Agreement by written notice to Seller. If Court approval is denied, the Agreement shall automatically terminate, and the Deposit on Purchase Price shall be returned to Purchaser pursuant to the provisions of Section 2(b) above.

(b) Purchaser acknowledges that Seller will submit this Agreement to the Bankruptcy Court for approval and that any other interested party will have the right to bid on the Policies and the Lapsed Policies.

(c) Trustee shall present Purchaser's offer to the Bankruptcy Court as a stalking horse bid on the Policies and Lapsed pursuant to Bid Procedures provided to Purchaser and approved by the Bankruptcy Court. In the event another purchaser offers a better offer to the Trustee (a "Topping Bid"), as determined solely in exercise of the Trustee's best business judgment and discretion, and the Trustee accepts the Topping Bid, Trustee covenants to do the following:

1) Refund to the Purchaser the Deposit on Purchase Price including the amount of premiums that may have been paid (either from the Deposit on Purchase Price or directly by Purchaser) in the interim within ten (10) days of the Order of Sale becoming final, and

2) As consideration for entering into this Agreement and allowing Trustee to use the Deposit on Purchase Price to pay premiums in order to keep the Policies in force, Trustee will seek authorization to pay to Purchaser an additional amount equal to $40,000 ~~$60,000.00~~ as a stalking horse fee, plus Purchaser's reasonable and necessary attorney's fees as approved by the Court, in an amount not to exceed ~~$20,000~~ $15,000.a (collectively, the "**Stalking Horse Fee**").

3) Trustee covenants to defend the adequacy and reasonableness of the Stalking Horse Fee, however, Purchaser acknowledges that the Bankruptcy Court must approve the amount of the Stalking Horse Fee and the payment thereof to Purchaser.

4) In all circumstances, the Trustee reserves the right to negotiate for a better offer from all bidders.

5) see Addendum #1.

4. **Conveyance of Ownership Rights to Purchaser**.

a) After entry of the Bankruptcy Court's Order approving the sale pursuant to the terms of this Agreement, Trustee shall make best efforts to cause each respective life insurance company to transfer record ownership of all rights, title and interest in and to each of the Policies and Lapsed Policies to Purchaser as soon as practicable. The parties contemplate the individual transfer of record ownership of each Policy and Lapsed Policy to occur as soon as practicable for each such individual Policy or Lapsed Policy, notwithstanding delays to the transfer of other Policies or Lapsed Policies. Trustee will execute all documents reasonably required by the Purchaser and issuing insurance company to accomplish a transfer of ownership of the Policies.

b) If any of the insured individuals under any of the Policies die after the execution of this Agreement, but before the entry of the Bankruptcy Court's Order approving the sale pursuant to the terms of this Agreement, Purchaser and Trustee shall each be entitled to 50% of the associated death benefit (the "**Death Benefit**") of the subject policy. The subject policy will be withdrawn from the Policies to be transferred to Purchaser; there shall be no adjustment to the Purchase Price. Within ten (10) days after receiving the Death Benefit, or within such time as may otherwise be approved by the Court in the Bankruptcy Case,

Trustee agrees to pay to Purchaser an amount equal to 50% of the Death Benefit of the subject policy received by Trustee.

c) If, after the entry of the Bankruptcy Court's Order approving the sale pursuant to the terms of this Agreement and Trustee's receipt of the balance of the Purchase Price, an insured individual under any Policy dies, Purchaser shall be entitled to receive 100% of the Death Benefit of such Policy, even if the death of such insured individual occurs prior to the effective transfer of record ownership of such Policy to Purchaser.

5. **Seller's Duties:**

a) Seller shall make best efforts to provide Purchaser access to Debtor's life insurance files that are within the custody and control of Seller that contain documents and information concerning the Policies and the Lapsed Policies, which may include, copies of life insurance policies, life expectancy evaluations, premium illustrations, policy funding agreements, transfer of ownership forms, premium statements, grace notices, past due payment notices, correspondence, and medical records and other personally identifiable information of the insureds. Debtor's life insurance policy files shall be made available to Purchaser for review and copying during regular business hours, upon reasonable advance notice, at the offices of Trustee's counsel. NEITHER TRUSTEE NOR ITS COUNSEL MAKES ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF DEBTOR'S LIFE INSURANCE POLICY FILES OR THE ACCURACY, COMPLETENESS, ADEQUACY, OR TRUTHFULNESS OF THE DOCUMENTS, INFORMATION OR DATA CONTAINED THEREIN. LIKEWISE, NEITHER TRUSTEE NOR ITS COUNSEL MAKES ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY, COMPLETENESS, OR ADEQUACY OF ANY SUMMARIES, SPREADSHEETS OR MEMORANDA CONCERNING SUCH FILES, DOCUMENTS, INFORMATION OR DATA THAT HAVE BEEN PREPARED BY TRUSTEE OR TRUSTEE'S COUNSEL AND THAT MAY BE PROVIDED TO PURCHASER BY TRUSTEE OR TRUSTEE'S COUNSEL IN CONNECTION WITH THIS AGREEMENT OR THAT MAY OTHERWISE BE FOUND WITHIN DEBTOR'S LIFE INSURANCE POLICY FILES.

b) Seller agrees to execute all required documents and forms and to take all steps necessary, to effect the transfer of ownership of the Policies and the Lapsed Policies to Purchaser.

c) Seller shall perform, or cause to be performed, the Closing, which shall include obtaining a verification of coverage from the respective issuing insurance companies verifying th the Policy or Policies in question are in force, have no liens or loans against them and that the owners and beneficiaries are correctly listed as owners and beneficiaries on the records of the insurance companies that issued the Policies.

d) Seller through Trustee's counsel shall file a Motion to Sell pursuant to 11 U.S.C Section 363 together with a Motion to Approve Bid Process, and a Motion to Expedite the consideration of the Motion to Sell and the Motion to Approve Bid Process. Trustee's counsel shall file such Motions within three (3) business days of receipt of the Purchase Price by Trustee's Counsel.

6. **Purchaser's Representations, Warranties and Acknowledgements.** Purchaser represents and warrants to Trustee that as of the date hereof that:

a) The Purchaser is a company legally organized, validly existing and in good standing under the laws of the State of its formation. The Purchaser has the full organizational right, power and authority and has taken all necessary organizational action to authorize it to enter into, execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder. No consent, approval or authorization of, or declaration, filing or registration with, any governmental authority, and no consent of any other person, including, without limitation, consents from parties to loans, contracts, leases or other agreements, is required in connection with execution, delivery and performance of this Agreement by the Purchaser.

b) This Agreement has been duly executed and delivered by the Purchaser and constitutes the legal, valid and binding obligations of the Purchaser, enforceable against the Purchaser in accordance with its terms, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization or similar laws affecting enforceability of creditors' rights generally and except as availability of the remedy of specific performance, injunctive relief or other equitable relief is subject to the discretion of the court before which any proceeding therefore may be brought.

c) There are no material actions, suits, claims, investigations or legal or administrative or arbitration (or other binding alternative dispute resolution) proceedings relating to this Agreement or the transactions contemplated hereby in respect of which the Purchaser has been served or, to the best of the Purchaser's knowledge, which is pending or threatened, in each case, before or by any governmental authority, and no judgment, award, order, writ, injunction, arbitration decision or decree has been entered against or served upon the Purchaser relating to this Agreement or the transactions contemplated hereby.

d) The execution and delivery of this Agreement, the consummation by the Purchaser of the transactions contemplated hereby and the performance by the Purchaser of its obligations hereunder, do not and shall not (i) violate or conflict with the terms of, or result in a breach by the Purchaser of, or constitute a default under, any material contract or agreement to which the Purchaser is a party or by which such party may otherwise be bound or affected, (ii) violate any judgment, decree or order of any governmental authority applicable to the Purchaser, (iii) violate or conflict with any applicable law, or (iv) violate or conflict with the organizational documents of the Purchaser.

e) If Purchaser chooses to resell the Policies, Lapsed Policies, or any interest therein, directly or indirectly, Purchaser shall comply with any and all state, federal and/or international laws, including all state and federal laws governing the sale of securities, applicable to such resale.

f) Purchaser is knowledgeable about the sale and purchase of life insurance policies and understands that numerous risks exist in association with the purchase of the Policies, including the following:

  i. that the actual life span of the Insured may significantly exceed the Insured's estimated life expectancy;

  ii. that for any given policy the premiums may increase significantly if the insured outlives the life expectancy projection

iii. that the life insurance company which issued the Policy on the Insured may become insolvent or become unable to pay some or all of the expected death benefit;

iv. that laws may change in a manner that adversely impacts the validity of viatical and life settlement contracts;

v. that the Insured may disappear or become untraceable;

vi. that an investment in the Policy is illiquid and the Policy is not readily resaleable;

vii. that no return will be realized until the Insured dies;

viii. that the Purchaser, subject to Closing, is responsible for making all premium payments, tracking all premium payments, the method and frequency of premium payments as well as any other actions required to keep the Policies in force, and that Trustee has no responsibility for any of these activities whatsoever; and

ix. that if the Insured(s) lives past their life expectancies it could have a material adverse impact or completely eliminate any expected return on an investment in the Policies.

g) It understands and acknowledges that any and all illustrations provided are merely projections provided by the insurance company to a future point in time, based upon current rate projections, and that Seller makes no representation as to the accuracy of such projections.

h) It understands and acknowledges that any and all premium payment schedules (PPS) are based upon illustrations that are merely projections provided by the insurance company to a future point in time, based upon current rate projections, and that Purchaser must rely upon the insurance company to provide accurate projections. Purchaser acknowledges that this may or may not be enough to carry the policy to that point.

i) It understands and acknowledges that Purchaser shall rely upon the respective insurance companies to provide accurate verification of coverage information.

j) Purchaser represents that there are no actions, suits or proceedings (whether administrative, regulatory, civil or criminal) pending, or to their knowledge threatened, against or affecting the Purchaser that could impact the Purchaser's ability to undertake the transactions set forth in this Agreement. Purchaser also represents that there are no actions, suits or proceedings (whether administrative, regulatory, civil or criminal) pending, or to their knowledge threatened, against or affecting the Purchaser or its officers, directors, employees, agents or affiliates related to allegations of improper fundraising or money laundering.

k) Purchaser represents and warrants that any funds borrowed, raised or otherwise obtained by the Purchaser in order to fund the transaction contemplated by this Agreement were borrowed, raised or otherwise obtained in a legal manner, consistent with all applicable local, state, federal and/or international laws.

l) No Person Affiliated with the Purchaser or that makes funds available to the Purchaser or any affiliate of the Purchaser in order to allow the Purchaser to fulfill its obligations under this Agreement or for the purpose of funding the investment in the Purchaser is: (A) a Person listed in the Annex to Executive Order No. 13224 (2001) issued by the President of the United States (Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), (B) named on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Office of Foreign Assets Control, (C) a non-U.S. shell bank or is providing banking services indirectly to a non-U.S. shell bank, (D) a senior non-U.S. political figure or an immediate family member or close associate of such figure, or (E) otherwise prohibited from investing in the Purchaser pursuant to applicable U.S. anti-money laundering, anti-terrorist and asset control Laws, regulations, rules or orders.

m) PURCHASER IS NOT RELYING UPON AND HEREBY DISCLAIMS RELIANCE ON ANY REPRESENTATION, WARRANTY, OPINION, STATEMENT OF FACT OR PREDICTION MADE BY TRUSTEE, OR TRUSTEE'S COUNSEL IN MAKING THE DECISION TO ENTER INTO THIS AGREEMENT. PURCHASER IS ACQUIRING ONLY THE RIGHTS AND TITLE TO THE POLICIES THAT TRUSTEE MAY HAVE AND ACKNOWLEDGES THAT PURCHASER IS TAKING OWNERSHIP WITHOUT REPRESENTATION OR WARRANTY, AND WITHOUT RECOURSE TO TRUSTEE OR THE ESTATE OF POLICY SERVICES, INC.

n) Purchaser acknowledges that Trustee and Trustee's counsel is working from incomplete information concerning the status of the Policies and Lapsed Policies and cannot verify the accuracy or completeness of any of data or information provided to Purchaser.

o) Other than an entity owned by the principal of the Purchaser having provided services to some of the deeproot entities prior to petition date, Purchaser and none of its owners, principals, agents, investors, lenders or any other persons who may benefit in some fashion from this Agreement or its consummation, has any connection to the Debtor or its principal, Mr. Robert Mueller. Purchaser has no intention or agreement, written, oral or otherwise to share in the profits, losses or in any other manner with the Debtor, its principals or an insider (including a non-statutory insider) as defined at 11 U.S.C. Section 101.

7. **Provisions to be Included in Order Authorizing Trustee Sale.** The entry of an Order authorizing the sale of the Policies and Lapsed Policies to the Purchaser pursuant to the terms of the Agreement in the jointly administered cases under title 11 of the United States Code styled "In re Deeproot Capital Management, LLC, et al., jointly administered at Case No. 21-51523, United States Bankruptcy Court, Western District of Texas, San Antonio Division, which Order shall be effective and with respect to which no stay has been entered (or if a stay has been entered, such stay shall have been dissolved), shall contain the following provisions:

a) authorizing and directing that the sale of the Policies and Lapsed Policies to the Purchaser is free and clear of any interest (including without limitation any liens or claims of purported owners of fractional interests, or of any debtors in the Bankruptcy Case) in such Policies or Lapsed Policies pursuant to 11 U.S.C. §363(f);

b) an affirmative finding that the Policies (and Lapsed Policies) are not executory contracts of the kind which are subject to deemed rejection as described in 11 U.S.C. §365(d)(1);

c)    an affirmative finding that the Policies (and Lapsed Policies) are transferable and are transferred and that Purchaser has purchased the property "in good faith" for the purposes of 11 U.S.C. §363(m); and

d)    a provision that the Order is effective upon entry on the docket in the case pursuant to Bankruptcy Rule 6004.

8. **Indemnification and hold harmless by Purchaser.** Purchaser hereby indemnifies Seller and agents and lawyers, and any assignees, designees or successors of same (the **"Seller Indemnified Parties"**) against, and agree to hold the Seller Indemnified Parties harmless from, any and all damages, losses, liabilities and expenses (including, without limitation, reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding), incurred or suffered by the Seller Indemnified Parties arising out of, resulting from, or related to: (i) any misrepresentation or breach of any representation or warranty made by Purchaser pursuant to this Agreement; (ii) any breach of a covenant or agreement made or to be performed by Purchaser pursuant to this Agreement, and (iii) any breach or violation of any applicable law by Purchaser in connection with this Agreement. Purchaser hereby holds harmless Seller and agents and lawyers, and assignees, designees, or successors of the same from, any and all damages, losses, liabilities and expenses incurred or suffered by Purchaser arising out of, resulting from, or related to: (i) any inaccuracy of any verification of coverage documentation provided by any insurance carrier at the time of closing; and (ii) the inaccuracy of any information provided by the insurance company in the verification of coverage at Closing.

9. **Insured Tracking.** Purchaser shall be responsible for tracking the insureds under the Policies.

10. **Liquidated Damages for a Breach by Purchaser.** In the event Purchaser fails to close on this transaction as a result of Purchaser's breach of this Agreement, Seller's sole remedy shall be to keep and retain 25% of the Deposit on Purchase Price as liquidated damages. The Parties agree that the calculation of damages for a breach by Purchaser would be difficult to ascertain and that this remedy is a reasonable estimate of the damages which the Trustee may sustain due to breach.

11. **Binding Effect.** Once approved by the Bankruptcy Court for the Western District of Texas, this Agreement is irrevocably binding upon and shall inure to the benefit of and shall be enforceable by the parties hereto and their respective successors, assigns, executors, administrators and heirs.

12. **Severability.** If any provision of this agreement shall be held invalid in a court of law, the remaining provisions shall be construed as if the invalid provision were not included in this Agreement.

13. **Notices.** Any and all notices, requests, consents, notifications, and other communications given to any Party to this Agreement shall be given in writing and will be as elected by the party giving said notice, hand-delivered by messenger or courier service, telecopied, electronically communicated, or sent via registered or certified mail, return receipt requested, postage prepaid, to the address of each party at the addresses below and deemed given when received by Party being served such notice.

| Seller: | With a copy to counsel: |
|---|---|
| Jon Patrick Lowe | Randall A. Pulman |
| Chapter 7 Trustee for Estate of Policy Services, Inc. | Pulman, Cappuccio & Pullen, LLP |
| 2402 E. Main Street | 2161 N. W. Military Highway, Ste. 400 |
| Uvalde, Texas 78801 | San Antonio, Texas 78213 |
| Telephone: 830-407-5115 | Telephone: 210-892-0420 |
| E-mail: pat.lowe.law@gmail.com | e-mail: rpulman@pulmanlaw.com |
| | |
| Purchaser: | With a copy to counsel: |
| TuYo Holdings, LLC, | Gregory B. Yost |
| 616 E. Blanco Rd., Suite 202 | Brock Upham Yost, PLLC |
| Boerne, Texas  78006 | 616 E. Blanco Rd., Suite 202 |
| Telephone: 830-816-9033 | Telephone: 830-816-9033 |
| E-mail: greg@buy-lawfirm.com | E-mail: greg@buy-lawfirm.com |

14. **Waiver.** Either Party's failure to insist in any one or more instances upon strict performance by the other Party of any of the terms of this Agreement shall not be construed as a waiver of any continuing or subsequent failure to perform or delay in performance of any term hereof.

15. **Contract Assignable.** Purchaser may assign this Agreement and its obligations hereunder to an entity which is wholly owned by Purchaser provided such assignment is made expressly in writing and delivered to Seller. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their successors and assigns.

16. **Choice of law.** The Parties hereby agree and confirm that the laws of Texas and Title 11 of the United States Code shall control this Agreement.

17. **Counterparts and Facsimile.** This Agreement may be signed in one or more counterparts, each of which is deemed an original, but all of which together constitute one and the same instrument. A facsimile copy of this executed Agreement shall be deemed valid as if it were the original.

18. **Headings.** The headings and subheadings contained in this Agreement are for convenience of reference only and are not to be considered part of this Agreement and will not limit or otherwise affect in any way meaning or interpretation of this Agreement.

19. **Time.** Time is of the essence in this Agreement.

20. **Representation by Counsel.** The Parties acknowledge that they have been or have had the opportunity to have been represented by their own counsel throughout the negotiations and at the

10

signing of this Agreement and all other documents signed incidental to this Agreement and, therefore, neither Party shall claim or assert that any provision of this Agreement or any ancillary documents should be constructed against their drafter.

In WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day, month and year first above written.

SELLER:

By: _____
Jon Patrick Lowe, Chapter 7 Trustee
For the Estate of Policy Services, Inc.
Date: _____

PURCHASER: Tu Yo  Holdings, LLC

By: _____
Name: Greg  Yost
Its: Managing Member
Date: 3-13-22

{00570441;1}

11

**EXHIBIT A**

**POLICIES**

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy |
|---|---|---|---|---|---|
| Protective Life Insurance Company (West Coast Life) | ANDE75 | REDACTED | Inforce | REDACTED575 | $2,000,000.00 |
| Brighthouse Life Insurance Company | JKN22A | REDACTED | Inforce | REDACTED319REDACTED | $2,500,000.00 |
| John Hancock Life Insurance Company | FEE287 | REDACTED | Inforce | REDACTED287 | $500,000.00 |
| John Hancock Life Insurance Company | FEE548 | REDACTED | Inforce | REDACTED548 | $500,000.00 |
| Occidental Life Insurance Company NC | MAR790 | REDACTED | Inforce | REDACTED790 | $100,000.00 |
| Transamerica Life Insurance Company | JMD135 | REDACTED | Inforce | REDACTED135 | $500,000.00 |
| Brighthouse Life Insurance Company | KFFN57 | REDACTED | Inforce | REDACTED157REDACTED | $500,000.00 |
| Protective Life Insurance Company | RID363 | REDACTED | Inforce | REDACTED371 | $500,000.00 |

**EXHIBIT B**

**LAPSED POLICIES**

| Carrier | Policy ID | Last Name | Status | Policy Number | Face Amount of Policy |
|---|---|---|---|---|---|
| Midland National Life | GRR553 | REDACTED | Lapsed | REDACTED553 | $242,520.00 |
| ING Reliastar Life (VOYA) | PER437 | REDACTED | Lapsed | REDACTED378 | $1,000,000.00 |
| SunLife Financial | SUL428 | REDACTED | Lapsed | REDACTED428 | $300,000.00 |
| SunLife Financial | SUL429 | REDACTED | Lapsed | REDACTED429 | $300,000.00 |
| US Life City NY | UD33NL | REDACTED | Lapsed | REDACTED0NL | $750,000.00 |
| Protective Life Insurance Company | LW7116 | REDACTED | Lapsed | REDACTED 116 | $1,100,000.00 |
| American General Life | JDE21L | REDACTED | Lapsed | REDACTED21L | $633,342.81 |
| Transamerica Life | SIE687 | REDACTED | Lapsed | REDACTED687 | $1,500,000.00 |
| AXA Equitable Life | FERN07 | REDACTED | Lapsed | REDACTED 607 | $10,000,000.00 |
| Mass Mutual | HCS883 | REDACTED | Lapsed | REDACTED 883 | $1,540,000.00 |
| Principal | ANDR62 | REDACTED | Lapsed | REDACTED 262 | $1,000,000.00 |
| Transamerica Life | BASH82 | REDACTED | Lapsed | | $9,000,000.00 |

**ADDENDUM NO. 1 TO LIFE INSURANCE POLICY PURCHASE AND SALE AGREEMENT**

5.      In the event another purchaser makes an offer to purchase the Policies, TuYo Holdings, LLC may use the expense reimbursement of $15,000.00, and the amount of any life insurance premium it has paid post-petition directly to the life insurance issuers of the Policies, as a credit bid in the event TuYo Holdings, LLC counters such offer with a competing bid, <u>provided</u>:

      (a)      TuYo Holdings, LLC may not use the Stalking Horse Fee as a credit bid; and

      (b)      TuYou Holdings, LLC will be entitled to receive the Stalking Horse Fee in the event it is not the Successful Bidder (as defined in the Sales Procedures approved by the Bankruptcy Court).

ACKNOWLEDGED AND APPROVED:

SELLER:

By: _____
    Jon Patrick Lowe, Chapter 7 Trustee
    For the Estate of Policy Services, Inc.

Date: _____

**PURCHASER:**

TUYO HOLDINGS, LLC, a Texas
limited liability company

By: _____
    Gregory B. Yost
    Managing Member

Date: ____3-21-22____