## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC[1] | § | BANKRUPTCY NO. 21-51523 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| POLICY SERVICES, INC. | § | BANKRUPTCY NO. 21-51513 |
| | § | |
| DEBTOR. | § | JOINTLY ADMINISTERED |

### OBJECTIONS TO SALE OF THE PROPERTY OF THE ESTATE OF POLICY SERVICES, INC.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Certain creditors/investors in the deeproot 575 Fund, LLC, namely Brenda E. Jennings,  Clyde and Shirley Watson, Donald W. Cook, Helene Cook, Jack and Shirley Daniel, Judith L. Werner Revocable Living Trust (Judith L. Werner, Trustee), Judy N. Marsolan, Karen Ready, Mary G. Marquis, Pauline L. Rubin, Philip J. Erdman, Richard T. Jennings, Roberta L. Erdmann, and Wells Trust (JoAnn Wells Trustee) ("575 Objectors"); as well as certain creditors/investors in the deeproot Growth Runs Deep

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Policy Services, Inc (2864), Wizard Mode Media, LLC (3205), deeproot Pinball LLC (0320), deeproot Growth Runs Deep Fund, LLC (8046), deeproot 575 Fund, LLC (9404), deeproot 3 Year Bonus Income Debenture Fund, LLC (7731), deeproot BonusGrowth 5 Year Debenture Fund, LLC (9661), deeproot Tech LLC (9043), deeproot Funds LLC (9404), deeproot Studios LLC (6283), and deeproot Capital Management, LLC (2638).

Fund, LLC;  namely Brenda E. Jennings,  Clara Dean,  David and Paula Burke, Donald W. Cook, Helene Cook, Jacquelin Peters-Farrar, Karen Ready, Mary B. Summy, Pauline L. Rubin, Roberta L. Erdmann, and Wells Trust (JoAnn Wells, Trustee) ("dGRD Objectors"), (Collectively referred to as "Objectors") file the following objections to the *Order Approving the Sale and Consummation of the Sale of Property and Transferring of Property free and clear of all liens, claims, and other interests* ("**Sale Motion and Order**").

## FACTUAL BACKGROUND

1. Non-Bankruptcy individual, Robert J. Mueller ("Mueller") was an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], because he was in the business of providing investment advice to clients about securities in exchange for compensation.  Debtor deeproot Funds, LLC ("deeproot"), is a Texas limited liability company formed by Mueller in 2013. Mueller also owned, exclusively managed, and controlled deeproot.[2]

2. Debtor Policy Services, Inc. ("Policy Services") is a "S" corporation that Mueller formed in Nevada in 2012 and re-domiciled in Texas in 2016.  Mueller is its sole shareholder, and also owned, exclusively managed, and controlled Policy Services. Mueller used Policy Services to purchase and hold life insurance policies for and on behalf of the Funds, and used bank accounts in Policy Services' name, funded almost

---

[2] See *Exhibit 1* - Complaint filed by the SEC in Civil Action No.:  5:21-cv-785-XR, Securities and Exchange Commission v. Robert J. Mueller, Deeproot Funds, LLC (a/k/a dprt Funds, LLC), and Policy Services Inc, et.al.at page 8, pp 27. See Exhibit 2 – DOC 43 – Mueller's Original Answer Complaint filed by the SEC in Civil Action No.:  5:21-cv-785-XR, Securities and Exchange Commission v. Robert J. Mueller, Deeproot Funds, LLC (a/k/a dprt Funds, LLC), and Policy Services Inc, et.al. at P. 5, pps. 25, 27.

exclusively with assets of the Funds, to pay significant personal expenses he incurred on credit cards in the names of his other entities.[3]

3. Objectors believe, based upon the SEC investigation that these transactions were fraudulent transactions robbing the 575 Fund and the dGRD Fund investors of their investment securities or "investment contracts." Interestingly however, the financial disclosures made by Mueller in this bankruptcy proceeding (under penalty of perjury) are different from the facts found by the U.S Securities and Exchange Commission and appear to be different from the "pre-petition" documents that the Trustee and Debtor rely upon and represent to the Court in the Sale Motion.

4. Mueller and deeproot were investment advisers to the two pooled investment funds that Mueller created in 2014, the deeproot 575 Fund, LLC (the "575 Fund") and the deeproot Growth Runs Deep Fund, LLC (the "dGRD Fund") (collectively, "the Funds"). Objectors were investors in one or both of these specific Funds. Mueller had exclusive authority and control over the drafting and dissemination of the private placement memoranda ("PPMs"), as well as other marketing materials for both of the Funds.[4]

5. From approximately September 2015 to at least February 2021, Robert J. Mueller and deeproot, defrauded these two investment funds and nearly 300 people who invested roughly $58 million in the Funds.[5] Specifically, Mueller and deeproot

---

[3] *Id.* at p. 6, pp.18.
[4] *Id.* at pg. 8, pp. 28. See ***Exhibit 5*** - 2015 and 2019 575 Fund PPMs; and ***Exhibit 6*** – 2015 and 2019 dGRD Fund PPMs
[5] See ***Exhibit 1*** - Complaint filed by the SEC at page 8, pp 27. See ***Exhibit 2*** – DOC 43 – Mueller's Original Answer Complaint filed by the SEC in Civil Action No.: 5:21-cv-785-XR, Securities and

persuaded investors, including the above Objectors, many of whom were retirees, to cash out annuities and individual retirement accounts they held with other investment companies and invest in the Funds. Mueller and deeproot told investors the Funds would invest primarily in life insurance policies and possibly some deeproot-related businesses to provide relatively safe returns to investors.[6] Apparently, this did not happen.

6. For the 575 Fund, investors committed their principal investment for five years and elected to receive either simple annual interest of 7% per year paid out along with a return of their principal in a lump sum at the end of the five-year term, or they would receive 5% simple annual interest paid out in monthly installments for each of five years with a return of their principal at the end of the five-year term (thus, the "5-7-5" in the fund's name). For the dGRD Fund, investors committed their principal investment in increments of $25,000 for an undetermined period of time and were promised that they could receive a potentially larger payout of a fixed multiplier, based on a sliding scale of the total principal amount invested, in a first-in, first-out (FIFO) redemption process upon the maturity of life policies in the Fund.

7. Mueller and deeproot told investors that the 575 Fund would invest "the simple majority of our Fund Assets" in life insurance policies. Though not disclosed until 2019, the 575 Fund purchased interests in life insurance policies indirectly by

---

Exchange Commission v. Robert J. Mueller, Deeproot Funds, LLC (a/k/a dprt Funds, LLC), and Policy Services Inc, et.al. at P. 5, pps. 25, 27.
[6] See *Exhibit 1* - at page 2, pp. 2; pg. 5, pp 13, pg. 6, pp 17 and p. 8, pp 27. See *Exhibit 2* – at p.4, pp. 17, and P. 5, pps. 25, 26.

investing in the dGRD Fund, which itself would invest "the majority of our Fund Assets" in life insurance policies purchased for the Funds by Mueller's other company, Policy Services. Mueller and deeproot told investors that the 575 Fund would use "less than fifty percent (50%) of the asset portfolio" to make "capital acquisition[s]" in affiliated businesses, including the Relief Defendants. While Mueller and the other deeproot advisers raised more than $58 million from investors in the 575 Fund and the dGRD Fund, they commingled the money in deeproot and Policy Services bank accounts and spent approximately **$10 million** to purchase life insurance policies for the Funds.[7] They also purported to include life insurance policies as assets of the Funds that Mueller and Policy Services had purchased for Mueller's earlier investment funds. Notably, Defendants purchased no new insurance policies for the Funds after September 2017, despite raising approximately $43 million for the Funds after that time.

8. Mueller and the Chapter 7 bankruptcy "Debtors" used the vast majority of the Funds' assets – virtually all of which came from investors in the 575 Fund and the dGRD Fund – like a piggy bank to fund Mueller's deeproot-affiliated businesses, the Relief Defendants/Debtors. Indeed, Mueller funneled more than $30 million of the Funds' assets to the Relief Defendants/Debtors in non-arms-length transactions whenever Mueller determined the Relief Defendant businesses had expenses that

---

[7] See *Exhibit 1*, and *Exhibit 10* at pg 8, line 78 which states $10,042,520.00 in insurance policies and a creditor's claim for dGRD for "interests in policies held by Debtor" (i.e. Policy Services) – No Proofs of Claim wer timely filed by Trustee or on behalf of dGRD to protect its creditor's claims and no Proof of Claim was filed to protect the 575 Funds Claim listed on Policy Service's financial Statements (See also Claims Registers *Exhibits 7, 8* and *9*).

needed to be paid, and Mueller did so without any analysis as to whether such transfers constituted suitable investments for his client Funds. Further, Mueller made these transfers to Relief Defendants without obtaining anything of substance in return for the Funds and without memorializing the transactions in any way.

9. Since 2015, neither the life insurance policies nor the "capital" investments in affiliated businesses have yielded significant revenue or cash flow for Defendants or the Funds. This caused Mueller and Policy Services to default on the purchase of one $10 million face value life insurance policy, losing nearly $3.5 million of the Funds' money in the process. It also caused Mueller and deeproot to make more than $820,000 of Ponzi-like payments to earlier investors in the Funds using money raised from new investors, as well as to make at least $177,000 in payments from money borrowed on a short-term basis using the life insurance policies as collateral.

10. Despite making statements suggesting Mueller took no compensation from the Funds, Mueller commingled assets of the Funds in deeproot and Policy Services bank accounts and used them to make ad hoc salary payments to himself whenever investor money was available, totaling roughly $1.6 million from 2016 through 2020.

11. Mueller also used more than $1.5 million of the Funds' assets to pay hundreds of personal expenses, including his daughter's private school tuition, vacations with his family, his second wedding, his second divorce, his third wedding, jewelry for both his second and third wives (including engagement rings and wedding bands for both wives), other lifestyle spending for and by his family, and to buy a condominium in Kauai, Hawaii. When asked by SEC counsel during investigative

testimony about his use of the Funds' assets to pay for these personal and family expenses, Mueller asserted his Fifth Amendment right against self-incrimination.

12. Both the 575 Fund and the dGRD Fund involve the offer and sale of limited liability company membership interests in the Funds. These membership interests are investment contracts, which are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c]. In addition, both Mueller and deeproot are investment advisers to these two (2) Funds because, for compensation, they engaged in the business of advising investors as to the value of securities or the advisability of investing in, purchasing, or selling securities.[8] As such, the Trustee's claims that the deeproot 575 creditors/investors as well as the dGRD creditors/investors are not secured creditors is incorrect.

**Alleged Fund Balances by Trustee**.

| Fund | No. of Investors September 2015 to September 2017 | Amount Invested September 2015 to September 2017 | No. of Investors October 2017 to February 2021 | Amount Invested October 2017 to February 2021 | Total Invested |
|------|------|------|------|------|------|
| The 575 Fund | 38 | $7,512,934 | 177 | $38,662,612 | $46,175,546 |
| The dGRD Fund | 54 | $8,335,369 | 27 | $4,278,844 | $12,614,213 |

Of these amounts, the objecting secured investors/creditors for the 575 Fund invested as follows and on the following dates:

---

[8] See *Exhibit 1* at p.6, pp. 16-17.

| 575 Fund Investors | # Accts | 1st Acct Date | 2nd Acct Date | 3rd Acct Date | 4th Acct Date | 5th Acct Date |
|---|---|---|---|---|---|---|
| DONALD W. COOK | 1 | 09/15/16 | | | | |
| HELENE COOK | 1 | 09/15/16 | | | | |
| JACK & SHIRLEY DANIEL JTWROS | 1 | 09/12/18 | | | | |
| PHILIP J. ERDMANN IRA | 1 | 09/02/16 | | | | |
| ROBERTA L. ERDMANN | 1 | 02/09/18 | | | | |
| BRENDA E. JENNINGS | 2 | 06/13/17 | 06/02/16 | +add'l 6/25/21 | | |
| RICHARD T. JENNINGS | 2 | 06/22/17 | 02/22/18 | | | |
| MARY G. MARQUIS | 1 | 02/17/17 | | | | |
| JUDY N. MARSOLAN | 1 | 12/30/16 | | | | |
| KAREN READY | 2 | 09/15/18 | 04/06/19 | | | |
| PAULINE L. RUBIN | 5 | 08/18/17 | 11/28/17 | 08/29/18 | 03/15/19 | 11/15/19 |
| PAULINE L. RUBIN IRA | 1 | 04/06/17 | | | | |
| CLYDE & SHIRLEY WATSON JTWROS | 2 | 01/18/17 | 03/13/19 | | | |
| WELLS TRUST | 5 | 08/09/17 | 08/09/17 | 04/03/18 | 03/01/19 | 11/30/19 |
| JUDITH L. WERNER REVOCABLE LIVING TRUST | 2 | 07/13/16 | 10/30/17 | | | |
| **Total Invested - $6,697,154.00** | **28 Total Accts** | | | | | |

13.     Similarly, the objecting secured investors/creditors for the dGRD Fund invested as follows and on the following dates:

| dGRD Fund Investors | # Accts | Acct Date |
|---|---|---|
| DAVID & PAULA BURKE JTWROS | 1 | 04/03/18 |
| DONALD W. COOK | 1 | 01/07/16 |
| HELENE COOK | 1 | 01/13/16 |
| CLARA DEAN | 1 | 12/13/16 |
| ROBERTA L. ERDMANN, BENE IRA OF ROBBIE PAJAK | 1 | 08/24/16 |
| BRENDA E. JENNINGS | 1 | 05/09/16 |
| JACQUELIN PETERS-FARRAR IRA | 1 | 08/03/16 |
| KAREN READY | 1 | 03/03/17 |
| PAULINE L. RUBIN | 1 | 05/09/16 |
| MARY B. SUMMY | 1 | 07/20/16 |
| WELLS TRUST | 1 | 12/08/16 |
| **Total Invested - $2,598,729.00** | **11 Total Accts** | |

**It is important to note that Mueller and deeproot did not purchase any insurance policies after September 2017.**

### OBJECTIONS AND AUTHORITIES

14. On December 9, 2021, Robert J. Mueller filed Chapter 7 bankruptcy on behalf of various entities solely owned and controlled by him, which is jointly administered under Case No. 21-51523.

15. On March 13, 2022, the Trustee filed this Sale Motion and Order on behalf of Policy Service, Inc. ("Policy Services") who the Trustee claims is the "owner" of these various insurance policies based upon alleged "pre-petition disclosures and financial statements" dated in 2020. In actuality, the Sale Motion and Order seeks a sale of the Insurance Policies that are part of the two (2) funds managed and controlled by Non-Debtor Robert J. Mueller ("Mueller") and Deeproot Funds, LLC; namely deeproot 575 Fund, LLC ("575 Fund"), as well as deeproot Growth Runs Deep, LLC ("dGRD Fund").

16. Although the Sale Motion states that the Policies are considered "Life Settlements", none of the Funds or its policies were "life settlements" and none of the policies or the Fund applications contained the provisions set forth in the Sale Motion. The Fund applications at Section G, are completely different than what was represented by the Trustee and Debtor for which Objection is made.

17. The Objectors claim that Policy Services received these policies fraudulently, without any consideration, and are not the property holder or owner of the policies. Rather, the 575 Fund and the dGRD Fund actually own these policies, and the Creditors/Objectors object to losing their interests in these funds (and the insurance policies owned by these

funds) which will occur by the unauthorized sale of the Funds' investments assets to interested parties involved in Mueller's and deeproot's fraudulent financial activities without any benefit flowing to Objectors.

18.    Sworn statements of DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS ("Debtors' Schedules and Statements of Financial Affairs") for Policy Services, the 575 Fund, as well as the dGRD Funds were filed on January 13, 2022 under "penalty of perjury" by Robert J. Mueller which support Objectors' position.  However, these Debtors' Schedules and Statements of Financial Affairs were not mentioned in the Trustee's Sale Motion, which paints a completely different picture as to the ownership of these insurance policies.

19.    The Trustee and Debtor's claims that the insurance policies in the amount of approximately $10,000,000 was transferred to Policy Services, but without any accounting records proving that these transactions were proper, supported by consideration, not fraudulent (in contrast to the SEC claims), properly accounted for by the accountant/bookkeeper Charlotte Acker, and properly presented in Policy Service's Tax and IRS filings, etc.

20.    In contrast, the SEC has investigated the Funds and Policy Services accounts and has determined that out of the $58 million raised from investors in the 575 Fund and the dGRD Fund, Mueller and deeproot "spent less than $10 million to purchase life insurance policies for the Funds" and "purchased no new insurance policies for the Funds after September 2017", making the $10,042,205.63 claimed by Policy Services as insurance policies for "life settlements" untrue.  Neither Fund offered "Life Settlements" to its

creditors, including Objectors. Instead, the applications and PPMs for the Funds offered investment contracts for ownership as a shareholder of the respective Fund and these investment contracts are considered to be "Securities" according to the SEC.

21.    Based upon Objector's knowledge and belief, Policy Services, Inc. as "DEBTOR" in this motion is not the owner of the Insurance policies for which the Trustee seeks to sell to benefit the entire jointly administered "Debtor's Estate".  The sale and distribution of these policies as advanced to this court will only benefit the Trustee and the purported Purchasers as proposed who are already part of the fraudulent acts and omissions of Mueller and deeproot, rather than the actual investors/creditors of the 575 Fund and the dGRD Fund who have the ownership interests in these assets but will receive nothing for their secured investment contracts through the 575 Fund or the dGRD Fund based upon the Trustee's representations and proposed sale of the insurance contracts.

22.    It is clear from the January 13, 2022 Debtors' Schedules and Statement of Financial Affairs that Policy Services, Inc. is a "creditor" to the actual owner of these policies the 575 Fund and the dGRD Fund, but Policy Services did not timely file any Proof of Claims regarding its creditor rights.  Accordingly Policy Services does not own these policies.

**Sale Process is Fundamentally Flawed.**

23.    The sale process here is fundamentally flawed, and there are simply too many important, unanswered questions to allow the proposed sale to be approved without considerable scrutiny, including as follows:

a. The Stalking Horse Agreement is between the Debtor and Trustee, and TuYo Holdings, LLC, an entity formed on February 22, 2022[9]; however, no proper disclosures regarding this interested company was presented to the Court in the Sale Motion.

b. In actuality, TuYo Holdings, LLC has 2 members – Chris Turner (i.e. "Tu", who created and managed the investor portal for deeproot funds)[10]; and attorney Greg Yost (i.e. "Yo").[11] As the Trustee/Debtor failed to disclose the inherent conflict of interest in the bidder seeking to purchase the insurance policy, and only indicated that Chris Turner "created software" under his company "Turner Logic", but failed to disclose to the Court or the Creditors/Objectors that he also had access to the Policy Services financial documents as well as access to the investor portal which he developed for Mueller and deeproot, and was actively involved in the deeproot pinball entities.

24. It is also respectfully submitted that the following issues should be examined properly in connection with the Sale Motion and Order for which OBJECTIONS are hereby asserted:

a. Does the Debtor, Policy Services, Inc. ("Policy Services) actually own the subject policies sought to be sold, when the SEC, the post-petition Debtor disclosures of assets and liabilities and financial statements of the 575 Fund and

---

[9] **Exhibit 14.**
[10] https://web.archive.org/web/20161006041702/http://turnerlogic.com/portfolio/
[11] https://mycpa.cpa.state.tx.us/coa/coaSearchBtn

the dGRD Fund indicate otherwise.

b.  Is the business judgment rule applicable in this case, and has the Trustee and Policy Services exercised sound business judgment in negotiating the sale of the subject insurance policies of the regarding the correct Debtor Entities with only one suitor decided pre-Sale Motion?

c.  To what extent has this transaction been structured to benefit management rather than to maximize the return to Creditors/Investors of the 575 Fund and the dGRD Fund who actually own the policies?   This question is of concern to Objectors and is not addressed appropriately in the Sale Motion and Order.

d.  Objection is made on the grounds that this sale is not fair to the creditors when the sale is free and clear of all liens, claims, interests and encumbrances and when:

   i.   The Debtors have failed to meet their burden of proving the Break-Up Fee is necessary and appropriate in these cases.

   ii.  The Trustee and Debtors have failed to disclose even minimal information about the Buyer, its ability to close and why the Break-Up Fee is a necessary inducement for the Buyer's execution of the Purchase Agreement especially since the interested party purchaser has insider information which was not disclosed by the Trustee or Debtor which is also indicative of the fraudulent actions of the Debtor entities in the past.

   iii. Ignoring the Debtors lack of evidentiary support, the Break-Up Fee should also be denied because it is simply unwarranted in these Chapter

7 cases. Relative to the complexity of the sale of the Property, the Break-Up Fee is excessive in light of the Buyer's likely actual costs (which the Debtors also do not disclose). Accordingly, Objectors further object to the approval of the Break-Up Fee proposed for the interested and fraudulently "insider" purchaser TuYo Holdings, LLC.

e. OBJECTION is further made as there appears no properly articulated business justification for allowing Debtor to sell property for which it does not properly own and for which it is improperly interfering with the rights of the Objectors and other creditors which are the proper owners of the Funds which own the policies. In such circumstances, "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." Id.; see also In re Moore, 608 F.3d 253, 263 (5th Cir.2010) ("A sale of assets under § 363 ... is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons"). In re ASARCO, L.L.C., 650 F.3d 593, 601 (5th Cir. 2011). It appears nearly impossible for the Trustee and Debtor to articulate business justification without evaluating the accounting records for Policy Services, the 575 Fund or the dGRD Fund which would include the IRS records as well. It is further proper for the Trustee and Debtor to properly disclose the relationship between the Stalking Horse Purchaser and the Debtors. None of this information has been evaluated or made available to the Creditors

or the Objectors.

**Muellers' Bankruptcy Disclosures**

25.     However, according to the Disclosures made by Mueller and deeproot in this bankruptcy proceeding relating to the 575 Fund, apparently there was a transfer, which is believed to be a completely fraudulent transaction made to Policy Services in the amount of $10,042,205.63.

26.     Specifically, the Policy Services' Schedules and Statement of Affairs filed January 13, 2022 state in relevant parts as follows:[12]

**13. Does the debtor own any investments?**
☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

| Name of fund or stock: | % of ownership: |
|---|---|
| **None** | |

| 73. Interests in insurance policies or annuities | |
|---|---|
| 73.1 Protective Life policy for Anderson (face value) | $2,000,000.00 |
| Additional Page Total - *See continuation page for additional entries* | $8,042,520.00 |

| 73. Interests in insurance policies or annuities - *Continued* | |
|---|---|
| 73.2 SunLife Financial policy for Sullivan (face value) | $300,000.00 |
| 73.3 Metlife Investors life policy for Jackson (face value) | $2,500,000.00 |
| 73.4 SunLife Financial life policy for Sullivan (face value) | $300,000.00 |
| 73.5 Midland National Life policy for Grier (face value) | $242,520.00 |
| 73.6 ING Reliastar Life policy for Perry (face value) | $1,000,000.00 |

---

[12] See *Exhibit 5* – Policy Services, Inc. Debtors' Schedules, and Statement of Affairs

| | |
|---|---|
| 73.7  John Hancock Life policy for Feen (face value) | $500,000.00 |
| 73.8  John Hancock Life policy for Feen (face value) | $500,000.00 |
| 73.9  Occidental Life policy for Margeson (face value) | $100,000.00 |
| 73.10  Transamerica Life policy for Doyle (face value) | $500,000.00 |
| 73.11  Protective Life policy for Ridley (face value) | $500,000.00 |
| 73.12  Brighthouse Life policy for Kauffman (face value) | $500,000.00 |
| 73.13  Protective Life policy for Latchaw (face value) | $1,100,000.00 |

**3.12** Nonpriority creditor's name and mailing address
deeproot 575 Fund LLC
P.O. Box 691610
San Antonio, TX 78269

Date or dates debt was incurred  _____
Last 4 digits of account number  __ __ __ __

As of the petition filing date, the claim is:     unknown
Check all that apply:
☐ Contingent
☐ Unliquidated
☐ Disputed
Basis for the claim:  intercompany receivable
Is the claim subject to offset?
☐ No
☑ Yes

Objection:  No Proof of Claim Filed per Claims Register for Intercompany Receivable stated as "unknown amount" held by Debtor belonging to the 575 Objectors.[13]

**3.16** Nonpriority creditor's name and mailing address
deeproot Growth Runs Deep Fund LLC
P.O. Box 691610
San Antonio, TX 78269

Date or dates debt was incurred  _____
Last 4 digits of account number  __ __ __ __

As of the petition filing date, the claim is:     unknown
Check all that apply:
☐ Contingent
☐ Unliquidated
☐ Disputed
Basis for the claim:  intercompany receivable
Is the claim subject to offset?
☐ No
☑ Yes

Objection:  No Proof of Claim Filed per Claims Register for Intercompany Receivable held by Debtor belonging to dGRD Objectors.

**3.17** Nonpriority creditor's name and mailing address
deeproot Growth Runs Deep Fund LLC
P.O. Box 691610
San Antonio, TX 78269

Date or dates debt was incurred  _____
Last 4 digits of account number  __ __ __ __

As of the petition filing date, the claim is:     unknown
Check all that apply:
☐ Contingent
☐ Unliquidated
☐ Disputed
Basis for the claim:  interests in policies held by Debtor
Is the claim subject to offset?
☑ No
☐ Yes

---

[13] See *Exhibit 7* – Policy Services, Inc. Claims' Register

Objection:  No Proof of Claim filed per Claims Register and these relate to the dGRD

Objectors' interests in "policies held by Debtor", Policy Services.

Official Form 206G

**Schedule G: Executory Contracts and Unexpired Leases**                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1.    Does the debtor have any executory contracts or unexpired leases?

☑ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☐ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

**Summary of Assets and Liabilities for Non-Individuals**                    12/15

**Part 1:**  Summary of Assets

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

   1a. **Real Property:**

       Copy line 88 from *Schedule A/B*.................................................................... | $0.00 |

   1b. **Total personal property:**

       Copy line 91A from *Schedule A/B*................................................................. | $10,153,844.04 |

   1c. **Total of all property:**

       Copy line 92 from *Schedule A/B*.................................................................... | $10,153,844.04 |

   3b. **Total amount of claims of non-priority amount of unsecured claims:**

       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*........ | +  $4,754,240.91 |

Official Form 202

**Declaration Under Penalty of Perjury for Non-Individual Debtors**                         12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Declaration and signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☑ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☑ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☑ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☑ Schedule H: Codebtors (Official Form 206H)

☑ A Summary of Assets and Liabilities for Non-Individuals (Official Form 206A-Summary)

☐ Amended Schedule _____

☐ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   01/13/2022 _____                    X   /s/ Robert J. Mueller
              MM/ DD/ YYYY                                   Signature of individual signing on behalf of debtor

                                                       Robert J. Mueller
                                                       Printed name

                                                       Manager
                                                       Position or relationship to debtor

27.    The dGRD Fund Schedules and Statement of Affairs filed January 13, 2022 state in relevant parts as follows:[14]

10.   **Does the debtor have any accounts receivable?**
☐ No. Go to Part 4.
☑ Yes. Fill in the information below.

Objection:  There are no accounts receivable listed and the amount was 0.00, which is suspect and further investigation is necessary.

13.   **Does the debtor own any investments?**
☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

---

[14] See **Exhibit 12** – dGRD Debtors' Schedules and Statement of Affairs

**Part 11: All other assets**

70. Does the debtor own any other assets that have not yet been reported on this form?
   ☐ No. Go to Part 12.
   ☑ Yes. Fill in the information below.

75. Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims

75.1  interests in policies held by Policy Services, Inc.                                    (Unknown)

Nature of Claim
Amount Requested     (Unknown)

Objection:  it is clear dGRD has claims and causes of action for "[i]nterests in policies held by Policy Services, Inc. of an unknown amount, yet this is not reflected in the Sales Motion and it directly contradicts the averments in the Motion.

---

**3.3** Nonpriority creditor's name and mailing address          As of the petition filing date, the claim is:          $50,042,207.63
deeproot 575 Fund LLC                                            Check all that apply.
                                                                ☐ Contingent
P.O. Box 691610                                                 ☐ Unliquidated
San Antonio, TX 78269                                           ☐ Disputed
                                                                Basis for the claim:  investments
Date or dates debt was incurred                                Is the claim subject to offset?
Last 4 digits of account number  ___ ___ ___ ___              ☑ No
                                                                ☐ Yes

**3.4** Nonpriority creditor's name and mailing address          As of the petition filing date, the claim is:          unknown
deeproot Funds LLC                                              Check all that apply.
                                                                ☐ Contingent
P.O. Box 691610                                                 ☐ Unliquidated
San Antonio, TX 78269                                           ☐ Disputed
                                                                Basis for the claim:  intercompany receivable
Date or dates debt was incurred                                Is the claim subject to offset?
Last 4 digits of account number  ___ ___ ___ ___              ☐ No
                                                                ☑ Yes

**Part 2: Additional Page**

**3.6** Nonpriority creditor's name and mailing address          As of the petition filing date, the claim is:          unknown
Numerous Investors                                             Check all that apply.
                                                                ☐ Contingent
See exhibit labeled "Part 2, No. 3" for full list              ☐ Unliquidated
                                                                ☐ Disputed
                                                                Basis for the claim:
                                                                Is the claim subject to offset?
Date or dates debt was incurred                                ☑ No
Last 4 digits of account number  ___ ___ ___ ___              ☐ Yes

Note:  With respect to the 575 Fund which is a creditor to the dGRD Fund for $50,042,207.63, there appears that no Proof of Claim was filed protecting the 575 Funds investment claims to the dGRD Fund which does not purport to due diligence regarding these Debtor entities, nor properly support the Sale Motion.

---

**Part 4:   Total Amounts of the Priority and Nonpriority Unsecured Claims**

5.   Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a.  Total claims from Part 1 | 5a. | $0.00 |
| 5b.  Total claims from Part 2 | 5b. + | $50,042,207.63 |
| 5c.  Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $50,042,207.63 |

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1.   Does the debtor have any executory contracts or unexpired leases?

☑ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☐ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

**Part 2:   Summary of Liabilities**

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.............

| | $0.00 |
|---|---|

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. Total claim amounts of priority unsecured claims:
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.............................................................

| | $0.00 |
|---|---|

   3b. Total amount of claims of non-priority amount of unsecured claims:
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.....................

| + | $50,042,207.63 |
|---|---|

4. Total liabilities.......................................................................................................................................................
   Lines 2 + 3a + 3b

| | $50,042,207.63 |
|---|---|

26.   Books, records, and financial statements

26a.   List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1.  Charlotte Acker<br>Name<br><br>2313 Brittany Grace<br>Street<br><br>New Braunfels, TX 78130<br>City                State                ZIP Code | From _____  To _____ |

26b.   List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☑ None

OBJECTION:  Based upon the Sale Motion and Order, it does not appear that

any effort or use of subpeona power to request, receive, review, or otherwise access the accounting or bookkeeping documents of Charlotte Acker or the tax documents for Policy Services in order to determine the veracity of these Mueller disclosures prior to this Sale Motion especially related to the 575 Fund, the dGRD Fund or Policy Services.

➢ Objection is made to the Sale Motion and Order to the Extent that this has not occurred and/or that the review or audit of this information has not been made available to the Objectors.

➢ Objection is also made to the extent that the retrieval of these clearly relevant documents have not been produced or evaluated to determine the objectiveness of the Debtor and Trustee's "best judgment" which Objectors' believe is not the appropriate rule to apply to this Chapter 7 Sale Motion under current law.

---

31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?

☐ No
☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Policy Services, Inc. | EIN: 9 0 – 0 8 5 2 6 8 4 |

32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?

☑ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: _ _ – _ _ _ _ _ _ _ |

**Part 14:  Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____01/13/2022_____
MM/ DD/ YYYY

---

OBJECTION:  As Mueller has failed to appear at one of the Meeting of the Creditors, and then pled his Fifth Amendment Rights against self-incrimination during the other two creditors' meetings, as well as answering the SEC lawsuit by also pleading his Fifth Amendment Rights against self-incrimination[15], it is highly likely that any pre-petition and post-petition disclosures and financial schedules are going to be truthful and reliable. As such, based upon the fact that the post-petition disclosures and the SEC Complaint contradict the Sale Motion as to the ownership of these policies, the Objectors file this Objection based upon the fraudulent transactions and transfers which occurred prior to the filing of this petition and the filing of the SEC Complaint against Mueller and Defendants, including Deeproot entities and Relief Defendants based upon the fraud committed regarding the 575 Fund and the dGRD Fund which Funds are not going to be protected by the proposed Sale Motion.

28.     The 575 Fund Schedules and Statement of Affairs filed January 13, 2022 state in relevant parts as follows:[16]

10. **Does the debtor have any accounts receivable?**
☐ No. Go to Part 4.
☑ Yes. Fill in the information below.

Current value of debtor's interest

11. **Accounts Receivable**

11a. 90 days old or less: _____ face amount - _____ doubtful or uncollectible accounts = ...... → _____

11b. Over 90 days old: $0.00 face amount - $0.00 doubtful or uncollectible accounts = ...... → $0.00

---
[15] See *Exhibit 2* – Defendant Robert Mueller's Answer to SEC Complaint
[16] See *Exhibit 12* – dGRD Debtors' Schedules and Statement of Affairs

70. Does the debtor own any other assets that have not been reported on this form?

☐ No. Go to Part 12.
☑ Yes. Fill in the information below.

75. Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims

75.1 investments in deeproot Growth Runs Deep Fund, LLC          $50,042,207.63

Nature of Claim

Amount Requested     $50,042,207.63

78. Total of Part 11          $50,042,207.63
    Add lines 71 through 77. Copy the total to line 90.

90. All other assets. Copy line 78, Part 11.          +          $50,042,207.63

91. Total. Add lines 80 through 90 for each column......  91a.  $50,042,207.63  + 91b.  $0.00

Apparently, the 575 Fund has assets in the amount of $50,042,207.63, but then "made investments" in the amount of $50,042,207.63 in dGRD.

**3.4** Nonpriority creditor's name and mailing address
Numerous Investors

See Exhibit 1 for full list

Date or dates debt was incurred
Last 4 digits of account number  __ __ __ __

As of the petition filing date, the claim is:          unknown
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
Basis for the claim:
Is the claim subject to offset?
☑ No
☐ Yes

**3.6** Nonpriority creditor's name and mailing address
Policy Services, Inc.
P.O. Box 691610
San Antonio, TX 78269

Date or dates debt was incurred
Last 4 digits of account number  __ __ __ __

As of the petition filing date, the claim is:          unknown
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed
Basis for the claim:  intercompany payable
Is the claim subject to offset?
☐ No
☑ Yes

OBJECTION:  Policy Services did not timely file a Proof of Claim as a creditor to the unknown "intercompany payable" and therefore is no longer entitled to assert this claim. But, the amount of this "intercompany payable" needs to be determined prior to allowing a sale of assets belonging to the Funds for which all claims of the Objectors will be eliminated.  This is not a fair or equitable sale as proposed.

**Part 1:** Summary of Assets

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

1a. **Real Property:**
Copy line 88 from *Schedule A/B*............................................................................. | $0.00

1b. **Total personal property:**
Copy line 91A from *Schedule A/B*........................................................................... | $50,042,207.63

1c. **Total of all property:**
Copy line 92 from *Schedule A/B*............................................................................. | $50,042,207.63

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

3a. **Total claim amounts of priority unsecured claims:**
Copy the total claims from Part 1 from line 5a of *Schedule E/F*..................................... | $0.00

3b. **Total amount of claims of non-priority amount of unsecured claims:**
Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............... | + $0.00

4. **Total liabilities**...........................................................................................................
Lines 2 + 3a + 3b | $0.00

Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors
12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Declaration and signature**

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct.

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206A-Summary)

☐ *Amended Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ *Other document that requires a declaration* _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   01/13/2022
MM/ DD/ YYYY

X  /s/ Robert J. Mueller
Signature of individual signing on behalf of debtor

Robert J. Mueller
Printed name

Manager
Position or relationship to debtor

OBJECTION: As Mueller has failed to appear at one of the Meeting of the Creditors, and then plead his Fifth Amendment Rights against self-incrimination

during the other two creditors' meetings, as well as answering the SEC lawsuit also pleading his Fifth Amendment Rights against self-incrimination, it is highly likely that any pre-petition and post-petition disclosures and financial schedules are fraudulent and unreliable. The Sale Motion and Order does not reflect that any effort or use of subpeona power to receive, review, or otherwise determine the veracity of these Mueller disclosures through the IRS or through the bookkeeper/accountant Charlotte Acker have occurred prior to this Sale Motion especially related to the 575 Fund and/or the dGRD Fund which is another basis for Objectors' objections.

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1. Charlotte Acker<br>Name<br><br>2313 Brittany Grace<br>Street<br><br>New Braunfels, TX 78130<br>City          State          ZIP Code | From _____ To _____ |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| Policy Services, Inc. | EIN: 9 0 – 0 8 5 2 6 8 4 |

29.     Objection is further made as no proposal for cashing out the policies at face value for the benefit of the investors/creditors of the 575 Fund or the dGRD fund has been presented as an option.

30.     Objection is further made to Paragraph 7 of the Sale Motion, where the Trustee and Debtor falsely state that "[u]nfortunately for the creditors, each purchased an interest in a *life settlement* which is a security and does not evidence a direct

ownership interest in a <mark>life insurance policy".</mark> As to the Objectors, none of them purchased "life settlement" interests, as claimed. Instead, they purchased "Class B Shares" of their respective funds which are securities or investment contracts in the 575 Fund and the dGRD Fund.[17] Thus, the misrepresentation of the Objectors' claims to the Bankruptcy Court lacks evidence and is an incorrect basis for the Sale Motion.

31.    Further, the Trustee has failed to demonstrate to this Court that the sale of these policies for the proposed purchase price is in the best interests of the 575 Fund, the dGRD Fund, or Policy Services, or that the sale process itself was fair and adequate. This Court and all stakeholders also must understand all the relevant facts related to, among other matters, the proposed treatment of the actual Fund Owners of the Insurance Policies which was not addressed by the Debtor or Trustee in presenting the Sale Motion, nor did the Debtor or Trustee file the appropriate and timely proof of claims on behalf of Policy Services, the 575 Fund or the dGRD Fund to protect the Funds from overreaching by Policy Services into Fund assets that it has no right to sell.[18]

**The Sale is Not in the Best Interests of the Debtors' Estates and Should Be Denied.**

32.    This Court must determine whether the sale of the Insurance Policies and the Stalking Horse Agreement is in the best interests of the Debtors' estates. See <u>In re</u>

---

[17] See **Exhibit 3** – 2015 and 2019 575 Fund Application and Subscription Agreement at Section G; and **Exhibit 4** - 2015 and 2019 dGRD Fund Application and Subscription Agreement at Section G.

[18] The Objectors reserve the right to file a supplemental objection to the Sale Motion as more information becomes available to it. Further, there is evidence of mismanagement at deeproot Funds, LLC, Policy Services, LLC and all the Jointly administered entities and relief entities that must be investigated to determine its effect on the value of the insurance policies, assets and creditors of the various entities which has not been adequately analyzed at this time.

<u>Planned System, Inc.</u>, 82 B.R. 919, 923 (Bankr. S.D. Ohio 1988); <u>In re Borne Chemical</u>

<u>Co., 54 B.R. 126, 131</u> (Bankr. D.N.J. 1984); see also <u>In re WBQ P'ship v. Va. Dep't of</u>

<u>Medical Assistance Servs</u>. (<u>In re WBQ P'ship</u>), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)

(holding for a sale motion to be approved the debtor must prove "(1) a sound business

reason or emergency justifies a pre-confirmation sale; (2) the sale has been proposed in

good faith; (3) adequate and reasonable notice of the sale has been provided to interested

parties; and (4) the purchase price is fair and reasonable").

**The Sale Process Lacks Fairness and Adequacy and is Not in the Best Interests of the Estate**

33.     Now, Debtor and Trustee is to have this Court believe that it is in the best

interests of all DEBTOR ENTITIES to rush through a sale where the value of the acquired

entities has somehow managed to decline by approximately 90%.  This Court should not

put its stamp of approval on such an inadequatesale price, nor should this Court conclude,

given the previous offer for the Underwriting Companies, that accepting $298 million

without determining what other potential purchasers may be out there is in the best

interests of the Debtors' estates. It should be noted that it appears that no efforts were

made by Mueller or the Debtor entities pre-petition to sell the Insurance policies.

34.     The Federal Rules of Bankruptcy Procedure permit a debtor-in-possession to

sell property of the bankruptcy estate through either a public or private sale. Fed. R.

Bankr. P. 6004(f)(1). However, Courts generally favor "the public sale of property of the

estate as opposed to a private sale." <u>In re Planned System, Inc.</u>, 82 B.R. at 923. Private

sales should only be permitted where the debtor has demonstrated, on the record, that an

emergency exists to do so. See <u>In re Ancor Exploration Co.</u>, 30 B.R. 802, 808-09 (N.D. Okla. 1983) (considering bankruptcy court approval of a private sale of substantially all of the debtor's assets, the Court remanded the matter because the record was inadequate "to yield the specific findings required as a necessary predicate for approval of the sale," namely, "No emergency was presented").

35.    The Debtors are trying to push this sale through the Court too quickly and without proper disclosure against the interests of all stakeholders in these bankruptcy proceedings.

36.    Debtor and Trustee have provided inadequate detail as to why the Debtor will lose considerable value if the sale is not consummated immediately. It appears that this Court and the stakeholders are to take the assertion that there will be "significant value deterioration" largely on faith. This is simply inappropriate; rather, the issue should be examined carefully. This is especially so since, as shown, Debtor seeks to transfer substantially all its purported "assets" through this sale to the Stalking Horse Buyer which Debtor Policy Services has not proven ownership to.

37.    There is no emergency need at this time to sell the Insurance Policies by way of a private sale.

38.    This Court cannot be sure that the sale price for the Insurance Policies is fair (or that it is anywhere near market price) or that the process used to elicit the sale price from the Buyer was fair. Trustee and Debtor have produced no evidence that gives this Court any reason to believe that the Buyers are going to leave the scene if the sale is not

consummated by May 2, 2022. Fundamentally, the Debtors are liquidating Policy Services, but leaving nothing for the creditors and are liquidating assets that do not belong to Debtor, Policy Services.  Per the Sale Motion, no payment to creditors will be made after this sale.  Yet, the interests and opinions of creditors, should be paramount. Deference should be given to the wishes of the creditors, but in this case, there has been no deference provided to the creditors, especially the Objectors whose investments were used to purchase the insurance policies through the Funds which Objectors still own.

**Mismanagement and Fraud Committed by Mueller, deeproot, and Affiliated deeproot Entities.**

39.     At this time, there is abundant reason to believe that irregularities, including fraud and "ponzi scheme" behavior took place at deeproot and Policy Services, and other Debtor entities, all of which were solely managed and controlled by Mueller. Apparently, as neither the SEC, the Trustee, the Bankruptcy Court, nor the Creditors can get Mueller to answer any questions without pleading his Fifth Amendment right against self-incrimination, it is apparent that there has been questionable conduct involved in this matter.  These factors definitely played a role in the losses the Creditors/Objectors and investors who were targeted by deeproot and Mueller have suffered. The irregularities and fraud include the findings and facts set forth in the SEC complaint regarding the mishandling of the 575 Fund and the dGRD Fund.

## **CONCLUSION**

WHEREFORE, for all of the reasons set forth above, Objectors respectfully request that the Sale Motion and Order be denied and that the Court grant such further

relief as it deems just and proper.

Respectfully submitted,

THE JUREK LAW GROUP, PLLC.

By: */s/Lynne M. Jurek*
Lynne M. Jurek
Texas Bar No. 11059250
Federal Bar No. 15489
lmjurek@jureklaw.com
4309 Yoakum Blvd.
Houston, Texas 77006
Tel. (713)230-8233
Fax. (713) 230-8654

**ATTORNEY FOR OBJECTORS**


## Certificate of Service

I hereby certify that on the 4th day of April, 2022, I electronically filed a true and correct copy of the above foregoing Objections to Sale Motion and Order using the CM/ECF system, which will serve the document to the parties that are registered or otherwise entitled to receive electronic notices listed below in this case pursuant to the Electronic Filing Procedures in this District.

**Via Counsel CM/ECF:**
catherine.curtis@wickphillips.com
;jason.rudd@wickphillips.com
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

*Via CM/ECF:*
USTPRegion07.SN.ECF@usdoj.gov
United States Trustee - SA12
US Trustee's Office
615 E Houston, Suite 533
San Antonio, TX 78295-1539

*Via CM/ECF: rbattaglialaw@outlook.com*
Raymond W. Battaglia
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218

*Via CM/ECF: jpetree@mcslaw.com*
Jonathan Petree
McGuire, Craddock & Strother, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

*Via Counsel Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020
Debtor's Counsel

*Via CM/ECF: pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

*Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis
Jason M. Rudd
Wick Phillips Gould & Martin, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

*Via CM/ECF: jdunne@smfadlaw.com*
John C. Dunne
SMFAD Law
1001 McKinney Street #1100
Houston, TX 77002

*Via CM/ECF: bk-cmurphy@oag.texas.gov*
Texas Workforce Commission
c/o Christopher S. Murphy
Texas Attorney General's Office
PO Box 12548
Austin, TX 78711

*Via CM/ECF:* rpulman@pulmanlaw.com
Randall A. Pulman
2161 NW Military Highway
Suite 400
San Antonio, Texas 78213

*/s/ Lynne M. Jurek*
Lynne M. Jurek