**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| deeproot Capital Management, LLC, *et al.*,[1] | Case No. 21-51523 (MMP) |
| Debtors. | (Jointly Administered) |

**EXPEDITED MOTION TO QUASH BANKRUPTCY RULE 2004**
**EXAMINATION NOTICES WITH SUBPOENA DUCES TECUM**

Cycladic International, LLC, ("***Cycladic International***"), Cycladic, LLC ("***Cycladic***"), and Thomas N. Andrew ("***Andrew***" and together with Cycladic International and Cycladic, the "***Subpoena Respondents***") file this *Expedited Motion to Quash Bankruptcy Rule 2004 Examination Notices with Subpoena Duces Tecum* (this "***Motion***") seeking entry of an order (1) quashing certain examination notices that John Patrick Lowe, Chapter 7 Trustee (the "***Trustee***") issued to the Subpoena Respondents pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "***Rule 2004 Notices***"); (2) quashing certain subpoenas *duces tecum* the Trustee issued accompanying the Rule 2004 Notices (the "***Subpoenas***"); (3) granting protection in favor of the Subpoena Respondents in connection with the Trustee's Rule 2004 Notices and Subpoenas (collectively, the "***Discovery***"); and (4) granting the Subpoena Respondents related relief. The Subpoena Respondents respectfully show the Court the following:

---

[1] The administratively consolidated chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In re Policy Services, Inc.*, 21-51513 (2864), *In re Wizard Mode Media, LLC*, 21-51514 (3205), *In re deeproot Pinball LLC*, 21-51515 (0320), *In re deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In re deeproot 575 Fund, LLC*, 21-51517 (9404), *In re deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In re deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In re deeproot Tech LLC*, 21-51520 (9043), *In re deeproot Funds LLC*, 21-51521 (9404), *In re deeproot Studios LLC*, 21-51522 (6283), and *In re deeproot Capital Management, LLC*, 21-51523 (2638).

1

## I.     INTRODUCTION

1. Cycladic, but never Cycladic International, conducted certain pre-bankruptcy business transactions with the debtor Policy Services, Inc. ("***PSI***"). Mr. Andrew was the managing member of Cycladic and is presently the managing member of Cycladic International. Mr. Andrew holds or has held interests in other entities, including Dover Capital Strategies LLC ("***Dover Capital***"), Anemos Consulting, LLC ("***Anemos***"), and Thomas Nichols, LLC ("***Thomas Nichols***"), but the Trustee has not served Discovery on any of these third party entities to date. In any event, neither Anemos or Thomas Nichols transacted business with PSI or any of the other debtors in the above-captioned, jointly administered chapter 7 cases (collectively, the "***Debtors***").

2. As a general overview, Cycladic's business transactions with PSI involved Cycladic taking instructions from PSI to purchase life insurance policies on the open secondary market that fit within certain parameters that PSI would specify. Then Cycladic would resell the purchased policies to PSI. Cycladic also sold PSI policies that Cycladic held in inventory when such policies met the parameters that PSI was seeking out. In every respect, Cycladic's business dealings with PSI were at arms' length.

3. Because Cycladic transacted business with PSI, the U.S. Securities and Exchange Commission (the "***SEC***") previously served the Subpoena Respondents with subpoenas and took Mr. Andrew's deposition testimony in connection with the SEC's investigation of PSI and the other Debtors. The Trustee's Subpoenas seek all of the documents that the Subpoena Respondents previously provided to the SEC. The Subpoena Respondents generally have no objection providing these same documents to the Trustee, subject to entry of a protective order and removal of any privileged items.

2

4. The Trustee's Discovery, however, expands far beyond the scope of the documents the SEC sought and the Subpoena Respondents provided to the SEC. The Trustee's Discovery also expands far beyond the scope of Bankruptcy Rule 2004 in seeking documents evidencing transactions between the Subpoena Respondents and other third-parties that are not affiliated with any of the Debtors. The Subpoenas also seek incredibly broad categories of communications that are untethered by any link to certain subject matter, such as "[a]ny and all Communications by and between Thomas N. Andrew and [certain third parties]." Nor are the Discovery requests meaningfully limited by time—spanning a decade—another reason they are overly broad.[2] Further, the Discovery seeks financial data about Mr. Andrew's compensation received from third parties unaffiliated with the Debtors, as well as bank account documents and financial statements from the Subpoena Respondents and their affiliated third-parties. Bankruptcy Rule 2004 is a mechanism for the Trustee to examine the financial affairs of the Debtors—not unaffiliated third parties like the Subpoena Respondents that transacted business with the Debtors at arms' length.

5. For these reasons, the Subpoena Respondents seek to quash certain components of the Discovery, and for entry of a protective order limiting the scope of the Trustee's discovery solely to that permitted by Bankruptcy Rule 2004.

## II. RELEVANT BACKGROUND FACTS

6. The Debtors filed chapter 7 petitions for bankruptcy protection on December 9, 2021. *See generally* Dkt. No. 1.

7. Prior to the bankruptcy filings, the SEC had commenced with an investigation into the Debtors for potential violations of securities laws.

---

[2] Initially the Trustee's Discovery requests included no time limitation. Subsequently the Trustee agreed to limit the time period covered by the Requests from 2012 to the present.

3

8. In connection with the SEC's investigation, it previously served subpoenas on the Subpoena Respondents for the production of certain documents and the attendance at a deposition. The Subpoena Respondents complied with the SEC's subpoena and Mr. Andrew testified in his individual capacity and as representative of Cycladic and Cycladic International at a deposition that occurred on Mary 21, 2021.

9. The Trustee is in possession of the transcript of the SEC's deposition of Mr. Andrew. Based on information learned in the deposition transcript, on July 26, 2022 the Trustee filed his Rule 2004 Notice on the docket. *See* Dkt. No. 129. A true and correct copy of the Trustee's Rule 2004 Notice, which includes copies of the Subpoenas as exhibits, is attached as **Exhibit B** and all of the foregoing are incorporated by reference.[3] The Trustee later sent the underlying Subpoenas to the Subpoena Respondents.

10. Upon learning of the Discovery, the Subpoena Respondents retained counsel who reached an agreement with Trustee's counsel to extend the deadline for objections to the Discovery until August 23, 2022, and for the Bankruptcy Rule 2004 examination to tentatively occur on September 7, 2022.

### III. ARGUMENT AND AUTHORITIES

11. Bankruptcy Rule 2004 is a discovery device in bankruptcy cases that "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b). Whether, and the extent to which, a proposed Bankruptcy Rule 2004 examination should be allowed to proceed is a matter left to the Court's

---

[3] Each of the requests for production set forth in each of the Subpoenas addressed to the Subpoena Respondents are identical. Accordingly references made to specific requests for production in this Motion apply the same across all of the Subpoenas.

4

discretion. *Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 186 (N.D. Tex. 2005). While the scope of Rule 2004 may be broad, it is not limitless. *In re Buccaneer Res., LLC*, 2015 WL 8527424 at *6 (Bankr. S.D. Tex. Dec. 10, 2015) (citing *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) and *In re Texaco, Inc.,* 78 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)). The limitations of Federal Rules of Civil Procedures 26 and 45 apply to a Rule 2004 examination. *Id.*; *see also* FED. R. BANKR. P. 2004(c) and 9016. Application of this Bankruptcy Rule 2004 is further limited in business chapter 7 cases because "the debtor's right to a discharge," one of the permitted uses for an examination, *see* FED. R. BANKR. P. 2004(b), cannot be the Trustee's concern since businesses in chapter 7 are ineligible for discharge, *see* 11 U.S.C. § 727(a)(1).

12. The broad scope of Rule 2004 examinations does not defeat the principled requisites of relevance or reasonableness. *See Inc. v. Katz (In re Metiom, Inc.)*, 318 B.R. 263 (S.D.N.Y. 2004). Examinations should be denied when the costs outweigh the benefits to the examiner. *Buccaneer* at *6 (*citing In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998)). Relatedly, with respect to any subpoena, Federal Rule of Civil Procedure 45 (incorporated by Bankruptcy Rule 9016) requires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). A court has discretionary power to limit the scope of discovery, prevent fishing expeditions, and protect a party from undue burden or expense. *See In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 765-66 (Bankr. D. N.M. 2014); *see also In re Commercial Fin. Servs. Inc., et al.*, 247 B.R. 828 (Bankr. N.D. Ok. 2000).

13. Discovery requests pursuant to Bankruptcy Rule 2004 should be limited to matters involving the debtor. Requests about matters having no relationship to the debtor's

affairs or administration of the estate are improper. *See, e.g., Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362, 364 (S.D.N.Y. 1984); *In re Express One Int'l, Inc.*, 217 B.R. 215, 216 (Bankr. E.D. Tex. 1998); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991); *In re Fin. Corp. of Am.*, 119 B.R. 728, 733 (Bankr. C.D. Cal. 1990); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985). A party invoking Bankruptcy Rule 2004 may not "engage in potentially invasive and expensive Rule 2004 discovery based on nothing more than her own curiosity." *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 392 (Bankr. W.D. Pa. 2008).

      14.    Accordingly, the party seeking the discovery under Bankruptcy Rule 2004 has the burden of showing good cause for the discovery which it seeks. *See generally In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1987); *In re Eagle-Pitcher Indus., Inc.*, 169 B.R. at 134. Good cause generally requires a showing that the examination is "necessary to establish the claim of the party seeking the examination" or that the denial of the request "would cause the proposed examiner undue hardship or injustice." *In re Express One Int'l*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998). "Inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because they are inherently more intrusive and present a greater potential for abuse." *In re Countrywide Home Loans, Inc.*, 384 B.R. at 393. Furthermore, courts must guard against overreach by Bankruptcy Rule 2004 because it "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *See, e.g., In re Cont'l Forge Co.*, 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987).

A. **The Discovery Must be Quashed to the Extent it Seeks Items About Communications and Business Dealings Between Non-Debtor Third Parties and the Subpoena Respondents.**

15. As mentioned, many of the items the Trustee seeks in the Subpoenas pertain exclusively to, communications, business dealings, or transactions that do not include any of the Debtors. Accordingly, the Court should quash the following requests that seek items and information purely between the Subpoena Respondents and non-Debtor third parties:

- Request No. 11: "Any and all Communications relating to the purchase and sale of life insurance policies by, between, or among Cycladic, . . . Robert J. Mueller, or any Person."[4]

- Request No. 12: "Any and all Communications by and between Thomas N. Andrew and Robert J. Mueller *relating to Policy Services, Deeproot, Life Gift, or the purchase of life insurance policies by Policy Services*."[5]

- Request No. 13: "Any and all Communications by and between Thomas N. Andrew and Russell Hagen *relating to Robert Mueller, or Deeproot, or Policy Services, or Life Gift and its relationship or business dealings/transactions with Policy Services, or the purchase of life insurance policies by Policy Services*."[6]

- Request No. 14: "Any and all Communications by and between Thomas N. Andrew and Life Gift, or any officer, employee or agent of Life Gift, concerning Robert J. Mueller, Policy Services or Deeproot."

- Request No. 16: "Any and all Communications and Documents evidencing Transactions or contemplated Transactions by, between, or among Cycladic, . . . Life Gift and, or Estate Portfolio Management."[7]

---

[4] The Subpoena Respondents do not seek to quash Request No. 11 to the extent it seeks information about transactions soley between Cycladic and PSI.

[5] The bold and emphasized language reflects additional language the Trustee subsequently agreed to include as part of this request, but the Subpoena Respondents object to it even as revised to the extent it seeks information about non-Debtor third parties.

[6] The bold and emphasized language reflects additional language the Trustee subsequently agreed to include as part of this request, but the Subpoena Respondents object to it even as revised to the extent it seeks information about non-Debtor third parties.

[7] The Subpoena Respondents do not seek to quash Request No. 16 to the extent it seeks information about transactions solely between Cycladic and PSI.

7

- Request No. 18: "Any and all Documents evidencing distributions made by Cycladic to Thomas Nicholas LLC, or any other entity or person during calendar years 2015, 2016, 2017, 2018, 2019 and 2020."

- Request No. 19: "Any and all Documents evidencing distributions made by Thomas Nicholas LLC to Thomas N. Andrew or any other person during calendar years 2016, 2017, 2018, 2019 and 2020."

- Request No. 20: "Any and all Documents evidencing compensation or distributions of any kind made by Anemos Consulting, Inc. to Thomas N. Andrew or any other person during calendar years 2016, 2017, 2018, 2019 and 2020."

*E.g.*, Ex. B at pp. 15-16.

16. The Subpoena Respondents further seek an order quashing the Trustee's Request Nos. 4, 8-10, 15, and 21-22 to the extent these requests seek communications that occurred between any of the Subpoena Respondents and any non-Debtor third-parties. *See id.*

17. The Court should quash each of the above-identified requests because Bankruptcy Rule 2004 "must be read in light of the general restriction of inquiry to the financial affairs of the debtor." *In re Johns-Manville Corp.*, 42 B.R. at 365. For this reason, Bankruptcy Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *In re Cont'l Forge Co.*, 73 B.R. at 1007. For each of the above-identified requests, the Subpoena Respondents' right of privacy in their business transactions and/or communications with third parties—especially those involving or discussing proprietary policy valuations or transactions—far exceed any interest the Trustee might have about the Subpoena Respondents' dealings and communications with parties unrelated to the Debtors. *Cf. id.* In addition, the Trustee's requests into business transactions and dealings with non-Debtor third parties extends into territory beyond this Court's jurisdiction and it is axiomatic that "the [Rule 2004] examination cannot extend to dealings, transactions or issues over which the court lacks

8

jurisdiction." *Travis v. United States*, 123 F.2d 268, 271 (10th Cir. 1941) (interpreting statutory predecessor to Rule 2004).

18. The Court should also quash the Discovery to the extent it seeks testimony about communications and dealings between the Subpoena Respondents and non-debtor third parties because "[e]xamination of a witness as to matters having no relationship to the bankrupt's affairs or the administration of his estate, . . . is improper." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984).

**B. The Discovery Must be Quashed to the Extent it Seeks Items and Information Belonging to Third Parties that have not Been Served with Subpoenas.**

19. In a related vein, the Trustee's Discovery also seeks items from other third parties—Dover Capital and Anemos—that are not recipients of the Subpoenas themselves and are separate entities than Cycladic or Cycladic International. In other words, the Trustee seeks to use subpoena powers to obtain documents specifically from third parties by using the Subpoenas addressed to the Subpoena Recipients instead of these third parties. Accordingly, the Court should quash the following requests that seek items and information from third parties without the Trustee issuing subpoenas to these third parties:

- Request No. 2: "Copies of any and all Life Insurance Policy Purchase and Sale Agreements, by and between Policy Services and Dover Capital Strategies LLC.

- Request No. 6: "Any and all Documents evidencing the amounts Dover Capital Strategies LLC paid to purchase life insurance policies that were ultimately sold by Dover Capital Strategies LLC to Policy Services."

- Request No. 7: "Any and all Documents evidencing the amounts Anemos Consulting, Inc. paid to purchase life insurance policies that were ultimately sold by Anemos Consulting, Inc. to Policy Services[.]"

- Request No. 9: "Any and all Documents and Communications relating to the purchase and sale of life insurance policies or life settlements by and between Dover Capital Strategies LLC and Policy Services."

128781102v.2

- Request No. 10: "Any and all Documents and Communications relating to the purchase and sale of life insurance policies or life settlements by and between Anemos Consulting, Inc. and Policy Services[.]"

- Request No. 21: "Any and all Documents and Communications relating to any and all Christiana Bank & Trust Company accounts owned, held, or in the name of Cycladic or Dover Capital Strategies LLC, through which funds for the purchase of life insurance policies by Policy Services flowed, including, but not limited to, account statements, notices of deposits, notices of wire transfers, or advice of payments made to such account(s) by Policy Services for the benefit of Cycladic or Dover Capital Strategies LLC."

*E.g.*, Ex. B at pp. 15-16.

21. If the Trustee intends to obtain discovery concerning purported transactions between either Dover Capital or Anemos and PSI or any of the Debtors, then the Trustee must seek this discovery from Dover Capital or Anemos instead of the Subpoena Recipients. For this Court to rule otherwise, would eviscerate fundamental notions of corporate separateness. *E.g.*, *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (recognizing "respect for corporate distinctions" is a "bedrock principal" of American corporate law); *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983) (recognizing "Texas courts are loathe to merge the separate legal identities of parent and subsidiary").

22. Nor should the Court permit the Trustee to evade rules of corporate separateness by directly serving an individual—here Mr. Andrew—in an effort to seek records and information available to the witness only in his capacity as a member or interest holder in Dover Capital or Anemos. "An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets," including its business records. *Dole Food Co. v. Patrickson*, 538

U.S. at 475 (citation omitted). On the related topic of seeking corporate documents from an officer or an employee rather than the corporation itself, courts have recognized that

> [A corporation's] records are usually available to others within the entity and may not be treated as the private confidential papers of any one officer or employee. The officer creates or handles the records in a representative capacity, not on his own behalf. ***The records***, . . . ***do not belong to him but to the organization***.

*Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 559 (S.D.N.Y. 1994) (quoting *In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983*, 722 F.2d 981, 984 (2d Cir. 1983) (emphasis added). Accordingly, Mr. Andrew having a current or former interests in multiple companies is not justification for the Trustee's attempted disregard of corporate separateness because "[p]roof of an identity of shareholders or of corporate directors and officers, or of domination by the parent of its subsidiary's affairs, will not justify treatment of the two [businesses] as one business unit." *Miles*, 703 F.2d at 195.

23. Consequently, to the extent that the Trustee seeks information from either Dover Capital or Anemos, the Trustee must properly issue and serve subpoenas on those entities.[8] The Court should quash the discovery to the extent it seeks items and information belonging to either Dover Capital or Anemos from any of the Subpoena Respondents.

**C. The Court Should Also Quash the Trustee's Overly Broad Discovery.**

24. Many of the Trustee's requests in the Discovery are broad and without limitation to any scope or particular subject matter. The excessiveness of these requests fall far beyond the Bankruptcy Rule 2004(b) limitations focusing solely on "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P.

---

[8] The Subpoena Respondents also note that the Trustee's current Discovery addressing Dover Capital and Anemos transactions and communications seeks information about the Debtors, and PSI in particular, that is already available to the Trustee.

2004(b). No such limitation is reflected in the following of the Trustee's requests, which all must be quashed:

- Request No. 11: "Any and all Communications relating to the purchase and sale of life insurance policies by, between, or among Cycladic, Policy Services, Robert J. Mueller, or any Person."

- Request No. 12: "Any and all Communications by and between Thomas N. Andrew and Robert J. Mueller *relating to Policy Services, Deeproot, Life Gift, or the purchase of life insurance policies by Policy Services*."[9]

- Request No. 13: "Any and all Communications by and between Thomas N. Andrew and Russell Hagen *relating to Robert Mueller, or Deeproot, or Policy Services, or Life Gift and its relationship or business dealings/transactions with Policy Services, or the purchase of life insurance policies by Policy Services*."[10]

- Request No. 14: "Any and all Communications by and between Thomas N. Andrew and Life Gift, or any officer, employee or agent of Life Gift, concerning Robert J. Mueller, Policy Services or Deeproot."

- Request No. 15: "Any and all Communications and Documents relating to Deeproot, Policy Services, or Robert J. Mueller."

- Request No. 17: "All financial statements, . . . related to any transaction between Cycladic and Policy Services ("Financial Records"), and including all Documents and records from which the information contained in such Financial Records was derived."[11]

- Request No. 21: "Any and all Documents and Communications relating to any and all Christiana Bank & Trust Company accounts owned, held, or in the name of Cycladic or Dover Capital Strategies LLC, through which funds for the purchase of life insurance policies by Policy Services flowed, including, but not limited to, account statements, notices of deposits, notices of wire transfers, or advice of payments made to such account(s) by Policy Services for the benefit of Cycladic or Dover Capital Strategies LLC."

---

[9] The bold and emphasized language reflects additional language the Trustee subsequently agreed to include as part of this request, but the Subpoena Respondents object to this request on the basis of being overbroad even as revised.

[10] The bold and emphasized language reflects additional language the Trustee subsequently agreed to include as part of this request, but the Subpoena Respondents object to this request on the basis of being overbroad even as revised.

[11] The Trustee's original Request No. 17 also sought "balance sheets, profit and loss statements, and income statements," as part of the "Financial Records" defined in this request. The Trustee has since agreed to limit this request solely to financial statements, but the Subpoena Respondents nonetheless object due to the breadth of the second clause.

- Request No. 22: "Any and all Documents and Communications relating to any and all Bank of Utah accounts owned, held, or in the name of Cycladic, through which funds for the purchase of life insurance policies by Policy Services flowed, including, but not limited to, account statements, notices of deposits, notices of wire transfers, or advice of payments made to such account(s) by Policy Services for the benefit of Cycladic."

*E.g.*, Ex. B at pp. 15-16.

25. As noted, Federal Rule of Civil Procedure 45 (incorporated by Bankruptcy Rule 9016) requires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Each of the aforementioned requests in the Trustee's Subpoenas place an undue burden and expense on the Subpoena Respondents because they call for collection and turnover of a broad array of documents and communications without specifying the nature of information being sought. While several of these requests make vague passing references to communications "relating to" or "concerning" another person or entity, including PSI and its insider, the requests still fail to specify what about those communications renders them of interest to the Trustee.

26. Without more descriptive terms or limitations on scope and subject matter, the Subpoena Respondents are left guessing as to what items might be responsive to the Trustee's requests. On the same token, the overbreadth of the Trustee's requests places the burden on the Subpoena Respondents to search for and gather broad swaths of communications with specific persons, spanning a decade, and no matter how remotely connected the communications might be to the few categories in Bankruptcy Rule 2004(b) that are subject to permissible discovery.

27. Worse, Request No. 17 attempts to have the Subpoena Respondents turn over all of their "financial statements" under the guise of a passing reference of being "related to" any transaction with PSI, while the second clause asks for basically all documents that the Subpoena Respondents' financial statements may be based upon—no matter how attenuated to PSI. In

similarly overly-invasive fashion, Request Nos. 21 and 22 seek to obtain **all** of the Subpoena Respondents' banking records, along with any "Communications" that may be "relating to" these banking records, for an indefinite period of time based on the assertion that funds from PSI "flowed" through these bank accounts. *See* Ex. B at p. 16. In essence, the Trustee is staking the position that transacting business at any point in history with an entity that later files chapter 7 bankruptcy subjects the non-debtor party to producing **all** bank account statements and related banking information upon a trustee's request.

28. The Trustee may not "engage in potentially invasive and expensive Rule 2004 discovery based on nothing more than [his] own curiosity." *In re Countrywide Home Loans, Inc.*, 384 B.R. at 392. Bankruptcy Rule 2004(b) places limits as to the scope of information that the Trustee may seek and Federal Rule of Civil Procedure 45 requires the Trustee to take reasonable steps to avoid imposing costs and burden on the Subpoena Respondents. That the breadth of the Trustee's requests might lead to discovery of relevant information is insufficient justification because "[i]n evaluating a request to conduct a Rule 2004 examination, the court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.'" *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. at 712)).

29. Here, the over breadth and lack of specificity of Request Nos. 11-15 and the over breadth and invasiveness of Request Nos. 17 and 21-22 violate both Bankruptcy Rule 2004(b) and Federal Rule of Civil Procedure 45(d)(1). Therefore those requests must be quashed as to the Subpoenas and as possible topics at any Bankruptcy Rule 2004 examination.

## IV. RESERVATION OF RIGHTS

30. Nothing in this Response is intended to be, or should be construed as, a waiver by the Subpoena Respondents of any of its rights under the Bankruptcy Code, Bankruptcy Rules, Local Rules, Federal Rules of Civil Procedure, or applicable law. The Subpoena Respondents hereby reserve the right to further amend, modify, or supplement this Motion at any time, especially to the extent the Trustee introduces additional evidence or later cites any legal authorities in furtherance of any opposition to this Motion. The Subpoena Respondents reserve the right to include and introduce additional evidence as well as further legal arguments and authorities as part of any subsequent legal proceedings pertaining to this Motion or the Trustee's Discovery. The Subpoena Respondents reserve the right to seek costs and attorneys' fees in connection with any discovery sought by the Trustee or any Court orders related thereto. Finally, the Subpoena Respondents also reserve all their rights as a party in interest in these bankruptcy cases, including in connection with any proof of claim or administrative claim they have filed or may file in these bankruptcy cases.

## V. CONCLUSION

WHEREFORE, the Subpoena Respondents respectfully request that this Court enter an order, (i) granting this Motion; (ii) quashing the Trustee's Discovery as requested herein along with any related testimony that may be subject to a Rule 2004 examination; and (iii) granting the Subpoena Respondents such other and further relief as this Court deems just and appropriate under the circumstances.

**DATED** August 24, 2022.

Respectfully Submitted,

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk (Texas Bar No. 24087770)
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
Telephone: (512) 305-4700
Facsimile: (512) 305-4800
stephen.humeniuk@lockelord.com

Thomas J. Cunningham (*pro hac vice* forthcoming)
LOCKE LORD LLP
777 South Flagler Drive – East Tower Suite 215
West Palm Beach, FL 33401
561-820-0201
tcunningham@lockelord.com

Michael B. Kind (*pro hac vice* forthcoming)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 443-0700
Facsimile: (855) 595-1192
michael.kind@lockelord.com

***Counsel for Cycladic International, LLC; Cycladic, LLC; and Thomas N. Andrew***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 24, 2022, true and correct copies of the foregoing were forwarded to all parties receiving electronic notification in this case from the Court's electronic case filing (ECF) system, including the parties identified immediately below:

*Via Counsel Via CM/ECF:*
catherinecurtis@wickphillips.com;
jason.rudd@wickphillips.com

Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

*Via Counsel Via CM/ECF:*
catherinecurtis@wickphillips.com;
jason.rudd@wickphillips.com
Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

*Via CM/ECF:* pat.lowe.law@gmail.com
John Patrick Lowe
Chapter 7 Trustee
2402 East Main Street
Uvalde, TX 78801

*Via CM/ECF:* rpulman@pulmanlaw.com
Randall A. Pulman
Pulman Cappuccio & Pullen, LLP
2161 NW Military Hwy., Suite 400
San Antonio, TX 78213

*Via CM/ECF:*
catherine.curtis@wickphillips.com;
jason.rudd@wickphillips.com

*Via CM/ECF:*
USTPRegion07.SN.ECF@usdoj.gov
*Aubrey.thomas@usdoj.gov*
United States Trustee – SA12
US Trustee's Office (Aubrey Thomas)
615 E. Houston, Suite 533
San Antonio, TX 78295-1539

*Via CM/ECF:* don.stecker@lgbs.com
Don Stecker Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

*Via CM/ECF:* rbattaglialaw@outlook.com
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

*Via CM/ECF:* jpetree@mcslaw.com
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

*Via CM/ECF:* jdunne@smfadlaw.com
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

*Via CM/ECF:* bk-cmurphy@oag.texas.gov
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

*Via CM/ECF:* pautry@branscomblaw.com
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

*Via CM/ECF:* lmjurek@jureklaw.com
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX 77006

*/s/ Stephen J. Humeniuk*
Stephen J. Humeniuk