IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| deeproot Capital Management, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

## TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH THE MB HALE OHANA REVOCABLE TRUST, JEFFREY L. MUELLER, AND BELINDA B. BREEN

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.**

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a **"Bankruptcy Estate"** and collectively, the **"Bankruptcy Estates"**.

John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") in the above-styled jointly administered bankruptcy case, by and through his counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Motion to Approve Compromise and Settlement Under Bankruptcy Rule 9019 with MB Hale Ohana Revocable Trust, Jeffrey L. Mueller, and Belinda B. Breen* (the "**Motion**"), and in support respectfully shows the Court as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.      The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II.    <u>PROCEDURAL HISTORY</u>

3.      On December 9, 2021, (the "**Petition Date**"), each of the Debtors filed their respective voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").    The cases were ordered to be jointly administered under the lead case In re: deeproot Capital Management, LLC, 21-51523.

4.      On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

5.      On or about August 20, 2021, the United States Securities and Exchange Commission ("**SEC**") initiated a civil action in the United States District Court for the Western District of Texas (the "**District Court**") pending under Case No. 5:21-cv-785 (the "**SEC Civil Action**"). The SEC Civil Action was brought against Robert J. Mueller, deeproot Funds, LLC, and Policy Services, Inc., and names the Trust Parties as Relief Defendants, alleging that Robert J.

Mueller transferred $330,000.00 of investor funds from Policy Services, Inc. to or for the benefit of the Trust.

6.      On or about September 23, 2021, the District Court entered an Order Freezing Certain Assets, Ordering an Accounting, and Preliminary Injunction ("**Asset Freeze Order**"), freezing funds in the Trust's First Hawaiian Bank account (the "**Ohana Trust Account**").

7.      On or about January 14, 2022, the District Court entered an Order Modifying Asset Freeze ("**Modified Freeze Order**") in the SEC Civil Action, modifying the Asset Freeze Order to permit the Trustee to pursue chapter 5 avoidance claims against third parties for the benefit of the Debtors' bankruptcy estates.

8.      The Trustee, the MB Hale Ohana Revocable Trust (the "**Trust**"), Jeffrey L. Mueller, individually and as co-trustee of the Trust, and Belinda B. Breen, individually and as co-trustee of the Trust (together, the "**Trust Parties**") have agreed to a compromise and settlement of the Trustee's claims.

9.  Attached hereto as **Exhibit A** is the proposed order on the Motion.[2]

10.  Attached hereto as **Exhibit B** is the executed Settlement Agreement.

### III.    <u>FACTUAL BACKGROUND</u>

11.      The Trust was formed on or about November 5, 2016. Jeffrey L. Mueller, Belinda B. Breen and Robert J. Mueller all serve as co-trustees of the Trust. **Exhibit C**. Robert Mueller is the sole owner, director, and officer of Policy Services, Inc. Jeffrey Mueller is his Father and Belinda Breen is married to Jeffrey Mueller and is the stepmother of Robert Mueller.

---

[2] All of the Exhibits to this Motion are being filed with the Court. In order to reduce the copying and postage expense of serving this Motion, copies of the Exhibits are not being served on all of the parties in interest identified in the mailing list. A party in interest who requires copies of the Exhibits is directed to please contact MaryAnn Villa, Legal Assistant, Pulman Cappuccio & Pullen, LLP, Tel: (210) 222-9494 Ext. 121, Email: mvilla@pulmanlaw.com.

12.     On or about November 15, 2016, Policy Services, Inc. transferred $135,000.00 to the Trust Account. **Exhibit D**. The money was used toward the purchase of a condominium located at 4330 Kauai Beach Drive, D-10, Lihue, HI 96766. **Exhibit E**.

13.     On or about August 10, 2018, Policy Services, Inc. transferred $135,000.00 to the Trust's bank account at IBERIA BANK. **Exhibit F**. The funds were used to fund the down payment for the purchase of a condominium located at 2611 Kiahuna Plantation Dr., 7-E, Koloa, HI 96756. **Exhibit G**. The 2611 Kiahuna Plantation Dr. condo was purchased as a retirement home for Jeffrey L. Mueller and Belinda Breen. **Exhibit H**.

14.     On or about May 7, 2019, Robert J. Mueller executed a gift letter documenting the $135,000.00 gift to Jeffrey L. Mueller and Belinda B. Breen "to be applied toward the purchase of" the Kiahuna condo. **Exhibit I**. Robert J. Mueller signed the gift letter as the "Donor," but the money came from a Wells Fargo account ending in -8487, which belongs to Policy Services, Inc. *Id.*; *see also* SEC Civil Action, Doc. No. 7 at p. 3.

15.     On or about May 20, 2021, Jeffrey L. Mueller and Belinda B. Breen, on behalf of the Trust, sold the 4330 Kauai Beach Condo for $526,044.00, with $495,860.57 paid to sellers. *See* **Exhibit J**. Handwritten notes on the Final Seller's Statement indicate that $269,000.00 of the sales proceeds went to Robert J. Mueller and $226,860.00 to Jeffrey L. Mueller and Belinda B. Breen. *Id.* Funds in the Trust bank account are subject to the Asset Freeze Order in the SEC Civil Action.

16.     Jeffrey L. Mueller and Belinda B. Breen sold the Kiahuna Condo in November 2021 for $1.65 million. *See* **Exhibit K**. Per the Seller's Statement, $876,659.66 was paid to sellers. *Id.* Jeffrey Mueller and Belinda Breen have set aside $135,000 of these funds into a segregated bank account to repay the Policy Services estate.

17.     In connection with the discussions between the Trustee and the Trust Parties, a Settlement Agreement was prepared and executed by the parties. **Exhibit B**.

## IV.     PROPOSED SETTLEMENT

18.     The Parties have agreed to settle the dispute without further litigation pursuant to the following terms. The Trust Parties agree to pay a total of $300,000.00 (the "**Settlement Amount**") to Trustee in exchange for release of the Trustee's claims against the Trust Parties, excluding Robert Mueller. Immediately following execution of this Settlement Agreement by the Settling Parties, the Trust Parties shall pay Trustee $146,075.00 via wire transfer from the segregated account and other sources. Within 60 days of Bankruptcy Court approval of this Settlement Agreement, the remaining $153,925.00 of the Settlement Amount subject to the District Court Freeze Orders shall be released with the direction that those proceeds shall be paid to the Trustee.

19.     After the Settlement Amount has been received by the Trustee and this Court has approved the Settlement Agreement as requested herein, the District Court shall dismiss the Trust Parties from the SEC Civil Action with prejudice.

20.     The settlement will be effective only after the Trustee has received the Settlement Amount and the settlement has been approved by the Bankruptcy Court and the District Court has dismissed the Trust Parties from SEC Civil Action with prejudice.

21.     The Settlement Agreement is void if the Settlement Agreement is not approved by the bankruptcy court, or if the District Court does not order the dismissal of the Trust Parties from the SEC Civil Action with prejudice. If the District Court denies the Trust Parties' request for release of Trust account funds subject to the Freeze Orders, the Settlement Agreement is voidable at the option of the Trust Parties exercisable within ten days of the of denial by the District Court.

Additionally, if the Effective Date does not occur within 90 days of execution of this Settlement Agreement, the Settlement Agreement is voidable at the option of the Trustee. In the event the Settlement Agreement becomes null and void for any of the reasons outlined herein, the Trustee will return any Settlement Amount received by the Trustee to the Trust Parties within 10 days of the event that voids this Settlement Agreement.

22.     The Trust Parties agree to toll the statute of limitation until such a time as the settlement becomes effective or is voided.

## V.     REQUESTED RELIEF

23.     Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the discretion of the bankruptcy court. *In re Aweco, Inc.*, 725 F.2d 293 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicates and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

24.     According to the Fifth Circuit, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). This standard seeks to balance the risks and benefits

associated with pursuing a potential claim against the costs associated with the proposed settlement.

**Probability of Success with Due Consideration for Uncertainties in Law and Fact**

25.     The Trustee is confident that he would ultimately prevail in his claims against the Trust Parties; however, as with all litigation, there is never any guaranty of success, and the Trust Parties dispute the Trustee's claims and are prepared to vigorously defend against them. Here, the Trust Parties have agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue an adversary proceeding. In light of this, and the desire to reduce administrative expenses associated with litigation to increase the amount paid to creditors, the Trustee believes that the proposed settlement represents a fair and reasonable settlement given the facts of the case and the inherent uncertainties associated with trial and continued litigation.

**Complexity, Duration and Expense of Continued Litigation**

26.     Although the claims at issue are not complex, an adversary would entail the Estate incurring additional administrative expenses of at least $50,000.00 of estimated attorney's fees. Federal Rule of Bankruptcy Procedure 7001(1) provides that an adversary proceeding must be filed to recover money for the benefit of the Estate. FED. R. BANKR. P. 7001(1) ("[t]he following are adversary proceedings…a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 544(b) or § 725 of the Code, Rule 2017, or Rule 6002.").

27.     Jeffrey L. Mueller, Belinda B. Breen, and Robert J. Mueller are all co-trustees of the Trust. **Exhibit C**. The Trust is governed by applicable Texas state law. *Id.* at 14. Under the Texas Property Code, "[c]otrustees may act by majority decision." TEX. PROP. CODE § 113.085.

As such, the co-trustees have authority to enter into the Settlement Agreement with the Trustee. The Settlement Agreement provides for the transfer of the jointly administered Estate's interest in Policy Services, Inc.'s property; and assures recovery to unsecured creditors through a cash payment to the jointly administered Estate without the need for litigation. The settlement was reached before extensive discovery, without the need to incur additional costs for litigating a lawsuit, closing discovery, depositions, trials and appeals. Given the face value of the claims, the amount of the settlement proceeds, and the costs associated with potential litigation, Trustee believes it is in the best interests of the Estate to enter into the Settlement Agreement.

**Wisdom of the Compromise**

28.     Whether a settlement is a product of arm's length negotiation is a factor bearing on the wisdom of a proposed compromise. *Id.* at 918. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate. *Id.* at 917.

29.     Here, the proposed Settlement Agreement at issue here is the result of extensive arm's length negotiations between the parties and reflects a fair compromise of the claims involved. The Trust Parties have been represented by counsel throughout this case, as has the Trustee, who conferred with the Trust Parties' counsel and considered this compromise after conferring extensively with his own attorneys. Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Estate and its creditors and should therefore be approved by the Court.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement with the Trust Parties as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF deeproot CAPITAL MANAGEMENT, LLC, ET AL.**

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 8th day of September 2022, a true and correct copy of the foregoing document has been furnished via Electronic Noticing to all parties receiving notice by CM/ECF, as set forth below, and via US First Class Mail to the parties on the attached Limited Service List.

**_Via Counsel CM/ECF:_**
_catherine.curtis@wickphillips.com_
_;jason.rudd@wickphillips.com_
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

**_Via Counsel Via CM/ECF:_**
_catherine.curtis@wickphillips.com;_
_jason.rudd@wickphillips.com_
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

**_Via CM/ECF: pat.lowe.law@gmail.com_**
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

**_Via CM/ECF:_**
_catherine.curtis@wickphillips.com;_
_jason.rudd@wickphillips.com_
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

**_Via CM/ECF:_**
_USTPRegion07.SN.ECF@usdoj.gov_
_Aubrey.thomas@usdoj.gov_
United States Trustee - SA12
US TRUSTEE'S OFFICE (Aubrey Thomas)
615 E Houston, Suite 533
San Antonio, TX 78295-1539

**_Via CM/ECF: don.stecker@lgbs.com_**
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

**_Via CM/ECF: rbattaglialaw@outlook.com_**
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

**_Via CM/ECF: jpetree@mcslaw.com_**
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

**_Via CM/ECF: jdunne@smfadlaw.com_**
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

**_Via CM/ECF: bk-cmurphy@oag.texas.gov_**
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

{00584793;2}

***Via CM/ECF: pautry@branscomblaw.com***
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

***Via CM/ECF: lmjurek@jureklaw.com***
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX  77006

And was served via email to the following party-in-interest:

***Via email: esnyder@casnlaw.com***
Edward C. Snyder
Castillo Snyder PC
700 N. St. Mary's Street Suite 405
San Antonio, TX 78205


                                                    */s/  Randall A. Pulman*_____
                                                    Randall A. Pulman

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT
UNDER BANKRUPTCY RULE 9019 WITH THE MB HALE OHANA REVOCABLE TRUST,
JEFFREY L. MUELLER, AND BELINDA B. BREEN

On this date came on to be considered the *Trustee's Motion to Approve Compromise and*

*Settlement Under Bankruptcy Rule 9019 with the MB Hale Ohana Revocable Trust, Jeffrey L.*

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth *5* Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" and collectively, the "**Bankruptcy Estates**".

*Mueller, and Belinda B. Breen* (the "Motion").[2]  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) the relief requested in the Motion is in the best interests of the Debtor, its estate, and the creditors; (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested.

**IT IS THEREFORE ORDERED** that the Settlement Agreement incorporated by reference herein and attached hereto as **Exhibit 1**, and the Motion are, in all things, **APPROVED**.

**IT IS FURTHER ORDERED** that Trustee and the Trust Parties are hereby authorized and directed to take any and all actions necessary to consummate the Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS FURTHER ORDERED** that in the event the Settlement Agreement is voided by the Trustee or the or the Trust Parties, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

# # #

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

<u>Submitted by:</u>
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**ATTORNEYS FOR JOHN PATRICK LOWE,
CHAPTER 7 TRUSTEE FOR THE JOINTLY
ADMINISTERED BANKRUPTCY ESTATE OF
DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

# EXHIBIT B

## SETTLEMENT AGREEMENT



September 6,

This settlement agreement (the "Settlement Agreement") is entered into as of ~~August~~ __, 2022 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, the MB Hale Ohana Revocable Trust (the "Trust"), co-trustee Jeffrey L. Mueller ("J. Mueller"), and co-trustee Belinda Breen ("B. Breen" and, collectively with J. Mueller and the Trust, the "Trust Parties" and, collectively with Trustee, the "Settling Parties").

### RECITALS

A.      On or about November 5, 2016, J. Mueller, B. Breen, and Robert J. Mueller ("R. Mueller") entered into a Trust Agreement, forming the Trust. J. Mueller, B. Breen, and R. Mueller all serve as co-trustees of the Trust.

B.      The Trust has a bank account at First Hawaiian Bank ending in -6777 (the "First Hawaiian Trust Account"). The Trust Parties also have a separate bank account at Chase Bank ending in 1305, (the "Trust Parties Account") holding segregated funds from the sale of 2611 Kiahuna Plantation Dr., Apt. 7E, Koloa, Hawaii as well as monies in a personal account.

C.      On August 20, 2021, the SEC initiated a civil action in the United States District Court for the Western District of Texas ("District Court"), Case No. 5:21-cv-785 (the "SEC Civil Action"), alleging violations of federal securities laws against Robert J. Mueller, deeproot Funds, LLC, and Policy Services, Inc. The SEC Civil Action also names the Trust Parties as Relief Defendants for the claims against Policy Services, Inc., alleging that Robert J. Mueller transferred $330,000.00 of investor funds from Policy Services, Inc. to or for the benefit of the Trust, which were used to purchase apartments and other real property in Hawaii (the "Trust Transfers").

D.      On September 23, 2021, the District Court entered an Order Freezing Certain Assets, Ordering an Accounting, and Preliminary Injunction ("Asset Freeze Order") in the SEC Civil Action, freezing funds in the First Hawaiian Trust Account.

E.      On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

F.      On or about January 14, 2022, the District Court entered an Order Modifying Asset Freeze ("Modified Freeze Order" and collectively with the Asset Freeze Order, the "Freeze Orders") in the SEC Civil Action, modifying the Asset Freeze Order to permit Trustee to pursue chapter 5 avoidance claims against third parties for the benefit of the Debtors' bankruptcy estates.

{00589912;1}

G.      On May 9, 2022, the Trustee filed his Notice of Intention to Take Rule 2004 Examination with Subpoena Duces Tecum, noticing the 2004 Examination of the Trust Parties, which occurred on June 2, 2022.

H.      The Settling Parties have exchanged information, negotiated with one another, and in lieu of pursuing an adversary proceeding, have agreed to resolve all matters respecting the Trust Transfers, upon the terms and conditions set forth below.

I.      Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

TERMS OF AGREEMENT

1.      <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.      <u>Settlement Amount</u>.  The Trust Parties shall pay Trustee a total of $300,000.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of the Trust's liability on the Trust Transfers.

3.      <u>Sequence of Payment</u>.  Immediately following execution of this Settlement Agreement by the Settling Parties, the Trust Parties shall pay the Trustee $146,075.00 from the Trust Parties Accounts to be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>. Within sixty (60) days of Bankruptcy Court approval of this Settlement Agreement, the remaining $153,925.00 of the Settlement Amount located in the First Hawaiian Trust Account that is subject to the District Court Freeze Orders shall be released with the direction that those proceeds shall be paid to the Trustee, provided that the District Court dissolves the Freeze Order on that account.

4.      <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "Effective Date"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; (iii) the District Court has  by Court order dissolved of the Freeze Orders with respect to the Ohana Trust Account ; (iv) the District Court dismisses the Trust Parties from the SEC Civil Action with prejudice; and (v) the date on which the Trustee has received the full Settlement Amount from the Trust Parties.

5.      <u>Trust Parties' Motion to Dissolve Freeze Orders</u>. The Trust Parties shall file a Joint Motion with the SEC requesting the District Court to dissolve the Freeze Orders with respect to the Ohana Trust Account within ten (10) days of executing this Settlement Agreement.

6.      <u>Dismissal by SEC</u>. As a condition to effectiveness of this Settlement Agreement, and after the date on which this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order, the District Court must dismiss the

2

Trust Parties from the SEC Civil Action with prejudice.

7.    <u>Voidability of Settlement Agreement</u>. This Settlement Agreement is voidable or void as described herein: (i) if the Settlement Agreement is not approved by the bankruptcy court, or if the District Court does not order the dismissal of the Trust Parties from the SEC Civil Action with prejudice, then this Settlement Agreement is void; (ii) if the District Court denies the Trust Parties' request for release of Trust account funds subject to the Freeze Orders, the Settlement Agreement is voidable at the option of the Trust Parties exercisable within ten days of the of denial by the District Court; or (iii) if the Effective Date does not occur within 90 days of execution of this Settlement Agreement, the Settlement Agreement is voidable at the option of the Trustee. In the event the Settlement Agreement becomes null and void for any of the reasons outlined herein, the Trustee will return any Settlement Amount received by the Trustee to the Trust Parties within 10 days of the event that voids this Settlement Agreement.

8.    <u>Trust Approval</u>. Two of the three co-trustees of the Trust have approved this Settlement Agreement as evidenced by the signatures affixed to this Settlement Agreement. *See* Tex. Prop. Code § 113.085.

9.    <u>Release by Trustee</u>. On the Settlement Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trust Parties, their attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee has, may have had, may have or may claim to have against the Releasees solely in connection with the Trust and the Trust Transfers. This Settlement Agreement does not contemplate releasing Robert Mueller or any of his entities, employees, or agents (other than the Trust Parties) from any claims against him in the Bankruptcy Case.

10.    <u>Release by Trust Parties</u>. Upon payment of the entirety of the Settlement Amount to the Trustee, the Trust Parties agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. The Trust Parties agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

11.    <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or/ limitation in connection with the Trust Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Settlement Effective Date or ten days following the date the Settlement Agreement becomes void.  Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is  time

barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

12.     <u>Enforcement of Settlement Agreement</u>.  If the Trust Parties breach this Settlement Agreement, the Trustee shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement.  If the Trustee prevails in such litigation, the Trustee shall be entitled to recover its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

13.     <u>Expenses</u>.  The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

14.     <u>Severability</u>.  The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

15.     <u>Miscellaneous</u>.

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonable necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related

to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and the binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.


[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 6th day of Sept , 2022.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 6 day of Sept , 2022.

_____
Jeffrey L. Mueller
Co-Trustee of the
MB Hale Ohana Revocable Trust

SIGNED this 6 day of Sept , 2022.

_____
Belinda Breen
Co-Trustee of the
MB Hale Ohana Revocable Trust

SIGNED this 6 day of Sept , 2022.

_____
MB Hale Ohana Revocable Trust

By: _____
Co-Trustee

By: _____
Co-Trustee

{00589912;1}

6

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

Bank Name: █████
Routing Number: █████
Account Name: █████
Account Number: █████

# EXHIBIT C

# THE
# MB HALE OHANA REVOCABLE
# TRUST AGREEMENT

**NOVEMBER 5, 2016**

**BY**

**JEFFREY L. MUELLER**
**BELINDA G. BREEN**
**ROBERT J. MUELLER**

Prepared in the Law Office of Robert J. Mueller
P.O. Box 690562
San Antonio, Texas 78269-0562

Office & Facsimile - (800) 684-4299
Mobile - (210) 602-8724
Email - robert@sensibleestate.com
Website - http://www.sensibleestate.com

# TABLE OF CONTENTS
# MB HALE OHANA REVOCABLE LIVING TRUST

**ARTICLE I – INITIAL REVOCABLE TRUST** .................................................................................. 1
- A. CHARACTER OF PROPERTY ...................................................................................................... 1
- B. DISTRIBUTIONS ........................................................................................................................ 1
- C. DISTRIBUTIONS IF ANY GRANTOR INCAPACITATED ............................................................... 2
- D. ADDITIONS FOLLOWING DEATH OF EACH GRANTOR .............................................................. 2
- E. PAYMENTS FOLLOWING THE DEATH OF EACH GRANTOR ........................................................ 2
- F. DEATH AND TERMINATION ...................................................................................................... 2

**ARTICLE II - TRUSTEE APPOINTMENTS** ..................................................................................... 3
- A. TRUSTEES ............................................................................................................................... 3
- B. TERMS OF RESIGNATION ......................................................................................................... 4
- C. INITIAL AND SUCCESSOR TRUSTEES ....................................................................................... 4
- D. EXPENSES AND COMPENSATION ............................................................................................. 5
- E. WAIVER OF BOND; ANCILLARY TRUSTEES .............................................................................. 5

**ARTICLE III – REVOCABILITY** ..................................................................................................... 5
- A. REVOCATION WHILE GRANTORS LIVING .................................................................................. 5
- B. IRREVOCABLE AFTER THE LAST GRANTOR DIES ...................................................................... 5

**ARTICLE IV - TRUSTEE PROVISIONS** ........................................................................................... 6
- A. POWERS .................................................................................................................................. 6
- B. INSPECTION ............................................................................................................................. 9
- C. NOTICE TO FIDUCIARIES ......................................................................................................... 9
- D. ACTS OF PRIOR TRUSTEES ...................................................................................................... 9
- E. RELIANCE ON LEGAL OPINION ................................................................................................ 9
- F. SURVIVORSHIP PROVISIONS .................................................................................................... 9
- G. MAXIMUM DURATION OF TRUSTS ........................................................................................... 9
- H. UNIFORM PRUDENT INVESTOR ACT OF 2003 ......................................................................... 10

**ARTICLE V - PAYMENT TO MINOR AND/OR HANDICAPPED INDIVIDUAL** ........................ 10

**ARTICLE VI - MISCELLANEOUS PROVISIONS** ......................................................................... 10
- A. ADDITIONS TO TRUST ............................................................................................................ 10
- B. DESCENDANTS ....................................................................................................................... 10
- C. POWER OF APPOINTMENT ...................................................................................................... 11
- D. SPENDTHRIFT PROVISIONS .................................................................................................... 11
- E. INTERNAL REVENUE CODE ..................................................................................................... 11
- F. PER STIRPES .......................................................................................................................... 11
- G. GOVERNING LAW ................................................................................................................... 12
- H. PERSONAL PROPERTY DISTRIBUTION ..................................................................................... 12
- I. MENTAL COMPETENCE .......................................................................................................... 12
- J. HEIRS .................................................................................................................................... 12
- K. SEVERABILITY ....................................................................................................................... 13
- L. HEADINGS ............................................................................................................................. 13
- M. ACCOUNTING ........................................................................................................................ 13

**ARTICLE VII - NO CONTEST CLAUSE** ....................................................................................... 13

**ARTICLE VIII - SPECIAL DIRECTIVES** ....................................................................................... 13

**ARTICLE IX - ACKNOWLEDGEMENTS** ....................................................................................... 14

OHANA 000002

THE STATE OF TEXAS       §

                                     §

COUNTY OF BEXAR          §

THIS TRUST AGREEMENT is entered into on **NOVEMBER 5, 2016**, between **JEFFREY L. MUELLER** and **BELINDA G. BREEN**, husband and wife, both of Harris County, Texas, and **ROBERT J. MUELLER**, as his sole and separate property, of Bexar County, Texas, jointly as <u>**Grantors**</u> (herein: plurally 'Grantors' as to all Grantors, and singularly 'Grantor' to all or one, as the context may apply), and **JEFFREY L. MUELLER**, **BELINDA G. BREEN**, and **ROBERT J. MUELLER** as <u>**initial Trustees**</u> (herein: plurally 'Trustees' as to all Trustees, and singularly 'Trustee' as to all or one, as the context may imply).  The term, role, and powers regarding a Co-Trustee or Co-Trustees are interchangeable herein with the term, role, and powers of a Trustee or Trustees, respectively.  The terms 'initial Trustee(s)' and 'successor Trustee(s)' shall be differentiated in Article II below.

## W I T N E S S E T H:

The Grantors desire to create a trust to be held, administered and distributed in accordance with the provisions of this Trust Agreement.  Accordingly, the Grantors have transferred to the Trustee, and the Trustee acknowledges receipt from the Grantors of the sum of one dollar in cash.  This property, together with any other property which may hereafter be conveyed to any Trustee subject to the trust hereby created, shall be held, administered and distributed by any Trustee, upon the trust and for the purposes and uses herein set forth.  The trust initially created by this Trust Agreement shall be known as the "**MB HALE OHANA REVOCABLE TRUST.**"

## ARTICLE I – INITIAL REVOCABLE TRUST

       A.      <u>**Character of Property.**</u>  Property transferred to this trust which consists of a Grantor's separate property shall retain its character as separate property and shall be accounted for separately by the Trustees so that it can be returned to such Grantor as his or her separate property if this instrument is completely or partially revoked.  Property transferred to this trust which consists of a Grantors' community property shall retain its character as community property and shall be accounted for separately by the Trustees so that it can be returned to the Grantor(s) as their community property if this instrument is completely or partially revoked.  The powers of any Trustee over their own community property shall be no more extensive than those possessed from time to time by the respective Grantor over such community property.

       B.      <u>**Distributions.**</u>  The Trustees shall hold, manage, sell, exchange, invest and

OHANA 000003

reinvest the trust property, collect all income and, after deducting such expenses as are properly payable, shall accumulate and distribute the income and principal as herein provided. The Trustees shall distribute the income and principal of the trust to the Grantors in such amounts as the Grantors may direct. Following the death of a Grantor, distributions shall continue to be made to the surviving Grantor(s). All trust net income not otherwise appointed by the Grantors shall be accumulated and invested. After the death of the last Grantor to die, then other beneficiaries will be appointed as per Section F infra.

      **C.**     **<u>Distributions If Any Grantor Incapacitated.</u>** In the event that one or all of the Grantors become severely ill, incapacitated or unable to communicate with the Trustee, as determined by a licensed physician in writing or by the Trustee in the Trustee's absolute and uncontrolled judgment (or by the successor Trustee named herein), then the Trustee shall distribute such amounts of income and principal of the trust created by this Article for the comfort, health, support, maintenance or other needs of the Grantor as the Trustee shall determine, in the Trustee's absolute and uncontrolled discretion, to be necessary or appropriate to maintain the Grantor in accordance with the Grantor's accustomed standard of living at the time of the execution of this Trust Agreement.

      **D.**     **<u>Additions Following Death of Each Grantor.</u>** Following the death of each Grantor, the Trustee shall add to this trust all property which was owned by such Grantor and which is received by the Trustee under such Grantor's Will and all non-probate assets (which shall include, but not be limited to, any payments from an employee or self-employed benefit plan, individual retirement account or annuity or any proceeds of any insurance policy on the life of such Grantor) which are payable to the Trustee hereunder.

      **E.**     **<u>Payments Following the Death of Each Grantor.</u>** Following the death of each Grantor, the Trustee shall pay from the property of the trust the difference between all taxes or expenses which must be paid by reason of the Grantor's death on trust property. The Trustee, in the Trustee's absolute and uncontrolled discretion, may pay from the trust property to a duly qualified executor, personal representative, trustee, or administrator of a Grantor's estate, taxes or expenses that might arise as to the deceased Grantor's personal estate administration. Written statements by the executor, personal representative, trustee, or administrator of such Grantor's estate of the sums that may be paid under this Section shall be sufficient evidence of their amounts, and the Trustee shall be under no duty to see to the application of any such payments.

      **F.**     **<u>Death and Termination.</u>** After the death of each Grantor, the Grantor's share of the Trust shall be distributed to that Grantor's beneficiaries, descendants, or heirs-at-law, as further enumerated in the intestacy estate, Last Will and Testament, or Revocable Trust of such Grantor. The ownership thereof by such beneficiaries, descendants, or heirs-at-law shall not give any authority or other rights over any trust property other than the right to their right to the net profits and reasonable enjoyment thereof. After the death of all Grantors, the successor Trustee shall distribute the <u>assets remaining</u> in this trust to the Primary Beneficiaries of this trust (as that

term is defined within this section) within nine months of the date of death of the last Grantor to die - either outright or in trust, as otherwise indicated in this Trust Agreement. After notifying each Primary Beneficiary of his or her respective share, the successor Trustee shall distribute the remaining income and principal of this trust in the following manner:

a)   The successor Trustee shall apply and distribute the net income and principal of each of the shares of the resulting trust estate, after giving effect to the section of this Trust Agreement entitled "Special Directives" and to any hand written memorandum(s) from the Grantors regarding the distribution of Personal Belongings, to the following Primary Beneficiaries in the indicated percentages or fractional shares (Unless otherwise indicated, the Primary Beneficiaries are the beneficiaries of both Grantors):

|  |  |
|---|---|
| **CARY L. MUELLER** | **50%** |
| **ELLIE N. MUELLER** | **50%** |

If one of these Primary Beneficiaries should predecease the Grantor or dies before the complete distribution of that Primary Beneficiary's share of the trust estate, the share of the trust estate set aside for that Primary Beneficiary shall terminate and the Trustee shall distribute the balance of that Primary Beneficiary's share of the trust estate to such Primary Beneficiary's then living descendants, per stirpes. If a Primary Beneficiary should predecease the Grantor or dies before the complete distribution of that Primary Beneficiary's share of the trust estate, and in either situation leave no descendants, the undistributed balance of that Primary Beneficiary's share shall be allocated equally among the Grantor's remaining Primary Beneficiaries leaving then living issue by right of representation and distributed as otherwise provided in this Trust Agreement. If all of these Beneficiaries predecease the Grantor and all leave no living descendants, the trust estate shall then be distributed to the Grantor's heirs under the then existing laws of descent and distribution of the State of Texas.

## ARTICLE II - TRUSTEE APPOINTMENTS

A.    **Trustees.**  The following will act as Trustees of any Trusts created by this Trust Agreement, in the following order of succession:

| **Initial Trustees:** | The undersigned Grantors, **JEFFREY L. MUELLER, BELINDA G. BREEN**, and/or **ROBERT J. MUELLER**. |
|---|---|
| **Surviving Trustees:** | Upon the death, resignation, permanent incapacity or mental incompetence of an initial Trustee, the remaining initial Trustee(s) shall continue to serve. |
| **First Successor:** | Upon the death, resignation, permanent incapacity or mental incompetence of all initial Trustees, **CARY L. MUELLER** shall serve as First Successor Trustee. |
| **Last:** | A successor Trustee chosen by the majority of Primary Beneficiaries, with a parent or legal guardian voting for minor Primary Beneficiaries, and a legal guardian voting for their mentally incompetent ward; provided, however, that the children of any deceased Primary Beneficiary shall collectively have only one vote. If all Primary Beneficiaries have died without having children, the beneficiaries of the trust shall then choose a successor Trustee by majority vote, such vote being subject to the above rules concerning voting for minor beneficiaries and incompetent wards. If no successor Trustee has otherwise been appointed within sixty (60) days of such vacancy, then upon the written request of any interested party, any judge of the county of domicile of the Grantor, acting as an individual and not in any judicial capacity, shall have the power to appoint a successor Trustee. |

    **B.**    <u>**Terms of Resignation.**</u>  Any Trustee may resign by giving thirty (30) days written notice to the Grantors of each respective Trust, or to the legal representatives of said Grantors. If Grantors are no longer living, then any Trustee may resign by giving thirty (30) days written notice to other named successor Trustees and each beneficiary then living.

    **C.**    <u>**Initial and Successor Trustees.**</u>  Unless another meaning is clearly indicated or required by context or circumstances, the term "Trustee" shall mean and include the initial Trustee(s) and/or any successor Trustee(s) or Co-Trustee(s). Except as otherwise provided in this Trust Agreement, if two or more Trustees are named or serving hereunder and any one or more, but not all, decline or cease to serve for any reason, then the remaining Trustee or Co-Trustees, as the case may be, shall continue to serve in such capacity. In all matters (except those enumerated within this section) relating to each trust created under this Trust Agreement, all Trustees then serving must approve each and every transaction. However, for purposes of monetary transactions $5,000.00 or under (actual or implied; other than deposits), where multiple

---

OHANA 000006

Trustees are then serving, any writing, signature, or endorsement by a singular Trustee shall control, be valid and effective, for all intents and purposes, as if signed by all Trustees. An initial Trustee(s), or initial Co-Trustee(s) are specifically the named Grantor(s) designated as such at the execution of this Trust Agreement. It is the intent of the Grantors that each shall be a Trustee until such time as such Grantor dies, resigns, or becomes permanently incapacitated or declared mentally incompetent. A successor Trustee(s), successor Co-Trustee(s), or successors-in-trust, refer to a Trustee or Trustees that may serve after the death, resignation, permanent incapacity or mental incompetence of all initial Trustees. A reference to the ordered (ie. First, Second, Third, etc.) term/title of a successor Trustee is intended to be for reference only, and not to void the nature or the role of a successor Trustee.

      **D.**    **Expenses and Compensation.** Every Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with such Trustee's duties. Every Trustee, except one of the Grantors, shall be entitled to fair and reasonable compensation for services rendered by such Trustee in an amount not exceeding the customary and prevailing charges for services of a similar character at the time and place such services are performed.

      **E.**    **Waiver of Bond; Ancillary Trustees.** No Trustee acting hereunder shall be required to give bond or other security in any jurisdiction. If the trust created by this Trust Agreement contains property located in another state or a foreign jurisdiction, and the Trustee cannot or chooses not to serve under the laws thereof, the power to appoint an ancillary Trustee for such property (as well as any successor ancillary Trustee) shall be exercisable by the Grantors acting jointly, or by the Trustee if the Grantors are not living or are not competent to act. An ancillary Trustee appointed pursuant to this Section may be an individual or corporate Trustee whose powers, rights, and duties are only valid and enforceable as to the specific purpose of the ancillary appointment.

## ARTICLE III – REVOCABILITY

      **A.**    **Revocation While Grantors Living.** While any Grantor is still living, the Grantors may revoke the trust created under Article I in whole or in part as to any part of such Grantor's respective Separate Estate or such Grantors' share of the Community Estate. If the trust created under Article I is revoked as to a Grantor's Separate Estate, the assets of such Grantor's Separate Estate (or the revoked portion) shall be distributed to such respective Grantor as his or her separate property, and if such trust is revoked as to the Community Estate, the assets of the Community Estate (or the revoked portion) shall be distributed to the respective Grantors as community property. While any Grantor is still living, this Trust Agreement may only be amended, restated, or revoked by all living Grantors acting jointly. For Grantors who are married, no gift is intended by either spouse in executing this instrument.

      **B.**    **Irrevocable after the Last Grantor Dies.** Upon the death of the last

Grantor to die, any trusts created under this Trust Agreement shall become irrevocable.

## ARTICLE IV - TRUSTEE PROVISIONS

     **A.**    **Powers.**  The Trustee (whether plural or singularly referenced) shall have all of the powers conferred upon trustees by the statutes, codes, or laws of the State where any given property resides; but for Texas property, being the Texas Trust Code (including but not limited to Subchapter A, Chapter 113 of said Texas Trust Code), and by any amendments to the Texas Trust Code or any corresponding statute, except for any instance in which the Texas Trust Code or any such other statutory provisions may conflict with the express provisions of this Trust Agreement, in which case the express provisions of this Trust Agreement shall control.  In addition to such powers, the Trustee is specifically authorized:

     (1)    To retain, in the absolute and uncontrolled discretion of the Trustee without duty to diversify investments, any property transferred to the Trustee by the Grantors or any other person, including securities of any corporate Trustee, without liability for any depreciation or loss occasioned by such retention;

     (2)    To exchange, sell or lease (including leases for terms exceeding the duration of the trust created by this instrument) for cash, property or credit, or to partition, from time to time, publicly or privately, at such prices, on such terms, times and conditions and by instruments of such character and with such covenants as the Trustee may deem proper, all or any part of the assets of the trust, and no vendee or lessee of the Trustee shall be required to look to the application made by the Trustee of any funds paid to the Trustee;

     (3)    To borrow money from any source (including any Trustee) and to mortgage, pledge or in any other manner encumber all or any part of the assets of the trust as may be advisable in the judgment of the Trustee for the advantageous administration of the trust;

     (4)    To invest and reinvest the property of the trust in any kind of property whatsoever, real or personal (including oil, gas and other mineral leases, royalties, overriding royalties and other interests), whether or not productive of income and without regard to the proportion that such property or property of a similar character held may bear to the entire trust; provided, however, that the Grantors may direct the Trustee as to the investments to be made by the Trustee, and the Trustee shall not be liable to any person for any losses resulting from following the written direction of the Grantors in investing the trust assets;

     (5)    To employ attorneys, accountants, investment managers, specialists and such other agents as the Trustee shall deem necessary or desirable; to have the authority to appoint an investment manager or managers to manage all or any part of the assets of the trust, and to delegate to said manager investment discretion and

such appointment shall include the power to acquire and dispose of such assets; and to charge the compensation of such attorneys, accountants, investment advisors, investment managers, specialists and other agents and any other expenses against such trust;

(6)     To register and carry any securities or other property in the name of the Trustee or in the name of the nominee of any corporate Trustee (or to hold any such property unregistered) without increasing or decreasing the fiduciary liability of the Trustee; to exercise any option, right or privilege to purchase or to convert bonds, notes, stocks (including shares or fractional shares of stock of any corporate Trustee), securities or other property, and to borrow money for the purpose of exercising any such option, right or privilege; to vote any stock which may be held in the trust; and if two or more Trustees are serving hereunder and no such Trustee is a corporate Trustee, to open any type of account in such a manner that all activities associated with such account may be handled by one of the Co-Trustees acting alone;

(7)     To enter into any transaction on behalf of the trust (including loans to beneficiaries for adequate security and adequate interest) despite the fact that another party to any such transaction may be (i) a trust of which any Trustee under this instrument is also a trustee; (ii) an estate of which any Trustee under this instrument is also an executor, personal representative, or administrator; (iii) a business or trust controlled by any Trustee under this instrument or of which any such Trustee, or any director, officer or employee of any such corporate Trustee, is also a director, officer or employee; or (iv) the Grantors, any other beneficiary or any Trustee under this instrument acting individually;

(8)     To make, in the Trustee's absolute and uncontrolled discretion, any distribution required or permitted to be made to either of the Grantors, in any of the following ways when either of the Grantors is incapacitated in the absolute and uncontrolled judgment of the Trustee by reason of legal incapacity or physical or mental illness or infirmity:  (i) to such Grantor directly; (ii) to the guardian of such Grantor's person or estate; (iii) by utilizing the same, directly and without the interposition of any guardian, for the health, support, or maintenance of such Grantor; or (iv) by reimbursing the person who is actually taking care of such Grantor (even though such person is not the legal guardian) for expenditures made by such person for the benefit of such Grantor; and the written receipts of the persons receiving such distributions shall be full and complete acquittances to the Trustee;

(9)     To invest the assets of the trust in any life insurance policy or policies (including term insurance) on the life of the Grantors, or on the life of any person or persons in whom the Grantors have an insurable interest;

(10)     To make divisions or distributions in money or in kind, or partly in each, whenever required or permitted to divide or distribute all or any part of the trust; and, in making any such division or distributions, the judgment of the Trustee

OHANA 000009

in the selection and valuation of the assets to be so divided or distributed shall be binding and conclusive, and the Trustee shall not be liable for any differing tax consequences to the beneficiaries hereunder;

(11)  To release, in the absolute and uncontrolled discretion of the Trustee, any fiduciary power at any time, in whole or in part, temporarily or permanently, whenever the Trustee may deem it advisable, by an instrument in writing executed and acknowledged by the Trustee;

(12)  To invest and reinvest all or part of the assets of the trust in any common trust fund of any corporate Trustee;

(13)  To continue any business (whether a proprietorship, corporation, partnership, LLC, limited partnership or other business entity) which may be transferred to the trust for such time as the Trustee may deem it to be in the best interest of the trust; to employ in the conduct of any such business such capital out of the trust as the Trustee may deem proper; to borrow money for use in any such business alone or with other persons financially interested in such business, and to secure such loan or loans by a mortgage, pledge or any other manner of encumbrance of, not only the interest of such trust in such business, but also such portion of the trust outside of such business as the Trustee may deem proper; to organize, either alone or jointly with others, new corporations, partnerships, limited partnerships or other business entities; and generally to exercise with respect to the continuance, management, sale or liquidation of any business which may be transferred to the trust estate, or of any new business or business interest, all the powers which may be necessary for its successful operation;

(14)  To execute lease, pooling or unitization agreements (including agreements of such nature extending beyond the terms of the trust) with respect to any mineral or royalty interest held or acquired by the trust; to drill or contract for the drilling of wells for oil, gas or other minerals; to make dry hole or bottom hole contributions; to enter into any operating agreements with reference to any mineral leases or properties held or acquired by the trust; and generally, with reference to oil, gas and other mineral properties and operations, to enter into such agreements and to do all such other things (whether or not presently recognized as common or proper practice by those engaged in the business of prospecting for, developing, producing, processing, transporting or marketing oil, gas or other minerals) as the Trustee may deem to be advantageous;

(15)  To select and employ, at the discretion of the Trustee but at the expense of the trust, any person, firm or corporation, engaged in rendering investment advisory services or investment management services, to furnish professional assistance or management in connection with making investments, managing securities, or making any other decisions with respect to the purchase, retention, sale or other disposition of property or securities belonging to the trust; and

(16)    To employ a bank or trust company located anywhere within the United States, at the discretion of the Trustee but at the expense of the trust, as custodian or agent; to have stock and securities registered in the name of such agent or custodian or a nominee thereof without designation of fiduciary capacity; and to appoint such bank or trust company to perform such other ministerial functions as the Trustee may direct. While such stock or securities are in the custody of any such bank or trust company, the Trustee shall be under no obligation to inspect or verify such stock or securities nor shall the Trustee be responsible for any loss by such bank or trust company.

(17)    To transact any business solely, without having to seek the approval, authorization, endorsement ,or signature, of a (or any) other serving Trustee(s) for transactions amounts (actual or implied) under $5,000.01.

**B.**    **Inspection.** All properties, books of account and records of the trust shall be made available for inspection at all times during normal business hours by the Grantors, or by any person or persons designated by the Grantors. The Trustee shall furnish written statements (which shall be deemed correct and binding one year after receipt) at least annually showing the itemized receipts and disbursements of income and principal of the trust, and otherwise reflecting its condition, to the Grantors.

**C.**    **Notice to Fiduciaries.** Any notice required or permitted to be given by or to a Trustee acting under this Trust Agreement must be given by acknowledged instrument actually delivered to the person or Trustee to whom it is required or permitted to be given. If such notice concerns a trusteeship, it shall state its effective date and shall be given at least 30 days prior to such effective date, unless such period of notice is waived.

**D.**    **Acts of Prior Trustees.** Each Trustee shall be relieved of any duty to examine the acts of any prior Trustee and no court accounting shall be required. Each successor Trustee shall be responsible only for those properties which are actually delivered to such Trustee. Each successor Trustee, upon executing an acknowledged acceptance of the trusteeship and upon receipt of those properties actually delivered to such successor Trustee, shall be vested with all of the estates, titles, rights, powers, duties, immunities and discretions granted to the prior Trustee.

**E.**    **Reliance on Legal Opinion.** In acting or declining to act, each Trustee may rely upon the written opinion of a competent attorney, any facts stated in any instrument in writing and believed true, or any other evidence deemed sufficient. Each Trustee shall be saved harmless from any liability for any action taken, or for the failure to take any action, if done in good faith and without gross negligence.

**F.**    **Survivorship Provisions.** For purposes of this Trust Agreement, no person shall be presumed to have survived a Grantor or beneficiary if such person should die within 60 days of such's death.

**G.**    **Maximum Duration of Trusts.** Notwithstanding anything to the contrary contained in this Trust Agreement, the trust created under this Trust Agreement, unless earlier

OHANA 000011

terminated according to the terms of this Trust Agreement, shall terminate one day less than 21 years after the date of death of the last to die of the Grantors, and all of the persons listed as Primary Beneficiaries who are alive as of the date of death of the last Grantor to die; provided, however, that if the Trustee at any time merges and administers as one trust any trust or trusts created hereunder and any trust or trusts under any other instrument, such merged trust shall not continue beyond the date on which either of such trusts would, without regard to such merger, have been required to expire under the rule against perpetuities or other applicable law governing the maximum duration of trusts. If any trust or trusts (including a merged trust) would, but for the terms of this Section, continue beyond such date, such trust shall nevertheless at that time terminate and the remaining property of such trust shall be distributed to the primary beneficiary of such trust.

      **H.**    **Uniform Prudent Investor Act of 2003.** Grantors specifically provide that the prudent investor rule as espoused in Chapter 117 of the Texas Trust Code shall not apply to this trust or its trustees, unless a trustee voluntarily, and with the advice of counsel, executes an election otherwise in writing within thirty (30) days of the acceptance of trusteeship under this trust agreement. An election under this provision shall only apply to the accepting trustee.

## ARTICLE V - PAYMENT TO MINOR AND/OR HANDICAPPED INDIVIDUAL

      Subject to any other controlling provisions herein contained, in case the income or principal payment under any Trust created hereunder or any share thereof shall become payable to a person under the age of 25, or to a person under legal disability, or to a person not adjudicated to be incompetent, but who, by reason of illness or mental or physical disability, is, in the opinion of the Trustee unable properly to administer such amounts, then such amounts shall be paid out by the Trustee in such of the following ways as the Trustee deems best: directly to such Beneficiary; to the legally appointed Guardian of such Beneficiary; to some relative or friend for the care, support, and education of such Beneficiary; or by the Trustee using such amounts directly for such Beneficiary's care, support and education.

## ARTICLE VI - MISCELLANEOUS PROVISIONS

      **A.**    **Additions To Trust.** The Grantors, or any other person, may at any time, grant, transfer or convey, either by inter vivos transfer or by Will, to the Trustee such additional property as he or she desires to become a part of the trust hereby created and, subject to acceptance by the Trustee, such additional property shall thereafter be held, administered and distributed by the Trustee in accordance with the provisions of this Trust Agreement.

      **B.**    **Descendants.** References to "heirs", "descendant" or "descendants" mean lineal blood descendants of the first, second or any other degree of the ancestor designated;

OHANA 000012

provided, however, that such references shall include, with respect to any provision of this Trust Agreement, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, an adopted child and such adopted child's lineal descendants by blood or adoption shall be considered under this Trust Agreement as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of the adopting parent or of either of the adopting parents.

     **C.**     **Power of Appointment.**    Notwithstanding anything to the contrary contained in this Trust Agreement, any special power of appointment granted to any person under this Trust Agreement shall not be exercisable in favor of such person, such person's creditors, such person's estate or the creditors of such person's estate. The exercise of any special power of appointment by any holder thereof shall supersede the power of the Trustee over the trust property so appointed; provided, however, the exercise of such power shall not affect any distributions of trust property previously made by the Trustee.

     **D.**     **Spendthrift Provisions.**   Prior to the actual receipt of trust property by any beneficiary, no property (income or principal) distributable under any trust created by this Trust Agreement shall, voluntarily or involuntarily, be subject to anticipation or assignment by any beneficiary, or to attachment by or to the interference or control of any creditor or assignee of any beneficiary, or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder prior to distribution shall be void.

     **E.**     **Internal Revenue Code.**   References to various Sections of the "Code" are to such designated Sections of the Internal Revenue Code of 1986, as amended.

     **F.**     **Per Stirpes.**   When a distribution is to be made to a person's descendants "per stirpes," property shall be divided into as many equal shares as there are (i) members of the nearest generation of descendants who are then living, and (ii) deceased members of that generation who leave descendants who are then living. This division into shares shall begin at the generation nearest to such person regardless of whether that generation has a surviving member. Each living member of the nearest generation of descendants with a member then living shall receive one share, and the share that would have passed to each deceased member of that generation who leaves descendants who are then living shall be divided in a similar manner (by reapplying the preceding rule) among his or her then living descendants. For example, if a person has deceased children and living children when a distribution is to be made, the assets will be divided into equal shares at the child level and distributed per stirpes below that level; however, if the person has no living children at that time, that equal division will still be made at the child level and distributed per stirpes below that level. This definition is intended to override any conflicting or contrary common law definition. In the case of a distribution which is to be made "per stirpes" in the event of the death of one of the Grantors, references in this Section to "then living" or to "living" shall mean persons who survive such Grantor.

OHANA 000013

G. **Governing Law.** The construction, validity and administration of each trust created under this Trust Agreement shall be controlled by the laws of the State of Texas unless the Trustee designates the laws of another jurisdiction as the controlling law with respect to the administration of a particular trust, in which event the laws of such designated jurisdiction shall apply to such trust as of the date specified in such designation. For real property which is located in a State other than Texas, if there is a conflict of laws between that State's laws and the law of the State of Texas, then that State's laws will apply to that respective property. Any such designation shall be in writing and shall be delivered to each income beneficiary of the affected trust.

H. **Personal Property Distribution.** Notwithstanding any provision of this Trust Agreement to the contrary, the Trustee must abide by any hand written memorandum(s) by the Grantors, and the section entitled "Special Directives" incorporated into this Trust Instrument, directing the disposition of Trust Assets of every kind including but not limited to furniture, appliances, furnishings, pictures, china, silverware, glass, books, jewelry, wearing apparel, and all policies of fire, burglary, property damage, and other insurance on or in connection with the use of this property. If the same item is being distributed to different Beneficiaries, the latest memorandum or Special Directive shall control who is to receive that item. Otherwise, any personal and household effects of the Grantors shall be distributed with the remaining assets of the Trust estate.

I. **Mental Competence.** The Grantors hereby provide that two (2) designated licensed physicians shall be authorized and empowered to determine the competency of any Grantor or Trustee of this Trust Agreement. One of the physicians to determine such competency shall be the attending physician of the Grantor or Trustee whose competency is to be determined. The second physician shall be appointed by the said attending physician.

The appointed physicians shall confirm in writing the incompetency or competency of the Grantor or Trustee, and their joint decision thereon shall be binding upon the Grantors, Trustees and Beneficiaries of this Trust.

If a Grantor or Trustee has no attending physician at the time when a determination of their competency is desired, the Grantor and Trustees hereby direct that the Attorney-In-Fact, appointed under the Durable Power of Attorney for Health Care or similar instrument of the Grantor or Trustee whose competency to serve as Trustee is to be determined, will name and engage an attending physician on their behalf. Such physician shall then appoint the second physician and they shall determine competency in accordance with these provisions.

Confirmation of removal or reappointment of any Trustee removed for incompetency by reason of the determination of the appointed physicians or whose recovery and competency to serve as Trustee hereunder has been re-certified by the appointed physicians may be confirmed by application to a court of competent jurisdiction of the then situs of the Trust.

J. **Heirs.** References to "heirs" are to those persons who would inherit

separate personal property from the person designated under the statutes of descent and distribution of Texas, if such person died intestate and single at such time.

     **K.**    **Severability.** If any part, clause, provision, or condition of this Trust Agreement is held by a court of competent jurisdiction to be void, invalid, unenforceable, or inoperative, such void, invalid, unenforceable, or inoperable part, clause provision, or condition shall be fully severed from this Trust Agreement and shall not affect the remaining provisions.

     **L.**    **Headings.** The headings of any article, section, or paragraph of this Trust Agreement are used for convenience only and have no other significance.

     **M.**    **Accounting.** For purposes of accounting of contributions, additions, earnings, expenses, taxes, fees, and distributions, it is agreed to by the Grantors, that 50% (or one-half) be owned by and assessed against Jeffrey L. Mueller and Belinda G. Breen as a singular unit (or their joint heirs or assigns), and 50% (or one-half) by owned by and assessed to Robert J. Mueller (or his joint heirs or assigns). While fluctuation in actual values are anticipated, the Grantors direct any third parties to deem the same unless agreed to by all Grantors in writing. Any actual disparity in the values between the aforenamed parties at events or in circumstances requiring parity will be equalized by using an internal accounting loan or advance that (if necessary) would correct the disparity.

## ARTICLE VII - NO CONTEST CLAUSE

     If any beneficiary hereunder shall contest the validity of this Trust Agreement, or any provisions hereof, or shall institute or join in, except as a party defendant, any proceeding to contest the validity of this Trust Agreement or to prevent any provision hereof from being carried out in accordance with the terms hereof, regardless of whether or not such proceedings are instituted in good faith or with probable cause, then all benefits provided for such beneficiary are revoked and such benefits shall pass to the other beneficiaries of this Trust Agreement, other than such beneficiary, in the proportion that the share of each such other beneficiary bears to the total trust property. If all of the beneficiaries join in such contest or proceedings, then such benefits shall pass to those persons other than the persons joining in such contest who are living at the death of each of the Grantors and who would have been the Grantors' heirs (with one-half of such property passing to the heirs of each Grantor) had the person or persons contesting this Trust Agreement died immediately before each of the Grantors. Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all of the provisions of this Trust Agreement, and the provisions of this Article are an essential part of each and every benefit.

## ARTICLE VIII - SPECIAL DIRECTIVES

     As Grantors of this trust: we either direct that the following assets be distributed to the

following beneficiaries before any other assets are distributed from this trust estate under Article I, or we direct our successors-in-trust to strictly adhere to, and carry-out, the following instructions. Unless otherwise indicated, the distributions being made according to this Article VIII shall be subject to the provisions of this Trust Agreement regarding distributions to minor or handicapped beneficiaries. Unless otherwise indicated, a beneficiary receiving an asset detailed in this Article VIII shall also assume any debts and liens associated with that asset.

    1.   No Special Directives at the creation of the trust agreement.

## ARTICLE IX - ACKNOWLEDGEMENTS

**IN WITNESS WHEREOF,** the Grantors and initial Trustees sign and execute this trust agreement, all who have hereunto set their hands as of the date first above written.

_____
JEFFREY L. MUELLER, Grantor

_____
BELINDA G. BREEN, Grantor

_____
ROBERT J. MUELLER, Grantor

_____
JEFFREY L. MUELLER, initial Trustee

_____
BELINDA G. BREEN, initial Trustee

_____
ROBERT J. MUELLER, initial Trustee

OHANA 000016

THE STATE OF TEXAS        §

§

COUNTY OF BEXAR        §

```
CARY L. MUELLER
Notary Public, State of Texas
Comm. Expires 01-19-2020
Notary ID 130501385
```

This instrument was acknowledged before me on November 5, 2016, by Grantors: Jeffrey L. Mueller, Belinda G. Breen, Robert J. Mueller.

_____
Notary Public, State of Texas


THE STATE OF TEXAS        §

§

COUNTY OF BEXAR        §

```
CARY L. MUELLER
Notary Public, State of Texas
Comm. Expires 01-19-2020
Notary ID 130501385
```

This instrument was acknowledged before me on November 5, 2016, by initial Trustees: Jeffrey L. Mueller, Belinda G. Breen, and Robert J. Mueller.

_____
Notary Public, State of Texas


The MB Hale Ohana Revocable Trust Agreement      Page 15 of 15

OHANA 000017

# EXHIBIT D

**EXHIBIT**

**85**

HO-14036

**Wire Full Transaction Report**

| | | | |
|---|---|---|---|
| **Channel Reference Number (SNDR REF NUM):** | | **Transaction Type (TYP):** FTR | |
| **Original Channel (SRC):** PHN | | **Post Date:** 11/15/2016 10:06:34 AM | |
| **Unique Transaction ID:** | | **ADV:** FED | |
| **Debit Amount (AMT):** 135000 | | **Credit Amount (AMT):** 135000 | |
| **Debit Currency (CUR):** USD | | **Credit Currency (CUR):** USD | |
| **Debit Account (DBT):** | | **Credit Account (CDT):** | |
| **Debit Value Date (DEBIT VAL):** 11/15/2016 12:00:00 AM | | **Credit Value Date (CREDIT VAL):** 11/15/2016 12:00:00 AM | |

**Wire Transaction Bank Details**

| Data Type: | DEBIT ADDRESS | CREDIT ADDRESS | BENEFICIARY |
|---|---|---|---|
| **Bank ID:** | | | |
| **Bank Code:** | | | |
| **Account ID:** | 8487 | | |
| **Bank Name:** | POLICY SERVICES, INC. | FIRST HAWAIIAN BANK | OLD REPUBLIC TITLE AND ESCROW OF |
| **Address:** | 9635 SAVONA WINDS DR DELRAY BEACH FL 33446-9756 | HONOLULU, HI | HAWAII |
| **Details:** | | | FFC ESCROW #6828007699 |

**Page 39 of 122**

# EXHIBIT E

# ★ ★ ★ ★
# ★ OLD REPUBLIC TITLE & ESCROW OF HAWAII
# ★ ★ ★ ★

4-356 G Kuhio Highway • Kapaa HI • 96746 • (808) 821-6808 • FAX (866) 749-0445

MB Hale Ohana Revocable Trust dated November 5, 2016
1524 Beall Street
Houston, TX 77008

Date: November 28, 2016
Escrow No.: 6828007699-PB
Escrow Officer: Preston Brede
Settlement Date: November 29, 2016

Property:  4330 Kauai Beach Drive, D-10, Lihue, HI 96766

## Buyer's Settlement Statement

| Item | | Debits | Credits |
|---|---|---|---|
| Sales Price | | 265,000.00 | |
| Deposit to Escrow | | | 275,000.00 |
| Deposit by Robert Mueller | 5,000.00 | | |
| Deposit by MB Hale Ohana Revocable Trust Agreement dated November 5, 2016 | 135,000.00 | | |
| Deposit by MB Hale Ohana Revocable Trust Agreement dated November 5, 2016 | 135,000.00 | | |
| Prorata R.E. Taxes, 11/29/16 to 01/01/17, 32 days @ $6.8907 | | 220.50 | |
| Homeowners Association Management Fees | | | |
| Transfer Fee to Kauai Beach Villas AOAO | | 200.00 | |
| Homeowners Association Fees | | | |
| December Dues to Kauai Beach Villas AOAO | | 1,567.83 | |
| HOA Proration 11/29/16 to 12/01/16, 2 days @ $52.261 | | 104.52 | |
| Escrow Fees to Old Republic Title & Escrow of Hawaii, Ltd. | | 533.38 | |
| Additional Charges | | | |
| Mailing/Handling Fee to Old Republic Title & Escrow of Hawaii, Ltd. | 104.17 | 104.17 | |
| Title Charges | | | |
| CLTA Standard Owner's to Old Republic Title & Escrow of Hawaii, Ltd. | | 316.40 | |
| Recording Fees | | 31.00 | |
| Deed to Kauai County | 31.00 | | |
| Due To Buyer | | 6,922.20 | |
| | | | |
| Total | | 275,000.00 | 275,000.00 |

Certified to be a True and Correct copy of the ORIGINAL
OLD REPUBLIC TITLE & ESCROW OF HAWAII

By: _____

# EXHIBIT F

**EXHIBIT**

**86**

HO-14036

## Wire Full Transaction Report

| | | | |
|---|---|---|---|
| **Channel Reference Number (SNDR REF NUM):** GW00000018152671 | | **Transaction Type (TYP):** FTR | |
| **Original Channel (SRC):** GP0 | | **Post Date:** 8/10/2018 4:44:35 AM | |
| **Unique Transaction ID:** | | **ADV:** FED | |
| **Debit Amount (AMT):** 135000 | | **Credit Amount (AMT):** 135000 | |
| **Debit Currency (CUR):** USD | | **Credit Currency (CUR):** USD | |
| **Debit Account (DBT):** | | **Credit Account (CDT):** | |
| **Debit Value Date (DEBIT VAL):** 8/10/2018 12:00:00 AM | | **Credit Value Date (CREDIT VAL):** 8/10/2018 12:00:00 AM | |

### Wire Transaction Bank Details

| Data Type: | DEBIT ADDRESS | CREDIT ADDRESS | REMITTER | BENEFICIARY |
|---|---|---|---|---|
| **Bank ID:** | | | | |
| **Bank Code:** | | | | |
| **Account ID:** | 3487 | | | |
| **Bank Name:** | POLICY SERVICES, INC. | IBERIABANK | POLICY SERVICES, INC. | MB Hale Ohana Revocable Trust |
| **Address:** | 9635 SAVONA WINDS DR DELRAY BEACH FL 33446-9756 | 200 WEST CONGRESS STREET LAFAYETTE LA 70501 | PO BOX 691610 SAN ANTONIO TX 782691610 | |

**Details:**

SEC-RFPA-WFB-E-0006045

# EXHIBIT G

FINAL  BUYER  STATEMENT

BELINDA G. BREEN
1524 BEALL ST
HOUSTON TX 77008

ESCROW NO: A6-191-0912-0196-0
RPT DATE : 5/29/2019
CLOSE DT : 5/29/2019
PROPERTY : PILI MAI AT PO'IPU
TMK      (4)2/8/014/033  CPR:0286
ADDRESS   2611 KIAHUNA PLANTATION DR
          APT 7-E
          KOLOA HI 96756

ESCROW AGENT:

Lender:  GUARANTEED RATE
Loan No.: 192541410

TITLE GUARANTY ESCROW SERVICES, INC.
    MAIN OFFICE
    235 QUEEN ST
    HONOLULU HI 96813

CONTRACT DATE  :  7/27/2018

ATTN CHELSEA PARK

----------------------------------------------------------------------

| DESCRIPTION | DEBITS/CHARGES | CREDITS |
|---|---|---|
| Sales/purchase price | 944,968.00 | |
| Initial deposit | | 5,000.00 |
| Additional deposit | | 325,000.00 |
| Interest earned | | 173.08 |
| INVESTMENT FEE | | 25.00 |
| Mortgage Loan Proceeds | | 719,439.21 |

Prorata items as of 5/29/2019

| | | | | |
|---|---|---|---|---|
| R.P. taxes | 05/29/19 to 07/01/19 @ | 392.20/6M | 69.72 | |
| Title insurance prem to TITLE GUARANTY OF HAWAII, LLC | | | 1,225.00 | |
| Document prep to MCCORRISTON MILLER MUKAI & MACKINNO | | | 418.85 | |
| Mobile Notary to BANCSERV INC | | | 200.00 | |
| Traffic Improvement Fee to DIRECTOR OF FINANCE | | | 250.00 | |
| 2014 IS250 PAYOFF to LEXUS FINANCIAL SERVICES | | | 17,161.11 | |
| Payoff to WELLS FARGO | | | 35,906.42 | |
| Paydown to VOLKSWAGEN CREDIT | | | 10,915.50 | |
| Insurance to SEACOAST BROKERS LLC | | | 1,018.74 | |
| Maintenance Fees to ASSOCIA HAWAII | | | 825.69 | |
| 5/29-6/1 | | 51.61 | | |
| 1 MONTH | | 774.08 | | |
| Escrow fee to TITLE GUARANTY ESCROW | | | 1,019.76 | |
| Record'g/filing fee | | | 123.00 | |
| Conveyance tax | | | 2,362.40 | |
| Start-up fee to ASSOCIA HAWAII | | | 1,548.16 | |
| Credit Card Paydown to BARCLAYS BANK | | | 7,795.80 | |
| Credit Card Paydown to LOWE'S/SYNCHRONY BANK | | | 5,390.39 | |
| Credit Card Paydown to CARDMEMBER SERVICES | | | 7,586.44 | |
| Credit Card Paydown to CARDMEMBER SERVICES | | | 6,604.26 | |
| Credit Card Paydown to CITI CARDS | | | 264.17 | |
| Credit Card Paydown to HOME DEPOT CREDIT SERVICES | | | 1,391.97 | |
| Refund to Buyer(s) | | | 2,591.91 | |

| TOTAL | 1,049,637.29 | 1,049,637.29 |
|---|---|---|

The undersigned read and understands the Controlled Business Arrangement
Disclosure Statement from Title Guaranty Escrow Services, Inc.

Breakdown of Receipts:

| Payor | Dated | Description | Amount |
|---|---|---|---|
| MB HALE OHANA TRUST | 7/05/2018 | PAYMENT 1 | 5,000.00 |

STATEMENT IS CONTINUED - THE 2ND PAGE ATTACHED HERETO IS A PART HEREOF. DATED: 5/29/2019

OHANA 000019

| | | | |
|---|---|---|---|
| MB HALE OHANA REVOCABLE TRUST | 8/13/2018 | PAYMENT 2 | 88,813.80 |
| MB HALE OHANA REVOCABLE TRUST | 8/13/2018 | PAYMENT 3 | 46,906.90 |
| MB HALE OHANA TRUST | 7/26/2018 | INVESTMENT FEE | 25.00 |
| MB HALE OHANA REVOCABLE TRUST | 8/13/2018 | BALANCE OF DOWN | 279.30 |
| BELINDA G BREEN JEFFREY L MUELLER | 5/23/2019 | BALANCE OF DOWN | 171,000.00 |
| ROBERT MUELLER | 5/24/2019 | BALANCE OF DOWN | 18,000.00 |

--------------------------------------------------------------------------------

NAME OF ADDITIONAL BUYER(S)            NAME OF SELLER(S)
JEFFREY L. MUELLER                     KIAHUNA FAIRWAYS LLC
1524 BEALL ST                          55 MERCHANT  ST STE 3000
HOUSTON TX 77008                       HONOLULU HI 96813

--------------------------------------------------------------------------------

   NAME OF LENDER
GUARANTEED RATE
98-199 KAMEHAMEHA HWY STE C-01
AIEA, HI  96701

   LIST OF ADDITIONAL PROPERTY(S)
PROPERTY : PILI MAI AT PO'IPU
TMK      : (4)2/8/014/033 0000
ADDRESS  :

--------------------------------------------------------------------------------

If you have purchased title insurance in this transaction, you may be eligible for a
title insurance premium credit if you close a future transaction involving this
property with Title Guaranty within the next five years.


MAINTENANCE (if applicable) is your responsibility and must
be paid by you direct to the agency that collects it.

REAL PROPERTY TAXES (if applicable) are your responsibility
and must be paid by you direct to the agency that collects
it.

HOME EXEMPTIONS ONLY - If you intend to reside on the
property you have just purchased, you are allowed a
Homeowners Exemption against your Real Property Taxes.
Application should be made to the City and County Director
of Finance in the respective counties.  Contact the
applicable County tax office for their application
deadlines.

TAX NOTE - The County Tax Office may not send you a tax bill
in time for the next payment. Payment dates are:  first
installment, Aug 20;  2nd installment, Feb 20.  Be sure
to contact the tax office if you do not receive a billing
30 days prior, and obtain the amount due.

FIRPTA/HARPTA - Escrow holds master FIRPTA & HARPTA
Exemption forms.


STATEMENT IS CONTINUED - THE 3RD PAGE ATTACHED HERETO IS A PART HEREOF.  DATED:  5/29/2019

OHANA_000020

# EXHIBIT H

1              IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE WESTERN DISTRICT OF TEXAS
2                    SAN ANTONIO DIVISION

3   IN RE:                    *
                              *
4                             *   BANKRUPTCY NO.
    DEEPROOT CAPITAL          *   21-51523-MMP
5   MANAGEMENT, LLC, ET AL.,  *
                              *   LEAD CASE
6                             *   JOINTLY ADMINISTERED
    DEBTORS.                  *
7

8

9            VIDEOTAPE RULE 2004 EXAMINATION

10                          OF

11              JEFFREY L. MUELLER,

12         INDIVIDUALLY AND AS CO-TRUSTEE OF THE

13            MB HALE OHANA REVOCABLE TRUST

14                    JUNE 2, 2022

15

16

17         VIDEOTAPE RULE 2004 EXAMINATION of JEFFREY

18  L. MUELLER, produced as a witness on behalf of John

19  Patrick Lowe, Chapter Trustee for the Jointly

20  Administered Bankruptcy Estate of Deeproot Capital

21  Management, LLC, et al., and duly sworn, was taken in

22  the above-styled and numbered cause on June 2, 2022,

23  between the hours of 10:09 a.m. and 11:51 a.m. before

24  Shan Morris Blanchard, Certified Shorthand Reporter in

25  and for the State of Texas, reported by computerized

1   stenotype machine at the offices of Castillo Snyder,

2   P.C., 700 N. St. Mary's Street, Suite 1560, San

3   Antonio, Texas 78205 pursuant to Federal Rules and the

4   provisions stated on the record or attached hereto.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              A P P E A R A N C E S

 2

 3   FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE
     JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT
 4   CAPITAL MANAGEMENT, LLC., ET AL:

 5       Mr. Randall A. Pulman
         Mr. Drew Mallender (via Zoom)
 6       Pulman, Cappuccio & Pullen, L.L.P.
         2161 N.W. Military Highway, Suite 400
 7       San Antonio, Texas 78213
         Telephone: 210-222-9494
 8       Fax: 210-892-1610
         E-mail:  rpulman@pulmanlaw.com
 9               dmallender@pulmanlaw.com

10   FOR THE U.S. SECURITIES & EXCHANGE COMMISSION:

11       Ms. Angela D. Dodd (via Zoom)
         Mr. David Nasse (via Zoom)
12       Ms. Kristen M. Warden (via Zoom)
         U.S. Securities & Exchange Commission
13       801 Brickell Avenue, Suite 1950
         Miami, Florida  33131
14       Telephone: 312-353-7390
         E-mail:  dodda@sec.gov
15               nassed@sec.gov
                 wardenk@sec.gov
16

     FOR THE WITNESS:
17
         Mr. Edward C. Snyder
18       Castillo Snyder, P.C.
         700 N. St. Mary's Street, Suite 1560
19       San Antonio, Texas 78205
         Telephone: 210-630-4200
20       Fax: 210-630-4210
         E-mail: esnyder@casnlaw.com
21

     WITNESS:
22
         Jeffrey L. Muller
23

     CERTIFIED SHORTHAND REPORTER:
24
         Shan Morris Blanchard
25
```



```
 1   APPEARANCES CONTINUED:

 2       Robert Brill

 3   ALSO PRESENT:

 4       Belinda Breen
         Benjamin Wulfe
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    THE VIDEOGRAPHER:  We are on the record

2    on June 2nd, 2022, at 10:07 a.m.  This is the

3    videotaped deposition of Jeffrey L. Mueller in the

4    matter of 2004 Examination In Re:  Deeproot Capital

5    Management, LLC, et al., Bankruptcy Number 21-51523 in

6    the United States dis -- sorry -- the United States

7    Bankruptcy Court for the Western Division -- District

8    of Texas, San Antonio Division.

9         This deposition is being held at the office of

10   Castillo and Snyder at 700 North St. Mary's Street,

11   Suite 1560.  My name is Robert Brill, I'm the

12   videographer, and Shan Blanchard is the court reporter.

13        Counsel that is present, please state your name

14   and firm affiliation for the record, please.

15                    MR. PULMAN:  Randy Pulman.  I'm here for

16   John Patrick Lowe, Chapter 7 Trustee for the

17   Consolidate Bankruptcy Estates of Policy Services and

18   Deeproot Capital Funds, et al.

19                    MR. SNYDER:  Ed Snyder on behalf of the

20   examinees, Mr. Jeff Mueller, and -- well, Mr. Jeff

21   Mueller.

22                    THE VIDEOGRAPHER:  Okay.  If I could also

23   have everyone that's on Zoom.

24                    MS. DODD:  This is Angie Dodd, David

25   Nasee and Kristen Warden on behalf of the Securities

1    and Exchange Commission.

2              THE REPORTER:  I think that's everyone.

3              MR. PULMAN:  We have one more on Zoom.

4    That's probably from my office, just listening in.

5    Drew Mallender may -- may be dialing in on Zoom.  He

6    works with me.  Okay.

7              JEFFREY L. MUELLER, the witness, being duly

8    cautioned and sworn to tell the truth, the whole truth

9    and nothing but the truth, testified as follows:

10             (Time: 10:09 a.m.)

11                       EXAMINATION

12   BY MR. PULMAN:

13      Q.   Good morning, Mr. Mueller.

14      A.   Good morning.

15      Q.   Would you please state your full name for the

16   record?

17      A.   Jeffrey Lewis Mueller.

18      Q.   Mr. Mueller, my name is Randy Pulman.  I'm the

19   lawyer hired by John Patrick Lowe.  We call him Pat

20   Lowe for the bankruptcy estates of Policies Services,

21   Deeproot Capital Growth Fund, a number a Deeproot

22   entities.  You and I met each other here just before

23   the examination started?

24      A.   Yes.

25      Q.   We've never met each other before, have we?

```
 1   time.

 2       Q.   (BY MR. PULMAN)  No -- no rentals and that's

 3   why nothing appears, and there were some utilities.

 4   Somebody paid $166.00 probably for electricity?

 5       A.   Uh-huh.

 6               (Exhibit Number 9 marked.)

 7       Q.   (BY MR. PULMAN)  All right.  Now, this one's

 8   got me a little confused, but that's not hard.  Can you

 9   tell me what Exhibit 9 is?

10       A.   This is a settlement statement for the purchase

11   of the Pili Mai condo.

12       Q.   Spell Pili Mai?

13       A.   P-i-l-i, space, M-a-i at Poipu, P-o-i-p-u.

14               MR. PULMAN:  Got it?  Okay.

15       Q.   (BY MR. PULMAN)  All right.  And that's the

16   property description in the upper right, Pili Mai at

17   Poipu?

18               MS. BREEN:  Poipu.

19       A.   Poipu, yes, 2611 Kiahuna Plantation Drive,

20   Apartment 7-E.

21       Q.   (BY MR. PULMAN)  Now, this buyer statement --

22   well, did the trust buy this property at Pili Mai at

23   Poipu?

24       A.   No.

25       Q.   Who bought it?
```

1    A.   Belinda and I bought it.

2    Q.   You and Belinda bought it?

3    A.   Yes.

4    Q.   All right.  Did Robert -- and this was not

5    bought in the trust?

6    A.   No.

7    Q.   Okay.  This was bought outside the trust?

8    A.   Correct.

9    Q.   And did Robert Mueller make any contribution --

10   A.   Yes.

11   Q.   -- to the purchase of this?

12   A.   Yes.

13            MR. SNYDER:  Let him finish asking the

14   question --

15            THE WITNESS:  Oh, I'm sorry.

16            MR. SNYDER:  -- before you answer.

17   Q.   (BY MR. PULMAN)  Remember we talked about that?

18   A.   Yes, I understand.  Sorry.

19   Q.   Not -- not a problem.  Okay.  Did -- did Robert

20   Mueller make any contribution to the purchase of the

21   Pili Mai at Poipu property?

22   A.   Yes.

23   Q.   All right.  How much did he contribute?

24   A.   He contributed 135,000.

25   Q.   Okay.



1    A.    Plus 18,000.

2    Q.    All right.  So down at the bottom of Exhibit 9

3    it says, "MB Hale Ohana Trust, 7/5/2018 payment one,

4    $5,000.00," at the very bottom there -- well, almost to

5    the bottom.

6    A.    Okay.

7    Q.    Did I read that correctly?

8    A.    Yes.

9    Q.    All right.  So some money apparently did come

10   out of the trust to purchase -- can I just call this

11   pay -- Pili Mai?

12   A.    Okay.

13   Q.    Is that okay?  Will we all know what I'm

14   talking about?

15           MS. BREEN:  Yeah.

16   Q.   (BY MR. PULMAN)  Okay.  Did -- so the

17   Hale Ohana -- the Hale Ohana Trust did contribute

18   $5,000.00 to the purchase of the Pili Mai property.  Is

19   that a correct statement, sir?

20   A.    I don't remember that, this happening like

21   this.  I don't remember this happening like this.

22   Q.    Okay.  Any reason to believe that this entry on

23   the title company records is incorrect?

24   A.    Let's see.  I -- I'm looking at it right there

25   and I see it, but I don't remember that happening like

1   that.

2       Q.   Okay.  If we turn the page on -- oh, if we turn

3   the page, there's several more entries --

4       A.   Uh-huh.

5       Q.   -- from the Hale Ohana Revocable Trust for

6   88,813 and then for 46,906.90.

7       A.   Uh-huh.

8       Q.   And then another one for $25.00 and $279.00.

9       A.   Uh-huh.

10      Q.   Did those monies come from the Hale Ohana Trust

11  or did they come from somebody else?

12      A.   They came from Robert Mueller, and whenever he

13  sent money to us, he sent it to the trust bank account.

14  That was the wiring instructions that he had.

15      Q.   And then you moved it from the trust bank

16  account --

17      A.   And we moved it to -- yes.

18      Q.   Okay.  And then Belinda Breen and Jeffrey

19  Mueller put in another 171,000?

20      A.   Yes.

21      Q.   And then Robert Mueller put in 18,000?

22      A.   Uh-huh.

23      Q.   Okay.  Did you make a conscious decision not to

24  put -- buy this property in the trust?

25      A.   Yes.



1    Q.    And why was that?

2    A.    Because the trust -- I mean, the -- the

3    mortgage process was quite --

4    Q.    Cumbersome, I bet, is the word you're looking

5    for.

6    A.    It was difficult.  And this was the way in

7    which we can buy -- and also this was going to be our

8    retirement home.  So it was going to go in our name and

9    we were trying to do the mortgage and the process in

10   our name only.

11   Q.    Okay.  So then why was -- if it was going to be

12   your home, why did Robert put in any money?

13   A.    He gifted it to us.

14   Q.    Oh, I did see some gift letters in here.

15   A.    Yes, he -- he basically gifted us $135,000.00

16   so that we can live in Hawaii and be in our retirement

17   home.

18   Q.    I hope one day my son gifts me money like that,

19   too, but I suspect it will be the other way around.

20   Okay.  So tell me again why he gifted it to you?

21   A.    Because we needed help in getting into the home

22   and so he -- he decided to gift it to us so that we can

23   retire in Hawaii.  This was what we wanted to do.

24   Q.    Okay.  Okay.  And so you closed on the house,

25   he gifted you the money, and did y'all actually live in



# EXHIBIT I

# Gift Letter

I/We do hereby certify to the following:

I/We (Donor) have made a gift of $ _135,000.00 (One Hundred Thirty-Five Thousand and xx/100)_ dollars to the Borrower(s) named below, and no repayment of this gift is expected or implied either in the form of cash or future services of the recipient.

**Jeffrey L Mueller**

**Belinda G Breen**

This gift is to be applied toward the purchase of the property located at:

**2611 KIAHUNA PLANTATION DRIVE APT 7E**

**KOLOA, HI 96756**

The source of funds for this gift is:

Bank Name: ___Wells Fargo_____

Type of Account: [ x ] Checking   [  ] Savings   [  ] Other

Account No.: _▓▓▓▓▓8487_____


Relationship to Borrower: ___Son_____

Donor's name: ___Robert J. Mueller_____

Street address: ___12015 Treewell Gln_____

City: ___San Antonio_____ State: _TX_____ Zip: _78249_____

Donor Telephone: ___210_____ - ___602_____ - __8724_____

Donor Email: __menion95@hotmail.com_____

Please provide the best time we may contact you in the event we have any questions:

[  ] Morning [  ] Mid-day [  ] Evening [  ] Other _____

Have the Funds already been transferred to the recipient [ x ] Yes [  ] No

_____          ___5/7/2019_____
* Donor Signature                                                                          Date


_____          _____
* Borrower Signature (Recipient)                                                 Date


_____          _____
* Borrower Signature (Recipient)                                                 Date


**If the gift funds are in the homebuyer's account,** Guaranteed Rate must document the transfer of the funds from the donor to the Recipient by obtaining a copy of the canceled check or other withdrawal document showing the withdrawal is from the donor's personal account, along with the Recipient's deposit slip or bank statement that shows the deposit.

**If the gift funds are to be provided at closing,** the transfer of the gift funds is by certified check made on the donor's account, the Guaranteed Rate must obtain a bank statement showing the withdrawal from the donor's personal account as well as a copy of the certified check. If the donor purchased a cashier's check, money order, official check or any other type of bank check as a means of transferring the gift funds, then the donor must provide a withdrawal document or canceled check for the amount of the gift showing the funds came from the donor's personal account. If the donor borrowed the gift funds and, thus, cannot provide the documentation from his or her bank or other savings account, the donor must provide evidence that those funds were borrowed from an acceptable source, i.e., not from a party to the transaction including the mortgage lender.

**When the transfer occurs at closing,** Guaranteed Rate must obtain verification the closing agent received funds from the donor for the amount of the gift.


Please Note: Upon the signature(s) of this gift letter, I/We hereby certify that any funds given to the homebuyer were not made available to the donor from any person or entity with an interest in the sale of the property including the seller, real estate agent, broker, builder, or loan officer, or any other entity associated with this transaction.

# EXHIBIT J

# Fidelity National Title and Escrow of Hawaii, Inc.

3016 Umi Street, Suite 220, Lihue, HI 96766
*Phone: 808-977-3277 | Fax: 855-201-9367*

## FINAL SELLER'S STATEMENT

**Settlement Date:** May 20, 2021
**Disbursement Date:** May 20, 2021

**Escrow Number:** 192100434
**Escrow Officer:** Preston Brede
**Email:** Preston.Brede@fnf.com

**Recording Date:** May 20, 2021

**Buyer:** Gary Lee Schmauch and Sharlene Leiko Schmauch
2230 S. Steen Road
Spokane Valley, WA 99037

**Buyer:** Kari Kristie Lister
5892 Ahakea Street
Kapaa, HI 96746

**Buyer:** Brett Eric Schmauch
280 Hua Place
Kapaa, HI 96746

**Seller:** the MB Hale Ohana Revocable Trust dated November 5, 2016
2611 Kiahuna Plantation Drive
Unit 7E
Koloa, HI 96756

**Property:** 4330 Kauai Beach Drive Unit D10
Lihue, HI 96766

*(handwritten: Robert 269,000 / Jeff & Bel 226,860 / #8000.00 Paid to IRS)*

| | $ DEBITS $ | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Sale Price of Property | | 525,000.00 |
| Seller Credit | 250.00 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| HOA Prorations/Credit Seller Monthly at $1,855.22    05/20/21-06/01/21 ($1,855.22 / 30 X 11 days) | | 680.25 |
| County Taxes at $1,600.62    05/20/21 to 07/01/21 ($1,600.62 / 180 X 41 days) | | 364.59 |
| **COMMISSIONS** | | |
| Commission - Listing Agent    Reside Kauai, LLC $525,000.00 @ 2.5000% = $13,125.00 | 13,125.00 | |
| Commission - Selling Agent    Blue Jade Real Estate $525,000.00 @ 2.5000% = $13,125.00 | 13,125.00 | |
| **TITLE & ESCROW CHARGES** | | |
| Title - Escrow Fee    Fidelity National Title and Escrow of Hawaii, Inc. | 1,153.40 | |
| Title - Owner's Title Insurance    Fidelity National Title and Escrow of Hawaii, Inc. | 1,035.00 | |
| Policies to be issued: Owners Policy   Coverage: $525,000.00   Premium: $1,955.00   Version: ALTA Homeowner's Policy of Title Insurance 2013 | | |
| **GOVERNMENT CHARGES** | | |
| Conveyance Tax ($787.50)   Investor    Fidelity National Title and Escrow of Hawaii, Inc. | 787.50 | |
| **MISCELLANEOUS CHARGES** | | |
| Drafting of Deed    Law Office Of Robert Y. Nakamoto, Jr. | 172.77 | |

| | $ DEBITS $ | CREDITS |
|---|---|---|
| **MISCELLANEOUS CHARGES** | | |
| Mobile Notary Fee   BancServ | 150.00 | |
| Reimburse for Condo Docs   Nancy Williams | 150.00 | |
| Termite Inspection   Grady Pest Solutions, Inc. | 235.60 | |
| **Subtotals** | 30,184.27 | 526,044.84 |
| **Balance Due TO Seller** | **495,860.57** | |
| **TOTALS** | 526,044.84 | 526,044.84 |

**THIS IS A CERTIFIED COPY OF THE ORIGINAL DOCUMENT(S) BY FIDELITY NATIONAL TITLE AND ESCROW OF HAWAII, INC.**

Fidelity National Title and Escrow of Hawaii, Inc., Settlement Agent

**SAVE THIS STATEMENT FOR INCOME TAX PURPOSES**

# EXHIBIT K

# Title Guaranty Escrow Services, Inc.

3417 E. Poipu Rd., Suite 106, Koloa, HI 96756
Phone: (808)742-8485 | Fax: (808)742-8495

## FINAL SELLER'S STATEMENT

| | |
|---|---|
| **Settlement Date:** November 26, 2021 | **Escrow Number:** 7322120759 |
| **Disbursement Date:** November 26, 2021 | **Escrow Officer:** Joanna Stearns |
| | **Email:** Joanna.Stearns@tghawaii.com |

**Buyer:** TIMOTHY F MCBRIDE and KIMBERLY S MECHLING
1105 Venetian St
Keller, TX 76262

**Seller:** BELINDA G BREEN and JEFFREY L MUELLER
2611 Kiahuna Plantation Dr , Apt 7E
Koloa, HI 96756-7533

**Property:** 2611 Kiahuna Plantation Dr , Apt 7E
Koloa, HI 96756-7533

*[handwritten: Pd $13,000 to IRS for Est Tax]*

| | | $ DEBITS $ | CREDITS |
|---|---|---|---|
| **FINANCIAL CONSIDERATION** | | | |
| Sale Price of Property | | | 1,675,000.00 |
| **PRORATIONS/ADJUSTMENTS** | | | |
| County Taxes at $1,143.75 | 11/26/21 to 01/01/22 ($1,143.75 / 180 X 35 days) | | 222.40 |
| Maintenance Fee Monthly at $852.75 | 11/26/21-12/01/21 ($852.75 / 30 X 5 days) | | 142.13 |
| **TITLE & ESCROW CHARGES** | | | |
| Title - Release Tracking | Title Guaranty of Hawaii, LLC | 55.00 | |
| Title - Settlement Agent Fee | Title Guaranty Escrow Services, Inc. | 1,837.70 | |
| Title - Attorney Doc Prep Fee Invoice No.2437322120759 | Pro-Docs Hawaii Llc | 172.77 | |
| Title - Owner's Title Insurance (Short Term Rate 75%) | Title Guaranty of Hawaii, LLC | 2,205.00 | |
| Policies to be issued: | | | |
| Owners Policy | | | |
| Coverage: $1,675,000.00  Premium: $3,675.00  Version: Hawaii Standard Owner's Policy 2010 | | | |
| **GOVERNMENT CHARGES** | | | |
| Conveyance Tax ($6,700.00) | Registrar of Conveyance | 6,700.00 | |
| **PAYOFFS** | | | |
| Payoff of First Mortgage Loan ($701,827.71) 4016947312 | Arvest Central Mortgage Company | | |
| Principal Balance | | 699,089.93 | |
| Interest To 11/30/21 | | 2,707.78 | |
| Release Fee | | 30.00 | |
| **HOA CHARGES** | | | |
| Processing Fee | Associa Hawaii | 287.96 | |
| **MISCELLANEOUS CHARGES** | | | |
| Cleaning Carpet | Blue Water Carpet Cleaning | 497.37 | |
| Cleaning Final | Greene Guest Services LLC | 577.22 | |
| Condo Docs 53-01607894 | Vacation Realty Hawaii | 480.00 | |

| | $ DEBITS | $ CREDITS |
|---|---|---|
| **MISCELLANEOUS CHARGES** | | |
| Real Estate Commission - Listing    Vacation Realty Hawaii | 41,875.00 | |
| Real Estate Commission - Selling    Exp Realty | 41,875.00 | |
| Termite Inspection    Grady Pest Solutions | 314.14 | |
|   32482 | | |
| **Subtotals** | 798,704.87 | 1,675,364.53 |
| **Balance Due TO Seller** | **876,659.66** | |
| **TOTALS** | 1,675,364.53 | 1,675,364.53 |

(7322120759/137) November 26, 2021 08:27 AM    OHANA 000026