IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | |
| LLC, ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

TRUSTEE'S MOTION TO APPROVE
(A) SALE OF PINBALL PROPERTY,
(B) SALE PROCEDURES, STALKING HORSE AGREEMENT
AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF PINBALL PROPERTY
FREE AND CLEAR OF LIENS AND INTERESTS PURSUANT TO 11 USC §363(B) AND (F), AND
(C) THE FORM OF NOTICE FOR THE SALE OF PINBALL PROPERTY

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

John Patrick Lowe, Chapter 7 Trustee of the above captioned jointly administered Bankruptcy

Estates ("**Trustee**"), on behalf of debtors deeproot Pinball, LLC, deeproot Tech, LLC, deeproot

Studios, LLC, and Wizard Mode Media, LLC whose bankruptcy cases are being jointly administered

under lead case *In re: deeproot Capital Management, LLC, et al.*, Case No. 21-51523, by and through

Trustee's counsel, Pulman, Cappuccio & Pullen, LLP, hereby files this *Trustee's Motion to Approve*

*(A) Sale of Pinball Property, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in*

*Connection with the Sale of Pinball Property Free and Clear of Liens and Interests Pursuant to 11*

*U.S.C. §363(b) and (f), and (C) the Form of Notice for the Sale of Pinball Property* (the "**Sale**

**Motion**"), concerning certain property of the Estates, including, but not limited to, the estates of

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth *5* Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates**" or "**Estates**".

deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, and Wizard Mode Media, LLC (each a "**Debtor**" and together, the "**Debtors**"), described as:

All interests of the Debtors in and to certain pinball related tangible and intangible property, as described on Exhibit A attached hereto (the "**Pinball Property**").

In support of the Sale Motion, Trustee respectfully represents as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Sale Motion pursuant to sections 157 and 1334 of title 28 of the United States Code.  28 U.S.C. §§ 157, 1334.  This is a core proceeding pursuant to section 157(b)(2).  28 U.S.C. §§ 157(b)(2).  Venue is proper before this Court pursuant to sections 1408 and 1409 of title 28 of the United States Code.  28 U.S.C. §§ 1408-1409.

## II.   PROCEDURAL HISTORY

2.      On December 9, 2021 (the "**Petition Date**"), the Debtors each filed a voluntary petition under chapter 7, title 11 of the United States Code, 11 U.S.C.  §§ 101-1532 (as amended, the "**Bankruptcy Code**").  The Court authorized that the Debtors' bankruptcy cases, along with those of eight other debtor affiliates, be jointly administered under lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 (the "**Jointly Administered Case**").

3.      On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

## III.   SUMMARY

### A.  Background

4.      Debtors and the other jointly administered debtors (collectively referred to herein as the "**deeproot Affiliates**"), engaged in a Ponzi like scheme orchestrated by their principal, Mr. Robert Mueller ("**Mueller**"), who controlled -- as the sole owner, officer and director of each of the deeproot

Affiliates -- all of their operations. Upon information and belief, Mueller, through several of the deeproot Affiliates, raised in excess of $60,000,000 from individual investors over the past decade.

5.        At some point beginning in 2017, the funds raised from individual investors were funneled to Debtors from other deeproot Affiliates through inter-company transfers, for the most part without the individual investors' knowledge or consent, to fund the Debtors' effort to develop what Mueller apparently believed would be a new generation of pinball machines.

6.        Debtors, deeproot Pinball, LLC, and deeproot Tech, LLC, developed and designed the hardware and software to be used in the pinball machines. Debtors, deeproot Studios LLC, and Wizard Mode Media, LLC, created and produced art animation and related content in connection with the development of the pinball machines.  Unfortunately for the individual investors and other creditors of the Debtors and the deeproot Affiliates, Mueller was no pinball wizard. As reflected in the financial statements and schedules of the Debtors and the deeproot Affiliates, none of the jointly administered debtors ever had any net income and, in most cases, had no revenue.

7.        On August 20, 2021, the United States Securities and Exchange Commission (the "**SEC**") filed a civil action[2] against most of the jointly administered debtors and Mueller for federal security fraud violations, and some of Mueller's immediate family members as relief parties. An injunction was entered prohibiting the solicitation of additional funds. Shortly thereafter, chapter 7 bankruptcy petitions were filed for each of the jointly administered debtors.

8.        As of the Petition Date, the Debtors had approximately twelve different pinball machines in various stages of development (the "**Deeproot Machines**").  To the Trustee's knowledge and belief, only two of the Deeproot Machines had advanced to the prototype stage (*See*, Exhibit A paragraph 11). The Deeproot Machines; the documentation, art, models, animations, designs,

---

[2] *Securities and Exchange Commission v. Robert J. Mueller, et al.*, Civil Action No. 5:21-cv-785, U.S. Dist. Ct. for the W. Dist. Of Texas, San Antonio Division.

mechanical drawings, trademarks, licenses, and digital files arising from and related to the development of the Deeproot Machines; the licenses, trademarks and patents obtained, and or applied for, by Debtors in connection with the Deeproot Machines; intellectual property acquired by the Debtors from Zidware, Inc.; and computers and other tangible property owned by Debtors, as more particularly described on Exhibit A, comprise the Pinball Property that the Trustee, through this Motion, is seeking the Court's approval and authority to sell.

**B. Sale of Pinball Property**

9.　　The Estates of Debtors, deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios LLC, and Wizard Mode Media, LLC, are the owners of the Pinball Property. The Estates of the other deeproot Affiliates may also have a direct or indirect ownership interest in the Pinball Property.  The Trustee has been approached by a potential purchaser, Turner Logic, LLC, a Texas limited liability company (the "**Purchaser**" or "**Stalking Horse Bidder**"). Purchaser has offered to purchase the Pinball Property for the purchase price of $50,000 (the "**Purchase Price**").  In the exercise of his best business judgment, Trustee has determined that entering into the Pinball Property Purchase and Sale Agreement (the "**Purchase Agreement**" or "**Stalking Horse Agreement**") with the Purchaser, in the form attached hereto as Exhibit B, is in the best interests of the Estate. Purchaser has transferred into Trustee's counsel's IOLTA account an earnest money deposit in the amount of $25,000.00 ("**Deposit on Purchase Price**") to be applied against the Purchase Price. The balance of the Purchase Price will be paid upon final approval of this Sale Motion by the Court.

10.　　Acknowledging that another purchaser may appear and offer a **Topping Bid**[3], Purchaser requires some protection. In order to facilitate the sale, Trustee has agreed to treat Purchaser as a stalking horse bidder and to provide certain protections in the event another purchaser submits a better

---

[3] A "Topping Bid" is defined in the Purchase and Sale Agreement as a bid in an amount no less than $60,000.00 for the Pinball Property, with a $25,000.00 earnest money deposit.

offer, which protections include: a break-up fee in the form of a perpetual non-exclusive license (the "**Software Copyright License**," the form of which is attached hereto as <u>Exhibit C</u>) to use the Pinball Software,[4] reimbursement of Purchaser's reasonable and necessary attorney's fees as approved by the Court and capped at $5,000.00, and treatment of the fees and associated costs, in the amount of $1,930.32, paid post-petition by Purchaser to preserve the Debtors' patents (the "**Patents**")[5], as provided in the Purchase Agreement, as an administrative expense of the Debtors' Estates ("**Bid Protections**").

### C. Notice

11.     Several creditors have filed proofs of claim in the Debtors' bankruptcy cases. Although the Trustee is of the firm conviction that none of the Debtors' creditors can assert an ownership interest in the Pinball Property, in order to ensure that each investor receives adequate notice of this sale so that each may assert whatever  rights they may hold under 11 U.S.C. 363, and to ensure that the Purchaser receives ownership of the Pinball Property free and clear of any "interest" which a creditor may hold, the Trustee requests that the Court approve the Sale Notice so that it may be served on the creditor body and those requesting notice.

### D. Concurrent Settlement of Draper 5, LLC's Post-Petition Administrative Expense Claims and Transfer of Property of the Estate of Wizard Mode Media, LLC.

12.     Debtor, Wizard Mode Media, LLC ("**Wizard**"), is the owner of certain office furnishings (the "**Office Furnishings**") and some portion of the tangible and intangible Pinball Property.  The Office Furnishings and much of the Pinball Property are in office space located at 12227 South Business Park Drive, Draper, Exhibit 84020 (the "**Premises**"), which Premises was leased by Wizard pursuant to a certain lease agreement, dated February 17, 2020, by and between

---

[4] The "Pinball Software" is defined in the Purchase and Sale Agreement as the software developed wholly or in part by Purchaser pursuant to a software development contract by and between Purchaser and deeproot Tech, LLC.  The Pinball Software is identified and described in Exhibit A, section 5.

[5] The Patents make up a portion of the Pinball Property and are identified and described in Exhibit A, sections 3 and 4.

Draper 5, LLC ("**Landlord**"), as landlord, and Wizard, as tenant (the "**Lease**"). The term of the Lease commenced on March 1, 2020, for a period of 38 months ending on April 30, 2023

13.     Wizard stopped making rent payments under the Lease as of July 2021. The Lease deposit, in the amount of $63,173.50, was thereafter applied by Landlord toward rent payments (plus penalties and interest due for overdue and unpaid rent, as provided in the Lease) for the months of August through December 2021, and towards a portion of the unpaid rent due for the month of January 2022. Landlord did not seek to lift the bankruptcy stay prior to offsetting the Lease deposit.

14.     On January 5, 2021, the Landlord filed a Proof of Claim (Claim No. 7-1) in the total amount of $47,183.31, for past due rent through January 1, 2022, late fees, and attorney fees.

15.     The Trustee did not assume the Lease within the 60-day period following the Petition Date and, therefore, pursuant to 11 U.S.C. §365(d)(1), the Lease has been deemed rejected by the Trustee.

16.     The Landlord has submitted a ledger of Lease expenses to the Trustee, claiming post-petition administrative expenses in the total amount of $214,904.91. The Trustee disputes the amount so claimed by the Landlord.

17.     Over the past several months, the Trustee and Landlord have negotiated a compromise and settlement of the Landlord's post-petition administrative expense claims (the "**Settlement Agreement**"). The Settlement Agreement is contingent upon the Court's approval of the sale of the Pinball Property, and upon the closing on the sale of the Pinball Property.

18.     As is more fully described in the Settlement Agreement, a copy of which is attached hereto as Exhibit D, Wizard and Landlord, have agreed to the following: (i) the aggregate amount of post-petition rent due to Landlord shall be equal to $15,000, and shall be an administrative expense of the estate of Wizard, (ii) as additional consideration, the Trustee shall convey the Office Furnishings to

Landlord, free and clear of all liens, claims, and encumbrances, without warranties and without recourse against the Trustee, (iii) the Purchaser, at its sole cost and expense, will use its best efforts to remove the Pinball Property from the Premises no later than November 30, 2022, (iv) if the Pinball Property has not been removed from the Premises by such date, the Landlord may remove and store the Pinball Property, the actual cost of such removal and storage is to be reimbursed to Landlord by the Purchaser, provided, however, that the total amount to be reimbursed to Landlord by Purchaser, for Landlord's removal and storage of the Pinball Property, shall not exceed $5,000; (v) Regardless of whether the Purchaser purchases the Pinball Property, if the Trustee or Purchaser has not retrieved the Pinball Property by March 31, 2023, the Landlord may sell the Pinball Property, deduct from the proceeds all costs of moving and storage, plus $15,000.00 if not previously paid by the Trustee, and transfer the remaining balance, if any, to the Purchaser or the Trustee, as the case may be; and (vi) the Landlord waives any other claim for post-petition administrative expenses in any of the jointly administered bankruptcy cases.

19.     Concurrent with the filing of this Sale Motion, the Trustee and Landlord have filed Trustee's Rule 9019 Motion to Approve Compromise and Settlement with Draper 5, LLC ("**Rule 9019 Motion**") seeking the Court's approval of the Settlement Agreement.

## V.     REQUESTED RELIEF

20.     The statutory predicates for the relief requested herein are sections 363 and 503 of the Bankruptcy Code, Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004(b) and 9014 of the Local Rules of Bankruptcy Procedure for the Western District of Texas.

## VI. <u>ARGUMENT AND AUTHORITY</u>

**A. Sale of the Pinball Property**

21.     By this Sale Motion, Trustee requests approval of the sale of the Pinball Property in accordance with the Sale Procedures (defined below) and the transfer to the Purchaser of all of the Debtors' right, title and interest in and to the Pinball Property.

22.     The Debtors' Bankruptcy Estates are not operating chapter 7 estates, and this transaction is outside of the ordinary course of business of the Debtors and the other jointly administered debtors.  Pursuant to 11 U.S.C. §363(b) and (f), the Trustee seeks approval to sell the Pinball Property to the Purchaser.

23.     Courts evaluate proposed sales outside the ordinary course of business under section 363(b) based upon the Trustee's sound business justification. S*ee Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); s*ee also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014).   "Great judicial deference is given to the Trustee's exercise of business judgment." *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (Bankr. N.D. Tex. 2005) (citing *In re Gulf States Steel*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002) (citing *In re Bakalis*, 229 B.R. 525, 531-532 (Bankr. E.D.N.Y. 1998)).  "As long as [the sale] appears to enhance a debtor's estate, court approval of a [Trustee's] decision to [sell] should only be withheld if the [Trustee's] judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code…" *Id.* (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th

Cir. 1985) (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)).

24.     The decision of the Trustee to conduct the Sale of the Pinball Property is based upon a sound business justification.  The Deeproot Machines, as discussed above, are in various stages of development, and the extent of additional development work required to complete each of the Deeproot Machines and the cost of doing so will vary by machine and is in general uncertain.  The value of the trademarks and patents is uncertain as well; it is the Trustee's best business judgment that such value can best be determined by the amount a purchaser is willing to pay for the trademarks and patents.  Such is true, in the business judgment of the Trustee, as to the value of the software and other intellectual property of the Debtors included in the Pinball Property.

25.     The Purchaser, pursuant to a certain contract to provide software development services for Debtor, deeproot Tech, LLC, built, or developed, software used by the Debtors in the development of the Deeproot Machines (the "**Pinball Software**").  As the developer of the Pinball Software the Purchaser has a unique understanding of, and interest in, the Pinball Software, and the Purchaser, in the Trustee's best business judgment, is setting a higher minimum price for the Pinball Software license, the trademarks and patents, and the Pinball Property as a whole, than might otherwise be attainable by Trustee at a public auction of the individual assets.  For these reasons, it is the Trustee's best business judgment, that the Stalking Horse Agreement will bring the highest and best price for the Pinball Property and is in the best interest of the Bankruptcy Estates, the Debtors and their creditors.

26.     The Trustee submits that the Court may authorize the sale of the Pinball Property free and clear of all liens, claims, and encumbrances based on the Trustee's sound business judgment.  Section 363(f) permits the Trustee to sell the assets free and clear of an interest if:

> a.  Applicable non bankruptcy law permits the sale of such property free and clear of such interest;

b.  such entity consents;

c.  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d.  such interest is a bona fide dispute; or

e.  such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. §363(f).  The Trustee's proposed Sale Procedures, including the right for parties to object, establish that this provision of the Bankruptcy Code is satisfied.

**B. The Purchaser is Acting in Good Faith and Negotiations have been at Arm's Length**.

27.    Trustee has made inquiry of Purchaser with respect to its connection to Debtors, the other deeproot Affiliates and insiders. In paragraph 6(f) of the Stalking Horse Agreement, Purchaser represents and warrants to Trustee with respect to his connections to the Debtors. The principal of the Purchaser is Mr. Chris Turner. Purchaser is identified as a creditor of one or more of the jointly administered debtors. Purchaser provided computer software services to the one of more the jointly administered debtors for use in the development of the Deeproot Machines. According to Mr. Turner, Purchaser did not receive any payments from any jointly administered debtor within ninety days of filing of the petition. Neither Mueller nor any other insider of the jointly administered debtors have any interest in Purchaser nor will Mueller or any other insider of the jointly administered debtors receive a financial benefit from the proposed transaction.

28.    Trustee and Trustee's counsel have been negotiating the Stalking Horse Agreement with Purchaser for several months. Negotiations have been arms-length.

### C. Stalking Horse Agreement.

29.     Subject to the provisions of this Sale Motion, Trustee has entered into the Stalking Horse Agreement, subject to the receipt and acceptance of an otherwise better Qualified Bid from a Qualified Bidder, as provided herein.

30.     The Stalking Horse Agreement contains certain customary terms and conditions, including terms providing for the reimbursement of patent filing extension payments amounting to $1,930.32, which Purchaser paid post-petition and prior to Trustee filing of this Sale Motion, a break-up fee in favor of Purchaser in the amount of $5,000.00, and the right to apply to the Court for the reimbursement of up to $5,000.00 in reasonable and necessary attorney's fees, as described in the Stalking Horse Agreement (the "**Bid Protections**").

31.     The Court should approve the Stalking Horse Agreement and Bid Protections. "[P]ursuant to § 363(b), a bankruptcy court may authorize a debtor in possession to enter into a reimbursement agreement with a potential buyer." *In re ASARCO, LLC*, 441 B.R. 813, 829 (S.D. TX 2010) (*citing*, *United States Trustee v. Bethlehem Steel Corp.* (*In re Bethlehem Steel Corp.*), Civ. No. 02-02854, 2003 WL 21738964, at *9-*10 (S.D.N.Y. July 28, 2003). "Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. Subsection 363(b) provides that a debtor-in-possession, 'after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.' " *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) (citing *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986) (quoting 11 U.S.C. § 363(b)(1)). "In such circumstances, 'for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification, good business judgment, or sound business reasons.'" *Id.* "The business judgment standard in section 363 is flexible and encourages discretion. 'Whether the

proffered business justification is sufficient depends on the case…. [T]he bankruptcy judge 'should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike.'" *ASARCO, L.L.C.*, 650 F.3d at 601 (quoting Cont'l Air Lines, 780 F.2d at 1226 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983))).

32.     Application of the business judgment standard is the correct legal standard when determining whether a break-up fee is permissible. *See*, *In re ASARCO, LLC*, 441 B.R. at 831.  In *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y 1992) "the district court fashioned a three-question inquiry based on the business judgement rule, which it used to determine whether the break-up fee was permissible, asking:  (1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage bidding; and (3) is the amount of the fee unreasonable to the proposed purchase price?"  *In re ASARCO, LLC,* 441 B.R. at 826 (citing, *Integrated Resources*).[6]

33.     Trustee submits that in applying the foregoing three-question inquiry to the Sale Motion, the Court should find: first, that there is no evidence of any self-dealing or manipulation by or among Trustee and the principals of the Stalking Horse Bidder; second, approval of the Stalking Horse Agreement and proposed Bid Protections will facilitate the auction process by indicating to potential bidders there is value in the Pinball Property, and by setting a floor for the purchase price that will encourage higher bids; and, third, the Bid Protections are reasonable given the amount of the Purchase Price and the Purchaser's protection of the value of the Pinball Property through its post-petition payment of the patent filing extension fees without any guaranty of reimbursement.

---

[6] In deciding that the bankruptcy court had not erred in granting the debtor's reimbursement motion, the district court in *ASARCO* applied the three-question inquiry proposed by the *Integrated Resources* court, finding: first, that there was no evidence of any self-dealing or manipulation by the parties who negotiated the reimbursement procedures, second, that the reimbursement order facilitated the auction process, even if no sale was ultimately made, and third, the size of the fee to paid to the bidders was reasonable in comparison to the of the size and complexity of the asset being sold.  *Id.* at 831 - 832.

34.     Purchaser has made its offer and has entered into the Stalking Horse Agreement in good faith. Other than an entity owned by the principal of the Purchaser having provided software development services to the Debtors prior to the Petition Date, neither Purchaser nor any of its owners, principals, agents, investors, lenders or any other persons who may benefit in some fashion from the Stalking Horse Agreement or its consummation, has any connection to the Debtors or its principal, Mueller. Purchaser has no intention or agreement, written, oral or otherwise, to share in the profits, losses or in any other manner with Debtors, their principals, the other jointly administered debtors or an insider (including a non-statutory insider) as defined at 11 U.S.C. Section 101.  Given the fact that the Stalking Horse Bidder has already paid the patent filing extension fees without any guarantee or promise that those monies would be repaid in the event this proposed transaction is not approved by the Court, there can be little doubt about the Purchaser's *bona fides.*

35.     The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder.  Other than as provided by order of the Court prior to the entry of the Sale Order, no other party submitting a Bid shall be entitled to a break-up fee or reimbursement except for the Bid Protections for the Stalking Horse Bidder that are approved by the Court.

36.     The Trustee in the exercise of his business judgment asks that the Stalking Horse Agreement with the Bid Protections be approved.

**E.  Sale Procedures**

37.     Pursuant to Bankruptcy Rule 6004(f)(1), a sale of property outside the ordinary course of business may be by private or public sale.  Trustee believes that good cause exists to expose the Pinball Property to a public sale.  A public sale conducted substantially in accordance with the sale procedures (the "**Sale Procedures**"), attached hereto as Exhibit E, will enable Trustee to obtain the

highest and best offer for the Pinball Property, thereby maximizing their value for the benefit of the Bankruptcy Estates. The Sale Procedures provide for an expeditious manner to obtain the highest and best offers for the Pinball Property. Therefore, Trustee respectfully requests that this Court approve the Sale Procedures.

38.     Any party wishing to participate as a qualified bidder shall submit (a) a bid for the Pinball Property ("**Bid**"), (b) a purchase agreement, signed by an authorized representative of such bidder, marked against the Stalking Horse Agreement to show all changes requested by such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, and (d) deposit Twenty-Five Thousand and no/100 Dollars ($25,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, by no later than noon on the day that is  seven (7) days prior to the Court's hearing on the Sale Motion (the "**Bid Deadline**"). Any such Bid submitted by the Bid Deadline shall be in the amount of at least Sixty Thousand and no/100 Dollars ($60,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**"). The deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale.

39.     By no later than 5:00 pm central time, on the day that is seven (7) days prior to the Court's hearing on the Sale Motion, Trustee will file a notice (the "**Bid Notice**") with the Court stating whether it has timely received a binding offer to purchase the Pinball Property in a cash amount of at least $60,000.00.

40.     In the event that Trustee files the Bid Notice stating that it has not received a cash offer of at least $60,000.00, the Court shall hold a final hearing to approve a sale of the Pinball Property to

the Stalking Horse Bidder, or its assignee, free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363. Such hearing shall be held seven (7) days following the filing of the Bid Notice, or as soon thereafter as may be schedule by the Court (the "**Sale Hearing**").

41.     In the event Trustee receives at least one Qualified Bid, counsel for Trustee will file the Bid Notice with the Court and notify the Court's courtroom deputy that the Sale Hearing will be held seven (7) days following the filing of the Bid Notice, or as soon thereafter as may be scheduled by the Court, where Trustee will seek approval of the sale of the Pinball Property to the Successful Bidder.

42.     In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of the Qualified Bid and Trustee shall select the Successful Bidder.

43.     The closing of the sale of the Pinball Property shall occur no later than November 30, 2022 (the "**Closing Deadline**"). The Closing Deadline may occur sooner and be modified upon agreement between Trustee and the Successful Bidder.

44.     If any Successful Bidder fails to consummate a Sale because of a breach or failure to perform, the Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (if any), as determined by Trustee (the "**Back-Up Bidder(s)**") will be deemed the Successful Bidder and Trustee will be authorized to consummate the Sale to such Back-Up Bidder without further order of the Court and such Qualified Bid shall thereupon be deemed the Successful Bid.

45.     If any Successful Bidder fails to consummate the purchase of the Pinball Property, and such failure is the result of a breach by such Successful Bidder, twenty-five percent (25%) of the Successful Bidder's deposit shall be forfeited to Debtors' Estates.

46.     Any objection(s) filed to the sale of the Policies (i) shall be in writing and shall specify with particularity the grounds for such objections or other statements of position and (ii) shall be filed with the Court on or before the day that is seven (7) days prior to the Court's hearing on the Sale Motion**,** or as otherwise may be determined by the Court (the "**Objection Deadline**").  Any person failing to timely file an objection to the Sale prior to the Objection Deadline shall be forever barred from objecting to the Sale, including the transfer of the Policies free and clear of any and all liens, claims and other interests, and will be deemed to consent to the Sale.  Any objections to the Sale Motion will be heard at the Sale Hearing.

47.     Trustee reserves the right to (i) determine in its discretion whether any Qualified Bid is a Successful Bid, and (ii) reject, at any time prior to the entry of the Sale Order, without liability, any Bid that Trustee in its discretion, determines to be inadequate, insufficient, not in conformity with the Sale Procedures or the Bankruptcy Code, or contrary to the best interests of the Estate.

48.     Trustee reserves the right to modify the Sale Procedures, without the need for any further order of the Court, including, without limitation (i) extending the deadlines set forth in these Sale Procedures, and (ii) requesting a continuance of the Sale Hearing.  Nothing contained in the Sale Procedures shall limit, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by the Sale Procedures.

**F.  Sale Notice**

49.     Within three business days after the Court enters an Order approving the Sale Motion, Trustee shall serve the Sale Notice ("**Sale Notice**") by (a) first-class United States mail, postage prepaid on (i) the parties identified on the Creditor Matrix in this Case at the addresses set forth therein, (ii) the parties that have filed proofs of claim in this Case at the addresses set forth in the respective proofs of claim, and (iii) any other parties who have expressed an interest in acquiring the

Policies; and (b) the Court's electronic filing system on those parties receiving electronic notice by such system.  Service of such Sale Notice is proper, due, timely, good, and sufficient notice of, among other things, the Sale Procedures, the auction, the proposed Sale, and the procedure for objecting thereto. Additionally, Trustee may provide publication notice but only to the extent that Trustee believes such additional notice would improve the results of the auction and is in the best interest of the estate.  A proposed form of Sale Notice is attached hereto as <u>Exhibit F.</u>

## G.  Relief from Bankruptcy Rule 6004(h) is Appropriate

50.    Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

51.    To preserve the value of Bankruptcy Estates and limit the costs of administering and preserving the Pinball Property, the Trustee hereby requests that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h).

52.    The following proposed orders are attached hereto for the Court's consideration: (i) Order Authorizing and Approving Stalking Horse Agreement, Bid Procedures and Form of Notice of Sale ("**Sale Procedures Order**"), attached as <u>Exhibit G</u>; and (ii) Order Authorizing and Approving the Sale of Certain Personal Property Free and Clear of All Interests Pursuant to 11 U.S.C. §§ 363(b) and (f), ("**Sale Order**"), attached as <u>Exhibit H</u>.

## VI.    <u>PRAYER</u>

WHEREFORE, Trustee respectfully requests that the Court enter Orders approving (a) the Stalking Horse Agreement, Stalking Horse Bidder and Bid Protections; (b) the Sale and Bidding

Procedures; (c) the form and manner of the Sale Notice; (d) the date and time to conduct the auction at the Sale Hearing; (e) waiving the fourteen-day periods under Bankruptcy Rules 6004(h), and (f) such other relief, both at law and in equity to which Trustee may be justly entitled.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    W. Drew Mallender
    Texas State Bar No. 24118450
    dmallender@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2022, I electronically filed the foregoing document using the CM/ECF system, which will serve the document on the following list of parties in interest and parties requesting notice; it was served on the Debtors via CM/ECF to their counsel, as indicated below  A copy will also be mailed to the parties on the approved limited service list and a supplemental certificate of service will be filed evidencing that service.

*Via email:chris@turnerlogic.com*
Turner Logic, LLC
c/o Chris Turner
215 W Bandera Rd #114-814
Boerne, TX 78006

*Via Counsel CM/ECF:*
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

*Via Counsel Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

*Via CM/ECF: pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

*Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

*Via CM/ECF:*
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12
US TRUSTEE'S OFFICE (Aubrey Thomas)
615 E Houston, Suite 533
San Antonio, TX 78295-1539

*Via CM/ECF: don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX  78205

*Via CM/ECF: rbattaglialaw@outlook.com*
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

*Via CM/ECF: jpetree@mcslaw.com*
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

***Via CM/ECF: jdunne@smfadlaw.com***
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

***Via CM/ECF: bk-cmurphy@oag.texas.gov***
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

***Via CM/ECF: pautry@branscomblaw.com***
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

***Via CM/ECF: lmjurek@jureklaw.com***
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX  77006

***Via CM/ECF:***
***stephen.humeniuk@lockelord.com***
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701

***Via CM/ECF: tcunningham@lockelord.com***
Thomas J. Cunningham
LOCKE LORD LLP
777 S. Flalger Dr., Suite 215
West Palm Beach, FL  33401

***Via CM/ECF: achale@halewoodlaw.com***
Craig Hale
HALE | WOOD PLLC
4766 Holladay Blvd.
Holladay, Utah 84117

*/s/ Randall A. Pulman*
Randall A. Pulman

# EXHIBIT A

**EXHIBIT A**

**PINBALL PROPERTY**

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

   a. deeproot Pinball Websites
   b. Go Pinball Framework
   c. Pinball Machine API
   d. Pinball Mobile API
   e. Pinball Audio API
   f. Pinball Development Environment
   g. Pinball Mobile iOS app
   h. Pinball Stats Manager
   i. Firmware and Protocol for Pinball Circuit Boards
   j. Game Rules Code for the Deeproot Machines
   k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired as part of the Zidware settlement from Zidware, John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7. All rights, title, and interest including inventions and copyright to pinball circuit board layouts and designs developed by or for the Debtors.

8. Any software licenses owned by Debtors.

9. All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Premises..

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

    a. Incomplete RAZA prototype held by UL tester in Dallas, Texas.
    b. Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction at the Silicon Drive office.

**Trustee is not responsible for delivering Pinball Property not in his possession. It will be the Purchaser's responsibility to locate and pick up the Pinball Property wherever it may be located.**

# EXHIBIT B

This **PINBALL PROPERTY PURCHASE AND SALE AGREEMENT** (this **"Agreement"**) is made and entered into as of October 24, 2022, by and between JOHN PATRICK LOWE, the chapter 7 Trustee for eleven bankruptcy estates which are jointly administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, (**"Seller"** and/or **"Trustee"**), and Turner Logic, LLC, a Texas limited liability company (**"Purchaser"**) (and together, the **"Parties"**).

## RECITALS

A. The Pinball Property, hereinafter defined, constitutes property of one or more of the bankruptcy estates which are jointly administered under the lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 in the United States Bankruptcy Court, Western District of Texas, San Antonio Division (the **"Bankruptcy Cases"**). The entities which filed for relief under the Bankruptcy Code are referred to herein individually, as a **"Debtor**," and collectively as the **"Debtors."** [1]

B. One or more of the Debtors were in the business of designing, developing, and manufacturing pinball machines. The pinball physical and intellectual property described on Exhibit A (the "**Pinball Property**") constitutes property of the bankruptcy estates of one or more of the Debtors.

C. Trustee, in connection with the performance of his statutory duties, and in the exercise of his best business judgment, has determined that the sale of the Pinball Property to Purchaser is in the best interests of the jointly administered bankruptcy estates.

D. Purchaser has paid attorneys' fees and related costs totaling $1,930.32 (the **"Patent Fees"**) directly to McKinnie & Paul, PLLC to preserve patents, constituting part of the Pinball Property, which were about to expire.

E. Purchaser has assisted the Trustee in locating and identifying the Pinball Property in an effort to preserve assets and value for the jointly administered bankruptcy estates.

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" and collectively, the "**Bankruptcy Estates**".

{00595682;5}        1

F. Purchaser was previously under contract with deeproot Tech, LLC to build pinball software (**"Pinball Software"**). The Pinball Software developed wholly or in part by Purchaser is described in <u>Exhibit A</u>. paragraph 5; the Pinball Software constitutes a portion of the Pinball Property.

G. Purchaser desires to purchase all rights, title and interest in and to the Pinball Property in accordance with the terms and conditions of this Agreement.

H. Draper 5, LLC, a Utah limited liability company (the "Landlord") is the landlord of certain premises located at 12227 South Business Park Drive, Draper, Utah 84020 (the **"Premises"**), which Premises was leased to Wizard Mode Media, LLC (**"Tenant"**) (a debtor, and one of the Debtors, in the Bankruptcy Cases), as tenant, pursuant to a certain lease agreement, dated as of February 17, 2020, by and between Draper 5, LLC, as landlord, and Wizard Mode Media, LLC, as tenant (the **"Lease"**).

I. The Trustee and Landlord have agreed to a compromise and settlement of Landlord's post-petition expense claims, the terms and conditions of which are set forth in a certain settlement agreement by and between the Trustee and Landlord (the "**Settlement Agreement**"). The Settlement Agreement provides, that in settlement of the Landlord's post-petition expense claims, the Trustee, upon the closing of the sale of the Pinball Property, shall pay to Landlord the Settlement Payment (defined herein) and convey the office furnishings described on <u>Exhibit B</u>, attached hereto (the "**Office Furnishings**").

J. The Purchaser will be responsible, at Purchaser's sole cost and expense, for collecting and removing all Pinball Property located at the Premises, and all Pinball Property located in Dallas, Texas and Redmond, Washington.

K. The Trustee in connection with the purchase and sale of the Pinball Property and the settlement of the Landlord's post-petition claims, will concurrently file a motion to sell the Pinball Property pursuant to §363 of the Bankruptcy Code (the "**Motion to Sell**"), and a motion to approve the Settlement Agreement with the Landlord (the "**Rule 9019 Motion**"), and any other necessary ancillary motions with the Court in the Bankruptcy Cases. The Motion to Sell and the Rule 9019 Motion must both be granted, and the requested relief ordered by the Court before the sale of the Pinball Property contemplated by this Agreement may be closed.

## <u>AGREEMENT</u>

NOW THEREFORE, for and in consideration of the Recitals, which are incorporated herein and made a part of this Agreement, the mutual promises and covenants set forth herein, and

for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

**1.**  **Purchase Price; Deposit; and Closing**

a. At the Closing (defined below) Purchaser shall pay to the Trustee the total sum of $50,000.00 (the **"Purchase Price"**), and Trustee shall sell and convey to Purchaser, free of all liens and encumbrances, all right, title and interest of the Estates in and to the Pinball Property (the "Sale"). Purchaser shall, upon the execution of this Agreement by the Parties, immediately deposit into the IOLTA account of Trustee's counsel, acting on behalf of Seller, an earnest money deposit in the sum of $25,000.00 (**"Deposit on Purchase Price"**), the Deposit on Purchase Price shall be applied to the Purchase Price as provided in this Agreement. The Deposit on Purchase Price shall be held in trust in the IOLTA account of Trustee's counsel and shall be disbursed immediately to Seller upon the proper transfer of the ownership and beneficiary of the Pinball Property to Purchaser (the **"Closing"**). The balance of the Purchase shall be paid by Purchaser to Seller at the Closing. Purchaser shall cause the Deposit on Purchase Price, the balance of the Purchase Price, and all other payments to the Seller, if any, to be wire transferred to Trustee's counsel's IOLTA account using the following instructions:

JP Morgan Chase Bank
712 Main Street
10th Floor South
Houston, Texas 77002
(713) 216-2041

ABA Number: 111000614
International ABA Number: 021000021
Account Number: 125954160265
Swift Code:  CHASUS33

b. Within 30 days of the date of the Closing, Purchaser shall, at Purchaser's sole cost and expense, cause the Pinball Property located at the Premises to be removed from the Premises. Landlord agrees to cooperate with Purchaser's removal of the Pinball Property and, upon reasonable advance notice, to provide Purchaser with access to the Premises for this purpose. If Landlord has removed any of the Pinball Property from the Premises, Landlord agrees to either return the Pinball Property to the Premises, or to provide Purchaser with the location of, and access to, the Pinball Property, for pick-up by Purchaser.

c. Within 30 days of the date of the Closing, Purchaser shall, at Purchaser's sole cost and expense, cause each of the RAZA prototype pinball machines, identified on Exhibit A, to be picked up and removed from the offices of Intertek Testing Services, Inc., located in Plano, Texas (the "**UL Testing Facility**"), and from the offices of a certain contractor located in Redmond, Washington (the "**Washington Contractor**"), where Purchaser believes such prototype pinball machines are located. The Trustee makes no representations as to the location or condition of such prototype pinball machines. Purchaser shall be responsible for the payment of any fees or costs that may be due and owing to the UL Testing Facility or the Washington Contractor. Trustee agrees to move the Court to include within its Order approving the Sale, a directive to the parties in possession of the prototype machines to turn over such property to Purchaser, subject to the payment by Purchaser of any fees or costs due to such parties in possession.

**2. Deposit and Patent Fee Refund**

a. If Trustee's Motion to Sell (hereinafter defined) is denied by the Bankruptcy Court, then the Deposit on Purchase Price shall be refunded to Purchaser within eleven (11) days from the date that the Bankruptcy Court's denial of Trustee's Motion becomes final. In such event this Agreement shall terminate. In such event, Purchaser waives its right to apply to the court for the reimbursement of the Patent Fees as an administrative expense pursuant to 11 U.S.C Section 503.

b. If Trustee's Motion to Sell (hereinafter defined) is granted by the Bankruptcy Court, but a third-party outbids Purchaser and such third-party is subsequently approved as the purchaser, then the Deposit on Purchase Price shall be refunded to Purchaser and all Patent Fees directly paid by Purchaser shall be treated as an administrative expense pursuant to 11 U.S.C. Section 503. In such event, Purchaser shall also receive the Stalking Horse Fee (described below) and reasonable and necessary attorney's fees as approved by the Court, and the Purchaser's obligations hereunder shall terminate.

**3. Motion to Sell, and Stalking Horse Bid and Procedures**

a. The effective date of this Agreement (the "**Effective Date**") shall be the date on which this Agreement has been fully executed by all of the Parties and the Purchaser has made the Deposit on Purchase Price.

b.  Seller agrees to file (i) a motion to sell the Pinball Property pursuant to 11 U.S.C Sections 363 (the **"Motion to Sell "**), within three (3) business days after the Effective Date, seeking entry of an order of the Bankruptcy Court (**"Order"**) approving the Sale of the Pinball Property and (ii) a motion to approve the the Settlement Agreement with Landlord pursuant to Bankruptcy Rule 9019 in. If Court approval of either such motion is denied, this Agreement shall automatically terminate, and the Deposit on Purchase Price shall be returned to Purchaser pursuant to the provisions of Section 2(b) above.

c.  Purchaser acknowledges that Seller will submit this Agreement to the Bankruptcy Court for approval and that any other interested party will have the right to bid on the Pinball Property.

d.  Trustee shall present Purchaser's offer to the Bankruptcy Court as a stalking horse bid on the Pinball Property pursuant to Bid Procedures provided to Purchaser and approved by the Bankruptcy Court. In the event another purchaser offers a better offer to the Trustee (a **"Topping Bid"**), as determined solely in exercise of the Trustee's best business judgment and discretion, and the Trustee accepts the Topping Bid, Trustee, subject to the Court's approval, covenants to do the following:

   i.  Refund to the Purchaser the Deposit on Purchase Price and reimburse Purchaser the amount of Patent Fees paid directly by Purchaser.

   ii.  As consideration for entering into this Agreement and assisting the Trustee in preserving patent rights along with locating and identifying the Pinball Property,  Trustee, subject to the Bankruptcy Court's approval, shall grant to Purchaser a perpetual non-exclusive license (**"Software Copyright License"**, substantially in the form of that attached as <u>Exhibit C</u>) to use the Pinball Software, plus pay Purchaser's reasonable and necessary attorney's fees as approved by the Court, in an amount not to exceed $5,000 (collectively, the **"Stalking Horse Fee"**).

   iii.  Trustee covenants to defend the adequacy and reasonableness of the Stalking Horse Fee, however, Purchaser acknowledges that the Bankruptcy Court must approve the amount of the Stalking Horse Fee and the payment thereof to Purchaser**.** If the Stalking Horse Fee is not approved by the court, Purchaser withdraw its offer to purchase the Pinball Property without penalty and shall be reimbursed for the Deposit on Purchase Price

(including all patent fees directly paid by Purchaser) within eleven (11) days of the termination.

iv.   In all circumstances, the Trustee reserves the right to negotiate for a better offer from all bidders. However, the Stalking Horse Fee, once approved by the Bankruptcy Court, may not be modified.

4.   **Settlement of Landlord's Claims and Conveyance of Office Furnishings to Landlord**

a.   Debtor, Wizard Mode Media, LLC, and the Landlord have agreed to a compromise and settlement of Landlord's post-petition administrative expense claims arising from the Lease of the Premises ("**Settlement Agreement**"), attached hereto as <u>Exhibit D</u>.  Purchaser acknowledges that this Agreement is subject to the Court's approval of the Settlement Agreement, and Purchaser agrees to the obligation of Purchaser to remove the Pinball Property from Premises as provided in the Settlement Agreement, as set forth below in subsections (iv) and (v).  The terms of the Settlement Agreement are as follows:

i.   The Trustee and the Landlord agree that the aggregate amount of post-petition Rent due to the Landlord, shall be equal to $15,000.00 (the "**Settlement Payment**"), and shall be an administrative expense of the Bankruptcy Estate of Wizard Mode Media, LLC; and

ii.   As additional consideration to Landlord, the Trustee shall convey title to Tenant's Office Furnishings located at the Premises (as described in <u>Exhibit B</u>) to Landlord, free and clear of all liens, claims, and encumbrances. Trustee's conveyance of the Office Furnishings shall be without any warranties and without recourse against the Trustee or the Bankruptcy Estates;

iii.   The Trustee, with the approval and permission of the Court, shall, within ten (10) days of the Closing, (i) pay to the Landlord the total amount of $15,000, from the Bankruptcy Estate, and (ii) deliver to Landlord a bill of sale, conveying title to the Office Furnishings to Landlord, free and clear of all liens and encumbrances;

iv.   The Purchaser, at Purchaser's sole cost and expense, will use its best efforts to remove the Pinball Property from the Premises no later than November 30, 2022 (the "**Removal Date**").   Landlord agrees to cooperate with

Purchaser's removal of the Pinball Property and, upon reasonable advance notice, to provide Purchaser with access to the Premises for such purpose;

v.  If the Pinball Property has not been removed from the Premises by Purchaser on or before the Removal Date, Landlord may, at Landlord's sole option, remove the Pinball Property from the Premises and store the Pinball Property at a secure location to be determined by Landlord. If Landlord has removed and stored the Pinball Property as provided herein, Landlord agrees to provide Purchaser with the location of, and access to, the Pinball Property, for pick-up and removal by Purchaser. Purchaser agrees to reimburse Landlord for Landlord's actual costs of removing the Pinball Property and the storage thereof. If the Pinball Property has not been removed from the Premises by the Removal Date, the Landlord may remove and store the Pinball Property, the actual cost of such removal and storage is to be reimbursed to Landlord by the Purchaser, provided, however, that the total amount to be reimbursed to Landlord by Purchaser, for Landlord's removal and storage of the Pinball Property, shall not exceed $5,000.

vi.  Regardless of whether the Purchaser purchases the Pinball Property, if the Trustee or Purchaser has not retrieved the Pinball Property by March 31, 2023, the Landlord may sell the Pinball Property, deduct from the proceeds all costs of moving and storage, plus $15,000.00 if not previously paid by the Trustee, and transfer the remaining balance, if any, to the Purchaser or the Trustee, as the case may be; and

vii.  Landlord will waive any other claim for post-petition administrative expenses in any of the jointly administered bankruptcy cases.

b.  Purchaser agrees to join in the Settlement Agreement solely for the purpose of acknowledging and agreeing to Purchaser's obligations with respect to the removal of the Pinball Property from the Premises, as set forth above.

## 5. Seller's Duties

a.  Seller shall make best efforts to provide Purchaser access to Debtors' digital files related to the Pinball Property. Purchaser acknowledges that these files are incomplete and that some of the Pinball Property may not be recoverable. NEITHER TRUSTEE NOR ITS COUNSEL MAKES ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF

DEBTORS' FILES, OR TO THE EXISTENCE OF ANY PARTICULAR DIGITAL ASSET OF THE PINBALL PROPERTY.

b.  Seller agrees to execute and deliver all required documents and forms, and to take all steps necessary, to effect the transfer of ownership of the Pinball Property to Purchaser, on or before Closing.

c.  Trustee shall file a Motion to Sell pursuant to 11 U.S.C Section 363 together with a Motion to Approve Bid Process, and a Motion to Expedite the consideration of the Motion to Sell and the Motion to Approve Bid Process. Trustee shall file such Motions within three (3) business days of receipt of the Deposit by Trustee's Counsel. Seller shall request that the Bankruptcy Court provide that any Order approving the sale be effective immediately upon entry on the docket in the case and not stayed pursuant to Federal Rule of Bankruptcy Procedure 6004(h).

d.  Closing shall occur on the first business day following the entry of an unstayed order of the Bankruptcy Court approving the sale of the Pinball Property to Purchaser or on such other day to which the Parties have agreed.

e.  Purchaser is released from all obligations under this Agreement if Closing has not occurred on or before November 30, 2022.

**6.**  **Purchaser's Representations, Warranties and Acknowledgements.**

Purchaser represents and warrants to Trustee that as of the date hereof:

a.  The Purchaser is a company legally organized, validly existing and in good standing under the laws of the State of its formation. The Purchaser has the full organizational right, power and authority and has taken all necessary organizational action to authorize it to enter into, execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder. No consent, approval or authorization of, or declaration, filing or registration with, any governmental authority, and no consent of any other person, including, without limitation, consents from parties to loans, contracts, leases or other agreements, is required in connection with execution, delivery and performance of this Agreement by the Purchaser.

b.  This Agreement has been duly executed and delivered by the Purchaser and constitutes the legal, valid and binding obligations of the Purchaser, enforceable against the Purchaser in accordance with its terms, except as enforcement may be

limited by applicable bankruptcy, insolvency, reorganization or similar laws affecting enforceability of creditors' rights generally and except as availability of the remedy of specific performance, injunctive relief or other equitable relief is subject to the discretion of the court before which any proceeding therefore may be brought.

c.   There are no material actions, suits, claims, investigations or legal or administrative or arbitration (or other binding alternative dispute resolution) proceedings relating to this Agreement or the transactions contemplated hereby in respect of which the Purchaser has been served or, to the best of the Purchaser's knowledge, which is pending or threatened, in each case, before or by any governmental authority, and no judgment, award, order, writ, injunction, arbitration decision or decree has been entered against or served upon the Purchaser relating to this Agreement or the transactions contemplated hereby.

d.   The execution and delivery of this Agreement, the consummation by the Purchaser of the transactions contemplated hereby and the performance by the Purchaser of its obligations hereunder, do not and shall not (i) violate or conflict with the terms of, or result in a breach by the Purchaser of, or constitute a default under, any material contract or agreement to which the Purchaser is a party or by which such party may otherwise be bound or affected, (ii) violate any judgment, decree or order of any governmental authority applicable to the Purchaser, (iii) violate or conflict with any applicable law, or (iv) violate or conflict with the organizational documents of the Purchaser.

e.   PURCHASER IS NOT RELYING UPON AND HEREBY DISCLAIMS RELIANCE ON ANY REPRESENTATION, WARRANTY, OPINION, STATEMENT OF FACT OR PREDICTION MADE BY TRUSTEE, OR TRUSTEE'S COUNSEL IN MAKING THE DECISION TO ENTER INTO THIS AGREEMENT. PURCHASER IS ACQUIRING ONLY THE RIGHTS AND TITLE TO THE PINBALL PROPERTY THAT TRUSTEE MAY HAVE AND ACKNOWLEDGES THAT PURCHASER IS TAKING OWNERSHIP WITHOUT REPRESENTATION OR WARRANTY, AND WITHOUT RECOURSE TO TRUSTEE OR THE BANKRUPTCY ESTATES OF THE DEBTORS.

f.   Besides the Purchaser having provided software related services to two of the Debtors prior to petition date, Purchaser and none of its owners, principals, agents, investors, lenders or any other persons who may benefit in some fashion from this Agreement or its consummation, has any connection to the Debtors or Mueller.

{00595682;5}       9

Purchaser has no intention or agreement, written, oral or otherwise to share in the profits, losses or in any other manner with the Debtors, its principals or an insider (including a non-statutory insider) as defined at 11 U.S.C. Section 101.

7. **Provisions to be Included in Order Authorizing Trustee Sale.**  The Order entered by the Court authorizing the sale of the Pinball Property to the Purchaser pursuant to the terms of this Agreement, shall contain provisions:

    a.  authorizing and directing the sale of the Pinball Property to the Purchaser free and clear of any interest (including without limitation any liens or claims of purported owners, or of any debtors in the Bankruptcy Case) in such Pinball Property pursuant to 11 U.S.C. §363(f);

    b.  affirmatively finding that the Pinball Property is transferable to Purchaser, and has been duly transferred to Purchaser, and that Purchaser has purchased the property "in good faith" for the purposes of 11 U.S.C. §363(m); and

    c.  directing that the Order is and shall be effective upon entry on the docket in the Bankruptcy Case pursuant to Bankruptcy Rule 6004.

8. **Liquidated Damages for a Breach by Purchaser.**  In the event Purchaser fails to close on this transaction as a result of Purchaser's breach of this Agreement, Seller's sole remedy shall be to keep and retain the Deposit on Purchase Price as liquidated damages.  The Parties agree that the calculation of damages for a breach by Purchaser would be difficult to ascertain and that this remedy is a reasonable estimate of the damages which the Trustee may sustain due to breach.

9. **Binding Effect.**  Once approved by the Bankruptcy Court this Agreement is irrevocably binding upon and shall inure to the benefit of and shall be enforceable by the parties hereto and their respective successors, assigns, executors, administrators and heirs.

10. **Severability.**  If any provision of this agreement shall be held invalid in a court of law, the remaining provisions shall be construed as if the invalid provision were not included in this Agreement.

11. **Notices.**  Any and all notices, requests, consents, notifications, and other communications given to any Party to this Agreement shall be given in writing and will be as elected by the party giving said notice, hand-delivered by messenger or courier service, telecopied, electronically communicated, or sent via registered or certified mail, return receipt

requested, postage prepaid, to the address of each party at the addresses below and deemed given when received by Party being served such notice.

| Seller: | With a copy to counsel: |
|---|---|
| John Patrick Lowe | Randall A. Pulman |
| Chapter 7 Trustee for Estates of deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, and Wizard Mode Media, LLC. | Pulman, Cappuccio & Pullen, LLP |
| 2402 East Main Street Uvalde, Texas 78801 | 2161 N. W. Military Highway, Suite 400 San Antonio, Texas 78213 |
| Telephone: (830) 407-5115 | Telephone: (210) 892-0420 |
| Email: pat.lowe.law@gmail.com | Email: rpulman@pulmanlaw.com |

| Purchaser: | With a copy to counsel: |
|---|---|
| Chris Turner | Patrick H. Autry |
| Turner Logic, LLC | Branscomb PLLC |
| 215 W Bandera Road, Suite 114-814 Boerne, TX 78006 | Lockhill Crossing, Suite 206 4630 N Loop 1604 W San Antonio, TX 78249 |
| Telephone: (210) 901-9955 | Telephone: (210) 598-5401 |
| Email: chris@turnerlogic.com | Email: pautry@branscomblaw.com |

**12. Waiver.**   Either Party's failure to insist in any one or more instances upon strict performance by the other Party of any of the terms of this Agreement shall not be construed as a waiver of any continuing or subsequent failure to perform or delay in performance of any term hereof.

13. **Contract Assignable.**  Purchaser may assign this Agreement and its obligations hereunder to an entity which is wholly owned by Purchaser provided such assignment is made expressly in writing and delivered to Seller.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their successors and assigns.

14. **Choice of Law.**  The Parties hereby agree and confirm that the laws of Texas and Title 11 of the United States Code shall control this Agreement.

15. **Counterparts and Facsimile.**  This Agreement may be signed in one or more counterparts, each of which is deemed an original, but all of which together constitute one and the same instrument. A facsimile copy of this executed Agreement shall be deemed valid as if it were the original.

16. **Headings.**  The headings and subheadings contained in this Agreement are for convenience of reference only and are not to be considered part of this Agreement and will not limit or otherwise affect in any way the meaning or interpretation of this Agreement.

17. **Time.**  Time is of the essence in this Agreement.

18. **Representation by Counsel.**  The Parties acknowledge that they have been or have had the opportunity to have been represented by their own counsel throughout the negotiations and at the signing of this Agreement and all other documents signed incidental to this Agreement and, therefore, neither Party shall claim or assert that any provision of this Agreement or any ancillary documents should be constructed against their drafter.

In WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day, month and year first above written.

[Signatures appear on following page]

**SELLER:**

By: _____
    John Patrick Lowe, Chapter 7 Trustee
    For the Bankruptcy Estates of the Debtors

Date: _____


**PURCHASER:**

**TURNER LOGIC, LLC**

By: _____

Name: ____Chris Turner_____

Its: _____Managing Member / CEO_____

Date: _____October 24th, 2022_____

**EXHIBIT A**

**PINBALL PROPERTY**

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

    a. deeproot Pinball Websites
    b. Go Pinball Framework
    c. Pinball Machine API
    d. Pinball Mobile API
    e. Pinball Audio API
    f. Pinball Development Environment
    g. Pinball Mobile iOS app
    h. Pinball Stats Manager
    i. Firmware and Protocol for Pinball Circuit Boards
    j. Game Rules Code for the Deeproot Machines
    k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired as part of the Zidware settlement from Zidware, John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7. All rights, title, and interest including inventions and copyright to pinball circuit board layouts and designs developed by or for the Debtors.

8. Any software licenses owned by Debtors.

9. All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Premises..

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

    a. Incomplete RAZA prototype held by UL tester in Dallas, Texas.
    b. Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction at the Silicon Drive office.

**Trustee is not responsible for delivering Pinball Property not in his possession. It will be the Purchaser's responsibility to locate and pick up the Pinball Property wherever it may be located.**

**EXHIBIT B**

**<u>OFFICE FURNISHINGS</u>**

The following tangible property, currently in the Utah office space, is included in the Office Furnishings:

- Desks
- Tables
- Drawers
- File Cabinets
- Chairs
- Water Filter Machines
- Kitchen Appliances
- Cleaning Supplies (vacuums, trash bags)
- Kitchen Supplies (paper goods, utensils, trash bags)
- Bathroom Supplies (soap, toilet paper)

## EXHIBIT C

## <u>SOFTWARE COPYRIGHT LICENSE</u>

**Parties**

This License Agreement (the "Agreement") is entered into this ___ day of October, 2022 by and between COMPANY, a COMPANY_TYPE (the "Licensor") and Turner Logic, LLC, a Texas limited liability company (the "Licensee").

**Terms of Agreement**

**1. Licensed Work.** "Licensed Work" as used in this Agreement refers to the software defined in Exhibit A-5 of the Pinball Property Purchase and Sale Agreement.

**2. Grant of Irrevocable License.** The Licensor, in consideration of the Stalking Horse Fee of the Pinball Property Purchase and Sale Agreement, grants Licensee the right to use, copy, prepare derivative works, sublicense, and distribute the Licensed Work without geographic restriction. This Agreement shall be nonexclusive and shall be irrevocable. Licensee shall own all derivative works created from the Licensed Works and Licensor shall not have any rights to derivative works prepared by Licensee regarding the Licensed Works.

**3. The Licensor's Warranties.**

    **(a) Ownership.** The Licensor represents and warrants that it is the owner of the entirety of the rights in the Licensed Work and that it has the full authorization and authority to enter into this Agreement and grant the licenses herein.

    **(b) No Grant of Other Rights.** No other rights, permission or consent is necessary for the Licensee to use the Licensed Work in accordance with the license granted herein nor are any fees, royalties or a use payment of any kind due to third parties in connection with the exercise of the licenses granted herein.

**4. Assignment.** Licensee has the right to sublicense its rights under this Agreement without written consent of Licensor.

**5. Governing Law.** This Agreement shall be governed pursuant to the laws of the state of Texas and any dispute arising under this Agreement shall be resolved solely in the state or federal courts of the state of Texas, each party submitting to the jurisdiction and venue of such court.

**EXHIBIT D**

**SETTLEMENT AGREEMENT (DRAPER 5, LLC)**

## SETTLEMENT AGREEMENT

This Compromise and Settlement Agreement ("**Agreement**" and/or "**Settlement Agreement**") in entered into by, between John Patrick Lowe, in his capacity as the Chapter 7 Trustee ("**Trustee**"), the bankruptcy estate of Wizard Mode Media, LLC ("**Debtor**" or "**Tenant**") and Draper 5, LLC, a Utah limited liability company ("**Landlord**"). The Trustee, Debtor and Landlord are collectively referred to herein as the "**Parties**".

## RECITALS

A.     On December 9, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition under chapter 7, title 11 of the United States Code, 11 U.S.C.  §§ 101-1532 (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**").   The Court authorized that the Debtor's bankruptcy case, along with those of ten other debtor affiliates, be jointly administered under lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 (the "**Jointly Administered Case**"). [1]

B.     On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

C.     Prior to the Petition Date, the Debtor and Landlord were parties to a lease agreement relating to premises at 12227 South Business Park Drive, Suite 130, Draper, Utah 84020, containing approximately 5,929 rentable square feet ("**Premises**").

D.     The Debtor initially leased the Premises on March 1, 2020, for a period of 38 months expiring on April 30, 2023 (the "**Lease**" or "**Lease Agreement**").

E.     The Lease provides for the Debtor to pay annual base rent plus Debtor's proportionate share of operating expenses as described in the Lease.  The Lease further provides for the recovery of Landlord's attorneys' fees, costs, and expenses in the event of a default by Debtor under the terms of the Lease.

F.     The Debtor stopped making rent payments under the Lease as of July 2021, and in or about July 2021, the Debtor's employees vacated the Premises. The personal property of the Debtor's estate, however, remains located in the Premises. Such personal property of the Debtor's estate consists of a portion of the pinball related property described on Exhibit A, attached hereto

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are:  In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates**" or "**Estates**".

{00596543;2}

Page 1 of 10

(the "**Pinball Property**"), and the office furnishings described on Exhibit B, attached hereto (the "**Office Furnishings**").

G.      The Lease deposit, in the amount of $63,173.50, was thereafter applied by Landlord toward rent payments (plus penalties and interest due for overdue and unpaid rent, as provided in the Lease) for the months of August through December 2021, and towards a portion of the unpaid rent due for the month of January 2022. Landlord did not seek to lift the bankruptcy stay prior to offsetting the Lease deposit.

H.      On January 5, 2021, the Landlord filed a Proof of Claim (Claim No. 7-1) in the total amount of $47,183.31, for past due rent through January 1, 2022, late fees, and attorney fees.

I.      The Trustee did not assume the Lease within the 60-day period following the Petition Date and, therefore, pursuant to 11 U.S.C. §365(d)(1), the Lease has been deemed rejected by the Trustee.

J.      The Landlord has submitted a ledger of Lease expenses to the Trustee claiming post-petition administrative expenses in the total amount of $214,904.91 ("**Landlord's Claim**"). The Trustee disputes the amount so claimed by the Landlord and has determined in the exercise of his best business judgment that entering into a compromise and settlement of Landlord's Claim is in the best interest of the Bankruptcy Estates.

K.      The Estates of Debtor, and of deeproot Pinball, LLC, deeproot Tech, LLC, and deeproot Studios LLC, are the owners of the Pinball Property. The Estates of the seven other debtors in the jointly administered Bankruptcy Case (together, the "**Debtor Affiliates**") may also have a direct or indirect ownership interest in the Pinball Property. The Estate of Debtor is the owner of the Office Furnishings.

L.      The Trustee has been approached by a potential purchaser, Turner Logic, LLC, a Texas limited liability company (the "**Purchaser**"). Purchaser has offered to purchase the Pinball Property for the purchase price of $50,000 (the "**Purchase Price**"). In the exercise of his best business judgment, Trustee has determined that entering into the Pinball Property Purchase and Sale Agreement (the "**Purchase Agreement**") with the Purchaser is in the best interest of the Bankruptcy Estates.

M.      The Trustee and the Landlord have negotiated a compromise and settlement of the Landlord's Claim, the terms and conditions of which are set forth in this Settlement Agreement.

N.      This Settlement Agreement is contingent upon and subject to the Bankruptcy Court's approval of the Purchase Agreement and the closing of the sale of the Pinball Property, and the Bankruptcy Court's approval of the terms of this Settlement Agreement.

## SETTLEMENT TERMS

{00596543;2}

5596952v.3 2041/0001

Now therefore, for and in consideration of the Recitals set forth above, of the mutual covenants and promises set forth herein, and of the additional premises, covenants, agreements, and other undertakings herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties hereto, the Parties agree as follows:

1. Upon the signing of this Settlement Agreement by all Parties, the Parties will cooperate to prepare and file with the Bankruptcy Court a motion in form and substance satisfactory to all Parties, seeking the Bankruptcy Court's approval of this Settlement Agreement (the "**9019 Motion**").

2. Upon the signing of the Settlement Agreement by all Parties, the Trustee will file *Trustee's Motion to Approve (A) Sale of Pinball Property, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (C) the Form of Notice for the Sale of Pinball Property* (the "**Sale Procedures Motion**") with the Bankruptcy Court seeking approval of the sale procedures, stalking horse agreement, bid protections, and the form of notice for the sale of the Pinball Property. Upon the Bankruptcy Court's approval of the relief requested by the Sale Procedures Motion, the Bankruptcy Court will schedule a hearing to approve the sale of the Pinball Property to the Purchaser or the Successful Bidder (as defined in the Sale Procedures Motion) (the "**Sale Hearing**").

3. Concurrent with the Trustee's filing of the Sale Procedures Motion, the Parties will file the 9019 Motion with the Bankruptcy Court. If a hearing on the 9019 Motion is desired by the Parties, or otherwise required by the Bankruptcy Court, the Parties will request that such hearing be held on the same date as the Sale Hearing.

4. At the Sale Hearing the Trustee will seek an order of the Bankruptcy Court approving of the sale of the Pinball Property to the Purchaser or the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. §363 (the "**Sale Order**").

5. The closing on the sale of the Pinball Property shall be held within ten (10) days of the Bankruptcy Court filing the Sale Order, or within such time as may otherwise be ordered by the Bankruptcy Court.

6. Subject to the Bankruptcy Court's approval of this Settlement Agreement, within ten (10) days of the closing on the sale of the Pinball Property, the Trustee shall: (a) pay to Landlord, by check or wire transfer, the total amount of $15,000.00 (the "**Settlement Payment**") and (b) deliver to Landlord a bill of sale or similar document transferring all of Debtor's rights, interest and title in and to the Office Furnishings, free and clear of all liens, claims and encumbrances, to Landlord (the "**Bill of Sale**"). The transfer of title to the Office Furnishings shall be without any warranties and without recourse against the Trustee or the Bankruptcy Estates.

7. The Purchaser, at Purchaser's sole cost and expense, will use his best efforts to remove the Pinball Property from the Premises no later than November 30, 2022 (the "Removal Date"), but in any case within thirty (30) days of the closing on the sale of the Pinball Property. Landlord

{00596543;2}

Page 3 of 10

agrees to cooperate with Purchaser's removal of the Pinball Property and, upon reasonable advance notice, to provide Purchaser with access to the Premises for such purpose.

8.  If the Pinball Property has not been removed from the Premises by Purchaser on or before the Removal Date, Landlord may, at Landlord's sole option, remove the Pinball Property from the Premises and store the Pinball Property at a secure location to be determined by Landlord. If Landlord has removed and stored the Pinball Property as provided herein, Landlord agrees to provide Purchaser with the location of, and access to, the Pinball Property, for pick-up and removal by Purchaser. Purchaser agrees to reimburse Landlord for Landlord's actual costs of removing the Pinball Property and the storage thereof, provided, however, that the total amount to be reimbursed to Landlord by Purchaser, for Landlord's removal and storage of the Pinball Property, shall not exceed $5,000. Regardless of whether the Purchaser purchases the Pinball Property, if the Trustee or Purchaser has not retrieved the Pinball Property by March 31, 2023, the Landlord may sell the Pinball Property, deduct from the proceeds all costs of moving and storage, plus $15,000.00 if not previously paid by the Trustee, and transfer the remaining balance, if any, to the Purchaser or the Trustee, as the case may be.

9.  The Landlord, by accepting the Settlement Payment and the Bill of Sale, releases the Bankruptcy Estates, the Debtor, deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios LLC, the deeproot Affiliates, and the Trustee, from any and all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), or liability, at law or in equity, arising from, or otherwise related to, the Lease, the Landlord waives any other claim of Landlord for post-petition administrative expenses in any of the bankruptcy cases being jointly administered under the Jointly Administered Case, and the Landlord agrees to file with the Court a Notice of Withdrawal pursuant to Bankruptcy Rule 3006, withdrawing the Proof of Claim filed by Landlord in the Jointly Administered Case.

10. The Bankruptcy Court shall retain jurisdiction to interpret, implement, and enforce this Settlement Agreement. Each Party shall execute all instruments and documents and take all actions as may reasonably be required to effectuate this compromise and settlement.

11. This Settlement Agreement shall be subject to the Bankruptcy Court's approval. If the sale of the Pinball Property is not consummated, this Settlement Agreement shall be null and void.

12. <u>Miscellaneous.</u>

     a.     <u>Governing Law.</u> This Agreement shall be governed and construed in accordance with the laws of the State of Texas and the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

     b.     <u>Consideration for the Agreement.</u> The Parties hereby covenant and agree that the promises and covenants received by each party to this Agreement constitute good and valuable consideration and that the exchange of such releases and other promises and covenants made a part of the is Agreement

{00596543;2}

5596952v.3 2041/0001

constitute good consideration to support the duties, rights, obligations and forbearances of each party to this Agreement.

c.    <u>Counterparts.</u> This Agreement may be executed in two (2) or more counterparts; and each counterpart, when so executed and delivered, shall constitute an original instrument, and all such separate counterparts shall constitute but one and the same instrument.

d.    <u>Integration and Entire Agreement.</u> This Agreement, and any other documents or exhibits referred to herein and which form an integral part hereof, contains the entire understanding of the Parties hereto with respect to the subject matter contained herein and therein. Notwithstanding the foregoing, the Parties hereby expressly contemplate that additional documentation shall be required to effectuate the transactions documented in this Agreement. Each Party hereby agrees to negotiate, execute and perform in good faith any additional documentation and all actions required to effectuate and fully consummate the transactions contemplated and documented in this Agreement.

e.    <u>Amendments.</u> This Agreement may not be changed orally, but only by an agreement in writing signed by the Parties.

f.    <u>Nonadmissions Disclaimer.</u>  The Parties agree that this Settlement Agreement shall not constitute an admission of liability by any party and it is entered into only in the interest of settling various claims and disputes, by between and among the Parties and to save any additional cost and expense inherent in resolving such claims and disputes through litigation.

g.    <u>Binding Effect.</u> Subject to Bankruptcy Court approval, the Parties agree that this Settlement Agreement shall be binding on each party and each party's respective heirs, devises, successors, assigns and personal representatives, including, without limitation, any successor or substitute trustee that might be appointed to succeed or replace Trustee in Debtor's bankruptcy case.

h.    <u>Representations.</u> Each of the Parties represents that as of the day hereof, subject to Bankruptcy Court approval, they have the authority to execute this Settlement Agreement and to undertake whatever actions are required to consummate the terms of this Settlement Agreement. The Parties further represent and acknowledge that they have consulted with legal counsel in connection with this Settlement Agreement; has carefully read and understood the provisions of this Settlement Agreement; and after having consulted with counsel, have willingly and with full knowledge entered into this settlement; and this Settlement Agreement is not subject to fraud, duress or overreaching.

i.   <u>No Strict Construction.</u> This Settlement Agreement is the result of substantial negotiations between the Parties and their counsel and has been prepared by the joint efforts of their respective attorneys. Accordingly, the fact that counsel for one party or another may have drafted the Settlement Agreement or any portion of it is immaterial, and this Settlement Agreement shall not be strictly construed against any party.

j.   <u>Electronic Execution.</u>  Delivery of an executed counterpart of a signature page to this Settlement Agreement by telecopy, electronic facsimile or other electronic transmission will be as effective as physical delivery of an executed counterpart of this Settlement Agreement.

*[Signature page follows]*

AGREED:

WIZARD MODE MEDIA, LLC

Date: _____

By: John Patrick Lowe, Chapter 7
Trustee for the Jointly Administered
Bankruptcy Estate of In re Deeproot
Capital Management, LLC, et al.


- and -

DRAPER 5, LLC

Stephen D. Smith

Date: 10/20/2022

By: Stephen Smith, Manager

## EXHIBIT A

## PINBALL PROPERTY

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

    a. deeproot Pinball Websites
    b. Go Pinball Framework
    c. Pinball Machine API
    d. Pinball Mobile API
    e. Pinball Audio API
    f. Pinball Development Environment
    g. Pinball Mobile iOS app
    h. Pinball Stats Manager
    i. Firmware and Protocol for Pinball Circuit Boards
    j. Game Rules Code for the Deeproot Machines
    k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired from Zidware, Inc., John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7. All rights, title, and interest including inventions and copyright to pinball circuit board

{00596543;2}

layouts and designs developed by or for the Debtors.

8. Any software licenses owned by Debtors.

9. All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Utah office held by the Utah Landlord.

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

   a. Incomplete RAZA prototype held by UL tester in Dallas, Texas.
   b. Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction of Debtors' personal property located at the Silicon Drive office space.

Trustee is not responsible for delivering items not in their possession. It will be the Purchaser's responsibility to locate and pick up these items.

## EXHIBIT B

## OFFICE FURNISHINGS

The Office Furnishings include the following categories of tangible property located at the Premises:

- Desks
- Tables
- Drawers
- File Cabinets
- Chairs
- Water Filter Machines
- Kitchen Appliances
- Cleaning Supplies (vacuums, trash bags)
- Kitchen Supplies (paper goods, utensils, trash bags)
- Bathroom Supplies (soap, toilet paper)

# EXHIBIT C

<u>**SOFTWARE COPYRIGHT LICENSE**</u>

**Parties**

This License Agreement (the "Agreement") is entered into this ___ day of October, 2022 by and between COMPANY, a COMPANY_TYPE (the "Licensor") and Turner Logic, LLC, a Texas limited liability company (the "Licensee").

**Terms of Agreement**

**1. Licensed Work.** "Licensed Work" as used in this Agreement refers to the software defined in Exhibit A-5 of the Pinball Property Purchase and Sale Agreement.

**2. Grant of Irrevocable License.** The Licensor, in consideration of the Stalking Horse Fee of the Pinball Property Purchase and Sale Agreement, grants Licensee the right to use, copy, prepare derivative works, sublicense, and distribute the Licensed Work without geographic restriction. This Agreement shall be nonexclusive and shall be irrevocable. Licensee shall own all derivative works created from the Licensed Works and Licensor shall not have any rights to derivative works prepared by Licensee regarding the Licensed Works.

**3. The Licensor's Warranties.**

    **(a) Ownership.** The Licensor represents and warrants that it is the owner of the entirety of the rights in the Licensed Work and that it has the full authorization and authority to enter into this Agreement and grant the licenses herein.

    **(b) No Grant of Other Rights.** No other rights, permission or consent is necessary for the Licensee to use the Licensed Work in accordance with the license granted herein nor are any fees, royalties or a use payment of any kind due to third parties in connection with the exercise of the licenses granted herein.

**4. Assignment.** Licensee has the right to sublicense its rights under this Agreement without written consent of Licensor.

**5. Governing Law.** This Agreement shall be governed pursuant to the laws of the state of Texas and any dispute arising under this Agreement shall be resolved solely in the state or federal courts of the state of Texas, each party submitting to the jurisdiction and venue of such court.

# EXHIBIT D

## SETTLEMENT AGREEMENT

This Compromise and Settlement Agreement ("**Agreement**" and/or "**Settlement Agreement**") in entered into by, between John Patrick Lowe, in his capacity as the Chapter 7 Trustee ("**Trustee**"), the bankruptcy estate of Wizard Mode Media, LLC ("**Debtor**" or "**Tenant**") and Draper 5, LLC, a Utah limited liability company ("**Landlord**"). The Trustee, Debtor and Landlord are collectively referred to herein as the "**Parties**".

## RECITALS

A.      On December 9, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**"). The Court authorized that the Debtor's bankruptcy case, along with those of ten other debtor affiliates, be jointly administered under lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 (the "**Jointly Administered Case**"). [1]

B.      On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

C.      Prior to the Petition Date, the Debtor and Landlord were parties to a lease agreement relating to premises at 12227 South Business Park Drive, Suite 130, Draper, Utah 84020, containing approximately 5,929 rentable square feet ("**Premises**").

D.      The Debtor initially leased the Premises on March 1, 2020, for a period of 38 months expiring on April 30, 2023 (the "**Lease**" or "**Lease Agreement**").

E.      The Lease provides for the Debtor to pay annual base rent plus Debtor's proportionate share of operating expenses as described in the Lease. The Lease further provides for the recovery of Landlord's attorneys' fees, costs, and expenses in the event of a default by Debtor under the terms of the Lease.

F.      The Debtor stopped making rent payments under the Lease as of July 2021, and in or about July 2021, the Debtor's employees vacated the Premises. The personal property of the Debtor's estate, however, remains located in the Premises. Such personal property of the Debtor's estate consists of a portion of the pinball related property described on Exhibit A, attached hereto

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates**" or "**Estates**".

{00596543;2}

Page 1 of 10

(the "**Pinball Property**"), and the office furnishings described on Exhibit B, attached hereto (the "**Office Furnishings**").

G.     The Lease deposit, in the amount of $63,173.50, was thereafter applied by Landlord toward rent payments (plus penalties and interest due for overdue and unpaid rent, as provided in the Lease) for the months of August through December 2021, and towards a portion of the unpaid rent due for the month of January 2022. Landlord did not seek to lift the bankruptcy stay prior to offsetting the Lease deposit.

H.     On January 5, 2021, the Landlord filed a Proof of Claim (Claim No. 7-1) in the total amount of $47,183.31, for past due rent through January 1, 2022, late fees, and attorney fees.

I.     The Trustee did not assume the Lease within the 60-day period following the Petition Date and, therefore, pursuant to 11 U.S.C. §365(d)(1), the Lease has been deemed rejected by the Trustee.

J.     The Landlord has submitted a ledger of Lease expenses to the Trustee claiming post-petition administrative expenses in the total amount of $214,904.91 ("**Landlord's Claim**"). The Trustee disputes the amount so claimed by the Landlord and has determined in the exercise of his best business judgment that entering into a compromise and settlement of Landlord's Claim is in the best interest of the Bankruptcy Estates.

K.     The Estates of Debtor, and of deeproot Pinball, LLC, deeproot Tech, LLC, and deeproot Studios LLC, are the owners of the Pinball Property. The Estates of the seven other debtors in the jointly administered Bankruptcy Case (together, the "**Debtor Affiliates**") may also have a direct or indirect ownership interest in the Pinball Property. The Estate of Debtor is the owner of the Office Furnishings.

L.     The Trustee has been approached by a potential purchaser, Turner Logic, LLC, a Texas limited liability company (the "**Purchaser**"). Purchaser has offered to purchase the Pinball Property for the purchase price of $50,000 (the "**Purchase Price**"). In the exercise of his best business judgment, Trustee has determined that entering into the Pinball Property Purchase and Sale Agreement (the "**Purchase Agreement**") with the Purchaser is in the best interest of the Bankruptcy Estates.

M.     The Trustee and the Landlord have negotiated a compromise and settlement of the Landlord's Claim, the terms and conditions of which are set forth in this Settlement Agreement.

N.     This Settlement Agreement is contingent upon and subject to the Bankruptcy Court's approval of the Purchase Agreement and the closing of the sale of the Pinball Property, and the Bankruptcy Court's approval of the terms of this Settlement Agreement.

## SETTLEMENT TERMS

{00596543;2}

5596952v.3 2041/0001

Now therefore, for and in consideration of the Recitals set forth above, of the mutual covenants and promises set forth herein, and of the additional premises, covenants, agreements, and other undertakings herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties hereto, the Parties agree as follows:

1. Upon the signing of this Settlement Agreement by all Parties, the Parties will cooperate to prepare and file with the Bankruptcy Court a motion in form and substance satisfactory to all Parties, seeking the Bankruptcy Court's approval of this Settlement Agreement (the "**9019 Motion**").

2. Upon the signing of the Settlement Agreement by all Parties, the Trustee will file *Trustee's Motion to Approve (A) Sale of Pinball Property, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (C) the Form of Notice for the Sale of Pinball Property* (the "**Sale Procedures Motion**") with the Bankruptcy Court seeking approval of the sale procedures, stalking horse agreement, bid protections, and the form of notice for the sale of the Pinball Property. Upon the Bankruptcy Court's approval of the relief requested by the Sale Procedures Motion, the Bankruptcy Court will schedule a hearing to approve the sale of the Pinball Property to the Purchaser or the Successful Bidder (as defined in the Sale Procedures Motion) (the "**Sale Hearing**").

3. Concurrent with the Trustee's filing of the Sale Procedures Motion, the Parties will file the 9019 Motion with the Bankruptcy Court. If a hearing on the 9019 Motion is desired by the Parties, or otherwise required by the Bankruptcy Court, the Parties will request that such hearing be held on the same date as the Sale Hearing.

4. At the Sale Hearing the Trustee will seek an order of the Bankruptcy Court approving of the sale of the Pinball Property to the Purchaser or the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. §363 (the "**Sale Order**").

5. The closing on the sale of the Pinball Property shall be held within ten (10) days of the Bankruptcy Court filing the Sale Order, or within such time as may otherwise be ordered by the Bankruptcy Court.

6. Subject to the Bankruptcy Court's approval of this Settlement Agreement, within ten (10) days of the closing on the sale of the Pinball Property, the Trustee shall: (a) pay to Landlord, by check or wire transfer, the total amount of $15,000.00 (the "**Settlement Payment**") and (b) deliver to Landlord a bill of sale or similar document transferring all of Debtor's rights, interest and title in and to the Office Furnishings, free and clear of all liens, claims and encumbrances, to Landlord (the "**Bill of Sale**"). The transfer of title to the Office Furnishings shall be without any warranties and without recourse against the Trustee or the Bankruptcy Estates.

7. The Purchaser, at Purchaser's sole cost and expense, will use his best efforts to remove the Pinball Property from the Premises no later than November 30, 2022 (the "Removal Date"), but in any case within thirty (30) days of the closing on the sale of the Pinball Property. Landlord

{00596543;2}

Page 3 of 10

5596952v.3 2041/0001

agrees to cooperate with Purchaser's removal of the Pinball Property and, upon reasonable advance notice, to provide Purchaser with access to the Premises for such purpose.

8. If the Pinball Property has not been removed from the Premises by Purchaser on or before the Removal Date, Landlord may, at Landlord's sole option, remove the Pinball Property from the Premises and store the Pinball Property at a secure location to be determined by Landlord. If Landlord has removed and stored the Pinball Property as provided herein, Landlord agrees to provide Purchaser with the location of, and access to, the Pinball Property, for pick-up and removal by Purchaser. Purchaser agrees to reimburse Landlord for Landlord's actual costs of removing the Pinball Property and the storage thereof, provided, however, that the total amount to be reimbursed to Landlord by Purchaser, for Landlord's removal and storage of the Pinball Property, shall not exceed $5,000. Regardless of whether the Purchaser purchases the Pinball Property, if the Trustee or Purchaser has not retrieved the Pinball Property by March 31, 2023, the Landlord may sell the Pinball Property, deduct from the proceeds all costs of moving and storage, plus $15,000.00 if not previously paid by the Trustee, and transfer the remaining balance, if any, to the Purchaser or the Trustee, as the case may be.

9. The Landlord, by accepting the Settlement Payment and the Bill of Sale, releases the Bankruptcy Estates, the Debtor, deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios LLC, the deeproot Affiliates, and the Trustee, from any and all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), or liability, at law or in equity, arising from, or otherwise related to, the Lease, the Landlord waives any other claim of Landlord for post-petition administrative expenses in any of the bankruptcy cases being jointly administered under the Jointly Administered Case, and the Landlord agrees to file with the Court a Notice of Withdrawal pursuant to Bankruptcy Rule 3006, withdrawing the Proof of Claim filed by Landlord in the Jointly Administered Case.

10. The Bankruptcy Court shall retain jurisdiction to interpret, implement, and enforce this Settlement Agreement. Each Party shall execute all instruments and documents and take all actions as may reasonably be required to effectuate this compromise and settlement.

11. This Settlement Agreement shall be subject to the Bankruptcy Court's approval. If the sale of the Pinball Property is not consummated, this Settlement Agreement shall be null and void.

12. Miscellaneous.

    a.    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of Texas and the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.

    b.    Consideration for the Agreement. The Parties hereby covenant and agree that the promises and covenants received by each party to this Agreement constitute good and valuable consideration and that the exchange of such releases and other promises and covenants made a part of the is Agreement

{00596543;2}

5596952v.3 2041/0001

constitute good consideration to support the duties, rights, obligations and forbearances of each party to this Agreement.

c.     <u>Counterparts.</u> This Agreement may be executed in two (2) or more counterparts; and each counterpart, when so executed and delivered, shall constitute an original instrument, and all such separate counterparts shall constitute but one and the same instrument.

d.     <u>Integration and Entire Agreement.</u> This Agreement, and any other documents or exhibits referred to herein and which form an integral part hereof, contains the entire understanding of the Parties hereto with respect to the subject matter contained herein and therein. Notwithstanding the foregoing, the Parties hereby expressly contemplate that additional documentation shall be required to effectuate the transactions documented in this Agreement. Each Party hereby agrees to negotiate, execute and perform in good faith any additional documentation and all actions required to effectuate and fully consummate the transactions contemplated and documented in this Agreement.

e.     <u>Amendments.</u> This Agreement may not be changed orally, but only by an agreement in writing signed by the Parties.

f.     <u>Nonadmissions Disclaimer.</u> The Parties agree that this Settlement Agreement shall not constitute an admission of liability by any party and it is entered into only in the interest of settling various claims and disputes, by between and among the Parties and to save any additional cost and expense inherent in resolving such claims and disputes through litigation.

g.     <u>Binding Effect.</u> Subject to Bankruptcy Court approval, the Parties agree that this Settlement Agreement shall be binding on each party and each party's respective heirs, devises, successors, assigns and personal representatives, including, without limitation, any successor or substitute trustee that might be appointed to succeed or replace Trustee in Debtor's bankruptcy case.

h.     <u>Representations.</u> Each of the Parties represents that as of the day hereof, subject to Bankruptcy Court approval, they have the authority to execute this Settlement Agreement and to undertake whatever actions are required to consummate the terms of this Settlement Agreement. The Parties further represent and acknowledge that they have consulted with legal counsel in connection with this Settlement Agreement; has carefully read and understood the provisions of this Settlement Agreement; and after having consulted with counsel, have willingly and with full knowledge entered into this settlement; and this Settlement Agreement is not subject to fraud, duress or overreaching.

{00596543;2}

5596952v.3 2041/0001

i.   <u>No Strict Construction.</u> This Settlement Agreement is the result of substantial negotiations between the Parties and their counsel and has been prepared by the joint efforts of their respective attorneys. Accordingly, the fact that counsel for one party or another may have drafted the Settlement Agreement or any portion of it is immaterial, and this Settlement Agreement shall not be strictly construed against any party.

j.   <u>Electronic Execution.</u>  Delivery of an executed counterpart of a signature page to this Settlement Agreement by telecopy, electronic facsimile or other electronic transmission will be as effective as physical delivery of an executed counterpart of this Settlement Agreement.

*[Signature page follows]*

AGREED:

WIZARD MODE MEDIA, LLC

_____          Date: _____

By: John Patrick Lowe, Chapter 7
Trustee for the Jointly Administered
Bankruptcy Estate of In re Deeproot
Capital Management, LLC, et al.


- and -

DRAPER 5, LLC

Stephen D. Smith
_____          Date: 10/20/2022
By: Stephen Smith, Manager

## EXHIBIT A

## PINBALL PROPERTY

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

   a. deeproot Pinball Websites
   b. Go Pinball Framework
   c. Pinball Machine API
   d. Pinball Mobile API
   e. Pinball Audio API
   f. Pinball Development Environment
   g. Pinball Mobile iOS app
   h. Pinball Stats Manager
   i. Firmware and Protocol for Pinball Circuit Boards
   j. Game Rules Code for the Deeproot Machines
   k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired from Zidware, Inc., John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7. All rights, title, and interest including inventions and copyright to pinball circuit board

{00596543;2}

Page 8 of 10

layouts and designs developed by or for the Debtors.

8. Any software licenses owned by Debtors.

9. All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Utah office held by the Utah Landlord.

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

    a.  Incomplete RAZA prototype held by UL tester in Dallas, Texas.
    b.  Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction of Debtors' personal property located at the Silicon Drive office space.

Trustee is not responsible for delivering items not in their possession. It will be the Purchaser's responsibility to locate and pick up these items.

## EXHIBIT B

## OFFICE FURNISHINGS

The Office Furnishings include the following categories of tangible property located at the Premises:

- Desks
- Tables
- Drawers
- File Cabinets
- Chairs
- Water Filter Machines
- Kitchen Appliances
- Cleaning Supplies (vacuums, trash bags)
- Kitchen Supplies (paper goods, utensils, trash bags)
- Bathroom Supplies (soap, toilet paper)

# EXHIBIT E

## SALE PROCEDURES

On December 9, 2021 (the **"Petition Date"**), deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, Wizard Mode Media, LLC, and seven affiliated entities (each a "**Debtor**" and together, the "**Debtors**"), filed voluntary petitions for relief under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") .[1]

On December 21, 2021, John Patrick Lowe, was appointed chapter 7 Trustee (**"Trustee"**) for the Bankruptcy Estates, which cases are being jointly administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division.

These Sale Procedures have been approved and authorized pursuant to the *Trustee's Motion to Approve (A) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (B) the Form of Notice for the Sale of Pinball Property* (the **"Sale Procedures Motion"**) and the *Order Approving Trustee's Motion to Approve (A) Sale Procedures and Bid Protections in Connection with the Sale of Pinball Property , and (B) the Form of Notice for the Sale of Pinball Property* (the **"Sale Procedures Order"**), entered by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

### A. Assets to be Sold

Generally, the assets to be sold include the conveyance free and clear of all liens, claims, encumbrances, and interests in certain pinball related tangible and intangible property, as described on **Exhibit A** (the "**Pinball Property**"). To the Trustee's knowledge and belief, the Pinball Property is the property of the estates of deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, and Wizard Mode Media, LLC. However, to the extent any of the other jointly administered Bankruptcy Estates have an interest in the Pinball Property, the Trustee conveys all of the right, title and interest that each of the eleven jointly administered Bankruptcy Estates has, or may have, in the Pinball Property (the "**Sale**").

### B. Stalking Horse Agreement

Subject to the provisions set forth herein, Trustee has entered into a certain Pinball Property Purchase and Sale Agreement (the **"Stalking Horse Agreement"**) with Turner Logic, LLC, a Texas limited liability company (the **"Stalking Horse Bidder"**), pursuant to which Trustee has agreed to sell and the Stalking Horse Bidder has agreed to purchase the Pinball Property for the

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" and collectively, the "**Bankruptcy Estates**".

purchase price in the amount of $50,000 (the "**Purchase Price**"), subject to the receipt and acceptance of an otherwise better Qualified Bid from a Qualified Bidder, as provided herein.

The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder. Unless provided otherwise by order of the Bankruptcy Court prior to the entry of the Sale Order, no party other than the Stalking Horse Bidder shall be entitled to a break-up fee or expense reimbursement.

## C. **Submission of Initial Qualifying Bids by Potential Purchasers**

Any party wishing to participate as a qualified bidder shall submit (a) a bid for the Pinball Property (**"Bid"**), (b) a purchase agreement (**"Purchase Agreement"**), signed by an authorized representative of such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Chapter 7 Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com; and should deposit Twenty Five Thousand and no/100 Dollars ($25,000.00) (**"Earnest Money Deposit"**) with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than seven (7) days prior to the Court's hearing on the Sale Procedures Motion (the **"Bid Deadline"**).

Any such Bid submitted by the Bid Deadline shall be in the amount of at least Sixty Thousand and no/100 Dollars ($60,000.00) to be a qualified bid (**"Qualified Bid"**) and to allow the bidder to become a Qualified Bidder (**"Qualified Bidder"**). The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the Successful Bidder, defined below) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale of the Pinball Property.

In all circumstances, the Trustee reserves the right to negotiate for a better offer from all Qualified Bidders.

## D. **The Selection of the Successful Bid**

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the Bankruptcy Estates, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms, and shall select, exercising his best business judgement, the successful bid ("**Successful Bid**"); the Qualified Bidder who submits the Successful Bid shall be deemed the successful bidder (the "**Successful Bidder**").

**E. Objections to Sale**

Any objection(s) filed to the sale of the Pinball Property (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position; and (ii) shall be filed with the Court on or before seven (7) days prior to the Court's hearing on the Sale Procedures Motion (the **"Objection Deadline"**). Any person failing to timely file an objection to the sale prior to the Objection Deadline shall be forever barred from objecting to the sale, including the transferring of the Property free and clear of any and all liens, claims and other interests, and will be deemed to consent to the Sale.

**F. Court Approval**

The sale hearing will be held on _____, 2022, before the Honorable Michael M. Parker, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom No. 1, Third Floor, 615 E. Houston St., San Antonio, Texas 78205 (the "**Sale Hearing**") where Trustee will seek approval of the sale of the Pinball Property to the Stalking Horse Bidder or the Successful Bidder, as the case may be.

Neither the Trustee nor the Court will consider offers at the Sale Hearing other than those submitted in accordance with these procedures.

At the Sale Hearing, Trustee will seek entry of an order approving the sale of the Pinball Property to the Stalking Horse Bidder or the Successful Bidder pursuant to 11 U.S.C. §363(f) and free and clear of all liens, claims, encumbrances, and interests. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by Trustee with the approval of the Successful Bidder and without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

Trustee's presentation to the Bankruptcy Court for approval of a Successful Bidder does not constitute Trustee's acceptance of the Successful Bid. Trustee will be deemed to have accepted the Successful Bid only when the Successful Bid has been approved by Order of the Bankruptcy Court.

**G. Failure to Consummate Purchase**

If any Successful Bidder fails to consummate the purchase of the Pinball Property, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, the Earnest Money Deposit of such Successful Bidder shall be forfeited to the Bankruptcy Estates.

**H. Back-Up Bidders**

If any Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (if any), (the **"Back-Up Bidder(s)"**) will be deemed to be the Successful Bidder for the Pinball Property and Trustee will be authorized to consummate the Sale of the Pinball Property to such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid. If any

Qualified Bidder fails to consummate the sale because of a breach or failure to perform on the part of such Qualified Bidder or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Trustee until a Qualified Bidder shall consummate the sale.

**I.** **Return of Earnest Money Deposit**

The Earnest Money Deposit of all Qualified Bidders, who are not the Successful Bidder, will be returned, without interest, to each such Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale.

**J.** **Reservation of Rights**

1.    Determination of Successful Bid. Trustee reserves the right to: (a) determine whether any Qualified Bid is a successful bid, and (b) reject, at any time prior to the entry of the Sale Order, any Bid that the Trustee in its discretion determines to be inadequate, insufficient, not in conformity with the Sales Procedures or the Bankruptcy Code, or contrary to the best interest of the Trustee and its Estate.

2.    Modification of Bidding Procedures. Trustee may modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) adjourning the Sale Hearing; provided, however, that the Trustee may not (i) alter any Bid Protections or Stalking Horse Fee granted to the Stalking Horse Bidder, (ii) change the amount required for a Bid to constitute a Qualified Bid, or (iii) change the Deposit required of a Qualified Bidder.

3.    Nothing contained in these Sale Procedures, or the court's order, shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by these Sale Procedures.

**K.** **As Is, Where As Sale**

The sale of the Pinball Property shall be on an **"as is, where as"** basis and without representations or warranties of any kind, nature, or description by the Trustee, the Estate, or its agents and representatives. Except as otherwise expressly provided in these Sale Procedures, by submitting a Bid, each bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Pinball Property prior to makings its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any and all documents and/or the Pinball Property in making its bid, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Pinball Property, or the completeness of any information provided in connection therewith.

**L.  Trustee's 's Counsel**

Any questions regarding these Sales Procedures should be addressed to Trustee's Counsel whose contact information is:

Randall A. Pulman
rpulman@pulmanlaw.com
W. Drew Mallender
dmallender@pulmanlaw.com
Pulman, Cappuccio & Pullen, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**EXHIBIT A to Sale Procedures**
**Description of Property**

## PINBALL PROPERTY

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

   a. deeproot Pinball Websites
   b. Go Pinball Framework
   c. Pinball Machine API
   d. Pinball Mobile API
   e. Pinball Audio API
   f. Pinball Development Environment
   g. Pinball Mobile iOS app
   h. Pinball Stats Manager
   i. Firmware and Protocol for Pinball Circuit Boards
   j. Game Rules Code for the Deeproot Machines
   k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired as part of the Zidware settlement from Zidware, John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and

trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7.  All rights, title, and interest including inventions and copyright to pinball circuit board layouts and designs developed by or for the Debtors.

8.  Any software licenses owned by Debtors.

9.  All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Premises..

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

    a.  Incomplete RAZA prototype held by UL tester in Dallas, Texas.
    b.  Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction at the Silicon Drive office.

**Trustee is not responsible for delivering Pinball Property not in his possession. It will be the Purchaser's responsibility to locate and pick up the Pinball Property wherever it may be located.**

# EXHIBIT F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | |
| LLC, ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

**TRUSTEE'S NOTICE OF SALE OF PINBALL PROPERTY**

---

## PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED AS SET FORTH HEREIN.

On December 9, 2021 (the "**Petition Date**"), the Debtors filed their respective voluntary petitions under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The Court approved joint administration of Debtors listed in the captioned footnote on December 20, 2021. On December 21, 2021, John Patrick Lowe was appointed Chapter 7 Trustee (the "Trustee") of the estates of the Jointly Administered Debtors.

On October ___, 2022, Trustee filed *Trustee's Motion to Approve (A) Sale of Pinball Property, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (C) the Form of Notice for the Sale of Pinball Property* (the "**Sale Procedures Motion**") seeking approval of certain procedures for the sale of and taking bids (the "**Sale Process**") on property of the Estates. Through this Sale Process, Trustee seeks the highest and best offer(s) for the sale (the "**Sale**") of certain tangible and intangible pinball related property of the Estates, including the Estates of deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, and Wizard Mode Media, LLC ("**Pinball Property**") free and clear of any and all liens, claims, rights, interests, and encumbrances in accordance with Section 363(f) of the Bankruptcy Code, with such liens, claims, rights, interests, and encumbrances to attach to the sale proceeds. The Sale Process is subject to, and all offers must be in accordance with, the sale procedures approved by the Bankruptcy Court, which are attached hereto as **Exhibit A** (the "**Sale Procedures**").

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates" or "Estates**".

On October ___, 2022, the Bankruptcy Court entered its *Order Approving Trustee's Motion to Approve (A) Sale of Pinball Property, (B) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (C) the Form of Notice for the Sale of Pinball Property* [Docket No. ___ (the "**Sales Procedures Order**") in which the Bankruptcy Court, among other things, (a) approved the Sales Procedures, (b) approved the Stalking Horse Agreement, (c) approved the form and manner of notice of the Sale Procedures, (d) set an Objection Deadline to the Sale, and (e) established the date for the Sale.

Any party wishing to participate as a qualified bidder should submit (a) a bid for the Pinball Property ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com, and deposit Twenty-Five Thousand and no/100 Dollars ($25,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than _____, 2022 at 5:00 p.m. prevailing Central Time (the "**Bid Deadline**"). Any such Bid submitted by the Bid Deadline shall be in the amount of at least Sixty Thousand and no/100 Dollars ($60,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**"). The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale.

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the estate, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of a Qualified Bid and Trustee shall, in his absolute discretion, exercising only his best business judgment on behalf of the Estates, announce the Successful Bidder.

After announcing the Successful Bidder, Trustee shall request that the Court approval the Sale at a hearing to be held at Hipolito F. Garcia Federal Building and United State Courthouse, Courtroom No. 3, Fifth Floor, 615 E. Houston St., San Antonio, Texas 78205 **on _____ __, 2022 at _____, prevailing Central Time** (the "**Sale Hearing**").

Objections, if any, to the consummation of the Sale, shall be filed with the Bankruptcy Court by no later than _____, 2022 (the "**Objection Deadline**"). Any person failing to timely file an objection to the Sale prior to the deadlines set forth in the Bid Procedures Order shall be forever barred from objecting to the Sale, including the transferring of the Pinball Property free and clear of any and all liens, claims and other interests, and will be deemed to consent to the Sale.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: _____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

## EXHIBIT A TO SALE NOTICE
## SALE PROCEDURES

## SALE PROCEDURES

On December 9, 2021 (the **"Petition Date"**), deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, Wizard Mode Media, LLC, and seven affiliated entities (each a **"Debtor"** and together, the **"Debtors"**), filed voluntary petitions for relief under chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the **"Bankruptcy Code"**) .[2]

On December 21, 2021, John Patrick Lowe, was appointed chapter 7 Trustee (**"Trustee"**) for the Bankruptcy Estates, which cases are being jointly administered under *In re deeproot Capital Management, LLC, et al.*, Case No. 21-51523, in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division.

These Sale Procedures have been approved and authorized pursuant to the *Trustee's Motion to Approve (A) Sale Procedures, Stalking Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (B) the Form of Notice for the Sale of Pinball Property* (the **"Sale Procedures Motion"**) and the *Order Approving Trustee's Motion to Approve (A) Sale Procedures and Bid Protections in Connection with the Sale of Pinball Property , and (B) the Form of Notice for the Sale of Pinball Property* (the **"Sale Procedures Order"**), entered by the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

## A. Assets to be Sold

Generally, the assets to be sold include the conveyance free and clear of all liens, claims, encumbrances, and interests in certain pinball related tangible and intangible property, as described on **Exhibit A** (the **"Pinball Property"**). To the Trustee's knowledge and belief, the Pinball Property is the property of the estates of deeproot Pinball, LLC, deeproot Tech, LLC, deeproot Studios, LLC, and Wizard Mode Media, LLC. However, to the extent any of the other jointly administered Bankruptcy Estates have an interest in the Pinball Property, the Trustee conveys all of the right, title and interest that each of the eleven jointly administered Bankruptcy Estates has, or may have, in the Pinball Property (the **"Sale"**).

## B. Stalking Horse Agreement

Subject to the provisions set forth herein, Trustee has entered into a certain Pinball Property Purchase and Sale Agreement (the **"Stalking Horse Agreement"**) with Turner Logic, LLC, a Texas limited liability company (the **"Stalking Horse Bidder"**), pursuant to which

---

[2] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a **"Bankruptcy Estate"** and collectively, the **"Bankruptcy Estates"**.

Trustee has agreed to sell and the Stalking Horse Bidder has agreed to purchase the Pinball Property for the purchase price in the amount of $50,000 (the "**Purchase Price**"), subject to the receipt and acceptance of an otherwise better Qualified Bid from a Qualified Bidder, as provided herein.

The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder. Unless provided otherwise by order of the Bankruptcy Court prior to the entry of the Sale Order, no party other than the Stalking Horse Bidder shall be entitled to a break-up fee or expense reimbursement.

## C. <u>Submission of Initial Qualifying Bids by Potential Purchasers</u>

Any party wishing to participate as a qualified bidder shall submit (a) a bid for the Pinball Property (**"Bid"**), (b) a purchase agreement (**"Purchase Agreement"**), signed by an authorized representative of such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Chapter 7 Trustee, 2402 E. Main, Uvalde, Texas 78801; email pat.lowe.law@gmail.com; and should deposit Twenty Five Thousand and no/100 Dollars ($25,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, Texas 78213; Phone No. (210) 222-9494, Fax No. (210) 892-1610; email rpulman@pulmanlaw.com by no later than seven (7) days prior to the Court's hearing on the Sale Procedures Motion (the **"Bid Deadline"**).

Any such Bid submitted by the Bid Deadline shall be in the amount of at least Sixty Thousand and no/100 Dollars ($60,000.00) to be a qualified bid (**"Qualified Bid"**) and to allow the bidder to become a Qualified Bidder (**"Qualified Bidder"**). The deposited funds will be held by Pulman, Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the Successful Bidder, defined below) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale of the Pinball Property.

In all circumstances, the Trustee reserves the right to negotiate for a better offer from all Qualified Bidders.

## D. <u>The Selection of the Successful Bid</u>

In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the Bankruptcy Estates, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms, and shall select, exercising his best business judgement, the successful bid ("**Successful Bid**"); the Qualified Bidder who submits the Successful Bid shall be deemed the successful bidder (the "**Successful Bidder**").

### E.  Objections to Sale

Any objection(s) filed to the sale of the Pinball Property (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position; and (ii) shall be filed with the Court on or before seven (7) days prior to the Court's hearing on the Sale Procedures Motion (the **"Objection Deadline"**).  Any person failing to timely file an objection to the sale prior to the Objection Deadline shall be forever barred from objecting to the sale, including the transferring of the Property free and clear of any and all liens, claims and other interests, and will be deemed to consent to the Sale.

### F.  Court Approval

**The sale hearing will be held on _____, 2022, before the Honorable Michael M. Parker, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom No. 1, Third Floor, 615 E. Houston St., San Antonio, Texas 78205** (the "**Sale Hearing**") where Trustee will seek approval of the sale of the Pinball Property to the Stalking Horse Bidder or the Successful Bidder, as the case may be. Neither the Trustee nor the Court will consider offers at the Sale Hearing other than those submitted in accordance with these procedures.

At the Sale Hearing, Trustee will seek entry of an order approving the sale of the Pinball Property to the Stalking Horse Bidder or the Successful Bidder pursuant to 11 U.S.C. §363(f) and free and clear of all liens, claims, encumbrances, and interests.  The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by Trustee with the approval of the Successful Bidder and without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

Trustee's presentation to the Bankruptcy Court for approval of a Successful Bidder does not constitute Trustee's acceptance of the Successful Bid. Trustee will be deemed to have accepted the Successful Bid only when the Successful Bid has been approved by Order of the Bankruptcy Court.

### G.  Failure to Consummate Purchase

If any Successful Bidder fails to consummate the purchase of the Pinball Property, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, the Earnest Money Deposit of such Successful Bidder shall be forfeited to the Bankruptcy Estates.

### H.  Back-Up Bidders

If any Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (if any), (the **"Back-Up Bidder(s)"**) will be deemed to be the Successful Bidder for the Pinball Property and Trustee will be authorized to

consummate the Sale of the Pinball Property to such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid. If any Qualified Bidder fails to consummate the sale because of a breach or failure to perform on the part of such Qualified Bidder or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Trustee until a Qualified Bidder shall consummate the sale.

## I.   Return of Earnest Money Deposit

The Earnest Money Deposit of all Qualified Bidders, who are not the Successful Bidder, will be returned, without interest, to each such Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale.

## J.   *Reservation of Rights*

1.   Determination of Successful Bid. Trustee reserves the right to: (a) determine whether any Qualified Bid is a successful bid, and (b) reject, at any time prior to the entry of the Sale Order, any Bid that the Trustee in its discretion determines to be inadequate, insufficient, not in conformity with the Sales Procedures or the Bankruptcy Code, or contrary to the best interest of the Trustee and its Estate.

2.   Modification of Bidding Procedures. Trustee may modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) adjourning the Sale Hearing; provided, however, that the Trustee may not (i) alter any Bid Protections or Stalking Horse Fee granted to the Stalking Horse Bidder, (ii) change the amount required for a Bid to constitute a Qualified Bid, or (iii) change the Deposit required of a Qualified Bidder.

3.   Nothing contained in these Sale Procedures, or the court's order, shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by these Sale Procedures.

## K.   As Is, Where As Sale

The sale of the Pinball Property shall be on an **"as is, where as"** basis and without representations or warranties of any kind, nature, or description by the Trustee, the Estate, or its agents and representatives. Except as otherwise expressly provided in these Sale Procedures, by submitting a Bid, each bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Pinball Property prior to makings its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any and all documents and/or the Pinball Property in making its bid, and (iii) did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Pinball Property, or the completeness of any information provided in connection therewith.

**L.** **Trustee's 's Counsel**

Any questions regarding these Sales Procedures should be addressed to Trustee's Counsel whose contact information is:

Randall A. Pulman
rpulman@pulmanlaw.com
W. Drew Mallender
dmallender@pulmanlaw.com
Pulman, Cappuccio & Pullen, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

## EXHIBIT A to Sale Procedures
## Description of Property

### <u>PINBALL PROPERTY</u>

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1.  All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2.  Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3.  International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4.  International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5.  All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to (see Stalking Horse Fee and Exhibit C for Software Copyright License information):

    a.  deeproot Pinball Websites
    b.  Go Pinball Framework
    c.  Pinball Machine API
    d.  Pinball Mobile API
    e.  Pinball Audio API
    f.  Pinball Development Environment
    g.  Pinball Mobile iOS app
    h.  Pinball Stats Manager
    i.  Firmware and Protocol for Pinball Circuit Boards
    j.  Game Rules Code for the Deeproot Machines
    k.  User Interface Code for the Deeproot Machines

6.  All intellectual property acquired as part of the Zidware settlement from Zidware, John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7.  All rights, title, and interest including inventions and copyright to pinball circuit board layouts and designs developed by or for the Debtors.

8.  Any software licenses owned by Debtors.

9.  All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Premises..

10.  All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11.  RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

   a.  Incomplete RAZA prototype held by UL tester in Dallas, Texas.
   b.  Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction at the Silicon Drive office.

**Trustee is not responsible for delivering Pinball Property not in his possession. It will be the Purchaser's responsibility to locate and pick up the Pinball Property wherever it may be located.**

# EXHIBIT G

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | |
| LLC, ET AL., [1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

ORDER APPROVING TRUSTEE'S MOTION TO APPROVE
(A) SALE PROCEDURES, STALKING HORSE AGREEMENT AND BID PROTECTIONS IN
CONNECTION WITH THE SALE OF PINBALL PROPERTY AND
(B) THE FORM OF NOTICE FOR THE SALE OF PINBALL PROPERTY

Came on for consideration the *Trustee's Motion to Approve (A) Sale Procedures, Stalking*

*Horse Agreement and Bid Protections in Connection with the Sale of Pinball Property, and (B)*

*the Form of Notice for the Sale of Pinball Property* (the "**Sale Procedures Motion**").[ECF No.

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates**" or "**Estates**".

___ ].[2]  Based on the representations made in the Sale Procedures Motion, the Court finds that (i) it has jurisdiction over the matters raised in the Sale Procedures Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order on the Sale Procedures Motion; (iii) the relief requested in the Sale Procedures Motion seeking the establishment of Sale Procedures and the approval of the Stalking Horse Agreement and the Bid Protections in connection with the sale of the Pinball Property is in the best interests of the Bankruptcy Estates and the creditors; (iv) proper and adequate notice of the Sale Procedures Motion has been given and no further notice is necessary; (v) all objections to the Sale Procedures Motion that were filed have been resolved or are hereby overruled; and (vi) based on the record herein, after due deliberation, good and sufficient cause exists for the granting of the Sale Procedures Motion in all respects, and pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014, the Court makes the additional **FINDINGS OF FACT AND CONCLUSIONS OF LAW.**

**THE COURT FINDS THAT:**

A.      Notice of the Sale Procedures Motion and related hearing or matter was reasonable and sufficient and complied with all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules in light of the circumstances and nature of the relief requested therein, and no other or further notice is necessary.  A reasonable and fair opportunity to object to the Sale Procedures Motion and all relief requested therein and granted in this Order has been afforded.

B.      The legal and factual basis set forth in the Sale Procedures Motion establish just cause for the relief granted herein. Granting the relief is in the best interests of the Estates and the creditors.

---

[2] Capitalized terms unless otherwise defined herein shall have the meaning as ascribed to them in the Sale Procedures Motion.

C.     Trustee has articulated good and sufficient reasons for this Court to grant the Sale Procedures Motion and to approve the Sale Notice, in substantially the same form as Exhibit F to the Sale Procedures Motion, and the Sale Procedures, in substantially the same form as Exhibit E to the Sale Procedures Motion.

D.     The Sale Procedures are reasonable and appropriate and designed to maximize the value of the property of the Estates.

**THEREFORE, IT IS ORDERED THAT:**

1.     The Sale Procedures Motion is approved and granted.

2.     Any objections to the Sale Procedures Motion that have not been withdrawn, waived or settled as announced to the Court at the hearing on the Sale Procedures Motion, are overruled in their entirety.

3.     The Sale Notice, attached as Exhibit F to the Sale Procedures Motion, is approved. Within three business days after the Court enters an Order approving this Sale Procedures Motion, Trustee shall serve the Sale Notice by (a) first-class United States mail, postage-prepaid on (i) the parties identified on the Creditor Matrix in these Cases at the addresses set forth therein, (ii) the parties that have filed proofs of claim in these Cases at the addresses set forth in the respective proofs of claim, and (iii) any other parties who have expressed an interest in acquiring the Property; and (b) the Court's electronic-filing system on those parties receiving electronic notice by such system.  Service of such Sale Notice is proper, due, timely, good, and sufficient notice of, among other things, the Sale Procedures, the auction, the proposed Sale, and the procedure for objecting thereto.

4.     The Sale Procedures, attached as Exhibit E to the Sale Procedures Motion which relate to the sale of the Pinball Property (the "**Sale**"), are approved.

5.      The Stalking Horse Agreement, attached as Exhibit B to the Sale Procedures Motion, is approved.

6.      The Stalking Horse Bidder, Turner Logic, LLC, a Texas limited liability company, is approved.

7.      The Bid Protections provided in the Stalking Horse Agreement (attached as Exhibit B to the Sale Procedures Motion), are approved.  Specifically, (a) the break-up fee in the form of a perpetual non-exclusive license to use the Pinball Software, substantially in the form attached to the Sale Procedures Motion as Exhibit C, (b) the reimbursement of reasonable and necessary attorney's fees and expenses capped at $5,000.00, and (c) the treatment of fees and associated costs in the amount of $1,930.32, paid post-petition by the Stalking Horse Bidder to preserve the Patents, as an administrative expense of the Estates, are approved.

8.      The Stalking Horse Agreement and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and the Stalking Horse Bidder will be deemed to be a Qualified Bidder.

9.      Any party wishing to participate as a qualified bidder should submit (a) a sealed bid for the Pinball Property ("**Bid**"), (b) a purchase agreement ("**Purchase Agreement**"), signed by an authorized representative of such bidder, and (c) evidence of the bidder's financial ability to close the transaction, to J. Patrick Lowe, Trustee, and deposit Twenty-Five Thousand and no/100 Dollars ($25,000.00) ("**Earnest Money Deposit**") with Trustee's counsel, Randall A. Pulman, at Pulman, Cappuccio & Pullen, LLP, by no later than _____ , 2022 (the "**Bid Deadline**").  Any such Bid submitted by the Bid Deadline shall be in the amount of at least Sixty Thousand and no/100 Dollars ($60,000.00) to be a qualified bid ("**Qualified Bid**") and to allow the bidder to become a Qualified Bidder ("**Qualified Bidder**").  The deposited funds will be held by Pulman,

Cappuccio & Pullen, LLP in its trust account until after the closing of the sale. The Earnest Money Deposit of all Qualified Bidders (except for the highest bidder (the "**Successful Bidder**")) will be returned, without interest, to each Qualified Bidder as soon as reasonably practicable but in any event within seven (7) business days after the closing of the Sale.

10.     By no later than noon on _____, **2022**, Trustee will file a notice with the Court stating whether it has timely received a Qualified Bid to purchase the Pinball Property in a cash amount of at least **$60,000.00**.

11.     In the event Trustee receives at least one Qualified Bid by the Bid Deadline, the Trustee may in his absolute discretion, exercising only his best business judgment on behalf of the Estates, negotiate with the Stalking Horse Bidder and one or more of the Qualified Bidders on price and terms of the Qualified Bid and Trustee shall, in his absolute discretion, exercising only his best business judgment on behalf of the Estates, select the Successful Bidder.

12.     The Court shall hold a hearing to approve a sale of the Pinball Property to the Stalking Horse Bidder, or its assignee, or to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363.  Such hearing shall be held on _____, **2022, at** _____ (the "**Sale Hearing**").

13.     The closing of the sale of the Pinball Property to the Successful Bidder shall occur no later than _____, 2022 (the "**Closing Deadline**"). The Closing Deadline may be modified upon an agreement between Trustee and the Successful Bidder.

14.     If any Successful Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid (if any), as determined by the Trustee (the "**Back-Up Bidder(s)**"), will be deemed to be the Successful Bidder for the Pinball Property and Trustee will

be authorized to consummate the Sale of the Pinball Property to such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Successful Bid.

15.     If any Successful Bidder fails to consummate the purchase of the Pinball Property, and such failure to consummate the purchase is the result of a breach by such Successful Bidder, the Earnest Money Deposit of such Successful Bidder shall be forfeited to the estate.

16.     Any objection(s) filed to the sale of the Pinball Property (i) shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position and (ii) shall be filed with the Court on or before _____, 2022 (the "**Objection Deadline**").  Any person failing to timely file an objection to the Sale prior to the Objection Deadline shall be forever barred from objecting to the Sale, including the transferring of the Policies free and clear of any and all liens, claims and other interests.

17.     Trustee reserves the right to (i) determine in its discretion whether any Qualified Bid is a Successful Bid and (ii) reject, at any time prior to the entry of the Sale Order by the Bankruptcy Court, without liability, any Bid that Trustee in its discretion, determines to be inadequate, insufficient, not in conformity with the Sale Procedures or the Bankruptcy Code, or contrary to the best interests of the Estates.

18.     Trustee reserves the right to modify the Sale Procedures, without the need for any further order of the Bankruptcy Court, including, without limitation (a) extending the deadlines set forth in these Sale Procedures, and (b) requesting a continuance of the hearing on the Sale Motion; provided, however, that the Trustee may not alter any Bid or the Stalking Horse Fee granted to the Stalking Horse Bidder, change the amount of a Qualified Bid, or change the Earnest Money Deposit required of a Qualified Bidder.

19.     Nothing contained in the Sale Procedures or this Order shall limit, restrict, alter, modify, waive or otherwise impair Trustee's reasonable business judgment in relation to the sale process contemplated by the Sale Procedures.

20.     Notwithstanding Bankruptcy Rule 6004, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rule 6004(h) is hereby waived.

21.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

**ORDER SUBMITTED BY:**

Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**ATTORNEYS FOR CHAPTER 7 TRUSTEE**

# EXHIBIT H

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | |
| LLC, ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

### ORDER AUTHORIZING AND APPROVING THE SALE
### OF CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF ALL INTERESTS
### PURSUANT TO 11 U.S.C. §§ 363(b) and (f)

---

On _____, 2022 the Court conduced a hearing on the *Motion* of John

Patrick Lowe, the Chapter 7 Trustee ("**Trustee**") of the Bankruptcy Estates being jointly

administered under the above styled case, for an *Order Authorizing and Approving the Sale of*

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are:  In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth *5* Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates" or "Estates**".

*Certain Personal Property Free and Clear of Interests Pursuant to 11 U.S.C. §§ 363(b) and (f)*

(the "**Sale Motion**") concerning personal property described as

> All interests of the Debtors in and to certain pinball related tangible and intangible property, as described on <u>Exhibit 1</u> attached hereto (the "**Pinball Property**").

The Pinball Property is referred to herein, as "**the Assets**". The sale and conveyance of the Assets for which approval is sought is occasionally referred to herein as "the Sale". The Court has reviewed the Sale Motion and has heard the evidence in support of the relief requested therein at a hearing before the Court on _____, 2022 (the "**Sale Hearing**").  The Court considered any objections to the Sale Motion, each of which are overruled, resolved, or withdrawn; and including the announcements and agreements stated on the record at the hearing, the Court has determined that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein.  After due deliberation the Court finds that:

1. <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over this bankruptcy case and the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 105(a).  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

2. <u>Statutory Predicates</u>.  The statutory predicates for the relief sought in the Sale Motion are sections 105(a) and 363 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 2002, 6004, 9007 and 9014, and the applicable Local Rules for the United States Bankruptcy Court for the Western District of Texas (the "**Local Rules**").

3. <u>Final Order</u>.  This order approving the Sale Motion (the "**Order**") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules

6004(h) and to any extent necessary under Bankruptcy Rules 9014, Rule 54(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, the Court expressly finds that there is no just reason for the delay in the implementation of this Order, waives any stay, and expressly directs entry of the order as set forth herein.  This Order shall be effective and enforceable immediately upon entry.

4.      <u>Notice</u>.  As evidenced by the certificates of service filed with this Court, based upon the record of the case and representations of counsel at the Sale Hearing:  (i) in accordance with inter alia, Bankruptcy Rule 2002, due proper, timely, adequate and sufficient notice of the Sale Motion and the transactions contemplated by Sales Procedures Order (Docket No. _____) (the "**Sale**") has been provided; (ii) no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of this bankruptcy case; and (iv) no other or further notice of the Sale Motion, the Sale Hearing or the Sale is or shall be required.  The disclosures made by the Trustee concerning the Sale Motion, the Sale, the Sale Hearing were reasonable, adequate, and complete.

5.      <u>Opportunity to Object</u>.  A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Sale Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following:  (i) all potential purchasers previously identified by the Trustee and any additional parties who have expressed an interest in potentially acquiring the Pinball Property, including those parties that have submitted formal expressions of interest; (ii) all other potentially interested parties identified by the Trustee in his business judgment as a potential purchaser of the Pinball Property; (iii) the Office of the United States Trustee; (iv) all applicable federal, state and local regulatory or taxing authorities; and (v) the debtors and all parties on the most current service list.

6.      <u>Arm's-Length Sale</u>.  The Sale was negotiated, proposed, and entered into by the Trustee of behalf of Debtors and Turner Logic, LLC, a Texas limited liability company ("**Turner Logic**") for the purchase price of $50,000, and such additional consideration as provided in the Purchase Agreement with respect to the Pinball Property, without collusion, in good faith and from arm's-length bargaining positions.  Neither the Trustee nor Turner Logic, nor any of their respective representatives, have engaged in any conduct that would cause or permit the Sale to be avoided under section 363(n) of the Bankruptcy Code. Specifically, neither Turner Logic, nor any of its representatives have acted in a collusive manner with any person. The terms and conditions of the Sale and the transaction contemplated thereby (including without limitation the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

7.      <u>Good Faith Purchaser</u>.  Turner Logic is purchasing the Pinball Property in good faith and is a good faith purchaser of the Assets within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by that provision. Turner Logic and its representatives have proceeded in good faith and without collusion in all respects in connection with the Sale and Sale Hearing.

8.      <u>Sale in the Best Interests of the Trustee, the Debtors' Estates and Creditors</u>.  Good and sufficient reasons for approval of the Sale have been articulated, and the relief requested in the Sale Motion and granted herein is in the best interest of the Trustee, the Debtors, their estates, their creditors, and other parties in interest.

9.      <u>Business Justification</u>.  The Trustee has demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business under section 363(f) of the Bankruptcy Code.   Given all the

circumstances of this bankruptcy case and the adequacy and fair value of the purchase price, the proposed Sale constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

10.     Free and Clear.  Debtors are the owners of the Pinball Property.  The conveyance of the Pinball Property will be a legal, valid, and effective transfer of the Assets and vests or will vest Turner Logic  with all right, title, and interest of the Debtors to the Assets free and clear of all interests to the fullest extent permitted under 11 U.S.C. §363(f) including without limitation all liens (as defined in section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code and including without limitation successor liability claims), or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto (collectively, the "Interests"[2]), at any time prior to the date of the Closing Date.

11.     Satisfaction of 363(f) Standards.  The Trustee may sell and transfer, and Turner Logic may purchase, the Pinball Property free and clear of any interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  The proposed sale of the Assets will be free and clear of all liens, claims, Interests, and encumbrances including any liabilities that arose prior to the Closing Date, with all such liens, claims, Interests, encumbrances and liabilities to transfer

---

[2] The term "Interests" as used in this Order includes, without limitations:  all encumbrances; obligations; debts; liabilities; demands; guaranties; options; rights; restrictions; contractual commitments, including but not limited to, any license obligations; rights of first refusal or interests; any of the foregoing that purport to give to any party any defense, a defense or right of setoff, or recoupment against or a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Pinball Property, or any similar rights.

and attach to the sale proceeds with the same validity, priority, force and effect (if any) that such liens, claims, interests, encumbrances and liabilities had on the Pinball Property immediately prior to the closing date.

13. _Back-up Bid_. In the event that the sale to Turner Logic does not close, the Trustee is authorized and directed to proceed to closing of a sale to _____,  or their assigns, at a cash sales price of $_____ without further Order of this Court.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

1. _Sale Motion is Granted_. The Sale Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein and on the record of the Sale Hearing, which is incorporated herein in its entirety, and the Sale as contemplated thereby is granted and approved. All findings of fact and conclusions of law of this Court stated on the record as part of the Court's ruling at the Sale Hearing are incorporated herein by reference and made a part hereof. The Trustee is authorized and directed to sell the Pinball Property to Turner Logic for $50,000.00 and such additional consideration as is provided in the Purchase Agreement with respect to the Pinball Property.

2. _Objections Overruled_. Any objections to the entry of this Order or the relief granted herein or requested in the Sale Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits with prejudice.

3. _Free and Clear_. Except as expressly provided for in this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Trustee shall transfer, and Turner Logic shall take title to and possession of, the Pinball Property free and clear of all Interests, with all such Interests attaching to the proceed of sale, subject to the terms of such

Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have, if any, against the Pinball Property.

4. <u>Valid Transfer</u>. As of the Closing Date, the transaction shall effect a legal, valid, enforceable and effective sale and transfer of the Pinball Property to Turner Logic and shall vest Turner Logic with valid legal title free and clear of any Interests of any kind whatsoever. The Pinball Property is transferred to Turner Logic "as is, where is" with all faults.

5. <u>Direction to Release Interests</u>. On the Closing Date, each of the Debtors, creditors or Interest holders is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Pinball Property, if any, as such Interests may have been recorded or may otherwise exist.

6. <u>Good Faith</u>. The transactions contemplated are undertaken by Turner Logic, its affiliates, agents, and representatives, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is duly stayed pending such appeal prior to the closing. Turner Logic, which shall include its affiliates, agents and representative, is a good faith purchaser of the Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

7. <u>Retention of Jurisdiction</u>. The Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, including, but not limited to, retaining jurisdiction to: (a) interpret, implement and enforce the provisions of this Order and any related order; and (b)

protect Turner Logic against any Interests in the of any kind or nature whatsoever that attach to the sales proceed.

9. <u>Application of Sale Proceeds</u>.  Any and all valid and perfected Interests in the Pinball Property shall attach to any proceeds in the order of priority, and with the same validity, force and effect (if any) that such liens, claims, Interests, encumbrances and liabilities had on the Pinball Property immediately prior to the Closing Date.

10. <u>Non-Material Modifications</u>.  The Purchase Agreement and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Trustee or the Debtors' Estates in the business judgment of the Trustee.

11. <u>General Authorization</u>.  The Trustee is further authorized and directed to perform such tasks and execute, acknowledge and deliver such instruments or documents as may be necessary to evidence and/or consummate the sale of the Pinball Property pursuant to this Order.

12. <u>No Stay of Order</u>.  Notwithstanding the provisions of the Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

13. <u>Sale to the Back-up Bidder</u>.      In the event that the sale to Turner Logic does not close, the  Trustee  is  authorized  and  directed  to  proceed  to  closing  of  a  sale

to_____ or their assigns, at a cash sales price of _____

in accordance with the other terms of this Order.

14. <u>Direction to Parties in Possession</u>.  Any parties in possession of the prototype pinball machines constituting a part of the Pinball Property, identified in the Sale Motion as the UL Testing Facility and the Washington Contractor, are hereby directed, upon the request of Turner Logic, LLC, to turn over such Pinball Property to Turner Logic, LLC, subject to the payment by Turner Logic, LLC of any fees or costs due to such parties in possession.

15. <u>Order Controls</u>.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this bankruptcy case, the terms of this Order shall govern.

16. The Court herein incorporates all rulings made on the record as part of this Order.

### 

**Submitted by**:

Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
**ATTORNEY FOR JOHN PATRICK LOWE,**
**CHAPTER 7 TRUSTEE**

# EXHIBIT 1

### PINBALL PROPERTY

The **"Deeproot Machines"** are defined as: Retro Atomic Zombie Adventureland (**"RAZA"**), Food Truck, Goonies, Machine Age, Merlin's Arcade, Gladiator, Lucha Libre, Fire & Brimstone, Yukon Yeti, The Who, Magic Girl, Alice In Wonderland, and Space Mission X.

All of the following is included in the Pinball Property:

1. All rights, title, and interest including inventions and copyright to game rule documentation, art, models, animations, designs, mechanical drawings, trademarks, licenses, and any other digital files related to the Deeproot Machines and owned by Debtors.

2. Trademarks for: "Pinbar", "PinArmor", and "PinPod".

3. International Patent WO2018183948A1 for "Pinball cabinet and backbox" and any US equivalents and the inventions embodied within.

4. International Patent WO2021133990A1 for "Interactive touch control for a pinball machine" and any US equivalents and the inventions embodied within.

5. All rights, title, and interest including inventions and copyright to software developed by or for the Debtors including but not limited to:

   a. deeproot Pinball Websites
   b. Go Pinball Framework
   c. Pinball Machine API
   d. Pinball Mobile API
   e. Pinball Audio API
   f. Pinball Development Environment
   g. Pinball Mobile iOS app
   h. Pinball Stats Manager
   i. Firmware and Protocol for Pinball Circuit Boards
   j. Game Rules Code for the Deeproot Machines
   k. User Interface Code for the Deeproot Machines

6. All intellectual property acquired as part of the Zidware settlement from Zidware, John Popadiuk, Jeremy Packer (aka Zombie Yeti), and Jim Askey (aka Applejuice or myPinballs), including but not limited to art, designs, inventions, copyrights, and trademarks for Retro Atomic Zombie Adventureland, Magic Girl, Alice In Wonderland, and Space Mission X.

7.  All rights, title, and interest including inventions and copyright to pinball circuit board layouts and designs developed by or for the Debtors.

8.  Any software licenses owned by Debtors.

9.  All computer equipment, electronics, printing equipment, office supplies, tools, moving equipment, pinball machines (3), and any other pinball related property in the Utah office held by the Landlord.

10. All computer equipment from the Silicon Drive office which is being held by Mel Davis Auctions and/or the Trustee.

11. RAZA prototype machines produced by Debtors that were not present at the physical goods auction at the Silicon Drive office including:

   a.  Incomplete RAZA prototype held by UL tester in Dallas, Texas.
   b.  Incomplete RAZA prototype held by contractor in Redmond, Washington.

This list is meant to comprehensively include all pinball related tangible and intangible property owned by the Debtors that has not already been sold through the auction at the Silicon Drive office.

**Trustee is not responsible for delivering Pinball Property not in his possession. It will be the Purchaser's responsibility to locate and pick up the Pinball Property wherever it may be located.**