IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

### TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 TO APPROVE COMPROMISE AND SETTLEMENT WITH CYCLADIC, LLC, CYCLADIC INTERNATIONAL, LLC, DOVER CAPITAL STRATEGIES, LLC, ANEMOS CONSULTING, INC., AND THOMAS N. ANDREW

---

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") in the above-styled jointly

administered bankruptcy case, by and through his counsel Pulman, Cappuccio & Pullen, LLP,

hereby files *Trustee's Motion Under Bankruptcy Rule 9019 to Approve Compromise and*

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are:  In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), collectively, the "**Bankruptcy Cases**".

*Settlement with Cycladic, LLC, Cycladic International, LLC, Dover Capital Strategies, LLC, Anemos Consulting, Inc., and Thomas N. Andrew* (this "**Motion**"), and in support respectfully shows the Court as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.      The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II.    PROCEDURAL HISTORY

3.      On December 9, 2021 (the "**Petition Date**"), Debtors filed a voluntary petition under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**").  The Bankruptcy Court authorized that the bankruptcy case of Policy Services, Inc. ("**Debtor**" or "**Policy Services**"), along with those of ten other debtor affiliates (the "**Debtor Affiliates**" and together with the Debtor, the "**Debtors**"), be jointly administered under lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 (the "**Jointly Administered Case**").

4.      On or about December 21, 2021, John Patrick Lowe was appointed as chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

5.      On July 26, 2022, the Trustee filed *Notices of Intention to Take Rule 2004 Examinations with Subpoena Duces Tecum* (the "**2004 Notices**") in the Bankruptcy Court, and on that same date sent true and correct copies of the 2004 Notices by US Certified Mail – Return Receipt Requested and via US First Class Mail to Cycladic, LLC ("**Cycladic**"), Cycladic

International, LLC ("**Cycladic International**"), and to Thomas N. Andrew ("**Andrew**"). Cycladic and Cycladic International, together with Dover Capital Strategies, LLC ("**Dover**") and Anemos Consulting, Inc. ("**Anemos**"), are referred to herein as the "**Cycladic Parties**" and together with Andrew, are referred to as the "**Settling Parties**".

6. On August 23, 2022, Cycladic, Cycladic International, and Andrew each filed their objections to the Notice of Rule 2004 Examinations and *Subpoena Duces Tecum*; and on August 24, 2022, filed an *Expedited Motion to Quash Bankruptcy Rule 2004 Examination Notices with Subpoena Duces Tecum* ("**Motion to Quash**") [ECF No. 137].

7. On September 1, 2022, the Court held a hearing to consider and act upon the Motion to Quash, and the Trustee's counsel previewed possible claims that the Trustee was investigating with respect to the Settling Parties and certain of their affiliates. On September 7, 2022, the Court entered its *Order Regarding Expedited Motion to Quash Bankruptcy Rule 2004 Examination Notices with Subpoena Duces Tecum* [ECF No. 147], directing Cycladic, Cycladic International, and Andrew to appear for the 2004 Examination and to produce the majority of the documents requested by the Trustee.

8. On October 18, 2022, the Court entered the parties' *Agreed Confidentiality and Protective Order by and between Chapter 7 Trustee and Cycladic, LLC, Cycladic International, LLC, and Thomas Andrew* [ECF No. 174].

9. On October 21, 2022, the *Rule 2004 Examinations* of Cycladic, Cycladic International, and Andrew were held. Thereafter, Cycladic, Cycladic International, and Andrew commenced the production of documents to the Trustee in response to the *Subpoena Duces Tecum.*

10. Immediately following the conclusion of the 2004 Examination, Trustee's counsel and counsel for the Settling Parties engaged in discussions to resolve the apparent disputes and

disagreements between the parties. A compromise and settlement agreement was reached and the Trustee now seeks Court approval pursuant to FED. R. BANK. P. 9019.

11.     Attached hereto as <u>Exhibit A</u> is the proposed order on this Motion.

### III.     FACTUAL BACKGROUND

12.     Prior to the Petition Date, Policy Services and the Debtor Affiliates were engaged in investment activities[2] (orchestrated by Robert J. Mueller ("**Mueller**"), the sole director of Policy Services and managing member of each Debtor Affiliate) that raised as much as $65,000,000 from individual investors, initially through the sale of fractional interests in life settlements, and later through the sale of securities, in the form of Class B Shares and debentures issued by Debtor Affiliate funds.  The Trustee asserts that Mueller used the invested monies to fund the purchase of life settlements from Anemos, Dover and Cycladic, to fund his pinball machine business and other business ventures, and to fund his lavish lifestyle.  The Trustee also asserts that from their inception Policy Services and the Debtor Affiliates were insolvent, had virtually no revenue, and any returns to investors were paid using subsequent investor funds.

13.     Between 2012 and 2019, Anemos, then Dover, and later Cycladic, purchased life settlements from providers on the secondary life settlement market.  Twenty-one life insurance policies that met certain investment return criteria established by Policy Services, were in turn re-sold by Anemos, Dover, and Cycladic to Policy Services for a combined purchase price of approximately $13,341,676.89 (the "**Transferred Funds**").

---

2 The Trustee believes and maintains that these investment activities constituted a Ponzi scheme.  A Ponzi scheme is "a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." BLACK'S LAW DICTIONARY, Ponzi scheme (11th ed. 2019). A Ponzi scheme operates by using money from new investors to pay earlier investors, typically "without any operation or revenue-producing activity other than the continual raising of new funds." *Id.*  "[A] Ponzi scheme is, as a matter of law, insolvent from its inception." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011).

14.     On or about April 25, 2017, Cycladic purchased a life settlement related to a certain Ms. Basha (the "**Basha Policy**") on the secondary life settlement market for a purchase price in the amount of $842,022.  On or about May 16, 2017, Policy Services and Cycladic entered into a certain Life Insurance Policy Purchase and Sale Agreement (the "**Basha Purchase Agreement**"), pursuant to which Cycladic sold the Basha Policy to Policy Services for a purchase price in the amount of $4,247,022 (the "**Basha Purchase Price**"), the Basha Purchase Price was to be paid by Policy Services through a series of installment payments.

15.     On November 1, 2018, Policy Services executed a secured promissory note (the "**Note**"), secured by the Basha Policy and payable to Cycladic in the principal amount of $1,080,000, the amount of the Basha Policy purchase price that then remained outstanding under the Basha Purchase Agreement at that time; in February 2019, Policy Services failed to make a required installment payment in the amount of $180,000, and defaulted on the Note, $836,522 remained due and owing to Cycladic; on April 8, 2019, Policy Services and Cycladic entered into a Policy Relinquishment and Loan Satisfaction Agreement ("**Relinquishment Agreement**" and together with the Basha Purchase Agreement, Basha Policy, and Note, the "**Basha Agreements**"). Pursuant to the Relinquishment Agreement, Policy Services transferred ownership of the Basha Policy, and the right to designate a beneficiary, back to Cycladic, and therein the parties released each other from any claims arising out of or in connection with any act related to the purchase of the Basha Policy and all related agreements, including the Basha Agreements.

16.     Thereafter, Cycladic sold the Basha Policy to a provider on the secondary market and on October 15, 2019, received sale proceeds in the amount of $843,265, such amount being $1,243 more than the $842,022 Cycladic had originally paid to acquire the Basha Policy.  In accordance with the Relinquishment Agreement any proceeds from the sale of the Basha Policy in

excess of the amount owed to Cycladic would be released to Policy Services; Cycladic sent $6,743 of those sale proceeds to Policy Services, representing the amount received by Cycladic from the secondary market purchaser on the sale of the Basha Policy that exceeded the amount due to Cycladic on the original $4,247,022 purchase price.

## IV. <u>ANALYSIS OF THE POTENTIAL CLAIMS</u>

17. Based on the foregoing, the Trustee believes Policy Services has or may have claims against one or more of the Settling Parties and their principals, insiders, and other affiliated entities under 11 U.S.C. §544 and §550, the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), and the Texas Insurance Code. Essentially, the claims are readily divided into three theories.

18. First, the Trustee believes Policy Services has or may have claims under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1) for avoidance of fraudulent transfers of the Transferred Funds to Anemos, Dover, and Cycladic, which transfers took place between October 24, 2012, and October 15, 2019, in connection with Policy Services' purchase of twenty-one (21) life settlements from Anemos, Dover, and Cycladic. In the Trustee's judgement, for the Trustee to prevail on such claims and recover the Transferred Funds for the Bankruptcy Estate, the Trustee would have to prove that the transfers were made with an actual intent to hinder, delay or defraud Debtor's creditors, and that the Debtor was insolvent at the time of each of the transfers. The Trustee would also have to overcome the Secured Note and the Relinquishment Agreement as such pertain to the Basha Policy. The pursuit of such claims going back ten years would require extensive damages and insolvency calculations and analysis which would be very time consuming and very expensive for the Bankruptcy Estate. In the Trustee's business judgement, weighing the time and expense of litigating such claims against the likelihood of prevailing in such litigation on

a theory that all of the Transferred Funds ($13,341,676.89) should be avoided and returned to the Estate is likely remote and not worth the litigation related expense.

19.    Second, the Trustee believes Policy Services has or may have claims under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1) for avoidance of fraudulent transfers of funds comprising the portion of the Basha Purchase Price, approximately $3,400,000, transferred by Policy Services to Cycladic in connection with the Basha Purchase Agreement.  To prevail on these claims the Trustee would need to establish that the transfers were made with an actual intent to hinder, delay or defraud Debtor's creditors, that the Debtor was insolvent at the time of the transfers, and that the value of the Basha Policy was not reasonably equivalent to the amount of the Basha Purchase Price, or that Cycladic did not take in good faith because it knew or should have known Policy Services was insolvent on the dates within the relevant time period.  The Trustee would also have to avoid the Secured Note and the Relinquishment Agreement, and void the release therein releasing the Settling Parties from liability in connection with the Basha Agreements. Although this damage model has a higher likelihood of success on the merits, the time cost and expense associated with pursuing these claims and this theory would be substantial with no guarantee of success.

20.    Third, the Trustee believes that Policy Services has or may have claims under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1) and (2) to avoid the installment payments on the Basha Policy made by Policy Services to Cycladic within four years of the Petition Date, which transfers total $1,340,000, and to avoid the Secured Note and recover the $836,522 received by Cycladic upon its sale of the Basha Policy.  To prevail on these claims the Trustee would need to void  the release in the Relinquishment Agreement to recover the above installment payments, in addition to proving that Policy Services was insolvent on the date of each transfer and on the

date of the Secured Note, and that Policy Services received less than reasonably equivalent value for the Basha Policy and in consideration for the Secured Note or that Cycladic did not take in good faith because it knew or should have known Policy Services was insolvent on the dates within the relevant time period. It is the Trustee's best business judgement that, if he were to proceed with litigation, he is most likely to prevail on his claim to avoid the Secured Note and recover the $836,522 received by Cycladic when it sold the Basha policy in the secondary market.

21.     The Trustee believes that Policy Services has or may have claims under 11 U.S.C. § 550 to avoid subsequent fraudulent transfers made to Andrew and/or affiliated entities by Anemos, Dover, and Cycladic.

22.     The Settling Parties and their principals, insiders, and other affiliated entities each deny any liability to the Trustee, the Debtors, and Bankruptcy Estates; each of the Settling Parties and their principals, insiders, and other affiliated entities believe they have good and viable defenses against any and all claims that may be brought by the Trustee on behalf of the Debtors or the Bankruptcy Estates.

23.     The Trustee, the Settling Parties, and the Settling Parties' affiliated entities (including Thomas Nicholas LLC) wishing to avoid the time, expense and uncertainty of litigation, have agreed to a compromise and settlement agreement (the "**Settlement Agreement**") to settle, fully and finally, any and all claims, differences and disputes among them that the Trustee has or may have, known or unknown, real or imagined, that could have been brought under any theory whatsoever prior to the prior to the effective date of the Settlement Agreement, including all claims, differences and disputes arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the

Basha Agreements. A copy of the executed Settlement Agreement is attached hereto as <u>Exhibit B</u>.

## V. <u>PROPOSED SETTLEMENT</u>

24. As more fully described in the Settlement Agreement, the Settling Parties have agreed to pay to the Trustee the total principal sum of $800,000.00 (the "**Settlement Amount**") in full, final, and complete satisfaction of any and all claims, differences and disputes involving the Settling Parties and their principals, insiders, and other affiliated entities (including Thomas Nicholas LLC) that the Trustee, the Debtors, or the Bankruptcy Estates have or may have, known or unknown, real or imagined, that could have been brought under any theory whatsoever prior to the effective date of the Settlement Agreement, including all claims, differences and disputes arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the Basha Agreements.

25. The Settlement Agreement was executed by the Settling Parties and by the Trustee on December 1, 2022, and on December 2, 2022, the Settling Parties deposited the Settlement Amount by wire transfer into the IOLTA account of Trustee's counsel. As provided in the Settlement Agreement, the Settlement Amount shall be held in trust in the IOLTA account of Trustee's counsel and shall be disbursed immediately to the Trustee upon the Bankruptcy Court's entry of an order approving the Settlement Agreement. If the Bankruptcy Court does not approve the Settlement Agreement, the Settlement Amount shall be returned to Andrew or his written designee.

## VI. <u>LEGAL AUTHORITY</u>

26. Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the discretion of the bankruptcy court. *In re Aweco, Inc.*, 725 F.2d 293 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

27. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate. *In re Heritage Org., L.L.C.*, 375 B.R. 230, 259 (N.D. Tex. 2007) citing, *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997) ("approval should only be given if the settlement is fair and equitable and in the best interest of the estate"). "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, comparing the terms of the compromise with the likely rewards of litigation." *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 918 (5th Cir. 1995). In particular, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *In re Jackson Brewing Co.*, 624 F.2d 599, 609 (5th Cir. 1980). This standard seeks to balance the risks and benefits associated with pursuing a potential claim against the costs associated with the proposed settlement.

28.     In explaining what bankruptcy courts must do when evaluating the probability of success in the litigation, the Fifth Circuit has stated that "it is unnecessary to conduct a mini trial to determine the probable outcome of any claims waived in the settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision."  *In re Heritage Org., L.L.C.*, 375 B.R. 230, 260 (N.D. Tex. 2007) citing, *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 163 (7th Cir. 1987)).

29.     Factors bearing on the wisdom of a proposed compromise include consideration of the best interests of the creditors and their reasonable views, and whether a settlement is truly a product of arm's length negotiation.  *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 356; *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d at 918.

## VII. <u>THE TRUSTEE'S BUSINESS JUDGMENT</u>

30.     The Trustee believes the proposed Settlement Agreement is fair and equitable and in the best interest of the Bankruptcy Estates in that the Settlement Amount is within the range of damages the Trustee reasonably believes may be recovered.  Analyzing the three damage theories identified in paragraphs 18-22 above, it is clear that the Settling Parties' offer of $800,000, which is substantially all of the money it received from the sale of the Basha Policy, is in the best interest of the Bankruptcy Estates and the creditors.  A recovery of any monies in excess of $800,000 would require the Trustee to prevail on his second theories which would require voiding a release executed by the Debtor pre-petition, engaging expert testimony to address various valuation defenses that the Settling Parties stated they would raise, and years of litigation at considerable expense to the Bankruptcy Estates with no certainty of success on the merits.  And even if

successful on this theory, the likelihood that the Settling Parties could pay a judgment is not established.

31.     The proposed Settlement Agreement is the result of arm's length negotiations between the Trustee and the Settling Parties and reflects a fair compromise of the Trustee's potential claims against the Settling Parties, their principals, insiders, and other affiliated entities.

32.     The Trustee, having given due consideration to the probability of the Trustee's success in the litigation of the previously discussed claims, has determined that the proposed Settlement Agreement, given the facts, applicable law, and the uncertainty, expense, and delay associated with litigation and trial, is fair, reasonable and equitable and in the best interest of the Bankruptcy Estates, and their creditors and should, therefore, be approved by the Court.  In short, accepting a settlement on the lower end of the damages range at this time without the necessity of prolonged litigation is a proper exercise of the Trustee's business judgment and should be approved.

[Remainder of Page Left Intentionally Blank]

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
W. Drew Mallender
Texas State Bar No. 24118450
dmallender@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of December 2022, a true and correct copy of the foregoing document has been furnished via electronic mail to all parties receiving notice by CM/ECF, as set forth below; a supplemental certificate of service will be filed evidencing service by US First Class Mail on the parties listed on the limited service list in this matter

***Via CM/ECF:***
*stephen.humeniuk@lockelord.com*
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701
***Counsel for Cycladic, LLC,***
***Cycladic International, LLC and***
***Thomas N. Andrew***

***Via CM/ECF:***
*tcunningham@lockelord.com*
Thomas J. Cunningham
Locke Lord LLP
777 South Flagler Drive #215
West Palm Beach, FL 33401
***Counsel for Cycladic, LLC,***
***Cycladic International, LLC and***
***Thomas N. Andrew***

***Via Counsel email:***
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

***Via Counsel Via CM/ECF:***
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

***Via CM/ECF: pat.lowe.law@gmail.com***
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

***Via CM/ECF:***
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

***Via CM/ECF:***
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12
US TRUSTEE'S OFFICE (Aubrey Thomas)
615 E Houston, Suite 533
San Antonio, TX 78295-1539

***Via CM/ECF: don.stecker@lgbs.com***
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

***Via CM/ECF: rbattaglialaw@outlook.com***
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

***Via CM/ECF: jpetree@mcslaw.com***
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

***Via CM/ECF: dodda@sec.gov***
Angela D. Dodd
U. S. Securities and Exchange Commission
175 Jackson Blvd. Suite 900
Chicago, IL 60604


***Via CM/ECF: jdunne@smfadlaw.com***
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

***Via CM/ECF: bk-cmurphy@oag.texas.gov***
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

***Via CM/ECF: pautry@branscomblaw.com***
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

***Via CM/ECF: lmjurek@jureklaw.com***
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX 77006

*/s/Randall A. Pulman*
Randall A. Pulman

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

**ORDER GRANTING TRUSTEE'S MOTION UNDER BANKRUPTCY RULE 9019 TO APPROVE COMPROMISE AND SETTLEMENT WITH CYCLADIC, LLC, CYCLADIC INTERNATIONAL, LLC, DOVER CAPITAL STRATEGIES, LLC, ANEMOS CONSULTING, INC., AND THOMAS N. ANDREW**

---

On this date came on to be considered the *Trustee's Motion Under Bankruptcy Rule 9019 to Approve Compromise and Settlement with Cycladic, LLC, Cycladic International, LLC, Dover Capital Strategies, LLC, Anemos Consulting, Inc., and Thomas N. Andrew* (the "**Motion**"), and

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638), collectively, the "**Bankruptcy Cases**".

the underlying Settlement Agreement attached thereto (the "**Settlement Agreement**"), file by John Patrick Lowe, chapter 7 Trustee ("**Trustee**") of the bankruptcy estate of Policy Services, Inc. ("**Debtor**" or "**Policy Services**"), one of 11 debtors in the above captioned jointly administered cases.[2] The Court, having considered the Motion and the Settlement Agreement of the parties, finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) approval of the Settlement Agreement and the relief requested in the Motion is in the best interests of debtor Policy Services Inc., the Bankruptcy Estate, and its creditors; (iv) the decision of the Trustee to enter into the Settlement Agreement is a proper and valid exercise of the Trustee's business judgment, and is appropriate under the provisions of the Bankruptcy Code; (v) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (vi) good and sufficient cause exists for the granting of the relief requested.

IT IS THEREFORE ORDERED that the Settlement Agreement, attached as Exhibit "B" to the Motion and incorporated by reference herein, is in all things, APPROVED.

IT IS FURTHER ORDERED that Trustee and the Settling Parties are hereby authorized and directed to take any and all actions necessary consummate the agreements of the Settlement Agreement.

IT IS FURTHER ORDERED that payment of the Settlement Amount by the Settling Parties, and the Trustee's receipt thereof, shall constitute full, final, and complete satisfaction of any and all claims, differences and disputes involving the Settling Parties and their principals, insiders, and other affiliated entities (including Thomas Nicholas LLC) that the Trustee, the Debtors, or the Bankruptcy Estates have or may have, known or unknown, real or imagined, that could have been

---

2 Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

{00602820;1}

brought under any theory whatsoever prior to the effective date of the Settlement Agreement, including all claims, differences and disputes arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the Basha Agreements.

**IT IS FURTHER ORDERED** that all terms of the Settlement Agreement, including Paragraph 7 therein, shall take effect immediately and the Effective Date for purposes of the Settlement Agreement shall be the same date as this Order.

**IT IS FURTHER ORDERED** that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

Submitted by:
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
W. Drew Mallender
Texas State Bar No. 24118450
dmallender@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**ATTORNEYS FOR JOHN PATRICK LOWE,
CHAPTER 7 TRUSTEE FOR THE JOINTLY
ADMINISTERED BANKRUPTCY ESTATE OF
DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

{00602820;1}

# EXHIBIT B

EXECUTION VERSION

## CONFIDENTIAL COMPROMISE AND SETTLEMENT AGREEMENT

This Confidential Compromise and Settlement Agreement (this "**Settlement Agreement**") is entered into this 1st day of December 2022, by and among (i) John Patrick Lowe, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Policy Services, Inc. ("**Debtor**" or "**Policy Services**"), and (ii) Cycladic, LLC ("**Cycladic**"), Cycladic International, LLC ("**Cycladic International**"), Dover Capital Strategies, LLC ("**Dover**"), Anemos Consulting, Inc. ("**Anemos**") (Cycladic, Cycladic International, Dover, and Anemos, are together referred to as the "**Cycladic Parties**") and (iii) Thomas N. Andrew ("**Andrew**" and together with the Cycladic Parties, the "**Settling Parties**"). The Trustee and the Settling Parties are collectively referred to herein as the "**Parties.**"

## RECITALS

A.    On December 9, 2021 (the "**Petition Date**"), Debtor filed a voluntary petition under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Bankruptcy Court**"). The Bankruptcy Court authorized that the Debtor's bankruptcy case, along with those of ten other debtor affiliates (the "**Debtor Affiliates**" and together with the Debtor, the "**Debtors**"), be jointly administered under lead case *In re: deeproot Capital Management, LLC*, Case No. 21-51523 (the "**Jointly Administered Case**").[1]

B.    On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the Jointly Administered Case.

C.    Prior to the Petition Date, Policy Services and the Debtor Affiliates were engaged in investment activities (orchestrated by Robert J. Mueller ("**Mueller**"), the sole director of Policy Services and managing member of each Debtor Affiliate) that raised as much as $65,000,000 from investors initially through the sale of fractional interests in life settlements, and later through the sale of Class B Shares and debentures issued by Debtor Affiliate funds backed by life settlements, among other assets.

D.    The Trustee asserts that from their inception Policy Services and the Debtor Affiliates were insolvent, had virtually no revenue, and any returns to investors were paid using subsequent investor funds. The Settling Parties lack information sufficient to form an opinion as to the truth or falsity of the Trustee's assertions recounted in the foregoing paragraph D.

---

1 The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638), each a "**Bankruptcy Estate**" or "**Estate**" and collectively, the "**Bankruptcy Estates**" or "**Estates**".

E.      Policy Services was the sole owner and beneficiary of twenty-one life settlements which Policy Services purchased from either Anemos, Dover, or Cycladic between 2012 and 2019, for a combined purchase price of approximately $13,341,676.89.

F.      Between 2012 and 2019, Anemos, then Dover, and later Cycladic, purchased life settlements from providers on the secondary market and in turn sold those life settlements that met certain investment return criteria to Policy Services in exchange for payment of funds (the "**Transferred Funds**").

G.      On or about May 16, 2017, Policy Services and Cycladic entered into a certain Life Insurance Policy Purchase and Sale Agreement (the "**Basha Purchase Agreement**"), pursuant to which Cycladic sold a life settlement related to a certain Ms. Basha (the "**Basha Policy**") to Policy Services for a purchase price of $4,247,022, and the purchase price was to be paid by Policy Services through a series of installment payments.

H.      On November 1, 2018, Policy Services executed a secured promissory note ("**Note**") payable to Cycladic in the principal amount of $1,080,000, the amount of the Basha Policy purchase price that then remained outstanding under the Basha Purchase Agreement, the Note was secured by the Basha Policy; in February 2019, Policy Services failed to make a required installment payment in the amount of $180,000, and defaulted on the Note, $836,522 remained due and owing to Cycladic; on April 8, 2019, Policy Services and Cycladic entered into a Policy Relinquishment and Loan Satisfaction Agreement ("**Relinquishment Agreement**" and together with the Basha Purchase Agreement, Basha Policy, and Note, the "**Basha Agreements**"), pursuant to which Policy Services relinquished the Basha Policy, transferring its ownership and beneficiary rights in the Basha Policy back to Cycladic, and a Mutual Release Agreement, whereby the parties released each other from any claims arising out of or in connection with any act related to the purchase of the Basha Policy and all related agreements, including the Basha Agreements.

I.      Cycladic sold the Basha Policy to a provider on the secondary market and received $843,265 for it on October 15, 2019, $1,243 more than the $842,022 Cycladic had paid to acquire the Basha Policy; in accordance with the Relinquishment Agreement any proceeds from the sale of the Basha Policy in excess of the amount owed to Cycladic would be released to Policy Services, Cycladic sent $6,743 of those sale proceeds to Policy Services, representing the amount received by Cycladic from the secondary market purchaser on the sale of the Basha Policy that exceeded the amount due to Cycladic on the original $4,247,022 purchase price.

J.      In connection with the Jointly Administered Case, on July 26, 2022, the Trustee filed Notices of Intention to Take Rule 2004 Examinations with Subpoena *Duces Tecum* (the "**2004 Notices**") in the Bankruptcy Court, and on that same date sent the Cycladic Parties true and correct copies of the 2004 Notices by US Certified Mail – Return Receipt Requested and via US First Class Mail.

K.      On or about August 10, 2022, the parties agreed to extend the deadline for objections to the 2004 Notices until August 23, 2022, and agreed the Rule 2004 examination of Cycladic, Cycladic International, and Andrew would be conducted on September 7, 2022.

L.     On August 23, 2022, Cycladic, Cycladic International, and Andrew each filed their objections to the Rule 2004 examination and Subpoena *Duces Tecum*; and on August 24, 2022, the Cycladic Parties filed an *Expedited Motion to Quash Bankruptcy Rule 2004 Examination Notices with Subpoena Duces Tecum* ("**Motion to Quash**").

M.     On September 1, 2022, the Court held a hearing to consider and act upon the Motion to Quash, and on September 7, 2022, the Court entered its *Order Regarding Expedited Motion to Quash Bankruptcy Rule 2004 Examination Notices with Subpoena Duces Tecum*, directing Cycladic, Cycladic International, and Andrew to appear for the 2004 Examination and to produce the majority of the documents requested by the Trustee.

N.     On October 18, 2022, the Court entered the parties' *Agreed Confidentiality and Protective Order by and between Chapter 7 Trustee and Cycladic, LLC, Cycladic International, LLC, and Thomas Andrew*.

O.     On October 21, 2022, the Rule 2004 Examination of Cycladic, Cycladic International, and Andrew was held.

P.     Thereafter, Cycladic, Cycladic International, and Andrew commenced the production of documents to the Trustee in response to the *Subpoena Duces Tecum*, producing over 45,000 pages of documents to the Trustee.

Q.     The Trustee believes the Bankruptcy Estates have or may have claims against the Settling Parties and their principals, insiders, and other affiliated entities under 11 U.S.C. § 544, § 548, and § 550, the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), and the Texas Insurance Code.

R.     The Settling Parties and their principals, insiders, and other affiliated entities each deny any liability to the Trustee, the Debtors, and Bankruptcy Estates; each of the Settling Parties and their principals, insiders, and other affiliated entities believe they have good and viable defenses against any and all claims that may be brought by the Trustee on behalf of the Debtors or the Bankruptcy Estates.

S.     The Trustee and the Settling Parties, without admitting any liability or wrongdoing of any kind, wish to avoid the time, expense and uncertainty of litigation, and desire to settle, fully and finally, any and all claims, differences and disputes among them that the Trustee has or may have, known or unknown, real or imagined, that could have been brought under any theory whatsoever prior to the Effective Date (defined herein) of this Settlement Agreement, including all claims, differences and disputes arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the Basha Agreements.

## SETTLEMENT TERMS

NOW, THEREFORE, for and in consideration of the Recitals set forth above, of the mutual covenants and promises set forth herein, and of the additional premises, covenants, agreements,

EXECUTION VERSION

and other undertakings herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged by the Parties hereto, the Parties agree as follows:

1. <u>Recitals</u>.  The Recitals set forth above are incorporated herein by reference.

2. <u>Settlement Amount</u>.  The Settling Parties, or their designee, shall pay or cause to pay to the Trustee the total principal sum of $800,000.00 (the "**Settlement Amount**") in full, final, and complete satisfaction of all any and all claims, differences and disputes involving the Settling Parties and their principals, insiders, and other affiliated entities that the Trustee, the Debtors, or the Bankruptcy Estates have or may have, known or unknown, real or imagined, that could have been brought under any theory whatsoever prior to the Effective Date (defined herein) of this Settlement Agreement, including all claims, differences and disputes arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the Basha Agreements.  The Settling Parties will deliver the Settlement Amount to the Trustee within five (5) days following the Parties' mutual execution and dual delivery of this Settlement Agreement.

3. <u>Preparation of 9019 Motion</u>.  Immediately following the execution of this Settlement Agreement by all Parties and the payment of the Settlement Amount to the Trustee, the Parties will cooperate to prepare a motion in form and substance satisfactory to all Parties seeking the Bankruptcy Court's approval of this Settlement Agreement (the "**9019 Motion**"). The Settling Parties may prepare and file a motion seeking the Bankruptcy Court's approval to file this Settlement Agreement and the 9019 Motion under seal (the "**Sealing Motion**").  The Trustee will not oppose the Sealing Motion, but the entry of a sealing order shall not be a condition to the effectiveness of this Settlement Agreement.

4. <u>Payment of Settlement Amount</u>.  The Settlement Amount shall be paid to the Trustee by depositing the Settlement Amount into the IOLTA account of Trustee's counsel.  The Settlement Amount shall be held in trust in the IOLTA account of Trustee's counsel and shall be disbursed immediately to the Trustee upon the Bankruptcy Court's entry of an order approving this Settlement Agreement.  If the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Amount shall be returned to Andrew or his written designee as provided herein.  The Settlement Amount shall be wire transferred to Trustee's counsel's IOLTA account using the following instructions:

JP Morgan Chase Bank
712 Main Street
10th Floor South
Houston, Texas 77002
(713) 216-2041

ABA Number: 111000614
International ABA Number: 021000021
Account Number: 125954160265
Swift Code:  CHASUS33

5. <u>Effective Date of Settlement Agreement</u>.  This Settlement Agreement shall become effective and enforceable on the latest of the following dates (the "**Effective Date**"): (i) the Parties

have all executed this Settlement Agreement and delivered it to one another; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the Trustee has received the Settlement Amount. The Settling Parties acknowledge that Bankruptcy Court approval is a condition precedent to the effectiveness and enforceability of this Settlement Agreement, except for the provision of Paragraph 9 of this Settlement Agreement.

6.    Voidability of Settlement Agreement. This Settlement Agreement is voidable or void as described herein: (i) if the Settlement Agreement is not approved by the Bankruptcy Court (or other federal court of competent jurisdiction on appeal)or (ii) if the Effective Date does not occur within 90 days of the execution of this Settlement Agreement, the Settlement Agreement is voidable at the option of any of the Parties. In the event this Settlement Agreement becomes null and void for either of the reasons outlined herein, the Trustee will return the Settlement Amount received by the Trustee to Andrew or his written designee within 7 days of the event that voids this Settlement Agreement.

7.    Release by Trustee. On the Effective Date, Trustee, on behalf of himself and all of the Debtors and the Bankruptcy Estates, and the Bankruptcy Estates' representatives, beneficiaries, employees, attorneys, agents, legal representatives and advisors, predecessors in interest, successors in interest, estates, administrators, and assigns, and each of them, hereby shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Settling Parties and Thomas Nicholas LLC and all of their past, present, and future assigns, divisions, departments, subsidiaries, parent companies, sister companies, affiliates, directors, officers, members, managers, partners, principals, owners, promoters, shareholders, stockholders, investors, holders, agents, brokers, banks, bankers, originators, servicers, servants, representatives, beneficiaries, employees, contractors, heirs, executors, administrators, trustees, trusts, attorneys (including Locke Lord LLP and its employees and attorneys), indemnitors, insurers, reinsurers, insurance plans, predecessors in interest, successors in interest, and any other representatives acting on behalf of, at the direction of, or for the benefit of any of them, whether past, present, or future, individually, or in a corporate or personal capacity, and any mediate or immediate transferee of any of the foregoing of funds received from the Debtors (including the Transferred Funds) (collectively, the "**Releasees**") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, liabilities, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, real or imagined, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtors, and the Bankruptcy Estates have, may have had, may have or may claim to have against the Releasees arising from, related to, or otherwise connected to the Trustee, the Debtors, the Jointly Administered Case, the Bankruptcy Estates, the Transferred Funds, and the Basha Agreements.

8.    Release by the Cycladic Parties and Andrew. Upon payment of the Effective Date, the Settling Parties waive irrevocably, and unconditionally, fully, finally, and forever, release, acquit, and discharge any claim they may have in the Jointly Administered Case. The Settling Parties agree that they will not file a proof of claim in the Jointly Administered Case or take any other action to assert a claim in the Jointly Administered Case.

9. <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or/ limitation in connection with the Trustee's claims against the Settling Parties or any Releases is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the earlier of the Effective Date or thirty (30) days following the date the Settlement Amount becomes repayable back to Andrew or his designee. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed. In the event this Settlement Agreement should become void, this provision requiring Tolling of Limitations shall survive.

10. <u>Enforcement of Settlement Agreement</u>. If any Party breaches this Settlement Agreement, the non-breaching Party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing Party in such litigation, shall be entitled to recover its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

11. <u>Expenses</u>. Each Party shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement, the Motion to Quash, the Rule 2004 Notice and Rule 2004 Examination, and the Trustee's Subpoena *Duces Tecum*.

12. <u>Severability</u>. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13. <u>Confidentiality Obligations</u>. The Parties agree to treat the terms of this Settlement Agreement as confidential and to not disclose or release such information to any person except the Parties' lawyers, auditors, accountants, tax preparers, or other persons to whom disclosure is required by law, in any action or proceeding involving enforcement of this Settlement Agreement between the Parties, except that Parties may announce that the disputes between and among them have been "settled." Disclosure by the Trustee of the Settlement Agreement terms and amount in Trustee's Rule 9019 Motion filed with the Bankruptcy Court is not prohibited by this Paragraph 13.

14. <u>Miscellaneous</u>.

a. Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal or equitable action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

b. Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things

reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

c.      No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

d.      This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

e.      The Bankruptcy Court shall retain jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

f.      This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

g.      Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

h.      In executing this Settlement Agreement, each of the Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

i.      The Parties each represent to the other that it/he has read and understands this Settlement Agreement; and that it/he expressly disclaims any reliance upon any representations, promises, or statements made by each other or each other's attorneys or representatives in executing this Settlement Agreement (except to the extent such representations, promises or statements are expressly set forth in writing herein). Andrew stipulates he does not stand in a disparate bargaining position or occupy a fiduciary relationship with Trustee and that he has not executed this Settlement Agreement under duress.  Each of the Cycladic Parties stipulates it does not stand in a

disparate bargaining position or occupy a fiduciary relationship with Trustee and that it has not executed this Settlement Agreement under duress.

j.      The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

k.      This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or by order of the Bankruptcy Court.

l.      This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

m.      The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

n.      **THE PARTIES EXPRESSLY WARRANT THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND ANY EXHIBIT ATTACHED HERETO, UNDERSTAND THEIR CONTENTS, AND SIGN THIS AGREEMENT VOLUNTARILY, AS THEIR OWN FREE ACT, WITHOUT ANY DURESS OR COERCION. THE PARTIES EXPRESSLY WARRANT THAT NO PROMISE OR AGREEMENT WHICH IS NOT HEREIN EXPRESSED HAS BEEN MADE TO THEM IN EXECUTING THIS AGREEMENT, AND THAT NONE OF THE PARTIES IS RELYING UPON ANY STATEMENT OR REPRESENTATION OF ANY AGENT OF THE PARTIES BEING RELEASED HEREBY, AND EACH OF THE PARTIES IS RELYING ON ITS OWN JUDGMENT IN EXECUTING THIS AGREEMENT AND UNDERSTANDS THE LEGAL CONSEQUENCES OF THIS AGREEMENT.**

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 1st day of December, 2022.

_____

John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this 1st day of December, 2022.

_____

Thomas N. Andrew

SIGNED this 1st day of December, 2022.

CYCLADIC INTERNATIONAL, LLC

_____

By:  Thomas N. Andrew, Manager

SIGNED this 1st day of December, 2022.

CYCLADIC, LLC

_____

By: Thomas N. Andrew, Manager

SIGNED this 1st day of December, 2022.

ANEMOS CONSULTING, INC.

_____

By:  Thomas N. Andrew, President

SIGNED this 1st day of December, 2022.

DOVER CAPITAL STRATEGIES, LLC

_____

By:  Thomas N. Andrew, Manager

{00602370;3}

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 1st day of December, 2022.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 1st day of December, 2022.

_____
Thomas N. Andrew

SIGNED this 1st day of December, 2022.

CYCLADIC INTERNATIONAL, LLC

_____
By:  Thomas N. Andrew, Manager

SIGNED this 1st day of December, 2022.

CYCLADIC, LLC

_____
By: Thomas N. Andrew, Manager

SIGNED this 1st day of December, 2022.

ANEMOS CONSULTING, INC.

_____
By:  Thomas N. Andrew, President

SIGNED this 1st day of December, 2022.

DOVER CAPITAL STRATEGIES, LLC

_____
By:  Thomas N. Andrew, Manager