IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC ET AL., PLAINTIFF | § § § § § § § | ADV. PROC. NO. _____ |
| | § | |
| v. | § | |
| | § | |
| MCNAMARA CAPITAL INVESTMENT GROUP, LLC, AND JOHN J. MCNAMARA, DEFENDANTS | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, John Patrick Lowe, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**") for the jointly administered Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**")[2] hereby files this Original Complaint, respectfully showing the Court as follows:

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth *5* Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

[2] The debtors—Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC—are referred to herein as "**Debtors**" or "**deeproot Entities**."

## I.     PRELIMINARY STATEMENT

1.      From late 2012 to mid-2021, Robert J. Mueller ("**Mueller**"), the sole principal and manager of the Debtors, orchestrated a Ponzi scheme wherein he persuaded investors (typically retirees) to cash out annuities and individual retirement accounts and invest the funds in Mueller's various investment funds, including but not limited to the deeproot BonusGrowth 5 Year Debenture Fund, LLC (the "**5 Year Debenture Fund**"), the deeproot 575 Fund, LLC (the "**575 Fund**") and deeproot Growth Runs Deep Fund, LLC (the "**dGRD Fund**" and collectively the "**Subsidiary Funds**"). Beginning in 2012, the deeproot Entities offered and sold life settlements. However, after the Texas Supreme Court's 2015[3] decision holding that life settlements constituted securities under the Texas Securities Act, the deeproot Entities began to offer and sell debenture bonds. Investors would be located through insurance agents, wealth advisors, and other financial professionals (the "**Finders**"). The vast majority of the Finders were not licensed to sell securities as broker-dealers or registered investment advisors. Monies invested in the Subsidiary Funds were eventually transferred to deeproot Funds, LLC before being paid out to investors in the form of interest payments, dividend payments, or withdrawals of principal. deeproot Funds, LLC was the parent of the Subsidiary Funds, and Policy Services, Inc. was the parent of deeproot Funds, LLC.

2.      On August 20, 2021, a few weeks prior to the filing of the Debtors' bankruptcy cases, the United States Securities and Exchange Commission ("**SEC**") initiated a civil action against Mueller and several of his entities for violations of federal securities laws.[4] As a result of that investigation, it became clear that Mueller not only funneled money to his other related entities from the investment funds and used investors' money to prop up his ultimately unsuccessful

---

[3] *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 667 (Tex. 2015).

[4] *Securities and Exchange Commission v. Robert J. Mueller et al.*, Case No. 5:21-cv-00785-XR (W.D. Tex.).

pinball business, but Mueller also used new investor money to pay moneys owed to earlier investors, making the deeproot Entities a Ponzi scheme. Almost all of the deeproot Entities' investors lost every dollar they invested.

3.      The Finders contracted with deeproot Funds, LLC and received finders' fees and commissions in exchange for finding new investors into the deeproot Entities' Ponzi scheme. The commissions and fees received by Finders that were not registered as investment advisors or broker-dealers are contrary to securities laws and these unregistered finders are liable to investors and creditors of the deeproot Entities.

## II.      PARTIES

4.      Plaintiff is the duly qualified and acting Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases. The Trustee brings this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001, 28 U.S.C. § 157, and all other applicable law.

5.      Defendant McNamara Capital Investment Group, LLC ("**McNamara Capital**") is an Illinois limited liability company with its principal place of business in Palos Heights, Illinois. It may be served with process via United States First Class Mail to its Registered Agent, John McNamara, at 7350 W College Dr., Suite 101, Palos Heights, Illinois 60463 or wherever else he or anyone authorized to accept service may be found.

6.      Defendant John J. McNamara ("**McNamara**") is an individual residing in Chicago, Illinois. He may be served with process via United States First Class Mail to 10514 S Artesian Ave., Apt. 1W, Chicago, Illinois, 60655, or wherever else he may be found.

## III.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1331 and 1334 and Fed. R. Bankr. P. 7001. This adversary proceeding constitutes a core

proceeding pursuant to 28 U.S.C. § 157. To the extent necessary, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

8.      To the extent the reference is withdrawn or the Bankruptcy Court is unable to enter a final judgment, Plaintiff requests the Bankruptcy Court be permitted and assigned to preside over all pre-trial matters, including the issuance of findings of fact and conclusions of law.

9.      Venue in this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

## IV.    FACTS

10.     Mueller served as the principal of all of the deeproot Entities and orchestrated a Ponzi scheme wherein he offered and sold securities to individuals for investment in pooled investment funds. Mueller then used the invested money to fund his other business ventures, including his pinball machine business. He also used the money to fund his lavish lifestyle. Crucially, Mueller used later investors' money to pay fictional returns to earlier investors.

## A.    The deeproot Entities and the Ponzi Scheme

11.     A Ponzi scheme is "a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." BLACK'S LAW DICTIONARY, Ponzi scheme (11th ed. 2019). A Ponzi scheme operates by using money from new investors to pay earlier investors, typically "without any operation or revenue-producing activity other than the continual raising of new funds." *Id.* "[A] Ponzi scheme is, as a matter of law, insolvent from its inception." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011).

12.     The deeproot Entities commenced operations in 2012. The first entity formed was Policy Services, Inc. deeproot Funds, LLC   is a direct subsidiary of Policy Services, Inc.  The

Subsidiary Funds were formed as direct subsidiaries of deeproot Funds, LLC. A review of the deeproot Entities' QuickBooks files and other financial books and records revealed that all of the Finders that contracted to find investors for deeproot Funds, LLC, were paid commissions and fees from Policy Services, Inc.

13.     Policy Services, Inc. and its subsidiaries never received an initial equity investment, and the deeproot Entities were all insolvent as of inception in 2012 and continued to operate at a loss. The deeproot Entities gave the appearance of profitability, which Mueller used to entice new investors and obtain new money from investors. The deeproot Entities offered investments at higher-than-market levels of return—for example, deeproot BonusGrowth 5 Year Debenture Fund, LLC's five-year debenture bonds were offered for a 7% return in 2014, which was nearly seven times more than the national rate for five-year debenture bonds at the time, according to data available from the Board of Governors of the Federal Reserve. *See* Exhibit A.

14.     There was no recorded capital investment on the balance sheet, and disbursements to Mueller and others were improperly recorded as assets rather than expenses, further boosting the appearance of profitability. After recharacterizing the disbursements as expenses, the equity for Policy Services, Inc. was $(1,490,187) for the year ending on December 31, 2013, and $(423,785) for the year ending on December 31, 2012. Policy Services and its subsidiaries had minimal revenue and had no net income as of at least December 31, 2012. Policy Services, Inc. continued to operate at a loss from the time of its inception and all of the deeproot Entities remained insolvent until filing for bankruptcy on December 9, 2021 ("**Petition Date**").

15.     Since there was no source of revenue, the deeproot Entities relied on newly invested money to fund operations and make payments to earlier investors.  From 2013 until 2021, deeproot Funds, LLC used new investor money to pay interest and dividends to earlier investors. For

example, during the final three years of the deeproot Entities' operation, the following payments were made: (1) in 2019, deeproot Funds, LLC received $18,300,190.00 from new investors and used $1,074,885.00 to previous investors; (2) in 2020, deeproot Funds, LLC received $7,093,055 from new investors and used $1,333,554.00 to pay previous investors; and (3) in 2021, deeproot Funds, LLC received $10,827,147 from new investors and used $918,391.00 to pay previous investors.

16. Based upon the books and records of deeproot Funds, LLC from 2019 and 2021, the entity only generated $865 in revenue during the nine years of its existence. Policy Services, Inc. had only minimal revenue from the time of its inception in 2012.

17. On December 9, 2021, the deeproot Entities each filed for relief under title 11 of the United States Code. The Bankruptcy Cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523.

18. On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases.

**B.** **Finders**

19. As the principal of the deeproot Entities, Mueller (through deeproot Funds, LLC) contracted with Finders all across the country to locate new investors and raise money for the deeproot Entities. A securities broker-dealer is defined as "any person engaged in the business of effecting transactions for the account of others." 15 U.S.C. § 78c. Broker-dealers are required to register as such with the SEC. 15 U.S.C. § 78*o*. Prior to 2015, the deeproot Entities offered and sold life settlements. After the Texas Supreme Court's 2015 decision holding that life settlements are securities, the deeproot Entities offered securities in the form of debenture bonds.[5]

---

[5] The deeproot Entities obtained Form D exemptions from the SEC to offer these securities.

20.     The vast majority of the deeproot Entities' contracted Finders were unregistered as broker-dealers despite the fact that they engaged in transactions to facilitate the sale of securities, including debenture bonds and life settlements.[6] The Finders that were registered investment advisors or broker-dealers failed to conduct the requisite due diligence into the financial condition of the deeproot Entities when making investment recommendations to clients. The deeproot Entities relied on these Finders to bring in a steady flow of money because there was no other source of revenue for the deeproot Entities other than newly invested money because the deeproot Entities continuously operated at a loss.

21.     Monies invested with one of the Subsidiary Funds were eventually transferred to deeproot Funds, LLC, which was the principal entity that handled payments to investors, before being transferred elsewhere. The Finders typically entered into contracts with deeproot Funds, LLC to be paid fees (the "**Finder Fees**") based off of the amount of money invested in one of the deeproot Entities by new investors. The Finder Fees were paid to Finders from Policy Services, Inc. regardless of where the new investor invested the monies.  Generally, Finders Fees were paid based on the below investment levels. The transaction-based Finders Fees are directly tied to the amount of the investment.

---

[6] The so-called "finder exception" permits a person to "perform a narrow scope of activities without triggering the broker/dealer registration requirements," such as "[m]erely bringing together the parties to transactions, even those involving the purchase and sale of securities, is not enough" to warrant broker registration. *S.E.C. v. Kramer*, 778 F. Supp. 2d 1320, 1336 (M.D. Fla. 2011) (quoting *Apex Global Partners, Inc. v. Kaye/Bassman Intern. Corp.*, No. 3:09-cv-637-M, 2009 WL 2777869, at *3 (N.D. Tex. Aug. 31, 2009)). The most frequently cited factors as to whether someone is an unregistered broker-dealer or a finder (for which there is an exception to liability) are: "whether a person (1) works as an employee of the issuer, (2) receives a commission rather than a salary, (3) sells or earlier sold the securities of another issuer, (4) participates in negotiations between the issuer and investor, (5) provides either advice or a valuation as to the merit of an investment, and (6) actively (rather than passively) finds investors." *Id.* at 1334. "[T]ransaction-based compensation" is one of the hallmarks of being a broker-dealer. *Id.* (*citing Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, 2006 WL 2620985, at *6 (D. Neb. 2006).

i.    The Fee for the575 Periodic election ('the575-P') shall be calculated as $7,000.00 (the575-P base rate) for each $100,000.00 of principal.

ii.    The Fee for all other Securities shall be calculated as $8,000.00 (base rate) for the first $100,000.00 of principal, and an additional $500.00 (to the previous incremental fee amount) enhancement for each additional $100,000.00 of principal invested.

iii.    Any principal that does not give rise to a consideration of a fee *may* be paid at a later time as *hanging surplus*, as provided in (c) below.

iv.    Example #1: if an Offeree invests $125,000.00, the Fee would be $7,000.00 for the575-P, or $8,000.00 for all other Securities; with a potential hanging surplus of $25,000.

v.    Example #2: if an Offeree invests $286,000.00, the Fee would be $14,000.00 for the575-P, or $16,500.00 [$8,000 + $8,500] for all other Securities; with a potential hanging surplus of $86,000.

vi.    Example #3: if an Offeree invests $499,999.99 the Fee would be $28,000.00 for the575-P, or $35,000.00 [$8,000 + $8,500 + $9,000 + $9,500] for all other Securities; with a potential hanging surplus of $99,999.99.

## a. Finder Agreements with Defendants

22.    From October 25, 2016 to September 1, 2020, McNamara Capital received $869,959.96 from Policy Services, Inc. (the "**McNamara Capital 544 Transfers**"). A true and correct copy of Policy Services, Inc.'s QuickBooks records showing the McNamara Capital 544 Transfers is attached hereto as Exhibit B. The QuickBooks records also show that the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers 544 Transfers were booked as Finders Fees. *Id.*

23.    During the four years preceding Petition Date, McNamara Capital received $476,590.00 from Policy Services, Inc. (the "**McNamara Capital 544 CF Transfers**"). A true and correct copy of Policy Services, Inc.'s QuickBooks records showing the McNamara Capital 544 CF Transfers is attached hereto as Exhibit C.

24.    During the two years preceding Petition Date, McNamara Capital received $66,550.00 from Policy Services, Inc. (the "**McNamara Capital 548 Transfers**"). A true and correct copy of Policy Services, Inc.'s QuickBooks records showing the McNamara Capital 548 Transfers is attached hereto as Exhibit D.

25.     Based on the records available from the records of the Illinois Secretary of State, McNamara is the sole principal of McNamara Capital. A true and correct copy of the Illinois Secretary of State record McNamara Capital is attached hereto as <u>Exhibit E</u>.

26.     A review of the Debtors' books and records revealed that McNamara executed numerous Finder Agreements with deeproot Funds, LLC. Specifically, he signed eleven (11) Standard Four Month Finder Agreements on behalf of McNamara Capital (the "**McNamara Capital Finder Agreements**") and one (1) Standard Four Month Finder Agreement in his individual capacity (the "**McNamara Finder Agreement**" and collectively the "**Finder Agreements**").

27.     The Finder Agreements provided that the Defendants would receive Finders Fees for locating new investors for the Subsidiary Funds.

28.     McNamara is a registered investment advisor. McNamara Capital is a registered investment firm.

## V.     CAUSES OF ACTION

29.     The Trustee brings this adversary proceeding to recover these fraudulently transferred funds for the benefit of creditors of Policy Services, Inc.

30.     Paragraphs 1 through 28 are incorporated herein by reference.

## Count 1 – Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (McNamara Capital) (Actual Fraud)

31.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of Policy Services, Inc. to McNamara Capital during the two years prior to Petition Date, and for damages against the fraudulent transferees of Policy Services, Inc. during the applicable time period.

32.     The McNamara Capital 548 Transfers in the amount of $66,550.00 were made within the two years prior to Petition Date. Exhibit D. The McNamara Capital 548 Transfers constitute a transfer of Policy Services, Inc.'s interest in property. The McNamara Capital 548 Transfers were not made in exchange for adequate consideration for Debtor Policy Services, Inc.

33.     The McNamara Capital 548 Transfers were made with an actual intent to hinder, delay or defraud the creditors of Debtor Policy Services, Inc., as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

34.     Debtor Policy Services, Inc. was insolvent at the time of its creation and at the time of each of the McNamara Capital 548 Transfers or became insolvent as a result of the McNamara Capital 548 Transfers, in that (a) the sum of Policy Services, Inc.'s debts were greater than all of Policy Services, Inc.'s assets at a fair valuation; (b) Policy Services, Inc. was engaging in or about to engage in a business or transaction for which Policy Services, Inc.'s remaining assets were unreasonably small in relation to the business or transaction; or (c) Policy Services, Inc. was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

35.     There was no capital infusion at the time Policy Services, Inc. was created.

36.     The McNamara Capital 548 Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $66,550.00 on behalf of Debtor Policy Services, Inc. to recover the McNamara Capital 548 Transfers from McNamara Capital.

**Count 2 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (McNamara Capital) (Constructive Fraud)**

37.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of Policy Services, Inc. to McNamara Capital during the two years prior to Petition Date, and for damages against the fraudulent transferees of Policy Services, Inc. during the applicable time period.

38.     The McNamara Capital 548 Transfers in the amount of $66,550.00 occurred within two years prior to Petition Date. Exhibit B. The McNamara Capital 548 Transfers constitute a transfer of Policy Services, Inc.'s interest in property. The McNamara Capital 548 Transfers were not made in exchange for adequate consideration for Debtor Policy Services, Inc.

39.     Policy Services, Inc. was insolvent at the time of its creation and at the time of each of the McNamara Capital 548 Transfers or became insolvent as a result of the McNamara Capital 548 Transfers, in that (a) the sum of Policy Services, Inc.'s debts were greater than all of Policy Services, Inc.'s assets at a fair valuation; (b) Policy Services, Inc. was engaging in or about to engage in a business or transaction for which Policy Services, Inc.'s remaining assets were unreasonably small in relation to the business or transaction; or (c) Policy Services, Inc. was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

40.     There was no capital infusion at the time Policy Services, Inc. was created.

41.     Policy Services, Inc. did not receive reasonably equivalent value in exchange for the McNamara Capital 548 Transfers.

42.     The McNamara Capital 548 Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $66,550.00

on behalf of Debtor Policy Services, Inc. to recover the McNamara Capital 548 Transfers from McNamara Capital.

**Count 3 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (McNamara Capital) (TUFTA Actual Fraud)**

43.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of Policy Services, Inc. to McNamara Capital during the applicable time period, and for damages against the fraudulent transferees of Policy Services, Inc. during the applicable time period.

44.     The McNamara Capital 544 Transfers in the amount of $896,959.96 took place between October 25, 2016 and September 1, 2020. Exhibit B. The McNamara Capital 544 Transfers constitute transfers of Debtor Policy Services, Inc.'s interest in property.

45.     The McNamara Capital 544 Transfers were made with an actual intent to hinder, delay or defraud Debtor Policy Services, Inc.'s creditors. The deeproot Entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

46.     Debtor Policy Services, Inc. was insolvent at the time of its creation and at the time of each of the McNamara Capital 544 Transfers or became insolvent as a result of the McNamara Capital 544 Transfers, in that (a) the sum of Policy Services, Inc.'s debts were greater than all of Policy Services, Inc.'s assets at a fair valuation; (b) Policy Services, Inc. was engaging in or about to engage in a business or transaction for which Policy Services, Inc.'s remaining assets were unreasonably small in relation to the business or transaction; or (c) Policy Services, Inc. was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

47.     There was no capital infusion at the time Policy Services, Inc. was created.

48.     Policy Services, Inc. had at least one outstanding creditor at the time of each of the McNamara Capital 544 Transfers, or such creditor's claim arose within a reasonable time after the McNamara Capital 544 Transfers. Proof of Claim No. 145-1 of the Policy Services, Inc. Claims Register filed by creditor Jill Ellis reflecting a claim dating back to March 25, 2013 evidenced by a life settlement certificate purchased on the same date. Proof of Claim No. 145-1 remains unpaid.

49.     Pursuant to Tex. Bus. & Com. Code § 24.010(a)(1), the Trustee brings this action within one year of the date Trustee discovered or could reasonably have discovered the McNamara Capital 544 Transfers.  The McNamara Capital 544 Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $896,959.96 to recover the McNamara Capital 544 Transfers from McNamara Capital.

## Count 4 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (McNamara Capital) (TUFTA Constructive Fraud)

50.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of Policy Services, Inc. to McNamara Capital during the applicable time period, and for damages against the fraudulent transferees of Policy Services, Inc. during the applicable time period.

51.     The McNamara Capital 544 CF Transfers in the amount of $476,590.00 took place within the four years preceding Petition Date. Exhibit C. The McNamara Capital 544 CF Transfers constitute transfers of Debtor Policy Services, Inc.'s interest in property.

52.     The McNamara Capital 544 CF Transfers were not made in exchange for adequate consideration for Debtor Policy Services, Inc.

53.     Debtor Policy Services, Inc. was insolvent at the time of its creation and at the time of each of the McNamara Capital 544 CF Transfers or became insolvent as a result of the

McNamara Capital 544 CF Transfers, in that (a) the sum of Policy Services, Inc.'s debts were greater than all of Policy Services, Inc.'s assets at a fair valuation; (b) Policy Services, Inc. was engaging in or about to engage in a business or transaction for which Policy Services, Inc.'s remaining assets were unreasonably small in relation to the business or transaction; or (c) Policy Services, Inc. was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

54.     There was no capital infusion at the time Policy Services, Inc. was created.

55.     Policy Services, Inc. had at least one outstanding creditor at the time of each of the McNamara Capital 544 CF Transfers, or such creditor's claim arose within a reasonable time after the McNamara Capital 544 CF Transfers. Proof of Claim No. 145-1 of the Policy Services, Inc. Claims Register filed by creditor Jill Ellis reflecting a claim dating back to March 25, 2013 evidenced by a life settlement certificate purchased on the same date. Proof of Claim No. 145-1 remains unpaid.

56.     The McNamara Capital 544 CF Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $476,590.00 to recover the McNamara Capital 544 CF Transfers from McNamara Capital.

**Count 5 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (All Defendants)**

57.     McNamara Capital was the initial transferee of the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers.

58.     The Trustee is entitled to recover from McNamara Capital, or any immediate or mediate transferee of McNamara Capital, the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers, or the value of the McNamara

Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 6 – Recovery of Attorneys' Fees and Costs**

59.     The Trustee has been forced to incur attorneys' fees and costs in connection with the filing and prosecution of this Complaint.

60.     Pursuant to 11 U.S.C. § 544 and section 24.013 of the Texas Business and Commerce Code, the Court may award costs and reasonable attorneys' fees in connection with a proceeding brought under the Texas Uniform Fraudulent Transfer Act. The Trustee hereby requests that any judgment include an award of the costs and attorneys' fees incurred by the Trustee in connection with prosecuting this Complaint.

61.     Prior to filing suit, the Trustee has made demand on the Defendants. The demand has not been met. All conditions precedent to filing suit have been satisfied.

62.     Furthermore, the Trustee requests an award for such attorneys' fees and costs incurred in the filing and prosecution of this Complaint to the extent allowed under the Bankruptcy Code and Texas law. *See* 11 U.S.C. §§ 105(a), 544, 550(a), and Tex. Bus. & Com. Code § 24.013.

**P̲RAYER̲**

WHEREFORE, JOHN PATRICK LOWE, Chapter 7 Trustee for the jointly administered Bankruptcy case of deeproot Capital Management, LLC, prays for judgment in favor of the Chapter 7 Trustee on all claims and relief sought herein, including but not limited to:

a.     Avoiding the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers as fraudulent transfers under sections 544 and 548 of the Bankruptcy Code and Chapter 24 of the Texas Business & Commerce Code;

    b.    Permitting recovery of the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers or the value of the McNamara Capital 548 Transfers, the McNamara Capital 544 Transfers, and the McNamara Capital 544 CF Transfers, along with prejudgment and post-judgment interest;

    c.    Permitting recovery of all costs and attorneys' fees incurred obtaining the relief sought; and

    d.    Such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Dated: December 7, 2022          Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By:    */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.**

# EXHIBIT A

— Market Yield on U.S. Treasury Securities at 5-Year Constant Maturity, Quoted on an Investment Basis

Source: Board of Governors of the Federal Reserve System (US)                    fred.stlouisfed.org

# EXHIBIT B

3:49 PM
07/25/22
Accrual Basis

**Policy Services, Inc.**
**Transaction Detail By Account**
**All Transactions**

21-51523-mmp  Doc#217  Filed 12/07/22  Entered 12/07/22 21:13:13  Main Document  Pg 20
of 30

| | | Type | Date | Num | Name | Memo | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Policy Services | Finders Fee | Check | 10/25/2016 | 1231 | McNamara Capital Investment Group, LLC | Jellison | | Corporate Checking 8461 | 5,500.00 |
| Policy Services | Finders Fee | Check | 11/03/2016 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 11,000.00 |
| Policy Services | Finders Fee | Check | 12/01/2016 | 1236 | McNamara Capital Investment Group, LLC | Zarr 19500 and Bukowski 11000 | | Corporate Checking 8461 | 30,500.00 |
| Policy Services | Finders Fee | Check | 12/08/2016 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 19,500.00 |
| Policy Services | Finders Fee | Check | 12/20/2016 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 19,500.00 |
| Policy Services | Finders Fee | Check | 12/27/2016 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 39,000.00 |
| Policy Services | Finders Fee | Check | 01/23/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 11,000.00 |
| Policy Services | Finders Fee | Check | 01/27/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 11,000.00 |
| Policy Services | Finders Fee | Check | 02/13/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 19,500.00 |
| Policy Services | Finders Fee | Check | 02/21/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 28,500.00 |
| Policy Services | Finders Fee | Check | 03/23/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 192,000.00 |
| Policy Services | Finders Fee | Check | 06/30/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 16,500.00 |
| Policy Services | Finders Fee | Check | 09/14/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 369.96 |
| Policy Services | Finders Fee | Check | 09/26/2017 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 16,500.00 |
| Policy Services | Finders Fee | Check | 01/12/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,500.00 |
| Policy Services | Finders Fee | Check | 02/13/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 46,000.00 |
| Policy Services | Finders Fee | Check | 03/06/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 20,000.00 |
| Policy Services | Finders Fee | Check | 05/08/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 08/10/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,500.00 |
| Policy Services | Finders Fee | Check | 09/04/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 35,500.00 |
| Policy Services | Finders Fee | Check | 09/24/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 18,500.00 |
| Policy Services | Finders Fee | Check | 10/24/2018 | | McNamara Capital Investment Group, LLC | | | Sweep Account  8487 | 19,540.00 |
| Policy Services | Finders Fee | Check | 11/15/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 6,500.00 |
| Policy Services | Finders Fee | Check | 11/16/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 10,000.00 |
| Policy Services | Finders Fee | Check | 11/26/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 11/29/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/02/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/11/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/17/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 24,000.00 |
| Policy Services | Finders Fee | Check | 01/17/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 01/28/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 33,000.00 |
| Policy Services | Finders Fee | Check | 01/28/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 40,000.00 |
| Policy Services | Finders Fee | Check | 09/16/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 35,000.00 |
| Policy Services | Finders Fee | Check | 02/14/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 300.00 |
| Policy Services | Finders Fee | Check | 03/24/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 10,500.00 |
| Policy Services | Finders Fee | Check | 04/29/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,750.00 |
| Policy Services | Finders Fee | Check | 08/19/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,000.00 |
| Policy Services | Finders Fee | Check | 09/01/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 30,000.00 |
| | | | | | **McNamara Capital 544 Transfers Total** | | | | **896,959.96** |

# EXHIBIT C

3:49 PM
07/25/22
Accrual Basis

Policy Services, Inc.
Transaction Detail By Account
All Transactions

21-51523-mmp  Doc#217  Filed 12/07/22  Entered 12/07/22 21:13:13  Main Document  Pg 22
of 30

| | | Type | Date | Num | Name | Memo | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Policy Services | Finders Fee | Check | 01/12/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,500.00 |
| Policy Services | Finders Fee | Check | 02/13/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 46,000.00 |
| Policy Services | Finders Fee | Check | 03/06/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 20,000.00 |
| Policy Services | Finders Fee | Check | 05/08/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 08/10/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,500.00 |
| Policy Services | Finders Fee | Check | 09/04/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 35,500.00 |
| Policy Services | Finders Fee | Check | 09/24/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 18,500.00 |
| Policy Services | Finders Fee | Check | 10/24/2018 | | McNamara Capital Investment Group, LLC | | | Sweep Account  8487 | 19,540.00 |
| Policy Services | Finders Fee | Check | 11/15/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 6,500.00 |
| Policy Services | Finders Fee | Check | 11/16/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 10,000.00 |
| Policy Services | Finders Fee | Check | 11/26/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 11/29/2018 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/02/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/11/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 21,000.00 |
| Policy Services | Finders Fee | Check | 01/17/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 24,000.00 |
| Policy Services | Finders Fee | Check | 01/17/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,000.00 |
| Policy Services | Finders Fee | Check | 01/28/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 33,000.00 |
| Policy Services | Finders Fee | Check | 01/28/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 40,000.00 |
| Policy Services | Finders Fee | Check | 09/16/2019 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 35,000.00 |
| Policy Services | Finders Fee | Check | 02/14/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 300.00 |
| Policy Services | Finders Fee | Check | 03/24/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 10,500.00 |
| Policy Services | Finders Fee | Check | 04/29/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,750.00 |
| Policy Services | Finders Fee | Check | 08/19/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,000.00 |
| Policy Services | Finders Fee | Check | 09/01/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 30,000.00 |
| **McNamara Capital 544 CF Transfers Total** | | | | | | | | | **476,590.00** |

# EXHIBIT D

3:49 PM
07/25/22
Accrual Basis

**Policy Services, Inc.**
21-51523-mmp  Doc#217  Filed 12/07/22  Entered 12/07/22 21:13:13  Main Document   Pg 24
**Transaction Detail By Account**
of 30
All Transactions

| | | Type | Date | Num | Name | Memo | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Policy Services | Finders Fee | Check | 02/14/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 300.00 |
| Policy Services | Finders Fee | Check | 03/24/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 10,500.00 |
| Policy Services | Finders Fee | Check | 04/29/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 8,750.00 |
| Policy Services | Finders Fee | Check | 08/19/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 17,000.00 |
| Policy Services | Finders Fee | Check | 09/01/2020 | | McNamara Capital Investment Group, LLC | | | Corporate Checking 8461 | 30,000.00 |
| **McNamara Capital 548 Transfers Total** | | | | | | | | | **66,550.00** |

# EXHIBIT E

cyberdriveillinois.com is now ilsos.gov

Toggle navigation

- Online Services
- Publications/Forms
- Departments
- News
- Contact

Office of the Secretary of State Jesse White

ilsos.gov

# Corporation/LLC Search/Certificate of Good Standing

**LLC File Detail Report**

File Number
03505995
Entity Name
MCNAMARA CAPITAL INVESTMENT GROUP, LLC
Status
ACTIVE

## Entity Information

Principal Office
7350 W. COLLEGE DR SUITE 101
PALOS HEIGHTS, IL 604630000
Entity Type
LLC
Type of LLC
Domestic
Organization/Admission Date
Thursday, 24 February 2011
Jurisdiction
IL
Duration
PERPETUAL

## Agent Information

Name
JOHN MCNAMARA
Address
7350 W COLLEGE DR STE 101
PALOS HEIGHTS , IL 60463
Change Date
Thursday, 24 February 2011

## Annual Report

For Year
2022
Filing Date
Thursday, 30 December 2021

## Managers

Name
Address
MCNAMARA, JOHN
7350 W. COLLEGE DRIVE, SUITE 1
PALOS HEIGHTS, IL 60463

## Series Name

NOT AUTHORIZED TO ESTABLISH SERIES

Return to Search

(One Certificate per Transaction)

This information was printed from www.ilsos.gov, the official website of the Illinois Secretary of State's Office.
Tue Jul 12 2022

## About Us

- Office of the Secretary of State
- Secretary of State Jesse White
- Privacy Policy
- Terms of Use

## Social Media

**Contact Us**

213 State Capitol
Springfield, IL 62756
800-252-8980 (toll free in Illinois)
217-785-3000 (outside Illinois)

- Contact Forms

- Amber Alert
- National Center for Missing & Exploited Children

FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS John Patrick Lowe, Chapter 7 Trustee | DEFENDANTS McNamara Capital Investment Group, LLC et al. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Pulman Cappuccio & Pullen, LLP (210) 222-9494 2161 NW Military Hwy #400, San Antonio, TX 78213 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☐ Other ☑ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☑ Other ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Trustee seeks recovery of fraudulent transfers under 11 USC Sections 544, 548, 550, TUFTA and seeks recovery of attorneys' fees.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other - Section 544
         Section 550

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

    **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) - TUFTA

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 869,959.96 |

| Other Relief Sought   Attorneys' fees |
|---|

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>deeproot Capital Management LLC et al. (JT. Admin.) | | BANKRUPTCY CASE NO.<br>LEAD 21-51523 |
| DISTRICT IN WHICH CASE IS PENDING<br>Western TX | DIVISIONAL OFFICE<br>San Antonio | NAME OF JUDGE<br>Michael M Parker |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>12/07/2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Randall A Pulman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.