IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| deeproot CAPITAL MANAGEMENT, LLC ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF deeproot CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. _____ |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| CANDICE GILLEN, CARL JARNECKE | § | |
| AS TRUSTEE OF THE CARL & PAULA | § | |
| JARNECKE REVOCABLE TRUST, | § | |
| THE CARL & PAULA JARNECKE | § | |
| REVOCABLE TRUST, BROWNIE MARTIN, | § | |
| KENNETH MARTIN, DAVID MEDLANG, | § | |
| MARY MEDLANG, ALICE SNELL, AND | § | |
| JILL R. WINN, | § | |
| DEFENDANTS | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: In Re: Policy Services, Inc. 21-51513 (2864), In Re: Wizard Mode Media, LLC, 21-51514 (3205), In Re: deeproot Pinball LLC, 21-51515 (0320), In Re: deeproot Growth Runs Deep Fund, LLC, 21-51516 (8046), In Re: deeproot 575 Fund, LLC, 21-51517 (9404), In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC, 21-51518 (7731), In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC, 21-51519 (9661), In Re: deeproot Tech LLC, 21-51520 (9043), In Re: deeproot Funds LLC, 21-51521 (9404), In Re: deeproot Studios LLC , 21-51522 (6283), and In Re: deeproot Capital Management, LLC, 21-51523 (2638) (collectively, the **"Bankruptcy Cases"**).

Plaintiff, John Patrick Lowe, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**") for the jointly administered Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**")[2] hereby files this Original Complaint, respectfully showing the Court as follows:

## I.  PRELIMINARY STATEMENT

1.        From late 2012 to mid-2021, Robert J. Mueller ("**Mueller**"), the sole principal and manager of the Debtors, orchestrated a Ponzi scheme wherein he persuaded investors (typically retirees) to cash out annuities and individual retirement accounts and invest the funds in Mueller's various investment funds, including but not limited to the deeproot BonusGrowth 5 Year Debenture Fund, LLC (the "**5 Year Debenture Fund**"), the deeproot 575 Fund, LLC (the "**575 Fund**") and deeproot Growth Runs Deep Fund, LLC (the "**dGRD Fund**" and collectively the "**Subsidiary Funds**"). Beginning in 2012, the deeproot Entities offered and sold life settlements. However, after the Texas Supreme Court's 2015[3] decision holding that life settlements constituted securities under the Texas Securities Act, the deeproot Entities began to offer and sell debenture bonds. Investors would be located through insurance agents, wealth advisors, and other financial professionals (the "**Finders**"). The vast majority of the Finders were not licensed to sell securities as broker-dealers or registered investment advisors. Monies invested in the Subsidiary Funds were eventually transferred to deeproot Funds, LLC before being paid out to investors in the form of interest payments, dividend payments, or withdrawals of principal. deeproot Funds, LLC was the parent of the Subsidiary Funds, and Policy Services, Inc. was the parent of deeproot Funds, LLC.

---

[2] The debtors—Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC—are referred to herein as "**Debtors**" or "**deeproot Entities**."

[3] *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 667 (Tex. 2015).

2.      On August 20, 2021, a few weeks prior to the filing of the Debtors' bankruptcy cases, the United States Securities and Exchange Commission initiated a civil action against Mueller and several of his entities for violations of federal securities laws.[4] As a result of that investigation, it became clear that Mueller not only funneled money to his other related entities from the investment funds and used investors' money to prop up his ultimately unsuccessful pinball business, but Mueller also used new investor money to pay moneys owed to earlier investors, making the deeproot Entities a Ponzi scheme.

3.      While the vast majority of the investors lost all of the money they invested, a lucky few received not only the return of their full principal but additional dividend or interest disbursements from the Debtors. These investors are the so-called "net winners" in the Debtors' Ponzi scheme. The profit received by these "net winners" is fictitious profit subject to avoidance by the Trustee.

## II.      <u>PARTIES</u>

4.      Plaintiff is the duly qualified and acting Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases. The Trustee brings this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001, 28 U.S.C. § 157, and all other applicable law.

5.      Defendant Candice Lillian Gillen ("**Gillen**") is an individual residing in Clermont, Florida. She can be served with process by First Class Mail at 3709 Doune Way, Clermont, Florida 34711, or wherever else she may be found.

6.      Defendant Carl Jarnecke, as trustee of the Carl & Paula Jarnecke Revocable Trust ("**Jarnecke**"), is an individual residing in Livingston, Texas. He can be served with process by

---

[4] *Securities and Exchange Commission v. Robert J. Mueller et al.*, Case No. 5:21-cv-00785-XR (W.D. Tex.).

First Class Mail at 235 Northwood Park, Livingston, Texas 77351, or wherever else he may be found.

7.      Defendant Carl & Paula Jarnecke Revocable Trust (the "**Jarnecke Revocable Trust**") is a Texas-settled revocable trust. The Jarnecke Revocable Trust can be served with process by First Class Mail at 1570 County Road 4260, Woodville, Texas 75979, or wherever else it may be found.

8.      Defendant Kenneth Martin is an individual residing in Rosenberg, Texas. He can be served with process by First Class Mail at 3620 Avenue R, Rosenberg, Texas 77471, or wherever else he may be found.

9.      Defendant Brownie Martin (collectively with Kenneth Martin, the "**Martins**") is an individual residing in Rosenberg, Texas. She can be served with process by First Class Mail at 3620 Avenue R, Rosenberg, Texas 77471, or wherever else she may be found.

10.     Defendant David Medlang is an individual residing in Gallatin, Tennessee. He can be served with process by First Class Mail at 158 Monarchos Drive, Gallatin, Tennessee 37066, or wherever else he may be found.

11.     Defendant Mary Medlang (collectively with David Medlang, the "**Medlangs**") is an individual residing in Gallatin, Tennessee. She can be served with process by First Class Mail at 158 Monarchos Drive, Gallatin, Tennessee 37066, or wherever else she may be found.

12.     Defendant Alice Snell ("**Snell**") is an individual residing in Palestine, Texas. She can be served with process via First Class Mail at 103 Elmwood Ct., Palestine, Texas 75801, or wherever else she may be found.

13.     Defendant Jill R. Winn ("**Winn**") is an individual residing in Schertz, Texas. She can be served with process by First Class Mail at 3808 Smokey Pointe, Schertz, Texas 78108, or wherever else she may be found.

### III.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1331 and 1334 and Fed. R. Bankr. P. 7001. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157. To the extent necessary, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

15.     To the extent the reference is withdrawn or the Bankruptcy Court is unable to enter a final judgment, Plaintiff requests the Bankruptcy Court be permitted and assigned to preside over all pre-trial matters, including the issuance of findings of fact and conclusions of law.

16.     Venue in this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409.

### IV.     FACTS

17.     Mueller served as the principal of all of the deeproot Entities and orchestrated a Ponzi scheme wherein he offered and sold securities to individuals for investment in pooled investment funds. Mueller then used the invested money to fund his other business ventures, including his nascent pinball machine business. He also used the money to fund his lavish lifestyle. For purposes of this lawsuit, the key fact is that he used later investors' money to pay earlier investors.

### A.     The deeproot Entities and the Ponzi Scheme

18.     A Ponzi scheme is "a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose

example attracts even larger investments." BLACK'S LAW DICTIONARY, Ponzi scheme (11th ed. 2019). A Ponzi scheme operates by using money from new investors to pay earlier investors, typically "without any operation or revenue-producing activity other than the continual raising of new funds." *Id.* "[A] Ponzi scheme is, as a matter of law, insolvent from its inception." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011).

19.    The deeproot Entities commenced operations in 2012. The first entity formed was Policy Services, Inc. deeproot Funds, LLC is a direct subsidiary of Policy Services, Inc. The Subsidiary Funds were formed as direct subsidiaries of deeproot Funds, LLC. A review of the deeproot Entities' QuickBooks files and other financial books and records revealed that all of the Finders that contracted to find investors for deeproot Funds, LLC, were paid commissions and fees from Policy Services, Inc.

20.    Policy Services, Inc. and its subsidiaries never received an initial equity investment, and the deeproot Entities were all insolvent as of inception in 2012 and continued to operate at a loss. The deeproot Entities gave the appearance of profitability, which Mueller used to entice new investors and obtain new money from investors. The deeproot Entities offered investments at higher-than-market levels of return—for example, deeproot BonusGrowth 5 Year Debenture Fund, LLC's five-year debenture bonds were offered for a 7% return in 2014, which was nearly seven times more than the national rate for five-year debenture bonds at the time, according to data available from the Board of Governors of the Federal Reserve. *See* Exhibit A.

21.    There was no recorded capital investment on the balance sheet, and disbursements to Mueller and others were improperly recorded as assets rather than expenses, further boosting the appearance of profitability. After recharacterizing the disbursements as expenses, the equity for Policy Services, Inc. was $(1,490,187) for the year ending on December 31, 2013, and

$(423,785) for the year ending on December 31, 2012. Policy Services and its subsidiaries had minimal revenue and had no net income as of at least December 31, 2012. Policy Services, Inc. continued to operate at a loss from the time of its inception and all of the deeproot Entities remained insolvent until filing for bankruptcy on December 9, 2021 ("**Petition Date**").

22.     Since there was no source of revenue, the deeproot Entities relied on newly invested money to fund operations and make payments to earlier investors.  From 2013 until 2021, deeproot Funds, LLC used new investor money to pay interest and dividends to earlier investors. For example, during the final three years of the deeproot Entities' operation, the following payments were made: (1) in 2019, deeproot Funds, LLC received $18,300,190.00 from new investors and used $1,074,885.00 to previous investors; (2) in 2020, deeproot Funds, LLC received $7,093,055 from new investors and used $1,333,554.00 to pay previous investors; and (3) in 2021, deeproot Funds, LLC received $10,827,147 from new investors and used $918,391.00 to pay previous investors.

23.     Based upon the books and records of deeproot Funds, LLC from 2019 and 2021, the entity only generated $865 in revenue during the nine years of its existence. Policy Services, Inc. had only minimal revenue from the time of its inception in 2012.

24.     On December 9, 2021, the deeproot Entities each filed for relief under title 11 of the United States Code. The Bankruptcy Cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523.

25.     On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases.

### B.    The Net Winners of the deeproot Ponzi Scheme

26.    "Net winners" in a Ponzi scheme are those lucky few investors who not only received their principal investment back in full, but also received interest and dividend disbursements such that the total net amount received was in excess of the original investment. *Janvey v. Brown*, 767 F.3d 430, 440-42 (5th Cir. 2014). An individual investor becomes a net winner once he or she receives funds from the Ponzi scheme entity in excess of the investor's original investment. *Id.* Net winners are not allowed to benefit from the Ponzi scheme because any profits paid to them came from new investors. A bankruptcy trustee may recover the profits because any amount received by the net winners in excess of their principal investment were not transferred by a Ponzi scheme debtor in exchange for reasonably equivalent value.

#### a.    Jill R. Winn

27.    On or about May 20, 2015, Winn made a non-qualified individual investment in the amount of $430,000.00 with the 5 Year Debenture Fund. On or about June 5, 2015 Winn made a traditional individual retirement account investment in the amount of $85,249.58. On June 25, 2015, Winn made an additional traditional individual retirement account investment in the amount of $301,716.76. Debtors' records reflect that of these additional investments, $186,966.30 was subsequently invested in the 5 Year Debenture Fund and $200,000.00 was invested in deeproot Pinball, LLC. In total, Winn invested $816,966.34.

28.    From October 2016 to February 2021, Winn received interest payments from deeproot Funds, LLC in the amount of $187,461.04. From January 2020 to February 2021, Winn received dividend payments from deeproot Funds, LLC in the amount of $18,379.95. Between March 12, 2021 and April 30, 2021, Winn additionally withdrew funds from deeproot Funds, LLC in the total amount of $869,404.09.

29.     Winn became a net winner on or about April 15, 2021 when she received funds from deeproot Funds, LLC that were in excess of her original investment.  A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Winn Transfers is attached hereto as Exhibit B. The net amount received by Winn in excess of her original investment totals $258,278.74 (the "**Net Winn Transfers**").

30.     The monies distributed to Winn from deeproot Funds, LLC from October 2016 to April 2021 came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to Winn were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544, 548, and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to Winn in excess of her original investment in the amount of $258,278.74.

**b.     David and Mary Medlang**

31.     On or about April 5, 2016, Mary Medlang inherited a non-qualified individual investment in the amount of $316,943.13 from Dora Mower, representing half of Mower's original investment in the 5 Year Debenture Fund, which Mower made on or about December 2, 2014. A true and correct copy of Mower's investment history, inheritance by the Medlangs, and distribution to the Medlangs is attached hereto as Exhibit C. The Medlangs subsequently invested an additional $39,142.48 for a total investment of $356,085.60. The money was subsequently transferred from the 5 Year Debenture Fund to Policy Services, and then to deeproot Funds, LLC.

32.     The Medlangs became net winners on or about June 22, 2021 when they received transfers from deeproot Funds, LLC in excess of the amount of their original investment. The financial records of deeproot Funds, LLC revealed that the Medlangs withdrew the funds from

deeproot Funds, LLC in three tranches: (1) $75,000.00 on or about January 8, 2021; (2) $100,000.00 on or about April 22, 2021; and (3) $340,603.75 on or about June 22, 2021. The total amount withdrawn is $515,603.75. A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Medlang Transfers is attached hereto as Exhibit D. The Medlangs received transfers in excess of their principal investment in the amount of $159,518.15 (the "**Net Medlang Transfers**").

33.     The monies distributed to the Medlangs from deeproot Funds, LLC from January to June 2021 came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to the Medlangs were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544, 548, and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to the Medlangs in excess of their original investment in the amount of $159,518.15.

**c.      Candice Gillen**

34.     According to deeproot Funds, LLC's records, Gillen made the following investments in the 5 Year Debenture Fund: (1) a qualified individual investment in the amount of $83,763.00 on January 22, 2015; and (2) a non-qualified individual investment in the amount of $275,000.00 on February 5, 2015.

35.     Gillen became a net winner on or about May 12, 2021 when she received funds from deeproot Funds, LLC in excess of her original investment. A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Gillen Transfers is attached hereto as Exhibit E. deeproot Funds, LLC's records reflect that Gillen withdrew the invested funds from deeproot Funds, LLC as follows: $131,990.96 on or about January 8, 2021, $140,000.00 on or

about May 12, 2021, and $147,574.81 on or about June 24, 2021. Gillen received $60,802.77 in excess of her original investment (the "**Net Gillen Transfers**").

36.     The monies distributed to Gillen from deeproot Funds from January to May 2021 came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to Gillen were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544, 548, and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to Gillen in excess of her original investment in the amount of $60,802.77.

**d.     The Carl & Paula Jarnecke Revocable Trust and Carl Jarnecke as Trustee**

37.     According to the Debtors' records, on August 5, 2014, the Jarnecke Revocable Trust made a non-qualified individual investment in the amount of $65,000.00 with the 5-year Debenture Fund. The investment documentation was completed by the trustee of the Jarnecke Revocable Trust, Carl Jarnecke.

38.     The Jarnecke Revocable Trust became a net winner on or about November 8, 2019 when deeproot Funds, LLC transferred $65,000.00 as repayment of principal and $35,282.44 in interest. The Jarnecke Revocable Trust received $35,282.44 in excess of its original investment (the "**Net Jarnecke Revocable Trust Transfers**"). A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Jarnecke Revocable Trust Transfers is attached hereto as Exhibit F.

39.     The monies distributed to the Jarnecke Revocable Trust from deeproot Funds, LLC on or about November 8, 2019, came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to the Jarnecke

Revocable Trust were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544 and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to the Jarnecke Revocable Trust and Carl Jarnecke as trustee of the Jarnecke Revocable Trust in excess of their original investment in the amount of $35,282.44.

     **e.**    **Alice Snell**

40.    According to the Debtors' records, on April 15, 2016, Snell made a qualified individual investment in the amount of $60,000 with the 5 Year Debenture Fund. deeproot Funds, LLC's records reflect that the funds were transferred from the 5 Year Debenture Fund to deeproot Funds.

41.    Snell became a net winner on or about June 12, 2020 when she received transfers from deeproot Funds, LLC that exceeded her original investment. A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Snell Transfers is attached hereto as Exhibit G. deeproot Funds, LLC's records reflect that on or about June 12, 2020, Snell withdrew from deeproot Funds, LLC her principal investment in the amount of $60,000.00. On that same date, Snell also received $36,431.37 in interest payments (the "**Net Snell Transfers**").

42.    The monies distributed to Snell from deeproot Funds, LLC on or about June 12, 2020, came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to Snell were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544, 548, and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the

Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to Snell in excess of her original investment in the amount of $36,431.37.

**f.  Kenneth and Brownie Martin**

43.  According to the Debtors' records, on April 15, 2016, the Martins made a non-qualified individual investment in the amount of $60,000.00 with the deeproot 575 Fund.

44.  The Martins became net winners on or about June 11, 2021 when they received transfers from deeproot Funds, LLC that exceeded their original investment. A true and correct copy of the deeproot Funds, LLC QuickBooks records showing the Net Martin Transfers is attached hereto as Exhibit H. deeproot Funds, LLC's records that the Martins received interest payments from deeproot Funds, LLC between June 2016 and May 2021 in the amount of $15,350.00. deeproot Funds, LLC's records further reflect that on June 11, 2021, the Martins withdrew funds from deeproot Funds, LLC in the total amount of $60,500.00. The Martins received $15,850.00 in excess of their original investment (the "**Net Martin Transfers**").

45.  The monies distributed to the Martins from deeproot Funds, LLC between June 2016 and May 2021 came from the deeproot Entities' new investors and are thus fictitious profits derived from the Debtors' Ponzi scheme. The net transfers to the Martins were not made in exchange for reasonable equivalent value to deeproot Funds, LLC. As such, pursuant to 11 U.S.C. §§ 544, 548, and applicable provisions of the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code, the Trustee is entitled to avoid the sums transferred to the Martins in excess of their original investment in the amount of $15,850.00.

## V.     CAUSES OF ACTION

46.     The Trustee brings this adversary proceeding to recover these fraudulently transferred funds for the benefit of creditors of deeproot Funds, LLC.

47.     Paragraphs 1 through 44 are incorporated herein by reference.

**Count 1 – Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (Winn) (Actual Fraud)**

48.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Winn during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

49.     Winn became a net winner within the two years prior to Petition Date. The Net Winn Transfers in the amount of $258,278.74 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit B. The Net Winn Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

50.     The Net Winn Transfers were made with an actual intent to hinder, delay or defraud the creditors of Debtor deeproot Funds, LLC, as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

51.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Winn Transfers or became insolvent as a result of the Net Winn Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or

believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

52.     There was no capital infusion at the time deeproot Funds, LLC was created.

53.     The Net Winn Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $258,278.74 on behalf of Debtor deeproot Funds, LLC to recover the Net Winn Transfers from Winn.

**Count 2 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (Winn) (Constructive Fraud)**

54.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Winn during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

55.     Winn became a net winner within the two years prior to Petition Date. The Net Winn Transfers in the amount of $258,278.74 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit B. The Net Winn Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

56.     deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Winn Transfers or became insolvent as a result of the Net Winn Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

57.     There was no capital infusion at the time deeproot Funds, LLC was created.

58.     deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Winn Transfers.

59.     The Net Winn Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $258,278.74 on behalf of Debtor deeproot Funds, LLC to recover the Net Winn Transfers from Winn.

**Count 3 – Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (Medlangs) (Actual Fraud)**

60.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Medlangs during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

61.     The Medlangs became net winners within the two years prior to Petition Date. The Net Medlang Transfers in the amount of $159,518.15 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit D. The Net Medlang Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

62.     The Net Medlang Transfers were made with an actual intent to hinder, delay or defraud deeproot Funds, LLC's creditors, as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

63.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Medlang Transfers or became insolvent as a result of the Medlang Transfers in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in

relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

64.     There was no capital infusion at the time deeproot Funds, LLC was created.

65.     The Net Medlang Transfers constituted actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $159,518.15 on behalf of Debtor deeproot Funds, LLC to recover the Net Medlang Transfers from the Medlangs.

## Count 4 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (Medlangs) (Constructive Fraud)

66.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Medlangs during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

67.     The Medlangs became net winners within the two years prior to Petition Date. The Net Medlang Transfers in the amount of $159,518.15 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit D. The Net Medlang Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

68.     deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Medlang Transfers or became insolvent as a result of the Net Medlang Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur,

or believed or reasonably should have believed that deeproot Funds, LLC would incur debts beyond its ability to pay such debts as they became due.

69. There was no capital infusion at the time deeproot Funds, LLC was created.

70. deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Medlang Transfers.

71. The Net Medlang Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $159,518.15 to recover the Medlang Transfers from the Medlangs.

## Count 5 – Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (Gillen) (Actual Fraud)

72. Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Gillen during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

73. Gillen became a net winner within the two years prior to Petition Date. The Net Gillen Transfers in the amount of $60,802.77 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit E. The Net Gillen Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

74. The Net Gillen Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors, as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

75. Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Gillen Transfers or became insolvent as a result of the Net Gillen Transfers in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's

assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

76.     There was no capital infusion at the time deeproot Funds, LLC was created.

77.     The Net Gillen Transfers constituted actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $60,802.77 on behalf of Debtor deeproot Funds, LLC to recover the Net Gillen Transfers from Gillen.

## Count 6 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (Gillen) (Constructive Fraud)

78.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Gillen during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

79.     Gillen became a net winner within the two years prior to Petition Date. The Net Gillen Transfers in the amount of $60,802.77 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit E. The Net Gillen Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

80.     deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Gillen Transfers or became insolvent as a result of the Net Gillen Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation

to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

81.     There was no capital infusion at the time deeproot Funds, LLC was created.

82.     deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Gillen Transfers.

83.     The Net Gillen Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $60,802.77 on behalf of Debtor deeproot Funds, LLC to recover the Gillen Transfers from Gillen.

**Count 7– Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (Snell) (Actual Fraud)**

84.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Snell during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

85.     Snell became a net winner within the two years prior to Petition Date. The Net Snell Transfers in the amount of $36,431.37 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit G. The Net Snell Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

86.     The Net Snell Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors, as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

87.     Debtor deeproot Funds, LLC was insolvent since its creation and at the time of each of the Net Snell Transfers or became insolvent as a result of the Net Snell Transfers in that (a) the

sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

88.     There was no capital infusion at the time deeproot Funds, LLC was created.

89.     The Net Snell Transfers constituted actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $36,431.37 on behalf of Debtor deeproot Funds, LLC to recover the Net Snell Transfers from Snell.

**Count 8 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (Snell) (Constructive Fraud)**

90.     Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Snell during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

91.     Snell became a net winner within the two years prior to Petition Date. The Net Snell Transfers in the amount of $36,431.37 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit G. The Net Snell Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

92.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Snell Transfers or became insolvent as a result of the Net Snell Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a

{00602111;1}                                                          21

business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that deeproot Funds, LLC would incur debts beyond its ability to pay such debts as they became due.

93.     There was no capital infusion at the time deeproot Funds, LLC was created.

94.     deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Snell Transfers.

95.     The Net Snell Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $36,431.37 to recover the Net Snell Transfers from Snell.

## Count 9 – Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A) (Martins) (Actual Fraud)

96.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Martins during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

97.     The Martins became net winners within the two years prior to Petition Date. The Net Martin Transfers in the amount of $15,350.00 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit H. The Net Martin Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

98.     The Net Martin Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors, as evidenced by the existence of a Ponzi scheme wherein interest and dividend payments were made to earlier investors from new investor money.

99.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Martin Transfers or became insolvent as a result of the Net Martin Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

100.    There was no capital infusion at the time deeproot Funds, LLC was created.

101.    The Net Martin Transfers constituted actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A), such that the Trustee is entitled to a judgment in the amount of $15,350.00 to recover the Net Martin Transfers from the Martins.

**Count 10 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B) (Martins) (Constructive Fraud)**

102.    Pursuant to 11 U.S.C. § 548(a)(1)(B), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Martins during the two years prior to Petition Date, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

103.    The Martins became net winners within the two years prior to Petition Date. The Net Martin Transfers in the amount of $15,350.00 constitute a transfer of deeproot Funds, LLC's interest in property. Exhibit H. The Net Martin Transfers were not made in exchange for adequate consideration for Debtor deeproot Funds, LLC.

104.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Martin Transfers or became insolvent as a result of the Net Martin

Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

105.    There was no capital infusion at the time deeproot Funds, LLC was created.

106.    deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Martin Transfers.

107.    The Net Martin Transfers constituted fraudulent transfers under 11 U.S.C. §548(a)(1)(B), such that the Trustee is entitled to a judgment in the amount of $15,350.00 to recover the Net Martin Transfers from the Martins.

**Count 11 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Winn) (TUFTA Actual Fraud)**

108.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Winn during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

109.    Winn invested money with the deeproot Entities on or about May 20, 2015, June 5, 2015, and June 25, 2015. The Net Winn Transfers in the amount of $258,278.74 were made from October 21, 2016 to April 30, 2021 and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit B.

110.    The Net Winn Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in

which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

111.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Winn Transfers or became insolvent as a result of the Net Winn Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

112.    There was no capital infusion at the time deeproot Funds, LLC was created.

113.    deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Winn Transfers, or such creditor's claim arose within a reasonable time after the Net Winn Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

114.    The Net Winn Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $258,278.74 to recover the Net Winn Transfers from Winn.

**Count 12 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Winn) (TUFTA Constructive Fraud)**

115.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to

Winn during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

116.    Winn invested money with the deeproot Entities on or about May 20, 2015, June 5, 2015, and June 25, 2015. The Net Winn Transfers in the amount of $258,278.74 were made from October 21, 2016 to April 30, 2021 and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit B.

117.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Winn Transfers or became insolvent as a result of the Net Winn Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

118.    There was no capital infusion at the time deeproot Funds, LLC was created.

119.    deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Winn Transfers.

120.    deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Winn Transfers, or such creditor's claim arose within a reasonable time after the Net Winn Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid

121.     The Net Winn Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $258,278.74 to recover the Winn Transfers from Winn.

**Count 13 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Medlangs) (TUFTA Actual Fraud)**

122.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Medlangs during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

123.     The Medlangs inherited Dora Mower's investment on or about December 2, 2014. The Net Medlang Transfers in the amount of $159,518.15 were made between January 8, 2021 and June 22, 2021, and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit D.

124.     The Net Medlang Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

125.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Medlang Transfers or became insolvent as a result of the Net Medlang Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was

intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

126.     There was no capital infusion at the time deeproot Funds, LLC was created.

127.     deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Medlang Transfers, or such creditor's claim arose within a reasonable time after the Net Medlang Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

128.     The Net Medlang Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $159,518.15 to recover the Net Medlang Transfers from the Medlangs.

**Count 14 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Medlangs) (TUFTA Constructive Fraud)**

129.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Medlangs during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

130.     The Medlangs inherited Dora Mower's investment on or about December 2, 2014. The Net Medlang Transfers in the amount of $159,518.15 were made between January 8, 2021 and June 22, 2021, and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit D.

131.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Medlang Transfers or became insolvent as a result of the Net Medlang

Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that deeproot Funds, LLC would incur debts beyond its ability to pay such debts as they became due.

132. There was no capital infusion at the time deeproot Funds, LLC was created.

133. deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Medlang Transfers.

134. deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Medlang Transfers, or such creditor's claim arose within a reasonable time after the Net Medlang Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

135. The Net Medlang Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $159,518.15 to recover the Net Medlang Transfers from the Medlangs.

## Count 15 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Gillen) (TUFTA Actual Fraud)

136. Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Gillen during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

137.    Gillen invested money with the deeproot Entities on or about January 22, 2015 and February 5, 2015. The Net Gillen Transfers in the amount of $60,802.77 were made between January 8, 2021 and June 24, 2021 and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit E.

138.    The Net Gillen Transfers were made with an actual intent to hinder, delay or defraud Debtor deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

139.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Gillen Transfers or became insolvent as a result of the Net Gillen Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

140.    There was no capital infusion at the time deeproot Funds, LLC was created.

141.    deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Gillen Transfers, or such creditor's claim arose within a reasonable time after the Net Gillen Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

**142.** The Net Gillen Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $60,802.77 to recover the Net Gillen Transfers from Gillen.

**Count 16 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Gillen) (TUFTA Constructive Fraud)**

143. Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Gillen during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

144. Gillen invested money with the deeproot Entities on or about January 22, 2015 and February 5, 2015. The Net Gillen Transfers in the amount of $60,802.77 were made between January 8, 2021 and June 24, 2021 and constitute transfers of Debtor deeproot Funds, LLC's interest in property. Exhibit E.

145. Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Gillen Transfers or became insolvent as a result of the Net Gillen Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

146. There was no capital infusion at the time deeproot Funds, LLC was created.

147. deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Gillen Transfers.

148.     deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Gillen Transfers, or such creditor's claim arose within a reasonable time after the Net Gillen Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

149.     The Net Gillen Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $60,802.77 to recover the Net Gillen Transfers from Gillen.

**Count 17 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Jarnecke Revocable Trust and Carl Jarnecke as Trustee) (TUFTA Actual Fraud)**

150.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Jarnecke Revocable Trust and Carl Jarnecke as Trustee during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

151.     The Jarnecke Revocable Trust invested money with the deeproot Entities on or about August 5, 2014. The Net Jarnecke Revocable Trust Transfers in the amount of $35,282.44 were made on or about November 8, 2019 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit F.

152.     The Net Jarnecke Revocable Trust Transfers were made with an actual intent to hinder, delay or defraud deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

153.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Jarnecke Revocable Trust Transfers or became insolvent as a result of the Net Jarnecke Revocable Trust Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

154.    There was no capital infusion at the time deeproot Funds, LLC was created.

155.    deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Jarnecke Revocable Trust Transfers, or such creditor's claim arose within a reasonable time after the Net Jarnecke Revocable Trust Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

156.    The Net Jarnecke Revocable Trust Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $35,282.44 to recover the Net Jarnecke Revocable Trust Transfers from the Jarnecke Revocable Trust or Carl Jarnecke as trustee.

**Count 18 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Jarnecke Revocable Trust and Carl Jarnecke as Trustee) (TUFTA Constructive Fraud)**

157.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Jarnecke Revocable Trust and Carl Jarnecke as Trustee during the applicable time period, and

for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

158.    The Jarnecke Revocable Trust invested money with the deeproot Entities on or about August 5, 2014. The Net Jarnecke Revocable Trust Transfers in the amount of $35,282.44 were made on or about November 8, 2019 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit F.

159.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Jarnecke Revocable Trust Transfers or became insolvent as a result of the Net Jarnecke Revocable Trust Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

160.    There was no capital infusion at the time deeproot Funds, LLC was created.

161.    deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Jarnecke Revocable Trust Transfers.

162.    deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Jarnecke Revocable Trust Transfers, or such creditor's claim arose within a reasonable time after the Net Jarnecke Revocable Trust Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

163.     The Net Jarnecke Revocable Trust Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $35,282.44 to recover the Net Jarnecke Revocable Trust Transfers from the Jarnecke Revocable Trust or Carl Jarnecke as trustee.

**Count 19 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Snell) (TUFTA Actual Fraud)**

164.     Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Snell during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

165.     Snell invested money with the deeproot Entities on or about August 27, 2014. The Net Snell Transfers in the amount of $36,431.37 were made on or about June 12, 2020 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit G.

166.     The Net Snell Transfers were made with an actual intent to hinder, delay or defraud deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

167.     Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Snell Transfers or became insolvent as a result of the Net Snell Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or

believed or reasonably should have believed that deeproot Funds, LLC would incur debts beyond its ability to pay such debts as they became due.

168.    There was no capital infusion at the time deeproot Funds, LLC was created.

169.    deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Snell Transfers, or such creditor's claim arose within a reasonable time after the Net Snell Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

170.    The Net Snell Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $36,431.37 to recover the Net Snell Transfers from Snell.

## Count 20 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Snell) (TUFTA Constructive Fraud)

171.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to Snell during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

172.    Snell invested money with the deeproot Entities on or about August 27, 2014. The Net Snell Transfers in the amount of $36,431.37 were made on or about June 12, 2020 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit G.

173.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Snell Transfers or became insolvent as a result of the Net Snell Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's

assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

174.    There was no capital infusion at the time deeproot Funds, LLC was created.

175.    deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Snell Transfers.

176.    deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Snell Transfers, or such creditor's claim arose within a reasonable time after the Net Snell Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

177.    The Net Snell Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $35,282.44 to recover the Net Snell Transfers from Snell.

**Count 21 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Martins) (TUFTA Actual Fraud)**

178.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Martins during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

179.    The Martins invested money with the deeproot Entities on or about April 15, 2016. The Net Martin Transfers in the amount of $15,350.00 were made between June 16, 2016 and June 11, 2021 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit H.

180.    The Net Martin Transfers were made with an actual intent to hinder, delay or defraud deeproot Funds, LLC's creditors. The Debtor entities were operated as a Ponzi scheme in which interest and dividend payments to earlier investors were paid using new investor money, thus paying fictitious profits for earlier investors.

181.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Martin Transfers or became insolvent as a result of the Net Martin Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that deeproot Funds, LLC would incur debts beyond its ability to pay such debts as they became due.

182.    There was no capital infusion at the time deeproot Funds, LLC was created.

183.    deeproot Funds, LLC had at least one outstanding creditor at the time of each of the Net Martin Transfers, or such creditor's claim arose within a reasonable time after the Net Martin Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

184.    The Net Martin Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(1), such that the Trustee is entitled to a judgment in the amount of $15,350.00 to recover the Net Martin Transfers from the Martins.

**Count 22 – Avoidance of Fraudulent Transfer under 11 U.S.C. § 544 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(2)) (Martins) (TUFTA Constructive Fraud)**

185.    Pursuant to 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), the Trustee files this complaint seeking to avoid fraudulent transfers of property of deeproot Funds, LLC to the Martins during the applicable time period, and for damages against the fraudulent transferees of deeproot Funds, LLC during the applicable time period.

186.    The Martins invested money with the deeproot Entities on or about April 15, 2016. The Net Martin Transfers in the amount of $15,350.00 were made between June 16, 2016 and June 11, 2021 and constitute transfers of deeproot Funds, LLC's interest in property. Exhibit H.

187.    Debtor deeproot Funds, LLC was insolvent at the time of its creation and at the time of each of the Net Martin Transfers or became insolvent as a result of the Net Martin Transfers, in that (a) the sum of deeproot Funds, LLC's debts were greater than all of deeproot Funds, LLC's assets at a fair valuation; (b) deeproot Funds, LLC was engaging in or about to engage in a business or transaction for which deeproot Funds, LLC's remaining assets were unreasonably small in relation to the business or transaction; or (c) deeproot Funds, LLC was intending to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay such debts as they became due.

188.    There was no capital infusion at the time deeproot Funds, LLC was created.

189.    deeproot Funds, LLC did not receive reasonably equivalent value in exchange for the Net Martin Transfers.

190.     deeproot Funds, LLC had at least one outstanding creditor at the time of the Net Martin Transfers, or such creditor's claim arose within a reasonable time after the Net Martin Transfers, which currently remains unpaid. Proof of Claim No. 33-1 of the deeproot Funds, LLC Claims Register filed by creditor Paloma Beamer reflects a claim dating back to December 13, 2016, evidenced by a Certificate of Ownership of a debenture bond issued on the same date. Proof of Claim 33-1 remains unpaid.

191.     The Net Martin Transfers constituted fraudulent transfers under 11 U.S.C. § 544 and Tex. Bus. & Com. Code § 24.005(a)(2), such that the Trustee is entitled to a judgment in the amount of $15,350.00 to recover the Net Martin Transfers from the Martins.

**Count 23 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & Com. Code § 24.005(a)(1)) (Winn)**

192.     Winn was the initial transferee of the Net Winn Transfers.

193.     The Trustee is entitled to recover from Winn, or any immediate or mediate transferee of Winn, the Net Winn Transfers or the value of the Net Winn Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 24 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Medlangs)**

194.     The Medlangs were the initial transferees of the Net Medlang Transfers.

195.     The Trustee is entitled to recover from the Medlangs, or any immediate or mediate transferee of the Medlangs, the Net Medlang Transfers or the value of the Net Medlang Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 25 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Gillen)**

196.    Gillen was the initial transferee of the Net Gillen Transfers.

197.    The Trustee is entitled to recover from Gillen, or any immediate or mediate transferee of Gillen, the Net Gillen Transfers or the value of the Net Gillen Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 26 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Jarnecke Revocable Trust and Carl Jarnecke as Trustee)**

198.    The Jarnecke Revocable Trust and Carl Jarnecke as trustee were the initial transferees of the Net Jarnecke Revocable Trust Transfers.

199.    The Trustee is entitled to recover from the Jarnecke Revocable Trust or any immediate or mediate transferee of the Jarnecke Revocable Trust, the Net Jarnecke Revocable Trust Transfers or the value of the Net Jarnecke Revocable Trust Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 27 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Snell)**

200.    Snell was the initial transferee of the Net Snell Transfers.

201.    The Trustee is entitled to recover from Snell, or any immediate or mediate transferee of Snell, the Net Snell Transfers or the value of the Net Snell Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 28 – Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 and the Texas Uniform Fraudulent Transfer Act (Martins)**

202.    The Martins were the initial transferees of the Net Martin Transfers.

203.    The Trustee is entitled to recover from the Martins, or any immediate or mediate transferee of the Martins, the Net Martin Transfers or the value of the Net Martin Transfers, along with prejudgment and post-judgment interest, pursuant to section 550 of the Bankruptcy Code and section 24.009(b) of the Texas Business and Commerce Code.

**Count 29 – Recovery of Attorneys' Fees and Costs**

204.    The Trustee has been forced to incur attorneys' fees and costs in connection with the filing and prosecution of this Complaint.

205.    Pursuant to 11 U.S.C. § 544 and section 24.013 of the Texas Business and Commerce Code, the Court may award costs and reasonable attorneys' fees in connection with a proceeding brought under the Texas Uniform Fraudulent Transfer Act. The Trustee hereby requests that any judgment include an award of the costs and attorneys' fees incurred by the Trustee in connection with prosecuting this Complaint.

206.    Prior to filing suit, the Trustee made demand on Winn, the Medlangs, Gillen, the Jarnecke Revocable Trust and Carl Jarnecke as trustee, Snell, and the Martins. The demands were not met. All conditions precedent to recovery have been satisfied.

207.    Furthermore, the Trustee requests an award for such attorneys' fees and costs incurred in the filing and prosecution of this Complaint to the extent allowed under the Bankruptcy Code and Texas law. *See* 11 U.S.C. §§ 105(a), 544, 550(a), and Tex. Bus. & Com. Code § 24.013.

## **PRAYER**

WHEREFORE, JOHN PATRICK LOWE, Chapter 7 Trustee for the jointly administered

Bankruptcy case of deeproot Capital Management, LLC, prays for judgment in favor of the

Chapter 7 Trustee on all claims and relief sought herein, including but not limited to:

a.  Avoiding the Net Winn Transfers, Net Medlang Transfers, Net Gillen Transfers, Net Jarnecke Revocable Trust Transfers, Net Snell Transfers, and Net Martin Transfers as fraudulent transfers under sections 544 and 548 of the Bankruptcy Code and Chapter 24 of the Texas Business & Commerce Code;

b.  Permitting recovery of the Net Winn Transfers, Net Medlang Transfers, Net Gillen Transfers, Net Jarnecke Revocable Trust Transfers, Net Snell Transfers, and Net Martin Transfers or the value of the Net Winn Transfers, Net Medlang Transfers, Net Gillen Transfers, Net Jarnecke Revocable Trust Transfers, Net Snell Transfers, and Net Martin Transfers, along with prejudgment and post-judgment interest;

c.  Permitting recovery of all costs and attorneys' fees incurred obtaining the relief sought; and

d.  Such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Dated: December 7, 2022                                Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By:      */s/Randall A. Pulman*
         Randall A. Pulman
         Texas State Bar No. 16393250
         rpulman@pulmanlaw.com
         Anna K. MacFarlane
         Texas State Bar No. 24116701
         amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE,
CHAPTER 7 TRUSTEE FOR DEEPROOT CAPITAL
MANAGEMENT, LLC ET AL.**

# EXHIBIT A

**FRED** — Market Yield on U.S. Treasury Securities at 5-Year Constant Maturity, Quoted on an Investment Basis



Source: Board of Governors of the Federal Reserve System (US)

fred.stlouisfed.org

# EXHIBIT B

| Name | Type | Date | Description | Investor | Split | Amount | Funds In | Funds Out | net |
|------|------|------|-------------|----------|-------|--------|----------|-----------|-----|
| Winn, Jill R | Transfer | 05/20/2015 | | Jill Winn | WF Checking 2385 | 430,000.00 | 430,000.00 | - | |
| Winn, Jill R | Transfer | 06/05/2015 | | Jill Winn | WF Checking 2385 | 85,249.58 | 85,249.58 | - | |
| Winn, Jill R | Transfer | 06/25/2015 | | Jill Winn | WF Checking 2385 | 301,716.76 | 301,716.76 | - | |
| Interest Expense - 1099 int | Check | 10/21/2016 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 11/22/2016 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 12/22/2016 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 01/19/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 01/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 02/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 02/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 03/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 03/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 04/20/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 04/20/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 05/19/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 05/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 06/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 06/22/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 07/20/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 07/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 08/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 08/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 09/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 09/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 10/19/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 10/23/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 11/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 11/22/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 12/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 12/21/2017 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 01/19/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 01/19/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 02/22/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |
| Interest Expense - 1099 int | Check | 02/22/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 03/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | |
| Interest Expense - 1099 int | Check | 03/22/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | |

| Name | Type | Date | Description | Investor | Split | Amount | Funds In | Funds Out | <u>net</u> | |
|------|------|------|-------------|----------|-------|--------|----------|-----------|------------|--|
| Interest Expense - 1099 int | Check | 04/19/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 04/23/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 05/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 05/23/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 06/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 06/25/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 07/19/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 07/23/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 08/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 08/23/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 09/20/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 09/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 10/19/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 10/23/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 11/20/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 11/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 12/20/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 12/21/2018 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 01/18/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 01/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 02/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 02/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 03/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 03/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 04/22/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 04/24/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 05/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 05/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 06/20/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 06/26/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 07/18/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 07/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 08/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 08/22/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 09/19/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 09/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |

| Name | Type | Date | Description | Investor | Split | Amount | Funds In | Funds Out | net | |
|---|---|---|---|---|---|---|---|---|---|---|
| Interest Expense - 1099 int | Check | 10/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 10/23/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 11/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 11/21/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 12/19/2019 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 01/10/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Divdend Expense | Check | 02/02/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 02/06/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 02/25/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 02/26/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Divdend Expense | Check | 03/24/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 03/24/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 04/29/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 04/30/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Divdend Expense | Check | 05/19/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 05/19/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 06/18/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 06/30/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 07/20/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 07/20/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 08/31/2020 | CNB | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 08/31/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 09/28/2020 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 09/28/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 10/29/2020 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 10/29/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 11/30/2020 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 11/30/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Interest Expense - 1099 int | Check | 12/30/2020 | Jill Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 12/31/2020 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 02/02/2021 | Jill R Winn | Jill Winn | WF Checking 2385 | (2,811.11) | - | (2,811.11) | | |
| Divdend Expense | Check | 02/02/2021 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Interest Expense - 1099 int | Check | 02/24/2021 | Jill R Winn | Jill Winn | WF Checking 2385 | (2,818.11) | - | (2,818.11) | | |
| Divdend Expense | Check | 02/24/2021 | Community National Bank | Jill Winn | WF Checking 2385 | (1,225.33) | - | (1,225.33) | | |
| Winn, Jill R | Check | 03/12/2021 | Bingham & Lea PC IOLTA | Jill Winn | WF Checking 2385 | (150,000.00) | - | (150,000.00) | | |
| Winn, Jill R | Check | 03/19/2021 | Bingham & Lea PC IOLTA | Jill Winn | WF Checking 2385 | (150,000.00) | - | (150,000.00) | | |

| Name | Type | Date | Description | Investor | Split | Amount | Funds In | Funds Out | net | |
|------|------|------|-------------|----------|-------|--------|----------|-----------|-----|---|
| Winn, Jill R | Check | 04/06/2021 | Community National Bank | Jill Winn | WF Checking 2385 | (254,757.34) | - | (254,757.34) | | |
| Winn, Jill R | Check | 04/15/2021 | Bingham & Lea PC IOLTA | Jill Winn | WF Checking 2385 | (164,646.75) | - | (164,646.75) | | |
| Winn, Jill R | Check | 04/30/2021 | Community National Bank | Jill Winn | WF Checking 2385 | (150,000.00) | - | (150,000.00) | | |
| | | | | Jill Winn Total | | | 816,966.34 | (1,075,245.08) | (258,278.74) | |

# EXHIBIT C

2:00 PM
08/11/22
Accrual Basis

## Policy Services, Inc. and Deeproot Funds
### Transactions - Dora Mower

| | Type | Date | Num | Name | Memo | Clr | Split | Amount |
|---|---|---|---|---|---|---|---|---|
| **Policy Services** | | | | | | | | |
| Mower, Dora A - TX120047 | Deposit | 11/07/2012 | | | Deposit | | Sweep Account  8487 | 450,000.00 |
| Mower, Dora A - TX120047 #2 | Deposit | 12/13/2013 | | Deposit | Mower | | Sweep Account  8487 | 60,000.00 |
| Earned Interest | | | | | | | | 43,886.25 |
| **Total Unrecorded Transfer from Policy Services to Deeproot Funds** | | | | | | | | **553,886.25** |
| **Deeproot Funds** | | | | | | | | |
| Mower, D | Transfer | 12/02/2014 | | | BGD-5 | | WF Checking 2385 | 80,000.00 |
| Total Investment | | | | | | | | 633,886.25 |
| Account 25033/25096 | | | | | | | | 316,943.13 |
| Inherited by Mary and David Medlang April 5,2016 | | | | | | | | |
| Unknown addition to Principal | | | | | | | | 39,142.48 |
| Initial Principal | | | | | | | | 356,085.61 |
| Disbursed to Edward Jones | | 1/8/2021 | | | | | | 75,000.00 |
| | | 4/22/2021 | | | | | | 100,000.00 |
| Need Confirmation | | 6/22/2021 | | | | | | 340,603.75 |
| **Total Disbursed** | | | | | | | | **515,603.75** |

# EXHIBIT D

**deeproot Funds LLC**
## Transaction Detail By Account
All Transactions

| Name | | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|---|---|---|---|---|---|---|---|---|---|---|
| Mower, Dora | | Journal | 12/02/2014 | | Mary & David Medlang | Mary & David Medlang | 356,085.60 | 356,085.60 | | |
| Mary & David Medlang | | Check | 01/08/2021 | | Edward Jones | Mary & David Medlang | (75,000.00) | - | (75,000.00) | |
| Mary & David Medlang | | Check | 04/22/2021 | | Edward Jones | Mary & David Medlang | (100,000.00) | - | (100,000.00) | |
| Mary & David Medlang | | Check | 06/22/2021 | | Edward Jones | Mary & David Medlang | (340,603.75) | - | (340,603.75) | |
| | | | | | | **Mary & David Medlang Total** | | 356,085.60 | (515,603.75) | (159,518.15) |

# EXHIBIT E

**deeproot Funds LLC**
## Transaction Detail By Account
**All Transactions**

| Name | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|------|------|------|-----|-------------|----------|--------|----------|-----------|-----|
| Gillen, Candice L | Transfer | 01/22/2015 | | | Candice Gillen | 83,763.00 | 83,763.00 | - | |
| Gillen, Candice L | Transfer | 02/05/2015 | | | Candice Gillen | 275,000.00 | 275,000.00 | - | |
| Gillen, Candice L | Check | 01/08/2021 | | Candice Gillen | Candice Gillen | (131,990.96) | - | (131,990.96) | |
| Gillen, Candice L | Check | 05/12/2021 | | Jackson National Life | Candice Gillen | (140,000.00) | - | (140,000.00) | |
| Gillen, Candice L | Check | 06/24/2021 | | Jackson National Life | Candice Gillen | (147,574.81) | - | (147,574.81) | |
| | | | | | **Candice Gillen Total** | | 358,763.00 | (419,565.77) | (60,802.77) |

# EXHIBIT F

**deeproot Funds LLC**
## Transaction Detail By Account
All Transactions

| Name | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|------|------|------|-----|-------------|----------|--------|----------|-----------|-----|
| Jarnecke, Carl and Paula | Deposit | 08/05/2014 | | Deposit | Carl & Paula Jarnecke | 65,000.00 | 65,000.00 | - | |
| Jarnecke, Carl and Paula | Check | 11/08/2019 | 2420 | Carl and Paula Jarnecke Revoca | Carl & Paula Jarnecke | (65,000.00) | - | (65,000.00) | |
| | | | | | **Carl & Paula Jarnecke Total** | | 65,000.00 | (65,000.00) | |
| Interest Expense - 1099 int | Check | 11/08/2019 | 2420 | Carl and Paula Jarnecke Revoca | Carl and Paula Jarnecke Revocabl | (35,282.44) | - | (35,282.44) | |
| | | | | | **Carl and Paula Jarnecke Revocable Trust Total** | | - | (35,282.44) | (35,282.44) |

# EXHIBIT G

**deeproot Funds LLC**
**Transaction Detail By Account**
All Transactions

| Name | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|------|------|------|-----|-------------|----------|--------|----------|-----------|-----|
| Snell, Alice E | Deposit | 08/27/2014 | | Horizon Trust Company | Alice Snell | 60,000.00 | 60,000.00 | - | |
| Snell, Alice E | Check | 06/12/2020 | 2431 | Alice Snell | Alice Snell | (60,000.00) | - | (60,000.00) | |
| Interest Expense - 1099 int | Check | 06/12/2020 | 2431 | Alice Snell | Alice Snell | (36,431.37) | - | (36,431.37) | |
| **Alice Snell Total** | | | | | | | 60,000.00 | (96,431.37) | (36,431.37) |

# EXHIBIT H

**deeproot Funds LLC**
**Transaction Detail By Account**
All Transactions

| Name | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|---|---|---|---|---|---|---|---|---|---|
| Martin, Kenneth and Brownie | Transfer | 04/15/2016 | | | Kenneth Brownie Martin | 60,000.00 | 60,000.00 | - | |
| Interest Expense - 1099 int | Check | 06/16/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 06/16/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 07/15/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 08/16/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 09/15/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 10/17/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/17/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 12/14/2016 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 01/17/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/16/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 03/16/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 04/17/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 05/16/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 06/15/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 07/17/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 08/17/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 09/15/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 10/17/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/16/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 12/15/2017 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 01/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/15/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 03/15/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 04/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 05/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 06/15/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 08/08/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (350.00) | - | (350.00) | |
| Interest Expense - 1099 int | Check | 08/16/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 09/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 10/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/15/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 12/17/2018 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 01/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/14/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 03/15/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 04/22/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 05/16/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 06/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 07/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |

**deeproot Funds LLC**
## Transaction Detail By Account
All Transactions

| Name | Type | Date | Num | Description | Investor | Amount | Funds In | Funds Out | net |
|------|------|------|-----|-------------|----------|--------|----------|-----------|-----|
| Interest Expense - 1099 int | Check | 08/15/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 09/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 10/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/15/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 12/17/2019 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 01/22/2020 | | Kenneth Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/14/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 03/17/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 04/16/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 05/14/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 06/17/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 07/20/2020 | | Kenneth Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 08/31/2020 | | Kenneth Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/05/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/30/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 11/30/2020 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 01/05/2021 | | Kenneth D Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/02/2021 | | Kenneth Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 02/24/2021 | | Kenneth D Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 03/26/2021 | | Kenneth D Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 04/26/2021 | | Kenneth D Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Interest Expense - 1099 int | Check | 05/27/2021 | | Kenneth D Martin | Kenneth Brownie Martin | (250.00) | - | (250.00) | |
| Martin, Kenneth and Brownie | Check | 06/11/2021 | | Kenneth Brownie Martin | Kenneth Brownie Martin | (60,500.00) | - | (60,500.00) | |
| **Kenneth Brownie Martin Total** | | | | | | | 60,000.00 | (75,850.00) | (15,850.00) |

FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>John Patrick Lowe, Chapter 7 Trustee | DEFENDANTS<br>Candice Gillen, Carl Jarnecke, Trustee, et al. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Pulman Cappuccio & Pullen, LLP (210) 222-9494<br>2161 NW Military Hwy #400, San Antonio, TX 78213 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☑ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Trustee seeks recovery of fraudulent transfers to "Net Winners" under 11 USC Sections 544, 548, 550, TUFTA and seeks recovery of attorneys' fees.

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☑ 13-Recovery of money/property - §548 fraudulent transfer
- ☑ 14-Recovery of money/property - other - Section 544
  Section 550

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

   **(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – reinstatement of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) - TUFTA

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 566.163.47 |
| Other Relief Sought    Attorneys' fees | |

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>deeproot Capital Management LLC et al. | | **BANKRUPTCY CASE NO.**<br>LEAD 21-51523 |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Western TX | **DIVISIONAL OFFICE**<br>San Antonio | **NAME OF JUDGE**<br>Michael M Parker |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>12/07/2022 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Randall A Pulman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.