## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

### TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH DAVID MEDLANG AND MARY MEDLANG

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered

Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**"),[2] by and through his

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864); *In Re: Wizard Mode Media, LLC*, 21-51514 (3205); *In Re: deeproot Pinball LLC*, 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046); *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661); *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot Funds LLC*, 21-51521 (9404); *In Re: deeproot Studios LLC*, 21-51522 (6283); and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

[2] Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC are referred to herein as "**Debtors**" or the "**deeproot Entities.**"

counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Motion to Approve Compromise and Settlement Under Bankruptcy Rule 9019 with David Medlang and Mary Medlang* (the "**Motion**"), and in support respectfully shows the Court as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II. PROCEDURAL HISTORY

3. On December 9, 2021 (the "**Petition Date**"), each of the Debtors filed their respective voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523.

4. On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the jointly administered case. Doc. No. 19.

5. On or about December 7, 2022, the Trustee filed his Original Complaint against David Medlang and Mary Medlang (the "**Medlangs**" and, together with the Trustee, the "**Parties**") in the Bankruptcy Court for the Western District of Texas, San Antonio Division.[3]

6. Attached hereto as <u>Exhibit A</u> is the proposed order on the Motion.

---

[3] Claims against the Medlangs were brought in connection with other alleged net winners of the Debtors' Ponzi scheme. *See John Patrick Lowe, Chapter 7 Trustee v. Jill R. Winn, David Medlang, Mary Medlang, Kenneth Martin, Brownie Martin, Candice Gillen, Alice Snell, Carl Jarnecke as Trustee of the Carl & Paula Jarnecke Revocable Trust, and the Carl & Paula Jarnecke Revocable Trust*, Adversary Proceeding No. 22-05096-mmp.

7.      Attached hereto as <u>Exhibit B</u> is the executed Settlement Agreement.

### III.    FACTUAL BACKGROUND

8.      The Trustee's Original Complaint against the Medlangs alleges that, on or about April 5, 2016, Mary Medlang inherited a non-qualified individual investment in the amount of $316,943.13 from Dora Mower ("**Mower**"), representing half of Mower's original investment in deeproot Bonus Growth 5 Year Debenture Fund, LLC, which Mower made on or about December 2, 2014.  The Medlangs subsequently invested an additional $39,142.48 for a total investment of $356,085.60. The money was subsequently transferred from the 5 Year Debenture Fund to Policy Services, Inc., and then to Debtor deeproot Funds, LLC (for the purposes of this Motion, the "**Bankruptcy Estate**").

9.      On or about June 22, 2021, the Trustee alleges that the Medlangs received transfers from deeproot Funds, LLC in excess of the amount of their original investment. The financial books and records of deeproot Funds, LLC revealed that the Medlangs withdrew the funds in three tranches: (1) $75,000.00 on or about January 8, 2021; (2) $100,000.00 on or about April 22, 2021; and (3) $340,603.75 on or about June 22, 2021. The total amount withdrawn was $515,603.75. The Medlangs received funds in excess of the original investment in the amount of $159,518.15 (the "**Net Medlang Transfers**").

10.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the profits obtained by the Medlangs in excess of their original investment were fictitious and subject to avoidance. As such, the Trustee brought claims to avoid and recover the Net Medlang Transfers under 11 U.S.C. §§ 544(b), 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

11.    In connection with the discussions between the Trustee and the Medlangs, a Settlement Agreement was prepared and executed by the parties. Exhibit B.

## IV.    PROPOSED SETTLEMENT

12.    The Parties have agreed to settle the dispute without further litigation pursuant to the following terms. The Medlangs agree to pay a total of $129,500.00 (the "**Settlement Amount**") to Trustee in exchange for release of the Trustee's and the Bankruptcy Estates' claims against the Medlangs related to the Net Medlang Transfers or any other transactions between the Medlangs and the Debtors. This settlement results in a recoupment of 81% of the Net Medlang Transfers to the deeproot Funds, LLC Bankruptcy Estate. The settlement will be effective only after the Trustee has received the Settlement Amount and the Settlement Agreement has been approved by the Bankruptcy Court.

13.    The Settlement Agreement is voidable at the option of either of the Settling Parties if the Settlement Agreement is not approved by the Bankruptcy Court. In the event the Settlement Agreement becomes null and void, the Trustee will return any Settlement Amount received by the Trustee to the Medlangs within 10 days of the event that voids the Settlement Agreement.  In the event the Settlement Agreement is null and void, the Trustee will notify the Court that the Settlement Agreement is void and of no force and effect.

14.    The Medlangs agree to toll the statutes of limitation until the settlement becomes effective or is voided.

## V.    REQUESTED RELIEF

15.    Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand,

*TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the discretion of the bankruptcy court. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

16.     According to the Fifth Circuit, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). This standard seeks to balance the risks and benefits associated with pursuing a potential claim against the costs associated with the proposed settlement.

**Probability of Success with Due Consideration for Uncertainties in Law and Fact**

17.     The Trustee is confident that he would ultimately prevail in his claims against the Medlangs. However, as with all litigation, there is never any guarantee of success, and the Medlangs dispute the Trustee's claims and are prepared to vigorously defend against them. Here, the Medlangs have agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against the Medlangs in the adversary proceeding.  In light of this, and the desire to reduce administrative expenses associated with litigation to increase the amount paid to creditors, the

Trustee believes that the proposed settlement represents a fair and reasonable settlement given the facts of the case and the inherent uncertainties associated with trial and continued litigation.

**Complexity, Duration and Expense of Continued Litigation**

18. Prosecuting the pending adversary proceeding against all of the alleged net winners would entail the Bankruptcy Estate incurring additional administrative expenses of at least $50,000.00 in estimated attorneys' fees. The Settlement Agreement provides for the transfer of the Bankruptcy Estate's interest in deeproot Funds, LLC's property, and assures recovery to unsecured creditors through a cash payment to the Bankruptcy Estate without the need for further litigation. The settlement was reached before extensive discovery, without the need to incur additional costs for litigating a lawsuit, including discovery, depositions, trials and appeals. Given the face value of the claims, the amount of the settlement proceeds, and the costs associated with continued litigation, Trustee believes it is in the best interests of the Bankruptcy Estate to enter into the Settlement Agreement.

**Wisdom of the Compromise**

19. Whether a settlement is a product of arm's length negotiation is a factor bearing on the wisdom of a proposed compromise. *Conn. Gen. Life Ins. Co.*, 68 F.3d at 918. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate. *Id.* at 917.

20. The proposed Settlement Agreement is the result of arm's length negotiations between the Trustee and the Medlangs and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against the Medlangs. A recoupment by agreement of 81% of the Net Medlang Transfers is a good outcome for the Bankruptcy Estate.

21.    The Medlangs have been represented by counsel throughout this case, as has the Trustee, who conferred with the Medlangs' counsel and considered this compromise after conferring extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than an 81% recovery would not be a prudent use of Bankruptcy Estate funds.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement with the Medlangs as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Dated: January 30, 2023                    Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
     Randall A. Pulman
     Texas State Bar No. 16393250
     rpulman@pulmanlaw.com
     Anna K. MacFarlane
     Texas State Bar No. 24116701
     amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on this 30th day of January, 2023, a true and correct copy of the foregoing document has been furnished via electronic mail to all parties receiving notice by CM/ECF, as set forth below, and via US First Class Mail on the "parties in interest" also listed below; a copy will also be mailed to the parties on the limited service list in this matter, and a supplemental certificate of service will be filed evidencing such service.

***Via CM/ECF:*** *pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

***Via CM/ECF:***
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12/ A. Thomas
615 E Houston, Suite 533
San Antonio, TX 78295-1539

***Via CM/ECF:*** *dodda@sec.gov*
Angela D. Dodd
U. S. Securities and Exchange Commission
175 Jackson Blvd. Suite 900
Chicago, IL 60604

***Via Counsel email:***
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

***Via Counsel Via CM/ECF:***
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

***Via CM/ECF:***
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

***Via CM/ECF:*** *don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

***Via CM/ECF:*** *rbattaglialaw@outlook.com*
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

***Via CM/ECF:*** *jpetree@mcslaw.com*
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

***Via CM/ECF:*** *jdunne@smfadlaw.com*
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

***Via CM/ECF:*** *bk-cmurphy@oag.texas.gov*
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

*Via CM/ECF:  pautry@branscomblaw.com*
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

*Via CM/ECF:  lmjurek@jureklaw.com*
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX  77006

*Via CM/ECF:*
*stephen.humeniuk@lockelord.com*
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701

*Via CM/ECF: tcunningham@lockelord.com*
Thomas J. Cunningham
Locke Lord LLP
777 South Flagler Drive #215
West Palm Beach, FL  33401

**And to the following parties-in-interest via the method indicated:**

*Via e-mail: jkathman@spencerfane.com*
Jason Kathman
Spencer Fane, LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
*Attorneys for David and Mary Medlang*

*Via e-mail: royal@royallealaw.com*
Royal Lea
Royal Lea Law Office PLLC
1901 NW Military Hwy, Suite 218
San Antonio, Texas 78213
*Attorney for Jill R. Winn*

*Via United States First Class Mail:*
Candice Lillian Gillen
3709 Doune Way
Clermont, Florida 34711

*Via United States First Class Mail:*
Carl Jarnecke, Trustee
235 Northwood Park
Livingston, Texas 77351

*Via United States First Class Mail:*
Carl & Paula Jarnecke Revocable Trust
1570 County Road 4260
Woodville, Texas 75979

*Via United States First Class Mail:*
Kenneth Martin
3620 Avenue R
Rosenberg, Texas 77471

*Via United States First Class Mail:*
Brownie Martin
3620 Avenue R
Rosenberg, Texas 77471

*Via United States First Class Mail:*
Alice Snell
103 Elmwood Ct.
Palestine, Texas 75801

*/s/ Randall A. Pulman*
Randall A. Pulman

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH DAVID MEDLANG AND MARY MEDLANG**

---

On this date came on to be considered the *Trustee's Motion to Approve Compromise and Settlement under Bankruptcy Rule 9019 with David Medlang and Mary Medlang* (the "Motion").[2]  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are:  *In Re: Policy Services, Inc., 21-51513* (2864);  *In Re: Wizard Mode Media, LLC*, 21-51514 (3205);  *In Re: deeproot Pinball LLC*, 21-51515 (0320);  *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046);  *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404);  *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731);  *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661);  *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot Funds LLC*, 21-51521  (9404);  In Re: deeproot Studios LLC, 21-51522 (6283); and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

1 of 2

157(b); (iii) the relief requested in the Motion is in the best interests of deeproot Funds, LLC, its Bankruptcy Estate, and the creditors; (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested.

**IT IS THEREFORE ORDERED** that the Settlement Agreement incorporated by reference herein and attached hereto as Exhibit 1, and the Motion are, in all things, **APPROVED**.

**IT IS FURTHER ORDERED** that Trustee and the Medlangs are hereby authorized and directed to take any and all actions necessary to consummate the Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS FURTHER ORDERED** that in the event the Settlement Agreement is voided by the Trustee or the Medlangs, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

# # #

Submitted by:
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF deeproot CAPITAL MANAGEMENT, LLC, ET AL.**

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of January 21, 2023 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and David Medlang, and Mary Medlang (the "Medlangs" and, collectively with Trustee, the "Settling Parties").

### RECITALS

A.      The Trustee alleges the following facts:

- On or about April 5, 2016, Mary Medlang inherited a non-qualified individual investment in the amount of $316,943.13 from Dora Mower, representing half of Mower's original investment in the 5 Year Debenture Fund, which Mower made on or about December 2, 2014. The Medlangs subsequently invested an additional $39,142.48 for a total investment of $356,085.60. The money was subsequently transferred from the 5 Year Debenture Fund to Policy Services, and then to deeproot Funds, LLC.

- On or about June 22, 2021, the Medlangs received transfers from deeproot Funds, LLC in excess of the amount of their original investment. The financial records of deeproot Funds, LLC revealed that the Medlangs withdrew the funds from deeproot Funds, LLC in three tranches: (1) $75,000.00 on or about January 8, 2021; (2) $100,000.00 on or about April 22, 2021; and (3) $340,603.75 on or about June 22, 2021. The total amount withdrawn is $515,603.75. The Medlangs received transfers in excess of their principal investment in the amount of $159,518.15 (the "Net Medlang Transfers").

B.      On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.      On or about December 7, 2022, the Trustee filed his Original Complaint against the Medlangs in the Bankruptcy Court for the Western District of Texas, San Antonio Division.[1] The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the profits obtained by the Medlangs in excess of their original investment were fictitious and subject to avoidance. As such, the Trustee brought claims to avoid and recover the Medlangs' net profits under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the

---

[1] Claims against the Medlangs were brought in the same complaint with other net winners of the Debtors' Ponzi scheme. This Settlement Agreement does not impact any of the other net winners.

{00589912;1}

Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Net Medlang Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

TERMS OF AGREEMENT

1.     <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>.  The Medlangs shall pay Trustee a total of $129,500.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the Net Medlang Transfers.

3.     <u>Sequence of Payment</u>. Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Medlangs shall pay the Trustee $129,500.00 to be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>.

4.     <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

5.     <u>Effective Date of Settlement Agreement</u>. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from the Medlangs.

6.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void, the Trustee will return any Settlement Amount received by the Trustee to the Medlangs within 10 days of the event that voids this Settlement Agreement.

7.     <u>Release by Trustee</u>.  On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged the Medlangs, their attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts,

liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with the Medlangs, the Net Medlang Transfers, and any other transaction(s) between the Medlangs and the Debtors.

8.     Release by Medlangs. On the Effective Date, the Medlangs agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. The Medlangs agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

9.     Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Net Medlang Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

10.     Enforcement of Settlement Agreement. If any of the Settling Parties breach this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

11.     Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

12.     Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13.     Miscellaneous.

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii)

to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter

hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

        (j)    This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

        (k)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

        (l)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 21st day of January , 2023.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 20th day of January , 2023.

_____
*Mary Medlang*
Mary Medlang

SIGNED this 20th day of January , 2023.

_____
*David Medlang*
David Medlang

{00589912;1}

5

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

Bank Name: ▮▮▮▮▮
Routing Number: ▮▮▮▮▮
Account Name: deeproot Funds, LLC, Debtor
Account Number: ▮▮▮▮▮

# EXHIBIT B

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of January 21, 2023 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and David Medlang, and Mary Medlang (the "Medlangs" and, collectively with Trustee, the "Settling Parties").

## RECITALS

A.      The Trustee alleges the following facts:

- On or about April 5, 2016, Mary Medlang inherited a non-qualified individual investment in the amount of $316,943.13 from Dora Mower, representing half of Mower's original investment in the 5 Year Debenture Fund, which Mower made on or about December 2, 2014. The Medlangs subsequently invested an additional $39,142.48 for a total investment of $356,085.60. The money was subsequently transferred from the 5 Year Debenture Fund to Policy Services, and then to deeproot Funds, LLC.

- On or about June 22, 2021, the Medlangs received transfers from deeproot Funds, LLC in excess of the amount of their original investment. The financial records of deeproot Funds, LLC revealed that the Medlangs withdrew the funds from deeproot Funds, LLC in three tranches: (1) $75,000.00 on or about January 8, 2021; (2) $100,000.00 on or about April 22, 2021; and (3) $340,603.75 on or about June 22, 2021. The total amount withdrawn is $515,603.75. The Medlangs received transfers in excess of their principal investment in the amount of $159,518.15 (the "Net Medlang Transfers").

B.      On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.      On or about December 7, 2022, the Trustee filed his Original Complaint against the Medlangs in the Bankruptcy Court for the Western District of Texas, San Antonio Division.[1] The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the profits obtained by the Medlangs in excess of their original investment were fictitious and subject to avoidance. As such, the Trustee brought claims to avoid and recover the Medlangs' net profits under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the

---

[1] Claims against the Medlangs were brought in the same complaint with other net winners of the Debtors' Ponzi scheme. This Settlement Agreement does not impact any of the other net winners.

Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Net Medlang Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.     <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>.  The Medlangs shall pay Trustee a total of $129,500.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the Net Medlang Transfers.

3.     <u>Sequence of Payment</u>. Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Medlangs shall pay the Trustee $129,500.00 to be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>.

4.     <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

5.     <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from the Medlangs.

6.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void, the Trustee will return any Settlement Amount received by the Trustee to the Medlangs within 10 days of the event that voids this Settlement Agreement.

7.     <u>Release by Trustee</u>.  On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged the Medlangs, their attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts,

liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with the Medlangs, the Net Medlang Transfers, and any other transaction(s) between the Medlangs and the Debtors.

8.    Release by Medlangs. On the Effective Date, the Medlangs agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. The Medlangs agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

9.    Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Net Medlang Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

10.    Enforcement of Settlement Agreement. If any of the Settling Parties breach this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

11.    Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

12.    Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13.    Miscellaneous.

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii)

to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

       (b)    Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

       (c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

       (d)    This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

       (e)    The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

       (f)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

       (g)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

       (h)    In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

       (i)    The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter

hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)    This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 21st day of _____January_____, 2023.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 20th day of _____January_____, 2023.

*Mary Medlang*

_____
Mary Medlang

SIGNED this 20th day of _____January_____, 2023.

*David Medlang*

_____
David Medlang

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

Bank Name: ███████
Routing Number: ███████
Account Name: deeproot Funds, LLC, Debtor
Account Number: ███████

6