IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| deeproot CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

**TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER
BANKRUPTCY RULE 9019 WITH MARICO TIPPETT AND CWB INVESTMENT ADVISORS, LLC**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE
THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE
THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A
RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR
RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE
MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A
TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO
YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU
MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT
MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE
HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered

Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**"),[2] by and through his

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc., 21-51513* (2864); *In Re: Wizard Mode Media, LLC,* 21-51514 (3205); *In Re: deeproot Pinball LLC,* 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC,* 21-51516 (8046); *In Re: deeproot 575 Fund, LLC,* 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC,* 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC,* 21-51519 (9661); *In Re: deeproot Tech LLC,* 21-51520 (9043); *In Re: deeproot Funds LLC,* 21-51521 (9404); *In Re: deeproot Studios LLC,* 21-51522 (6283); and *In Re: deeproot Capital Management, LLC,* 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

[2] Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC are referred to herein as "**Debtors**" or the "**deeproot Entities**."

counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Motion to Approve Compromise and Settlement Under Bankruptcy Rule 9019 with MaRico Tippett and CWB Investment Advisors, LLC* (the "**Motion**"), and in support respectfully shows the Court as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.      The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II. <u>PROCEDURAL HISTORY</u>

3.      On December 9, 2021 (the "**Petition Date**"), each of the Debtors filed their respective voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523.

4.      On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the jointly administered case. Doc. No. 19.

5.      On or about December 7, 2022, the Trustee filed his Original Complaint against MaRico Tippett ("**Tippett**") and, on February 10, 2023, filed the First Amended Complaint to add party CWB Investment Advisors, LLC ("**CWB Investment**" and, together with the Trustee, the "**Parties**") in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Adversary Proceeding**").[3] Adv. Proc. Doc. Nos. 1 & 31.

---

[3] Claims against Tippett and CWB Investment were brought in connection with other alleged finders in the Debtors' Ponzi scheme. This Motion does not impact any of the other defendants in the Adversary Proceeding. *See John Patrick Lowe, Chapter 7 Trustee v. Pamela Hopman, PGH Advisors, LLC, MP Wealth Management, LLC, The Hopman Group, LLC, and Marico Tippett. See* Adv. Proc. Doc. No. 1 Adversary Proceeding No. 22-05090-mmp.

6.      Attached hereto as <u>Exhibit A</u> is the proposed order on the Motion.

7.      Attached hereto as <u>Exhibit B</u> is the executed Settlement Agreement.

## III.  SUMMARY OF RELIEF REQUESTED

8.      The Trustee requests approval by the Court to enter into and confirm a settlement with Tippett and CWB Investment, two finders in the Adversary Proceeding. Tippett has agreed to pay a total of $33,462.83 (representing 75% of the claim) to Trustee in exchange for release of the Trustee's and the Bankruptcy Estates' claims against Tippett and CWB Investment, which is contained in the Settlement Agreement attached hereto as <u>Exhibit B</u>.

## IV.  FACTUAL BACKGROUND

9.      The Trustee's First Amended against Tippett and CWB Investment alleges that, between June 2016 and February 2021, Tippett was associated with Pamela Hopman ("**Hopman**") and her entities, PGH Advisors, LLC ("**PGH**") and MP Wealth Management, LLC ("**MP Wealth**" and collectively the "**Hopman Entities**"). Tippett located new investors for deeproot Funds, LLC on behalf of PGH and MP Wealth and was paid compensation in the form of finder's fees from Policy Services, Inc. in accordance with an agreed fee splitting arrangement with the Hopman Entities. Tippett formed CWB Investment after he stopped working with Hopman and served as CWB Investment's sole member of the member-managed limited liability company. Through CWB Investment, Tippett received finders' fees from Policy Services, Inc.

10.     After extensive arms-length negotiations and information sharing with Tippett's counsel, the Trustee learned that Tippett received (1) $36,052.07 in finders' fees from Policy Services, Inc. during his time working with the Hopman Entities (the "**Tippett Transfers**"), and

received (2) $8,517.04 finders fees transfers from Policy Services, Inc through his entity CWB Investment (the "**CWB Investment Transfers**"). In total, the Trustee learned that Tippett received $44,569.11 that originated with Policy Services, Inc. (the "**Net Tippett Transfers**").

11.     In his First Amended Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to the Hopman Entities, Tippett, and CWB Investment constituted fraudulent transfers under the Bankruptcy Code and the Texas law. The Trustee further alleged that Tippett, as an associate of the Hopman Entities, was an individual for whose benefit transfers were made and sought to avoid and recover monies transferred to Tippett as a subsequent transferee. Additionally, Tippett, as the sole member of CWB Investment, a member-managed limited liability company, was the person for whose benefit the CWB Investment Transfers were made. As such, the Trustee brought claims to avoid and recover monies transferred to Tippett and CWB Investment under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

12.     In connection with the negotiations, the Parties have reached a resolution and a Settlement Agreement was prepared and executed by the Parties. Exhibit B.

### V.  PROPOSED SETTLEMENT

13.     The Parties have agreed to settle the dispute without further litigation pursuant to the following terms. Tippett agrees to pay a total of $33,462.83 (the "**Settlement Amount**") over the course of four monthly payments to the Trustee in exchange for release of the Trustee's and the Bankruptcy Estates' claims against Tippett and CWB Investment related to the Net Tippett Transfers or any other transactions between Tippett or CWB Investment with the Debtors. This settlement results in a recoupment of 75% of the Tippett Transfers to the Policy Services, Inc. Bankruptcy Estate. The settlement will be effective only after the Trustee has received the

Settlement Amount and the Settlement Agreement has been approved by the Bankruptcy Court.

14.     The Settlement Agreement is voidable at the option of either of the Parties if the Settlement Agreement is not approved by the Bankruptcy Court. In the event the Settlement Agreement becomes null and void, the Trustee will return any Settlement Amount received by the Trustee within 10 days of the event that voids the Settlement Agreement.  In the event the Settlement Agreement is null and void, the Trustee will notify the Court that the Settlement Agreement is void and of no force and effect.

## VI. REQUESTED RELIEF

15.     Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the discretion of the bankruptcy court.  *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

16.     According to the Fifth Circuit, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). This standard seeks to balance the risks and benefits

associated with pursuing a potential claim against the costs associated with the proposed settlement.

### A.  Probability of Success with Due Consideration for Uncertainties in Law and Fact

17.  The Trustee is confident that he would ultimately prevail in his claims against Tippett and CWB Investment. However, as with all litigation, there is never any guarantee of success, and Tippett's able counsel has raised numerous defenses and disputes the Trustee's claims and are prepared to vigorously defend against any liability. Here, Tippett has agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Tippett and CWB Investment in the adversary proceeding.  In light of this, and the desire to reduce administrative expenses associated with litigation to increase the amount paid to creditors, the Trustee believes that the proposed settlement represents a fair and reasonable settlement given the facts of the case and the inherent uncertainties associated with trial and continued litigation.

### B.  Complexity, Duration and Expense of Continued Litigation

18.  Prosecuting the pending claims against all of the defendants in the Adversary Proceeding would entail the Bankruptcy Estate incurring additional administrative expenses of at least $50,000.00 in estimated attorneys' fees.  The Settlement Agreement provides for the transfer of the Bankruptcy Estate's interest in Policy Services, Inc.'s property, and assures recovery to unsecured creditors through a cash payment to the Bankruptcy Estate without the need for further litigation. The settlement was reached before extensive discovery, without the need to incur additional costs for litigating a lawsuit, including discovery, depositions, trials and appeals. Given the face value of the claims, the amount of the settlement proceeds, and the costs associated with continued litigation, Trustee believes it is in the best interests of the Bankruptcy Estate to enter into the Settlement Agreement.

### C.  Wisdom of the Compromise

19.     Whether a settlement is a product of arm's length negotiation is a factor bearing on the wisdom of a proposed compromise. *Conn. Gen. Life Ins. Co.*, 68 F.3d at 918. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate.  *Id.* at 917.

20.     The proposed Settlement Agreement is the result of extensive arm's length negotiations between the Trustee and Tippett and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against Tippett and CWB Investment. A recoupment by agreement of 75% of the Tippett Transfers is a good outcome for the Bankruptcy Estate.

21.     Tippett has been represented by counsel throughout this case, as has the Trustee, who conferred with Tippett's counsel and considered this compromise after conferring extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 75% recovery would not be a prudent use of Bankruptcy Estate funds.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement with Tippett and CWB Investment as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: March 15, 2023

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15 day of March, 2023, a true and correct copy of the foregoing document has been furnished via electronic mail to all parties receiving notice by CM/ECF, as set forth below, and via the methods indicated on the "parties in interest" also listed below; a copy will also be mailed to the parties on the limited service list in this matter, and a supplemental certificate of service will be filed evidencing such service

**Via CM/ECF:** *pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

**Via CM/ECF:**
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12/ A. Thomas
615 E Houston, Suite 533
San Antonio, TX 78295-1539

**Via CM/ECF:** *dodda@sec.gov*
Angela D. Dodd
U. S. Securities and Exchange Commission
175 Jackson Blvd. Suite 900
Chicago, IL 60604

**Via Counsel email:**
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

**Via Counsel Via CM/ECF:**
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

**Via CM/ECF:**
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

**Via CM/ECF:** *don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

**Via CM/ECF:** *rbattaglialaw@outlook.com*
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

**Via CM/ECF:** *jpetree@mcslaw.com*
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

**Via CM/ECF:** *jdunne@smfadlaw.com*
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

**Via CM/ECF:** *bk-cmurphy@oag.texas.gov*
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

{4867-5656-3284;2/1934.023}

*Via CM/ECF:  pautry@branscomblaw.com*
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

*Via CM/ECF:  lmjurek@jureklaw.com*
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX  77006

*Via CM/ECF:*
*stephen.humeniuk@lockelord.com*
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701

*Via CM/ECF: tcunningham@lockelord.com*
Thomas J. Cunningham
Locke Lord LLP
777 South Flagler Drive #215
West Palm Beach, FL  33401

**And to the following parties-in-interest via the method indicated:**

*Via e-mail: mjones@allenbarneslaw.com*
**ALLEN, JONES & GILES, PLC**
Michael A. Jones
1850 N. Central Ave., Suite 1150
Phoenix, AZ  85004

*Attorneys for Defendants, Pamela Hopman, Paul Hopman, PGH Advisors, LLC, MP Wealth Management, LLC, the Hopman Family Trust and the Hopman Group, LLC*

*Via e-mail: laird@blaird.com;*
*office@blaird.com*
**LAIRD LAW PLLC**
Brian A. Laird
PO Box 36356
Tucson, Arizona 85740

*Attorney for Defendants, MaRico Tippett and CWB Investment Advisors, LLC*

*/s/ Randall A. Pulman*
Randall A. Pulman

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

### ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH MARICO TIPPETT AND CWB INVESTMENT ADVISORS, LLC

On this date came on to be considered the *Trustee's Motion to Approve Compromise and Settlement under Bankruptcy Rule 9019 with MaRico Tippett and CWB Investment Advisors, LLC* (the "**Motion**").[2]  The Court finds that (i) it has jurisdiction over the matters raised in the Motion

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are:  *In Re: Policy Services, Inc., 21-51513* (2864);  *In Re: Wizard Mode Media, LLC*, 21-51514 (3205);  *In Re: deeproot Pinball LLC*, 21-51515 (0320);  *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046);  *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404);  *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731);  *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661);  *In Re: deeproot Tech LLC*, 21-51520 (9043);  *In Re: deeproot Funds LLC*, 21-51521 (9404);  *In Re: deeproot Studios LLC*, 21-51522 (6283);  and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) the relief requested in the Motion is in the best interests of deeproot Funds, LLC, its Bankruptcy Estate, and the creditors; (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested.

**I**T IS **T**HEREFORE **O**RDERED that the Settlement Agreement incorporated by reference herein and attached hereto as <u>Exhibit 1,</u> and the Motion are, in all things, **A**PPROVED.

**I**T IS **F**URTHER **O**RDERED that Trustee and Tippett are hereby authorized and directed to take any and all actions necessary to consummate the Settlement Agreement and conclude the transactions proposed in the Motion.

**I**T IS **F**URTHER **O**RDERED that Trustee and CWB Investment are hereby authorized and directed to take any and all actions necessary to consummate the Settlement Agreement and conclude the transactions proposed in the Motion.

**I**T IS **F**URTHER **O**RDERED that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

**I**T IS **F**URTHER **O**RDERED that in the event the Settlement Agreement is voided by any of the Parties, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

# # #

Submitted by:
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
**ATTORNEYS FOR JOHN PATRICK LOWE,
CHAPTER 7 TRUSTEE FOR THE JOINTLY
ADMINISTERED BANKRUPTCY ESTATE OF
DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of February 22, 2023 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al,* and MaRico Tippett ("Tippett") and CWB Investment Advisors, LLC ("CWB Investment" and, collectively with Trustee, the "Settling Parties").

## RECITALS

A.     The Trustee alleges the following facts:

- Between June 2016 and February 2021, Tippett was associated with Pamela Hopman ("Hopman") and her entities, PGH Advisors, LLC ("PGH") and MP Wealth Management, LLC ("MP Wealth" and collectively the "Hopman Entities"). Tippett entered into nine (9) Finder Agreements with deeproot Funds, LLC on behalf of the Hopman Entities. Tippett located new investors for deeproot Funds, LLC on behalf of PGH and MP Wealth and was paid compensation in the form of Finders Fees from Policy Services, Inc. in accordance with an agreed fee splitting arrangement. In total, Tippett received $36,052.07 in Finders Fees from Policy Services, Inc. during his time working with the Hopman Entities. Tippett formed another company after he stopped working with Hopman called CWB Investment Advisors, LLC. Tippett, by and through CWB Investment, received finder's fee transfers from Policy Services, Inc. in the total amount of $8,517.04. Tippett received a total of $44,569.11 from Policy Services, Inc. (the "Tippett Transfers").

B.     On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.     On or about December 7, 2022, the Trustee filed his Original Complaint against Tippett in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary").[1] Adv. Proc. No. 22-05090-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to Tippett constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover Tippett's net profits under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

---

[1] Claims against Tippett were brought together with claims against Hopman and the Hopman Entities. This Settlement Agreement does not impact any of the other defendants in the Adversary.

D.     Tippett disputes the Trustee's claims and denies liability. Tippett affirmatively alleges the following facts: Tippett did not know and did not have any reason to know of any alleged Ponzi scheme activity; Tippett reasonably believed that deeproot Funds, LLC was a legitimate investment opportunity and Tippett advised his clients to enter into the investments as such; that deeproot Funds, LLC gave all reasonable appearances of being legitimate and that due to the absence of access to the Debtor companies' non-disclosed financial documents Tippett had no way of knowing that the individuals controlling the Debtor companies were misusing company funds; Tippett did not have any control over the Debtor companies; Tippett's intent in advising his clients to invest in deeproot Funds, LLC was to identify and obtain investments for his clients that paid steady returns without the clients' returns being reduced by commissions paid by the clients to Tippett; and, Tippett believes that he would prevail in litigation of his defenses against the Trustee's claims but Tippett does not have the finances necessary to pay for a full defense, and in any event the cost of litigation would likely exceed the cost of settlement.

E.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Tippett Transfers, upon the terms and conditions set forth below.

F.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

<u>TERMS OF AGREEMENT</u>

1.     <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>.  Tippett shall pay Trustee a total of $33,462.83 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Tippett Transfers.

3.     <u>Sequence of Payment</u>. Within 15 days following execution of this Settlement Agreement by the Settling Parties, Tippett shall pay the Trustee $11,000.00 to be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>. Tippett shall complete payments of the remaining $22,462.83 in four (4) monthly payments, to be completed no later than 120 days after the date of the initial payment. The four remaining payments shall also be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the Tippett Transfers that will be filed in the event that Tippett defaults under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the executed Agreed Judgment is attached hereto as <u>Exhibit B</u>. The Settling Parties have agreed that Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Tippett defaults on paying the Settlement Amount within the agreed time periods above.

4.    <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

5.    <u>Effective Date of Settlement Agreement</u>. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Tippett.

6.    <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Tippett within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

7.    <u>Release by Trustee</u>.  On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Tippett, his spouse, his attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Tippett, the Tippett Transfers, and any other transaction(s) between Tippett and the Debtors.

8.    <u>Release by Tippett</u>. On the Effective Date, Tippett agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim he may have in the Bankruptcy Case. Tippett agrees that he will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

9.    <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Tippett Transfers is hereby, and as

of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

10. _Enforcement of Settlement Agreement._ If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

11. _Expenses._ The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

12. _Severability._ The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13. _Miscellaneous._

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement

Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i) The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j) This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this **22nd** day of _____, 2023.

John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this 2l day of FEBRUARY, 2023.

MaRico Tippett

SIGNED this 2l day of FEBRUARY, 2023.

MaRico Tippett
Member, CWB Investment Advisors, LLC

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

# EXHIBIT B

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of February 22, 2023 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al,* and MaRico Tippett ("Tippett") and CWB Investment Advisors, LLC ("CWB Investment" and, collectively with Trustee, the "Settling Parties").

## RECITALS

A.    The Trustee alleges the following facts:

- Between June 2016 and February 2021, Tippett was associated with Pamela Hopman ("Hopman") and her entities, PGH Advisors, LLC ("PGH") and MP Wealth Management, LLC ("MP Wealth" and collectively the "Hopman Entities"). Tippett entered into nine (9) Finder Agreements with deeproot Funds, LLC on behalf of the Hopman Entities. Tippett located new investors for deeproot Funds, LLC on behalf of PGH and MP Wealth and was paid compensation in the form of Finders Fees from Policy Services, Inc. in accordance with an agreed fee splitting arrangement. In total, Tippett received $36,052.07 in Finders Fees from Policy Services, Inc. during his time working with the Hopman Entities. Tippett formed another company after he stopped working with Hopman called CWB Investment Advisors, LLC. Tippett, by and through CWB Investment, received finder's fee transfers from Policy Services, Inc. in the total amount of $8,517.04. Tippett received a total of $44,569.11 from Policy Services, Inc. (the "Tippett Transfers").

B.    On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.    On or about December 7, 2022, the Trustee filed his Original Complaint against Tippett in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary").[1] Adv. Proc. No. 22-05090-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to Tippett constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover Tippett's net profits under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

---

[1] Claims against Tippett were brought together with claims against Hopman and the Hopman Entities. This Settlement Agreement does not impact any of the other defendants in the Adversary.

{00589912;1}

D.     Tippett disputes the Trustee's claims and denies liability. Tippett affirmatively alleges the following facts: Tippett did not know and did not have any reason to know of any alleged Ponzi scheme activity; Tippett reasonably believed that deeproot Funds, LLC was a legitimate investment opportunity and Tippett advised his clients to enter into the investments as such; that deeproot Funds, LLC gave all reasonable appearances of being legitimate and that due to the absence of access to the Debtor companies' non-disclosed financial documents Tippett had no way of knowing that the individuals controlling the Debtor companies were misusing company funds; Tippett did not have any control over the Debtor companies; Tippett's intent in advising his clients to invest in deeproot Funds, LLC was to identify and obtain investments for his clients that paid steady returns without the clients' returns being reduced by commissions paid by the clients to Tippett; and, Tippett believes that he would prevail in litigation of his defenses against the Trustee's claims but Tippett does not have the finances necessary to pay for a full defense, and in any event the cost of litigation would likely exceed the cost of settlement.

E.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Tippett Transfers, upon the terms and conditions set forth below.

F.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.     <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>.  Tippett shall pay Trustee a total of $33,462.83 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Tippett Transfers.

3.     <u>Sequence of Payment</u>. Within 15 days following execution of this Settlement Agreement by the Settling Parties, Tippett shall pay the Trustee $11,000.00 to be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>. Tippett shall complete payments of the remaining $22,462.83 in four (4) monthly payments, to be completed no later than 120 days after the date of the initial payment. The four remaining payments shall also be delivered in accordance with the instructions attached hereto as <u>Exhibit A</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the Tippett Transfers that will be filed in the event that Tippett defaults under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the executed Agreed Judgment is attached hereto as <u>Exhibit B</u>. The Settling Parties have agreed that Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Tippett defaults on paying the Settlement Amount within the agreed time periods above.

4.     <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within five (5) business days following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

5.     <u>Effective Date of Settlement Agreement</u>. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Tippett.

6.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Tippett within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

7.     <u>Release by Trustee</u>.  On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Tippett, his spouse, his attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Tippett, the Tippett Transfers, and any other transaction(s) between Tippett and the Debtors.

8.     <u>Release by Tippett</u>. On the Effective Date, Tippett agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim he may have in the Bankruptcy Case. Tippett agrees that he will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

9.     <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Tippett Transfers is hereby, and as

of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

10. Enforcement of Settlement Agreement. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

11. Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

12. Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13. Miscellaneous.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement

Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i) The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j) This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

6

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this **22nd** day of _____, 2023.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 21 day of FEBRUARY, 2023.

_____
MaRico Tippett

SIGNED this 21 day of FEBRUARY, 2023.

_____
MaRico Tippett
Member, CWB Investment Advisors, LLC

{00589912;1}

7

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire: