IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

---

CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT
UNDER BANKRUPTCY RULE 9019 WITH CANDICE GILLEN, AZAR PARCHAMI,
AMERICAN EXPRESS COMPANY, SENIOR INSURANCE SERVICES, INC., ERIC SPENCER RUDD,
JANET RUDD, AGENTS INSURANCE SALES & SERVICE, INC., SAVING OPTIONS AND SOLUTIONS,
INC., BARRY LYNN WILKEN, DAVID THOMAS OBMANN, PREMIER GROUP ENTERPRISES, LLC,
ANTHONY MICHAEL LOTTS, KENNETH MARTIN AND BROWNIE MARTIN

---

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc., 21-51513* (2864); *In Re: Wizard Mode Media, LLC*, 21-51514 (3205); *In Re: deeproot Pinball LLC*, 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046); *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661); *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot Funds LLC*, 21-51521 (9404); *In Re: deeproot Studios LLC*, 21-51522 (6283); and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

1

Plaintiff John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**"),[2] by and through his undersigned counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Motion to Approve Compromise and Settlement Under Bankruptcy Rule 9019 with Candice Gillen, Azar Parchami, American Express Company, Senior Insurance Services, Inc., Eric Spencer Rudd, Janet Rudd, Agents Insurance Sales & Service, Inc., Saving Options and Solutions, Inc., Barry Lynn Wilken, David Thomas Obmann, Premier Group Enterprises, LLC, Anthony Michael Lotts, Kenneth Martin and Brownie Martin* (the "**Motion**"), and in support respectfully shows the Court as follows:

## I. JURISDICTION AND VENUE

1.  This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II. SUMMARY OF RELIEF REQUESTED

3.  The Trustee requests approval by the Court to enter into and confirm the eight settlements with two net winners, one vendor and five finders described below. Attached hereto as Exhibit A is the proposed order on the Motion.

   a.  Gillen, a net winner, has agreed to pay $51,682.35 (85% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached

---

[2] Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC are referred to herein as "**Debtors**" or the "**deeproot Entities**."

2

hereto as Exhibit B;

      b.      Parchami, a finder, has agreed to pay $20,000.00 (76.9% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit C;

      c.      AmEx, a vendor, has agreed to pay $650,000.00 (42% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit D;

      d.      Senior Insurance, a finder, has agreed to pay $28,538.10 (77% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit E;

      e.      Agents Insurance Defendants, a finder, have agreed to pay $16,723.75 (85% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit F;

      f.      Obmann, a finder, has agreed to pay $12,431.25 (85% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit G;

      g.      Premier Group Defendants, a finder, have agreed to pay $21,371.26 (85% of the claim) to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit H.

      h.      Finally, the Trustee obtained a final default judgment against the Martins, net winners, in the amount of $15,850.00, including post-judgment interest. After entry of the final default judgment, the Martins paid $15,850.00 (100% of the claim) in exchange for release of the final judgment, and the Trustee waived the modest amount of post-

4864-8327-1015, v. 4 / 1934.001

judgment interest that had accrued on the judgment.  The Martins have not required a settlement agreement.

### III.
### IV. <u>PROCEDURAL HISTORY</u>

4.      On December 9, 2021 (the "**Petition Date**"), each of the Debtors filed their respective voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").   The cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523-mmp.

5.      On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the jointly administered case. Doc. No. 19.

6.      On or about December 7, 2022, the Trustee filed his Original Complaint against Candice Gillen ("**Gillen**") and Kenneth Martin and Brownie Martin (the "**Martins**"), in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Net Winner Adversary Proceeding**"). Adv. Proc. No. 22-05096-mmp.[3]

7.      On or about December 7, 2022, the Trustee filed his Original Complaint against Azar Parchami ("**Parchami**") in the Bankruptcy Court for the Western District of Texas (the "**Parchami Adversary Proceeding**"). Adv. Proc. No. 22-05089-mmp.

8.      On or about December 8, 2022, the Trustee filed his Original Complaint against American Express Company ("**AmEx**") in the Bankruptcy Court for the Western District of Texas (the "**AmEx Adversary Proceeding**"). Adv. Proc. No. 22-05098-mmp.

---

[3] Claims against Gillen and the Martins were brought in connection with other alleged net winners of the Debtors' Ponzi scheme. This Motion does not impact any of the other alleged net winners. *See John Patrick Lowe, Chapter 7 Trustee v. Jill R. Winn, David Medlang, Mary Medlang, Kenneth Martin, Brownie Martin, Candice Gillen, Alice Snell, Carl Jarnecke as Trustee of the Carl & Paula Jarnecke Revocable Trust, and the Carl & Paula Jarnecke Revocable Trust*, Adv. Proc. No. 22-05096-mmp.

4864-8327-1015, v. 4 / 1934.001

9.      On or about January 31, 2023, the Trustee filed his Original Complaint against Senior Insurance Services, Inc. ("**Senior Insurance**"), Eric Spencer Rudd ("**E. Rudd**"), and Janet Rudd ("**J. Rudd**" and, collectively, the "**Senior Insurance Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**Senior Insurance Adversary Proceeding**").  Adv. Proc. No. 23-05021-mmp.

10.     On or about January 31, 2023, the Trustee filed his Original Complaint against Agents Insurance Sales & Service, Inc. ("**Agents Insurance**"), Saving Options and Solutions, Inc. ("**Saving Options**") and Barry Lynn Wilken ("**Wilken**" and, collectively, the "**Agents Insurance Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**Agents Insurance Adversary Proceeding**"). Adv. Proc. No. 23-05017-mmp.

11.     On or about January 31, 2023, the Trustee filed his Original Complaint against David Thomas Obmann ("**Obmann**") in the Bankruptcy Court for the Western District of Texas (the "**Obmann Adversary Proceeding**"). Adv. Proc. No. 23-05017-mmp.[4]

12.     On or about January 31, 2023, the Trustee filed his Original Complaint against Premier Group Enterprises, LLC ("**Premier Group**") and Anthony Michael Lotts ("**Lotts**" and, collectively, the "**Premier Group Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**Premier Group Adversary Proceeding**"). Adv. Proc. No. 23-05012-mmp

13.     Attached hereto as <u>Exhibit B</u> is the executed settlement agreement with Gillen (the "**Gillen Settlement Agreement**").

14.     Attached hereto as <u>Exhibit C</u> is the executed settlement agreement with Parchami (the "**Parchami Settlement Agreement**").

---

[4] Claims against Obmann were brought in connection with Agents Insurance Defendants in the Debtors' Ponzi scheme. The Trustee negotiated separately with Obmann and Agents Insurance Defendants. *See John Patrick Lowe, Chapter 7 Trustee v. Agents Insurance Sales & Service, Inc., Savings Options and Solutions, Inc., Barry Lynn Wilken, and David Thomas Obmann*, Adv. Proc. No. 23-05017-mmp.

15.     Attached hereto as <u>Exhibit D</u> is the executed settlement agreement with AmEx (the "**AmEx Settlement Agreement**").

16.     Attached hereto as <u>Exhibit E</u> is the executed settlement agreement with the Senior Insurance Defendants (the "**Senior Insurance Settlement Agreement**").

17.     Attached hereto as <u>Exhibit F</u> is the executed settlement agreement with Agents Insurance Defendants (the "**Agents Insurance Settlement Agreement**").

18.     Attached hereto as <u>Exhibit G</u> is the executed settlement agreement with Obmann (the "**Obmann Settlement Agreement**").

19.     Attached hereto as <u>Exhibit H</u> is the executed settlement agreement with Premier Group Defendants (the "**Premier Group Settlement Agreement**").

## V.  <u>FACTUAL BACKGROUND</u>

**a.     <u>Allegations against Gillen in Trustee's Original Complaint</u>**

20.     The Trustee's Original Complaint against Gillen alleges that Gillen made the following investments in the 5 Year Debenture Fund, a subsidiary fund of deeproot Funds, LLC: (1) a qualified individual investment in the amount of $83,763.00 on January 22, 2015; and (2) a non-qualified individual investment in the amount of $275,000.00 on February 5, 2015. The total amount of Gillen's investment is $358,763.00. *See* Net Winners Adversary Complaint at ¶ 34, 35 [Adv. Proc. No. 22-05096-mmp]. The Trustee's Original Complaint further alleged that the financial books and records of deeproot Funds, LLC reveals that Gillen withdrew funds on three occasions: (1) $131,990.96 on or about January 8, 2021; (2) $140,000.00 on or about May 12, 2021; and (3) $147,574.81 on or about June 24, 2021. *Id.* at ¶ 35. The total amount Gillen received from deeproot Funds, LLC was $419,565.77. Gillen received funds in excess of her original investment in the amount of $60,802.77 (the "**Net Gillen Transfers**"). *Id.* at ¶ 35.

6

21.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the profits obtained by Gillen in excess of her original investment were fictitious and subject to avoidance. As such, the Trustee brought claims to avoid and recover the Net Gillen Transfers under 11 U.S.C. §§ 544(b), 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

22.     In connection with settlement negotiations, the Gillen Settlement Agreement was prepared and executed by the Trustee and Gillen. Exhibit B.

**b.      Allegations against Parchami in Trustee's Original Complaint**

23.     In Trustee's Original Complaint against Parchami, the Trustee alleged that Parchami located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From January 29, 2015 to February 5, 2015, Parchami received $26,000.00 from Policy Services, Inc. (the "**Parchami Transfers**"). Policy Services, Inc.'s books and records reveal that the Parchami Transfers were booked as "Commission Expenses."

24.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to Parchami constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to Parchami under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

25.     In connection with settlement negotiations between Trustee and Parchami, a resolution was reached, and the Parchami Settlement Agreement was prepared and executed. Exhibit C.

7

c.    **Allegations against AmEx in Trustee's Original Complaint**

26.    The Trustee's Original Complaint against AmEx alleges that Robert J. Mueller, the principal of all of the deeproot Entities, used the invested money to fund his lavish lifestyle. Specifically, from December 10, 2014 to June 7, 2019, approximately $1,533,308.77 (the "**Mueller Transfers**") were charged by Mueller to an American Express Business Gold Rewards Card, account ending 4-51001, issued to Robert J. Muller, National Wealth Solutions, LLC, 12015 Treewell Gln., San Antonio, TX 78249 (the "**AmEx Card**"). National Wealth Solutions, LLC, is an inactive Texas limited liability company, owned by Mueller. National Wealth Solutions, LLC was in no way affiliated at any time with Policy Services nor with any of the deeproot Entities. Mueller paid AmEx for the personal expenses he charged to the AmEx Card using Debtor, Policy Services' bank account. Policy Services received nothing of value in return for the payments made to AmEx from Policy Services' bank accounts.

27.    In his Original Complaint against AmEx, the Trustee alleged that the deeproot Entities were operated as a Ponzi scheme and that the funds paid to AmEx from Policy Services' bank accounts were avoidable as actually and constructively fraudulent transfers. The Trustee brought claims to avoid and recover the Mueller Transfers from AmEx under 11 U.S.C. §§ 544(b), 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

28.    After lengthy settlement discussions, the Trustee and AmEx reached an agreement to resolve the dispute. In connection with these negotiations, the AmEx Settlement Agreement was prepared and executed by the Trustee and AmEx. Exhibit D.

4864-8327-1015, v. 4 / 1934.001

**d.**     **Allegations against the Senior Insurance Defendants in Trustee's Original Complaint**

29.     The Trustee's Original Complaint against the Senior Insurance Defendants alleges that Senior Insurance received $37,062.46 in finders fees from Policy Services, Inc. Adv. Proc. Doc. No. 1 ¶ 23. E. Rudd and J. Rudd are the sole corporate officers. Upon information and belief, E. Rudd and J. Rudd were the people for whose benefit the Senior Insurance Transfers were made, and were paid from the Senior Insurance Transfers. *Id.* ¶ 25. E. Rudd signed the following agreements with deeproot Funds, LLC on behalf of Senior Insurance: (1) Four Month Finder Agreement and; two (2) Standard Six Month Finder Agreements. Between May 5, 2020 and February 24, 2021, Senior Insurance received $37,062.46 from Debtor Policy Services, Inc. (the "**Senior Insurance Transfers**").

30.     As such, the Trustee brought claims to avoid and recover monies transferred to Senior Insurance under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code. The Trustee also brought claims to recover from E. Rudd and J. Rudd as subsequent transferees of the Senior Insurance Transfers under 11 U.S.C. § 550.

31.     In connection with settlement negotiations between Trustee and the Senior Insurance Defendants, a resolution was reached, and the Senior Insurance Settlement Agreement was prepared and executed. Exhibit E.

**e.**     **Allegations against the Agents Insurance Defendants in Trustee's Original Complaint**

32.     The Trustee's Original Complaint against Agents Insurance Defendants alleges that between March 14, 2019 and January 7, 2020, Agents Insurance received $12,975.00 from Debtor Policy Services, Inc. (the "**Agents Insurance Transfers**"). Adv. Proc. Doc. No. 1 ¶ 25. Wilken is the CEO, Secretary, CFO, and Director of Agents Insurance and is the individual for whose benefit

9

the Agents Insurance Transfers were made, and Wilken was paid from the Agents Insurance Transfers. *Id.* ¶ 27,28.

33.     The Trustee's Original Complaint against Agents Insurance Defendants also alleges that between April 29, 2020 and October 30, 2020, Saving Options received $6,700.00 from Debtor Policy Services, Inc. (the "**Saving Options Transfers**"). Adv. Proc. Doc. No. 1 ¶ 30. After an investigation, the Trustee was unable to locate a record for Saving Options on the California Secretary of State's online database. *Id.* ¶ 31. Wilken is the individual for whose benefit the Saving Options Transfers were made, and Wilken was paid from the Saving Options Transfers. *Id.* ¶ 32.

34.     Wilken signed the following agreements with deeproot Funds, LLC: one (1) IMO Agent Finder Agreement on behalf of Agents Insurance; one (1) IMO Agent Four Month Finder Agreement on behalf of Agents Insurance, one (1) IMO Agent Six Month Finder Agreement, and two (2) IMO Multi-Tier Master Finder Agreements on behalf of Saving Options. Wilken also signed one (1) IMO Agent Four Month Finder Agreement, and two (2) IMO Agent Multi-Tier Finder Agreements in his individual capacity. *Id.* ¶ 24.

35.     As such, the Trustee brought claims to avoid and recover monies transferred to Agents Insurance and Savings Options under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code. The Trustee also brought claims to recover from Wilken as subsequent transferee of the Agents Insurance Transfers and the Saving Options Transfers under 11 U.S.C. § 550.

36.     In connection with settlement negotiations between Trustee and the Agents Insurance Defendants, a resolution was reached, and the Agents Insurance Settlement Agreement was prepared and executed. Exhibit F.

f.     **Allegations against Obmann in Trustee's Original Complaint**

37.     The Trustee's Original Complaint against Obmann alleges that Obmann was associated with Barry Lynn Wilken and his associated entities, Agents Insurance and Saving Options. Adv. Proc. Doc. No. 1 ¶ 37. Obmann entered into two (2) IMO Agent Four Month Finder Agreements with deeproot Funds, LLC, located new investors for deeproot Funds, LLC, and was paid compensation in the form of finder's fees from Policy Services, Inc. On December 16, 2019, Obmann received $14,625.00 from Debtor Policy Services, Inc. (the "**Obmann Transfers**"). As such, the Trustee brought claims to avoid and recover monies transferred to Obmann under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

38.     In connection with the negotiations, the Trustee and Obmann have reached a resolution and the Obmann Settlement Agreement was prepared and executed by the Trustee and Obmann. Exhibit G.

g.     **Allegations against the Premier Group Defendants in Trustee's Original Complaint**

39.     The Trustee's Original Complaint against Premier Group Defendants alleges that between September 22, 2020 and April 23, 2021, Premier Group received $25,142.66 from Debtor Policy Services, Inc. (the "**Senior Insurance Transfers**"). Adv. Proc. Doc. No. 1 ¶ 22. E. Lotts is the sole manager of Premier Group and is the person for whose benefit the Premier Group Transfers were made, and Lotts was paid from the Premier Group Transfers. *Id.* ¶ 23,24. Lotts signed the following agreements with deeproot Funds, LLC on behalf of Premier Group: (1) two (2) IMO Agent Four Month Finder Agreements and; two (2) IMO Agent Six Month Finder Agreements. *Id.* ¶ 25.

11

40.     As such, the Trustee brought claims to avoid and recover monies transferred to Premier Group under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code. The Trustee also brought claims to recover from Lotts as subsequent transferees of the Premier Group Transfers under 11 U.S.C. § 550.

41.     In connection with settlement negotiations between Trustee and the Premier Group Defendants, a resolution was reached, and the Premier Group Settlement Agreement was prepared and executed. Exhibit H.

**h.     Allegations against the Martins in Trustee's Original Complaint**

42.     The Trustee's Original Complaint against the Martins alleges that the Martins received interest payments from deeproot Funds, LLC between June 2016 and May 2021 in the amount of $15,350.00. deeproot Funds, LLC's records further reflect that on June 11, 2021, the Martins withdrew funds from deeproot Funds, LLC in the total amount of $60,500.00. The Martins received $15,850.00 in excess of their original investment (the "**Net Martin Transfers**"). Adv. Proc. Doc. No. 1 ¶ 44. As such, the Trustee brought claims to avoid and recover monies transferred to Obmann under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

43.     On March 20, 2023, the Trustee filed a motion for entry of default against the Martins and on April 11, 2023, the Court entered final default judgment against the Martins in the amount of $15,850.00. After entry of the final default judgment, the Martins have since paid $15,850.00 (100% of the claim). The Trustee waived the modest amount of post-judgment interest in the amount of $61.80 that had accrued since the default judgment was entered. As such, the

4864-8327-1015, v. 4 / 1934.001

Trustee is requesting the Court's approval of the compromise with the Martins by waiving post-judgment interest.

## VI. PROPOSED SETTLEMENT

### a. Trustee's Settlement Agreement with Gillen

44.     The Trustee and Gillen have agreed to settle the dispute without further litigation pursuant to the following terms. Gillen agreed to pay a total of $51,682.35 (the "**Gillen Settlement Amount**") to Trustee in exchange for release of the Trustee's and the Bankruptcy Estates' claims against Gillen related to the Net Gillen Transfers or any other transactions between Gillen and the Debtors. The Trustee has agreed to accept the Gillen Settlement Amount in eight consecutive equal payments in the amount of $6,460.29.  Gillen has already paid the full amount of the Gillen Settlement Amount to the Trustee on an accelerated schedule. This settlement results in a resolutionof 85% of the Net Gillen Transfers to the deeproot Funds, LLC Bankruptcy Estate.

45.     Gillen agrees to toll the statutes of limitation until the settlement becomes effective or is voided.

### b. Trustee's Settlement with Parchami

46.     The Trustee has accepted payment of $20,000.00 from Parchami in exchange for releasing his claims against Parchami in the Parchami Adversary Proceeding (the "**Parchami Settlement Amount**"). The Parchami Settlement Amount has already been paid in full in one payment to the Trustee. This settlement results in a resolutionof 76.9% of the Parchami Transfers to the Policy Services, Inc. Bankruptcy Estate. In the event the Court does not approve the Parchami Settlement Agreement, the Trustee will return the Parchami Settlement Amount to Parchami.

4864-8327-1015, v. 4 / 1934.001

47.     Parchami agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**c.   Trustee's Settlement with AmEx**

48.     The Trustee has agreed to accept payment of $650,000.00 from AmEx in exchange for releasing his claims against AmEx to avoid and recover the Mueller Transfers in the Am Ex Adversary Proceeding (the "**AmEx Settlement Agreement**"). This settlement results in a resolutionof 42% of the AmEx Transfers to the Policy Service, Inc. Bankruptcy Estate.  In the event the Court does not approve the AmEx Settlement Agreement, the Trustee will return the AmEx Settlement Amount to AmEx.

49.     AmEx agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**d.   Trustee's Settlement with the Senior Insurance Defendants**

50.     The Trustee has accepted payment of $28,538.10 from the Senior Insurance Defendants in exchange for releasing his claims against the Senior Insurance Defendants in the Senior Insurance Adversary Proceeding (the "**Senior Insurance Settlement Amount**"). The Senior Insurance Settlement Amount has already been paid in full to the Trustee. This settlement results in a resolution of 77% of the Senior Insurance Transfers to the Policy Services, Inc. Bankruptcy Estate. In the event the Court does not approve the Senior Insurance Settlement Agreement, the Trustee will return the Senior Insurance Settlement Amount to the Senior Insurance Defendants.

51.     The Senior Insurance Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

4864-8327-1015, v. 4 / 1934.001

**e. Trustee's Settlement with the Agents Insurance Defendants**

52.     The Trustee has accepted payment of $16,723.75 from the Agents Insurance Defendants in exchange for releasing his claims against the Agents Insurance Defendants in the Agents Insurance Adversary Proceeding (the "**Agents Insurance Settlement Amount**"). The Agents Insurance Settlement Amount has already been paid in full to the Trustee. This settlement results in a resolution of 85% of the Agents Insurance Transfers to the Policy Services, Inc. Bankruptcy Estate. In the event the Court does not approve the Agents Insurance Settlement Agreement, the Trustee will return the Agents Insurance Settlement Amount to the Agents Insurance Defendants.

53.     The Agents Insurance Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**f. Trustee's Settlement with Obmann**

54.     The Trustee has agreed to accept payment of $12,431.25 from Obmann in exchange for releasing his claims against the Obmann (the "**Obmann Settlement Amount**") in four (4) consecutive monthly payments of $3,107.81. The Obmann Settlement Amount has already been paid in full to the Trustee. This settlement results in a resolution of 85% of the Obmann Transfers to the Policy Services, Inc. Bankruptcy Estate. In the event the Court does not approve the Obmann Settlement Agreement, the Trustee will return the Obmann Settlement Amount to Obmann.

55.     Obmann agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**g. Trustee's Settlement with the Premier Group Defendants**

56.     The Trustee has agreed to accept payment of $21,371.26 from the Premier Group Defendants in exchange for releasing his claims against the Premier Group Defendants in the

15

Premier Group Adversary Proceeding (the "**Premier Group Settlement Amount**"). The Premier Group Settlement Amount will be paid in six (6) consecutive monthly payments in the amount of $3,561.88 to the Trustee. The first payment has already been made to the Trustee together with the execution of the Premier Group Settlement Agreement. This settlement results in a resolution of 85% of the Premier Group Transfers to the Policy Services, Inc. Bankruptcy Estate. In the event the Court does not approve the Premier Group Settlement Agreement, the Trustee will return the Premier Group Settlement Amount to the Premier Group Defendants.

57.     The Premier Group Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**h.  Trustee's Settlement with the Martins**

58.     On April 11, 2023, the Court entered final default judgment against the Martins in the amount of $15,850.00. On or about May 5, 2023, the Martins paid the full amount of the judgment to the Trustee via check. The Trustee has waived the post-judgment interest that had accrued in the amount of $61.80.  The Trustee has agreed to accept payment of $15,850.00 from the Martins in exchange for releasing the final default judgment (the "**Martins Settlement Payment**"). Neither the Trustee nor the Martins have required a settlement agreement, but the Trustee has agreed to waive the post-judgment interest and release the Final Judgment.

## VII.    REQUESTED RELIEF

59.     Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the

16

discretion of the bankruptcy court. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

60.     According to the Fifth Circuit, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). This standard seeks to balance the risks and benefits associated with pursuing a potential claim against the costs associated with the proposed settlement.

**a.      Probability of Success with Due Consideration for Uncertainties in Law and Fact**

61.     The Trustee is confident that he would ultimately prevail in his claims against Gillen, Parchami, AmEx, Senior Insurance Defendants, Agents Insurance Defendants, Obmann, and the Martins. The Martins have already paid 100% of the claim amount, thus there is no need to spend any additional estate resources to recover the post-judgment interest that had accrued on the judgment that remains after the Martins Settlement Payment was received.

62.     However, with respect to Gillen, Parchami, AmEx, Senior Insurance Defendants, Agents Insurance Defendants, Obmann, and Premier Group Defendants, as with all litigation, there is never any guarantee of success.

17

63. Here, Gillen has agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Gillen in the adversary proceeding.

64. Parchami has also agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Parchami in the adversary proceeding.

65. AmEx's able counsel has raised numerous defenses and disputes the Trustee's claims and is prepared to vigorously defend against them. In particular, Am Ex has raised the question of whether the majority of the avoidance claims against it which are more than four year pre-petition can be avoided on the basis of actual intent to defraud as opposed to constructive fraud for the transfers that occurred within four years of the petition date. Given the fact that the Trustee has a heavier burden of proof on intent to defraud and Am Ex is well versed and well capitalized Defendant, the Trustee has weighed those considerations and decided to compromise. AmEx agreed to pay the amount of cash needed to compensate unsecured creditors an amount which is within the range of the Policy Services Estate would receive if the Trustee decided to pursue the claims asserted against AmEx in the adversary proceeding.

66. Senior Insurance Defendants have also agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Senior Insurance Defendants in the adversary proceeding.

67. Agents Insurance Defendants have also agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee

18

decided to pursue the claims asserted against Agents Insurance Defendants in the adversary proceeding.

68.     Obmann has also agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Obmann in the adversary proceeding.

69.     Premier Group Defendants have also agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Premier Group Defendants in the adversary proceeding.

70.     In light of this, and the desire to reduce administrative expenses associated with litigations to increase the amount paid to creditors, the Trustee believes that the proposed settlements represents a fair and reasonable settlements given the facts of the cases and the inherent uncertainties associated with trial and continued litigations.

**b.      Complexity, Duration and Expense of Continued Litigation**

71.     Prosecuting the pending adversary proceeding against Gillen, Parchami, AmEx, Senior Insurance Defendants, Agents Insurance Defendants, Obmann, Premier Group Defendants and the Martins would entail the Bankruptcy Estate incurring additional administrative expenses in a range between $25,000.00 and $100,000.00 in each of the adversary proceedings through a trial.   The Trustee's settlements with Gillen, Parchami, AmEx, Senior Insurance Defendants, Agents Insurance Defendants, Obmann, Premier Group Defendants and the Martins provide for the transfer of the Bankruptcy Estate's interest in deeproot Funds, LLC and Policy Services, Inc.'s property, and assures recovery to unsecured creditors through a cash payment to the Bankruptcy Estates without the need for further litigation. The settlements were reached before extensive

discovery, and without the need to incur additional costs for litigating a lawsuit, including discovery, depositions, trials and appeals. Given the face value of the claims, the amount of the settlement proceeds, and the costs associated with continued litigation against multiple defendants, the Trustee believes it is in the best interests of the Bankruptcy Estates to enter into the Gillen Settlement Agreement, Parchami Settlement Agreement, Amex Settlement Agreement, Senior Insurance Settlement Agreement, Agents Insurance Settlement Agreement, Obmann Settlement Agreement, Premier Group Settlement Agreement and accept the Martins Settlement Payment in exchange for release of claims.

**c.     Wisdom of the Compromises**

72.     Whether a settlement is a product of arm's length negotiation is a factor bearing on the wisdom of a proposed compromise. *Conn. Gen. Life Ins. Co.*, 68 F.3d at 918. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate.  *Id.* at 917.

73.     The proposed Gillen Settlement Agreement is the result of arm's length negotiations between the Trustee and Gillen and reflects a fair compromise of the Trustee's and deeproot Funds, LLC's Bankruptcy Estate's claims against Gillen. A resolution by agreement of 85% of the claim is a good outcome for the Bankruptcy Estate.  Gillen has not been represented by counsel. After receiving the check, the Trustee considered this compromise and conferred extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in

20

pursuing these claims to recoup more than a 85% recovery would not be a prudent use of Bankruptcy Estate funds.

74.     The proposed Parchami Settlement Agreement is the result of arm's length negotiations between the Trustee and Parchami and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against Parchami. A resolution by agreement of 76.9% of the claim is a good outcome for the Bankruptcy Estate.  Parchami has not been represented by counsel. After receiving the check, the Trustee considered this compromise and conferred extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 76.9% recovery would not be a prudent use of Bankruptcy Estate funds.

75.     The proposed AmEx Settlement Agreement is the result of arm's length negotiations between the Trustee and AmEx and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against AmEx. A resolution by agreement of 42% of the claim is a good outcome for the Bankruptcy Estate.  AmEx has been represented by counsel throughout this case, as has the Trustee, who conferred with AmEx's counsel and considered this compromise after conferring extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 42% recovery would not be a prudent use of Bankruptcy Estate funds.

76.     The proposed Senior Insurance Settlement Agreement is the result of arm's length negotiations between the Trustee and Senior Insurance Defendants and reflects a fair compromise

of the Trustee's and Bankruptcy Estate's claims against Senior Insurance Defendants. A resolution by agreement of 77% of the claim is a good outcome for the Bankruptcy Estate. Senior Insurance Defendants have not been represented by counsel. After receiving the check, the Trustee considered this compromise and conferred extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 77% recovery would not be a prudent use of Bankruptcy Estate funds.

77.     The proposed Agents Insurance Settlement Agreement is the result of arm's length negotiations between the Trustee and Agents Insurance Defendants and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against Agent Insurance Defendants. A resolution by agreement of 85% of the claim is a good outcome for the Bankruptcy Estate. Agents Insurance Defendants have not been represented by counsel. After receiving the check, the Trustee considered this compromise and conferred extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 85% recovery would not be a prudent use of Bankruptcy Estate funds.

78.     The proposed Obmann Settlement Agreement is the result of arm's length negotiations between the Trustee and Obmann and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against Obmann. A resolution by agreement of 85% of the claim is a good outcome for the Bankruptcy Estate. Obmann has not been represented by counsel. After receiving the check, the Trustee considered this compromise and conferred extensively with his

22

own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 85% recovery would not be a prudent use of Bankruptcy Estate funds.

79.     The proposed Premier Group Settlement Agreement is the result of arm's length negotiations between the Trustee and the Premier Group Defendants and reflects a fair compromise of the Trustee's and Policy Services, Inc. Bankruptcy Estate's claims against the Premier Group Defendants. A resolution by agreement of 85% of the claim is a good outcome for the Bankruptcy Estate. Premier Group Defendants have not been represented by counsel. The Trustee considered this compromise and conferred extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Policy Servives, Inc. Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 85% recovery would not be a prudent use of Bankruptcy Estate funds

80.     The Martins Settlement Payment resulted after the Trustee obtained a final default judgment against the Martins, including post-judgment interest. After entry of the final default judgment, the Martins paid 100% of the claim in the amount of $15,850.00. The Trustee waived the modest amount of post-judgment interest that had accrued on the judgment. A resolution of 100% of the claim is a good outcome for the Bankruptcy Estate.

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the Gillen Settlement Agreement, Parchami Settlement Agreement, Amex Settlement Agreement, Senior Insurance Settlement Agreement, Agents Insurance Settlement Agreement, Obmann Settlement Agreement, Premier Group Settlement Agreement and the Martins Settlement Payment

23

as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems

to be just, proper, and equitable.

Dated: June 21, 2023                          Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By:  */s/ Randall A. Pulman*
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, PLAINTIFF AND CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

4864-8327-1015, v. 4 / 1934.001

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of June, 2023, a true and correct copy of the foregoing document has been furnished via electronic mail to all parties receiving notice by CM/ECF, as set forth below, and via the methods indicated on the "parties in interest" also listed below; a copy will also be mailed to the parties on the limited service list in this matter, and a supplemental certificate of service will be filed evidencing such service.

*Via CM/ECF:  pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

*Via CM/ECF:*
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12/ A. Thomas
615 E Houston, Suite 533
San Antonio, TX 78295-1539

*Via CM/ECF: dodda@sec.gov*
Angela D. Dodd
U. S. Securities and Exchange Commission
175 Jackson Blvd. Suite 900
Chicago, IL 60604

*Via Counsel email:*
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

*Via Counsel Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

*Via CM/ECF:*
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

*Via CM/ECF:  don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX  78205

*Via CM/ECF:  rbattaglialaw@outlook.com*
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

*Via CM/ECF:  jpetree@mcslaw.com*
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

*Via CM/ECF:  jdunne@smfadlaw.com*
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

*Via CM/ECF:  bk-cmurphy@oag.texas.gov*
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

4864-8327-1015, v. 4 / 1934.001

***Via CM/ECF: pautry@branscomblaw.com***
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

***Via CM/ECF: lmjurek@jureklaw.com***
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX 77006

***Via CM/ECF:***
***stephen.humeniuk@lockelord.com***
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701

***Via CM/ECF: tcunningham@lockelord.com***
Thomas J. Cunningham
Locke Lord LLP
777 South Flagler Drive #215
West Palm Beach, FL 33401

***Via CM/ECF:***
***jkathman@spencerfane.com;***
***msegura@spencerfane.com***
Jason Kathman
Misty Segura
Spencer Fane, LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024

**And to the following parties-in-interest via the method indicated:**

***Via email: candgillen@yahoo.com***
Candice Lillian Gillen
3709 Doune Way
Clermont, FL 34711

***Via email: kvaughn0915@gmail.com***
Kenneth and Brownie Martin
3620 Avenue R
Rosenberg, Texas 77471

***Via email: mark@strombergstock.com***
Mark Stromberg
Stromberg Stock, PLLC
8350 North Central Expy., Suite 1225
Dallas, TX 75206

***Via email: frank.white@agg.com***
Frank N. White
Arnall Golden Gregory LLP
171 17th Street NW, Suite 2100
Atlanta, GA 30363

***Via email: apluslife_resources@yahoo.com***
David Thomas Obmann
21100 State St #195
San Jacinto, CA 92583

***Via email: ruddins@sbcglobal.net***
Senior Insurance Services, Inc.
c/o its corporate officer Eric Rudd
1808 Anniston Drive
Washington, MO 63090

***Via email: ruddins@sbcglobal.net***
Janet Rudd
1808 Anniston Drive
Washington, MO 63090

***Via email: ruddins@sbcglobal.net***
Eric Spencer Rudd
1808 Anniston Drive
Washington, MO 63090

***Via email: azarparchami@gmail.com***
Azar Parchami
600 SW 1st St.
Boca Raton, FL 33486

***Via email: alotts@premiergroupentins.com***
Premier Group Enterprises, LLC
C/O Anthony Lotts
PO Box 58751
New Orleans, LA 70158

***Via email: alotts@premiergroupentins.com***
Anthony Lotts
PO Box 58751
New Orleans, LA 70158

***Via email: barry@agentsinsurancesales.com***
Agents Insurance Sales & Service, Inc.,
ATTN: Registered Agent, Barry Wilken,
26652 Paddington Court,
Murrieta, CA 92563

***Via email:barry@savingoptions.solutions***
Saving Options and Solutions, Inc.,
ATTN: Barry Wilken,
26652 Paddington Court,
Murrieta, CA 92563

***Via email:barry@savingoptions.solutions;***
***barry@agentsinsurancesales.com***
Barry Wilken,
26652 Paddington Court,
Murrieta, CA 92563

*/s/ Randall A. Pulman*
Randall A. Pulman

27

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH CANDICE GILLEN, AZAR PARCHAMI, AMERICAN EXPRESS COMPANY, SENIOR INSURANCE SERVICES, INC., ERIC SPENCER RUDD, JANET RUDD, AGENTS INSURANCE SALES & SERVICE, INC., SAVING OPTIONS AND SOLUTIONS, INC., BARRY LYNN WILKEN, DAVID THOMAS OBMANN, PREMIER GROUP ENTERPRISES, LLC, ANTHONY MICHAEL LOTTS, KENNETH MARTIN AND BROWNIE MARTIN**

On this date came on to be considered the *Trustee's Motion to Approve Compromise and Settlement under Bankruptcy Rule 9019 with Candice Gillen, Azar Parchami, American Express Company, Senior Insurance Services, Inc., Eric Spencer Rudd, Janet Rudd, Agents Insurance Sales*

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc., 21-51513* (2864); *In Re: Wizard Mode Media, LLC,* 21-51514 (3205); *In Re: deeproot Pinball LLC,* 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC,* 21-51516 (8046); *In Re: deeproot 575 Fund, LLC,* 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC,* 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC,* 21-51519 (9661); *In Re: deeproot Tech LLC,* 21-51520 (9043); *In Re: deeproot Funds LLC,* 21-51521 (9404); *In Re: deeproot Studios LLC,* 21-51522 (6283); and *In Re: deeproot Capital Management, LLC,* 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

*& Service, Inc., Saving Options and Solutions, Inc., Barry Lynn Wilken, David Thomas Obmann, Premier Group Enterprises, LLC, Anthony Michael Lotts, Kenneth Martin and Brownie Martin* (the "**Motion**").[2]  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) the relief requested in the Motion is in the best interests of deeproot Funds, LLC, its Bankruptcy Estate, and the creditors; (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested.

**IT IS THEREFORE ORDERED** that the Gillen Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit B,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the Parchami Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit C,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the AmEx Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit D,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the Senior Insurance Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit E,</u> and the Motion are, in all things, **APPROVED**.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**IT IS THEREFORE ORDERED** that the Agents Insurance Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit F,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the Obmann Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit G,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the Premier Group Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit H,</u> and the Motion are, in all things, **APPROVED**.

**IT IS THEREFORE ORDERED** that the Martins Settlement Payment, and the Motion are, in all things, **APPROVED**.

**IT IS FURTHER ORDERED** that Trustee and Gillen are hereby authorized and directed to take any and all actions necessary to consummate the Gillen Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and Parchami are hereby authorized and directed to take any and all actions necessary to consummate the Parchami Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and AmEx are hereby authorized and directed to take any and all actions necessary to consummate the AmEx Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and Senior Insurance Defendants are hereby authorized and directed to take any and all actions necessary to consummate the Senior Insurance Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and Agents Insurance Defendants are hereby authorized and directed to take any and all actions necessary to consummate the Agents Insurance Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and Obmann are hereby authorized and directed to take any and all actions necessary to consummate the Obmann Settlement Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and Premier Group Defendants are hereby authorized and directed to take any and all actions necessary to consummate the Premier Group Agreement and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that Trustee and the Martins are hereby authorized and directed to take any and all actions necessary to consummate the Martins' Settlement Payment and conclude the transactions proposed in the Motion.

**IT IS FURTHER ORDERED** that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

**IT IS FURTHER ORDERED** that in the event the Gillen Settlement Agreement is voided by the Trustee or Gillen, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

**IT IS FURTHER ORDERED** that in the event the Parchami Settlement Agreement is voided by the Trustee or Parchami, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

**IT IS FURTHER ORDERED** that in the event the AmEx Settlement Agreement is voided by the Trustee or AmEx, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

IT IS FURTHER ORDERED that in the event the Senior Insurance Settlement Agreement is voided by the Trustee or Senior Insurance Defendants, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

IT IS FURTHER ORDERED that in the event the Agents Insurance Settlement Agreement is voided by the Trustee or Agents Insurance Defendants, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

IT IS FURTHER ORDERED that in the event the Obmann Settlement Agreement is voided by the Trustee or Obmann, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

IT IS FURTHER ORDERED that in the event the Premier Group Settlement Agreement is voided by the Trustee or Premier Group Defendants, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

IT IS FURTHER ORDERED that in the event the Martins' Settlement Payment is voided by the Trustee or the Martins, the Trustee shall file a notice with the Court that the Settlement is void and of no force and effect.

# # #

Submitted by:
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
PULMAN, CAPPUCCIO & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
ATTORNEYS FOR JOHN PATRICK LOWE,
CHAPTER 7 TRUSTEE FOR THE JOINTLY
ADMINISTERED BANKRUPTCY ESTATE OF
DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.

# EXHIBIT B

# PULMAN, CAPPUCCIO & PULLEN, LLP
### ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS 78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

March 15, 2023

*Via e-mail to: candgillen@yahoo.com*
Candice Gillen
3709 Doune Way
Clermont, Florida 34711

Re:    *John Patrick Lowe, Chapter 7 Trustee v. Gillen et al.*, Adversary Proceeding No.
       22-05096-mmp;

       *In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-
       51523-mmp;

       Settlement Agreement

Dear Ms. Gillen:

As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the **"Trustee"**), of the bankruptcy estates of the debtors (the "**Estate**") in the above referenced jointly administered Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee concerning the amount transferred to you from the Debtors that was the subject of the Trustee's claims against you in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee v. Gillen et al.*, Adversary Proceeding No. 22-05096-mmp pending in the Bankruptcy Court foer the Western District of Texas, San Antonio Division (the **"Settlement Agreement"**). **If you agree to the terms of this Settlement Agreement, please sign on page 3 and mail the letter back to us with a check for the first month's payment.**

**Payment Schedule**. The Trustee's claim against you is for $60,802.77, which represents the amount you received from deeproot Funds, LLC in excess of your original investment (the **"Transfers"**). The Trustee has agreed to accept payment of 85% of the amount of the Debtors' transfers to you in the amount of $51,682.35 (the **"Settlement Amount"**) in eight (8) consecutive monthly payments. Please make each check in the amount of $6,460.29 payable to Pat Lowe, Chapter 7 Trustee, and mail the check to the below address:

Page 2
Settlement Agreement re: Payment
Candice Gillen
March 15, 2023

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019**. Within ten (10) business days following execution of this Settlement Agreement, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Failure to Make Payments**. Failure to make payments as provided in the paragraph above is a default under this Settlement Agreement. In the event of a payment default, the Trustee shall be entitled to file suit to enforce this Settlement Agreement and pursue claims against you. The Trustee shall be entitled to recover from you any unpaid amount of the Transfers, as well as reasonable attorneys' fees and expenses incurred by the Trustee in filing a lawsuit to enforce his rights and remedies against you under this Settlement Agreement and enforcing any final judgment entered in an action to enforce this Settlement Agreement.

**Acceptance of Late Payment**. Acceptance of a late or partial payment by the Trustee shall neither constitute a waiver of, nor in any way prejudice the Trustee's right to receive or demand, full or timely payments thereafter. The Trustee in his sole and absolute discretion shall have the right to declare a default under this Settlement Agreement regardless of the number of times that he has not declared a default although he was entitled to do so.

**Release**. Upon payment of the entirety of the Transfers to the Trustee, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you. This release is not effective unless and until all payments are made and the Transfers have been repaid in full.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Transfers is hereby, and as of the date of execution of this letter, tolled until either the Transfers are paid in full or ten days following the date this agreement becomes void by nonpayment.

Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

Page 3
Settlement Agreement re: Payment
Candice Gillen
March 15, 2023

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

**AGREED**

Candice Gillen                        Mar. 23, 2023
Candice Gillen                        Date

# EXHIBIT C

# PULMAN, CAPPUCCIO & PULLEN, LLP
## ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS 78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

May 12, 2023

*Via e-mail to: azarparchami@gmail.com*
Azar Parchami
600 SW 1st St.
Boca Raton, FL 33486

Re:     *John Patrick Lowe, Chapter 7 Trustee for the Bankruptcy Estate of deeproot Capital Management, LLC et al. v. Azar Parchami*, Adv. Pro. No. 22-05089-mmp;

*In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-51523-mmp;

Settlement Agreement

Dear Ms. Parchami:

As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the **"Trustee"**), of the bankruptcy estates of the debtors (the **"Estate"**) in the above referenced jointly administered Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee concerning the amount transferred to you from the Debtors that was the subject of the Trustee's claims against you in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee v. Azar Parchami*, Adversary Proceeding No. 22-05089-mmp pending in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the **"Settlement Agreement"**). The Trustee understands that you dispute the allegations against you in the Trustee's Original Complaint, and that you do not admit liability but are compromising and settling the claims against you rather than engaging in further litigation. **As such, if you agree to the terms of this Settlement Agreement, please sign on page 3 and mail the letter back to us with a check for the first month's payment.**

**Payment Schedule**. The Trustee's claim against you is for $26,000.00, which represents the amount that you received from Policy Services, Inc. for finder fee payments (the "**Transfers**"). The Trustee has agreed to accept payment of 76.9% of the Transfers in the amount of $20,000.00 (the "**Settlement Amount**") in eight (8) consecutive monthly payments of $2,500.00 each. Please make a check for the first payment in the amount of $2,500.00 payable to <u>Pat Lowe, Chapter 7 Trustee</u>, and mail the check to the below address:

Page 2
Settlement Agreement re: Payment
Azar Parchami
May 12, 2023

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019**. Within ten (10) business days following execution of this Settlement Agreement together with the first payment, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Failure to Make Payments**. Failure to make payments as provided in the paragraph above is a default under this Settlement Agreement. In the event of a payment default, the Trustee shall be entitled to file suit to enforce this Settlement Agreement and pursue claims against you. The Trustee shall be entitled to recover from you any unpaid amount of the Transfers, as well as reasonable attorneys' fees and expenses incurred by the Trustee in filing a lawsuit to enforce his rights and remedies against you under this Settlement Agreement and enforcing any final judgment entered in an action to enforce this Settlement Agreement.

**Acceptance of Late Payment**. Acceptance of a late or partial payment by the Trustee shall neither constitute a waiver of, nor in any way prejudice the Trustee's right to receive or demand, full or timely payments thereafter. The Trustee in his sole and absolute discretion shall have the right to declare a default under this Settlement Agreement regardless of the number of times that he has not declared a default although he was entitled to do so.

**Release**. Upon payment of the entirety of the Settlement Amount to the Trustee, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you. This release is not effective unless and until the full Settlement Amount is made.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Transfers is hereby, and as of the date of execution of this letter, tolled until either the Transfers are paid in full or ten days following the date this agreement becomes void by nonpayment.

Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

Page 3
Settlement Agreement re: Payment
Azar Parchami
May 12, 2023

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

**AGREED**

Azar Parchami

5/12/2023
Date

# EXHIBIT D

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of June 5, 2023 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and American Express Company ("AmEx" and, collectively with Trustee, the "Settling Parties").

## RECITALS

A.      The Trustee alleges the following facts:

- Robert Mueller ("Mueller") served as the principal of all of the deeproot Entities and orchestrated a Ponzi scheme wherein he offered and sold securities to individuals for investment in pooled investment funds. Mueller then used the invested money to fund his other business ventures, including his pinball machine business. He also used the money to fund his lavish lifestyle. For purposes of this lawsuit, the key fact is that he used later investors' money to pay earlier investors. Mueller used approximately $2.1 million from the Debtors' bank accounts to pay his personal expenses, including his daughter's private school tuition, federal income tax payments, medical and dental bills, family vacations, his second wedding, his second divorce, his third wedding, jewelry for his second and third wives, and lifestyle spending for himself and his family. (the "**Mueller Transfers**").

- From December 10, 2014 to June 7, 2019, approximately $1,533,308.77 of the Muller Transfers were charges by Mueller to an American Express Business Gold Rewards Card, account ending 4-51001, issued to Robert J. Muller, National Wealth Solutions, LLC, 12015 Treewell Gln., San Antonio, TX 78249 (the "**AmEx Card**") that were paid by Debtor Policy Services, Inc. ("Policy Services"). National Wealth Solutions, LLC, is an inactive Texas limited liability company, owned by Mueller. National Wealth Solutions, LLC was in no way affiliated at any time with Policy Services nor with any of the deeproot Entities. Mueller paid American Express for the personal expenses he charged to the AmEx Card using Policy Services' bank accounts.

- Policy Services received nothing of value in return for certain or all of the payments made to American Express from Policy Services' bank accounts.

B.      On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as

Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.      On or about December 8, 2022, the Trustee filed his Original Complaint against AmEx in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 22-05098-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the Mueller Transfers paid to AmEx constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the Mueller Transfers under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.      AmEx has asserted various factual and statutory defenses to the allegations and claims asserted by the Trustee in the Adversary, and has denied any liability on such claims.

E.      The Settling Parties have exchanged information and documents, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Mueller Transfers, upon the terms and conditions set forth below.

F.      Now, therefore, for good and valuable consideration, the receipt and sufficiency of which are acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.      Recitals.   The recitals set forth above are incorporated herein by reference.

2.      Settlement Amount.  AmEx shall pay or cause to be paid to "Pulman, Cappuccio & Pullen, LLP IOLTA" (the "Payee") a total of $650,000.00 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Debtors or the Mueller Transfers, in accordance with the instructions provided in the Electronic Deposit Authorization Form (EDAF") attached as Exhibit A hereto.

3.      Sequence of Payment. AmEx shall pay the Settlement Amount within 30 days following the later of (a) execution of this Settlement Agreement in full by the Settling Parties, (b) receipt by AmEx's counsel of an IRS Form W-9 completed by the Payee, and (c) receipt by AmEx's counsel of the EDAF completed and signed by the Payee.

4.      Approval Pursuant to Bankruptcy Rule 9019.  Within fifteen (15) business days following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment. If the Trustee receives the Settlement Amount prior to such approval, the Trustee shall hold the Settlement Amount in trust pending the entry of a final order by the Bankruptcy Court approving the Agreement or, if there is an appeal, until entry of a final order with respect to the appeal (the

2

"Effective Date"). In the event that the Bankruptcy Court does not approve this Agreement or there is a final, non-appealable order of an appellate court reversing an order of the Bankruptcy Court approving this Agreement, (i) the Receiver shall promptly return the Settlement Amount to AmEx, and (ii) this Agreement shall be null and void, with the Parties returning to their original respective positions with no rights waived.

5.　　Effective Date of Settlement Agreement. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "Effective Date"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from AmEx.

6.　　Release by Trustee. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged AmEx, its affiliates (including, without limitation, American Express National Bank and American Express Travel Related Services Company, Inc.), attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with AmEx, the Mueller Transfers, and any other transaction(s) between the Releasees and the Debtors.

7.　　Release by AmEx. On the Effective Date, AmEx agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim it may have in the Bankruptcy Case. AmEx agrees that it will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

8.　　Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Mueller Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

9.　　Enforcement of Settlement Agreement. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

3

10.     Expenses.  The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary or this Settlement Agreement.

11.     Severability.  The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.     Miscellaneous.

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to

4854-6284-2469, v. 2 / 1934.059

execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

5

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this 5th day of June , 2023.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 5th day of June , 2023.

*Matthew Heimann*
_____
Authorized Representative , Director & Counsel
American Express Company

6



ELECTRONIC DEPOSIT AUTHORIZATION FORM



EXHIBIT "A"

# EXHIBIT E

# PULMAN, CAPPUCCIO & PULLEN, LLP
## ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS 78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

May 3, 2023

*Via e-mail to: ruddins@sbcglobal.net*
Eric Rudd
Senior Insurance Services, Inc.
1808 Anniston Drive
Washington, Missouri 63090

Re:     *John Patrick Lowe, Chapter 7 Trustee v. Senior Insurance Services, Inc. et al.,*
        Adversary Proceeding No. 23-05021-mmp;

        *In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-
        51523-mmp;

        Settlement Agreement

Dear Mr. Rudd:

    As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the **"Trustee"**),
of the bankruptcy estates of the debtors (the **"Estate"**) in the above referenced jointly administered
Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee
concerning the amount transferred to you from the Debtors that was the subject of the Trustee's
claims against you in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee
v. Senior Insurance Services, Inc., Eric Spencer Rudd, and Janet Rudd*, Adversary Proceeding No.
23-05021-mmp pending in the Bankruptcy Court for the Western District of Texas, San Antonio
Division (the **"Settlement Agreement"**). The Trustee understands that you dispute the allegations
against you in the Trustee's Original Complaint, and that you do not admit liability but are
compromising and settling the claims against you rather than engaging in further litigation. **As
such, if you agree to the terms of this Settlement Agreement, please sign on page 3 and mail
the letter back to us with a check.**

    **Payment Schedule.** The Trustee's claim against you, Janet Rudd, and Senior Insurance
Services, Inc. is for $37,062.46, which represents the amount Senior Insurance Services, Inc.
received from Policy Services, Inc. for finder fee payments (the **"Transfers"**). The Trustee has
agreed to accept payment of 77% of the amount of the Debtor's transfers to Senior Insurance
Services, Inc. in the amount of $28,538.10 (the **"Settlement Amount"**). Please make the check in

Page 2
Settlement Agreement re: Payment
Senior Insurance Services, Inc.
Eric Rudd
May 3, 2023

the amount of $28,538.10 payable to <u>Pat Lowe, Chapter 7 Trustee</u>, and mail the check to the below address:

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019**. Within ten (10) business days following execution of this Settlement Agreement together with the first payment, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Failure to Make Payments**. Failure to make payments as provided in the paragraph above is a default under this Settlement Agreement. In the event of a payment default, the Trustee shall be entitled to file suit to enforce this Settlement Agreement and pursue claims against you. The Trustee shall be entitled to recover from you any unpaid amount of the Transfers, as well as reasonable attorneys' fees and expenses incurred by the Trustee in filing a lawsuit to enforce his rights and remedies against you under this Settlement Agreement and enforcing any final judgment entered in an action to enforce this Settlement Agreement.

**Acceptance of Late Payment**. Acceptance of a late or partial payment by the Trustee shall neither constitute a waiver of, nor in any way prejudice the Trustee's right to receive or demand, full or timely payments thereafter. The Trustee in his sole and absolute discretion shall have the right to declare a default under this Settlement Agreement regardless of the number of times that he has not declared a default although he was entitled to do so.

**Release**. Upon payment of the entirety of the Settlement Amount to the Trustee, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you, Janet Rudd, and Senior Insurance Services, Inc. This release is not effective unless and until the full Settlement Amount is made.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Transfers is hereby, and as of the date of execution of this letter, tolled until either the Transfers are paid in full or ten days following the date this agreement becomes void by nonpayment.

Page 3
Settlement Agreement re: Payment
Senior Insurance Services, Inc.
Eric Rudd
May 3, 2023

     Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

**AGREED**

Eric Spencer Rudd
President, Senior Insurance Services, Inc.

5-3-23
Date

Eric Spencer Rudd

5-3-23
Date

Janet Rudd

5-3-23
Date

# EXHIBIT F

# PULMAN, CAPPUCCIO & PULLEN, LLP
## ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS  78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

June 6, 2023

*Via e-mail to:*
*barry@savingoptions.solutions;*
*barry@agentsinsurancesales.com*
Barry Wilken
26652 Paddington Court
Murrieta, California 92563

Re:     *John Patrick Lowe, Chapter 7 Trustee v. Agents Insurance Sales & Services, Inc. et al.*, Adversary Proceeding No. 23-05017-mmp;

*In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-51523-mmp;

Settlement Agreement

Dear Mr. Wilken:

As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the "**Trustee**"), of the bankruptcy estates of the debtors (the "**Estate**") in the above referenced jointly administered Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee concerning the amount transferred to your entities, Agents Insurance Sales & Services, Inc. ("**Agents Insurance**") and Savings Options and Solutions, Inc. ("**Savings Options**"), from the Debtors that was the subject of the Trustee's claims against your entities in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee v. Agents Insurance Sales & Services, Inc. et al.*, Adversary Proceeding No. 23-05017-mmp pending in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Settlement Agreement**"). The Trustee understands that you dispute the allegations against you in the Trustee's Original Complaint, and that you do not admit liability but are compromising and settling the claims against you rather than engaging in further litigation. **As such, if you agree to the terms of this Settlement Agreement, please sign on page 3 and mail the letter back to us with a check for the first month's payment.**

**Payment Schedule**. The Trustee's claim against Agents Insurance is for $12,975.00, and the Trustee's claim against Savings Options is for $6,700.00. The total claim is $19,675.00, which represent the amounts your entities received from Policy Services, Inc. for finder fee payments

Page 2
Settlement Agreement re: Payment
Barry Lynn Wilken
Agents Insurance Sales & Service, Inc.
Savings Options and Solutions, Inc.
June 6, 2023

(the "**Transfers**"). The Trustee has agreed to accept payment of 85% of the amount of the Debtors' transfers to you in the amount of $16,723.75 (the "**Settlement Amount**"). Please make a check in the amount of $16,723.75 payable to Pat Lowe, Chapter 7 Trustee, and mail the check to the below address:

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019.** Within a reasonable time following execution of this Settlement Agreement and receipt of payment, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Release**. Upon payment of the entirety of the Settlement Amount to the Trustee and court approval of the compromise, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you, Agents Insurance, and/or Savings Options.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Transfers is hereby, and as of the date of execution of this letter, tolled until either the Settlement Amount is paid in full or ten days following the date this agreement becomes void by nonpayment.

Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

Page 3
Settlement Agreement re: Payment
Barry Lynn Wilken
Agents Insurance Sales & Service, Inc.
Savings Options and Solutions, Inc.
June 6, 2023

**AGREED**

_[signature]_                                    6-7-2023
Barry Lynn Wilken                               Date

**AGREED**

_[signature]_                                    6-7-2023
Barry Lynn Wilken, President                    Date
Agents Insurance Sales & Service, Inc.

**AGREED**

_[signature]_                                    6-7-2023
Barry Lynn Wilken, President                    Date
Savings Options and Solutions, Inc.

# EXHIBIT G

# PULMAN, CAPPUCCIO & PULLEN, LLP
## ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS 78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

March 31, 2023

*Via e-mail to: apluslife_resources@yahoo.com*
David T. Obmann
21100 State St # 195
San Jacinto, California 92583

Re:     *John Patrick Lowe, Chapter 7 Trustee v. Agents Insurance Sales & Services, Inc. et al.*, Adversary Proceeding No. 23-05017-mmp;

*In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-51523-mmp;

Settlement Agreement

Dear Mr. Obmann:

As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the "**Trustee**"), of the bankruptcy estates of the debtors (the "**Estate**") in the above referenced jointly administered Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee concerning the amount transferred to you from the Debtors that was the subject of the Trustee's claims against you in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee v. Agents Insurance Sales & Services, Inc. et al.*, Adversary Proceeding No. 23-05017-mmp pending in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**Settlement Agreement**"). The Trustee understands that you dispute the allegations against you in the Trustee's Original Complaint, and that you do not admit liability but are compromising and settling the claims against you rather than engaging in further litigation. **As such, if you agree to the terms of this Settlement Agreement, please sign on page 3 and mail the letter back to us with a check for the first month's payment.**

**Payment Schedule**. The Trustee's claim against you is for $14,625.00, which represents the amount you received from Policy Services, Inc. for finder fee payments (the "**Transfers**"). The Trustee has agreed to accept payment of 85% of the amount of the Debtors' transfers to you in the amount of $12,431.25 (the "**Settlement Amount**") in four (4) consecutive monthly payments in the amount of $3,107.81. Please make each check in the amount of $3,107.81 payable to Pat Lowe,

Page 2
Settlement Agreement re: Payment
David T. Obmann
March 31, 2023

Chapter 7 Trustee, and mail each check to the below address every month until the Settlement Amount is fully paid:

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019**. Within ten (10) business days following execution of this Settlement Agreement together with the first payment, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Failure to Make Payments**. Failure to make payments as provided in the paragraph above is a default under this Settlement Agreement. In the event of a payment default, the Trustee shall be entitled to file suit to enforce this Settlement Agreement and pursue claims against you. The Trustee shall be entitled to recover from you any unpaid amount of the Transfers, as well as reasonable attorneys' fees and expenses incurred by the Trustee in filing a lawsuit to enforce his rights and remedies against you under this Settlement Agreement and enforcing any final judgment entered in an action to enforce this Settlement Agreement.

**Acceptance of Late Payment**. Acceptance of a late or partial payment by the Trustee shall neither constitute a waiver of, nor in any way prejudice the Trustee's right to receive or demand, full or timely payments thereafter. The Trustee in his sole and absolute discretion shall have the right to declare a default under this Settlement Agreement regardless of the number of times that he has not declared a default although he was entitled to do so.

**Release**. Upon payment of the entirety of the Transfers to the Trustee, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you. This release is not effective unless and until all payments are made and the Transfers have been repaid in full.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Transfers is hereby, and as of the date of execution of this letter, tolled until either the Transfers are paid in full or ten days following the date this agreement becomes void by nonpayment.

Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

4869-9479-9450, v. 2

Page 3
Settlement Agreement re: Payment
David T. Obmann
March 31, 2023

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

**AGREED**

David Thomas Obmann

0 4 · 12 · 2023
Date

# EXHIBIT H

# PULMAN, CAPPUCCIO & PULLEN, LLP

## ATTORNEYS & COUNSELORS

RANDALL A. PULMAN
(210) 892-0420
RPULMAN@PULMANLAW.COM

2161 NW MILITARY HIGHWAY, SUITE 400
SAN ANTONIO, TEXAS 78213
WWW.PULMANLAW.COM
TELEPHONE: (210) 222-9494
FACSIMILE: (210) 892-1610

OFFICE LOCATIONS:
SAN ANTONIO
DALLAS / FORT WORTH

June 6, 2023

*Via e-mail to: alotts@premiergroupentins.com*
Anthony Lotts
PO Box 58751
New Orleans, LA 70158

Re: *John Patrick Lowe, Chapter 7 Trustee v. Premier Group Enterprises, LLC and Anthony Michael Lotts*, Adversary Proceeding No. 23-05012-mmp;

*In re deeproot Capital Management, LLC*, Jointly Administered Case No. 21-bk-51523-mmp;

Settlement Agreement

Dear Mr. Lotts:

As you are aware, this firm represents J. Patrick Lowe, Chapter 7 Trustee (the **"Trustee"**), of the bankruptcy estates of the debtors (the **"Estate"**) in the above referenced jointly administered Bankruptcy Cases. Please accept this letter as an agreement between you and the Trustee concerning the amount transferred to you from the Debtors that was the subject of the Trustee's claims against you in the adversary proceeding captioned *John Patrick Lowe, Chapter 7 Trustee v. Premier Group Enterprises, LLC and Anthony Michael Lotts*, Adversary Proceeding No. 23-05012-mmp pending in the Bankruptcy Court foer the Western District of Texas, San Antonio Division (the **"Settlement Agreement"**). **If you agree to the terms of this Settlement Agreement, please sign on page 3 and mail the letter back to us with a check for the first month's payment.**

**Payment Schedule**. The Trustee's claim against your entity Premier Group Enterprises, LLC (**"Premier Group"**) is for $25,142.66, which represents the amount Premier Group received from Policy Services, Inc. in Finders Fees (the **"Premier Group Transfers"**). The Trustee has agreed to accept payment of 85% of the amount of the Premier Group Transfers in the amount of $21,371.26 (the **"Settlement Amount"**) in six (6) consecutive monthly payments in the amount of $3,561.88. Please make each check in the amount of $3,561.88 payable to Pat Lowe, Chapter 7 Trustee, and mail the check to the below address:

Page 2
Settlement Agreement re: Payment
Premier Group Enterprises, LLC
Anthony Lotts
June 6, 2023

Pulman, Cappuccio & Pullen, LLP
ATTN: MaryAnn Villa
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**Approval Pursuant to Bankruptcy Rule 9019**.  Within a reasonable time following execution of this Settlement Agreement and receipt of the first payment, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

**Failure to Make Payments**. Failure to make payments as provided in the paragraph above is a default under this Settlement Agreement. In the event of a payment default, the Trustee shall be entitled to file suit to enforce this Settlement Agreement and pursue claims against you. The Trustee shall be entitled to recover from you any unpaid amount of the Transfers, as well as reasonable attorneys' fees and expenses incurred by the Trustee in filing a lawsuit to enforce his rights and remedies against you under this Settlement Agreement and enforcing any final judgment entered in an action to enforce this Settlement Agreement.

**Acceptance of Late Payment**. Acceptance of a late or partial payment by the Trustee shall neither constitute a waiver of, nor in any way prejudice the Trustee's right to receive or demand, full or timely payments thereafter. The Trustee in his sole and absolute discretion shall have the right to declare a default under this Settlement Agreement regardless of the number of times that he has not declared a default although he was entitled to do so.

**Release**. Upon payment of the entirety of the Transfers to the Trustee, the Trustee agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim against you. This release is not effective unless and until all payments are made and the Premier Group Transfers have been repaid in full.

**Tolling of Statutes of Limitation**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Premier Group Transfers is hereby, and as of the date of execution of this letter, tolled until either the Premier Group Transfers are paid in full or ten days following the date this agreement becomes void by nonpayment.

Page 3
Settlement Agreement re: Payment
Premier Group Enterprises, LLC
Anthony Lotts
June 6, 2023

Please feel free to contact me or my associate Anna MacFarlane at (210) 933-0617 if you would like to discuss this matter further.

Very truly yours,

Randall A. Pulman

RAP:AKM/mav

cc: Pat Lowe via e-mail (pat.lowe.law@gmail.com)

**AGREED**

Anthony Lotts, Manager
Premier Group Enterprises, LLC

6/10/2023

Date

**AGREED**

Anthony Lotts

6/10/2023

Date