IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| deeproot CAPITAL MANAGEMENT, § | BANKRUPTCY NO. 21-51523-MMP |
| LLC ET AL.,[1] § | | |
| § | | |
| DEBTORS § | JOINTLY ADMINISTERED |
| § | | |
| § | | |
| JOHN PATRICK LOWE, § | | |
| CHAPTER 7 TRUSTEE § | | |
| FOR THE BANKRUPTCY ESTATE § | | |
| OF deeproot CAPITAL § | | |
| MANAGEMENT, LLC ET AL., § | | |
| PLAINTIFF § | | |
| § | | |
| v. § | ADV. PROC. NO. _____ |
| § | | |
| CARLILE PATCHEN & MURPHY, LLP, § | | |
| DENNIS J. CONCILLA, AND ANDREW J. § | | |
| FEDERICO, § | | |
| DEFENDANTS § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, John Patrick Lowe, Chapter 7 Trustee ("**Plaintiff**" or "**Trustee**") for the jointly administered Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**")[2] hereby files this Original Complaint, respectfully showing the Court as follows:

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

[2] Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year

1

## I. PRELIMINARY STATEMENT

1. From late 2012 to mid-2021, Robert J. Mueller ("**Mueller**"), the sole principal and manager of the Debtors, orchestrated a Ponzi scheme wherein he persuaded investors (typically retirees) to cash out annuities and individual retirement accounts and invest the funds in Mueller's various investment funds, including but not limited to the deeproot BonusGrowth 5 Year Debenture Fund, LLC, the deeproot 575 Fund, LLC (the "**575 Fund**"), and deeproot Growth Runs Deep Fund, LLC (the "**dGRD Fund**" and collectively the "**Subsidiary Funds**"). Beginning in 2012, the deeproot Entities offered and sold life settlements. However, after the Texas Supreme Court's 2015 decision holding that life settlements constituted securities under the Texas Securities Act,[3] the deeproot Entities began to offer and sell debenture bonds. Investors would be located through insurance agents, wealth advisors, and other financial professionals (the "**Finders**"). The vast majority of the Finders were not licensed to sell securities as broker-dealers or registered investment advisors. Monies invested in the Subsidiary Funds were eventually transferred to deeproot Funds, LLC before being paid out to investors in the form of interest payments, dividend payments, or withdrawals of principal. Deeproot Funds, LLC was the parent of the Subsidiary Funds, and Policy Services, Inc. was the parent of deeproot Funds, LLC.

2. On August 20, 2021, a few weeks prior to the filing of the Debtors' Bankruptcy Cases, the United States Securities and Exchange Commission ("**SEC**") initiated a civil action against Mueller and several of his entities for violations of federal securities laws.[4] As a result of that investigation, it became clear that Mueller not only funneled money from the investment funds

---

Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC are referred to herein as "**Debtors**" or "**deeproot Entities**."

[3] *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 667 (Tex. 2015).

[4] *Securities and Exchange Commission v. Robert J. Mueller et al.*, Case No. 5:21-cv-00785-XR (W.D. Tex.).

to his other related entities and used investors' money to prop up his ultimately unsuccessful pinball business, but Mueller also used significant amounts of new investor money to pay moneys owed to earlier investors, making the deeproot Entities a Ponzi scheme. He also paid himself large amounts of investor moneys and made personal use of other investor moneys designated on the company's books as loans. Almost all of the deeproot Entities' investors lost every dollar they invested.

3. Starting in early 2013, Policy Services, Inc. was represented by the law firm Carlile Patchen & Murphy, LLP through two of its attorneys, Andrew Federico and Dennis J. Concilla. Carlile Patchen & Murphy, LLP provided advice to Policy Services regarding the creation of the dGRD Fund and the 575 Fund, particularly with respect to compliance with securities laws and development of private placement memoranda for the two funds. Mueller has taken the position that he relied on advice from these attorneys regarding the structure of the funds and the content of the private placement memoranda, that the attorneys "approved in some form" the marketing materials and presentations that Mueller used to solicit investors, and that the attorneys generally advised the deeproot Entities on compliance with applicable law.

4. Based on the detailed conversations with Mueller, Carlile Patchen & Murphy knew or should have known that Mueller was devising a Ponzi scheme, was taking investor funds for himself, and had insufficient controls in place to make sure the deeproot Entities' actions matched the descriptions of those actions in the private placement memoranda. Carlile Patchen & Murphy, by and through Dennis Concilla and Andrew Federico, provided the deeproot Entities with legal advice far beneath the standard of care. As such, the Trustee seeks to recover monetary damages for legal malpractice.

## II.     PARTIES

5. Plaintiff is the duly qualified and acting Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases. The Trustee brings this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001, 28 U.S.C. § 157, and all other applicable law.

6. Defendant Carlile Patchen & Murphy, LLP ("**CPM**") is an Ohio limited liability partnership with its principal place of business in Columbus, Ohio. It may be served with process via United States First Class Mail to its Registered Agent, CPM Statutory Agent Corp., 950 Goodale Blvd., Suite 200, Columbus, Ohio 43212, or wherever else anyone else authorized to accept service may be found.

7. Defendant Dennis J. Concilla ("**Concilla**") is an individual residing in Columbus, Ohio. He may be served with process via United States First Class Mail to 1478 Denbigh Drive, Columbus, Ohio 43220, or wherever else he may be found.

8. Defendant Andrew J. Federico ("**Federico**") is an individual residing in Columbus, Ohio. He may be served with process via United States First Class Mail to 1537 Newcomer Road, Columbus, Ohio 43235, or wherever else he may be found.

## III.     JURISDICTION AND VENUE

9. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1331 and 1334 and Federal Rule of Bankruptcy Procedure 7001. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157. To the extent necessary, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. To the extent the reference is withdrawn or the Bankruptcy Court is unable to enter a final judgment, Plaintiff requests the Bankruptcy Court be permitted and assigned to preside over all pre-trial matters, including the issuance of findings of fact and conclusions of law.

4863-7372-4310, v. 5 / 1934.061

11. Venue in this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## IV. FACTS

12. Mueller served as the principal of all of the deeproot Entities and orchestrated a Ponzi scheme wherein he offered and sold securities to individuals for investment in pooled investment funds, including the dGRD Fund and the 575 Fund. Mueller then used the invested money to fund his other business ventures, including his pinball machine business. He also used the money to fund his lavish lifestyle. Crucially, Mueller used later investors' money to pay fictional returns to earlier investors.

A. **The deeproot Entities, the Ponzi Scheme, and the Bankruptcy Filing**

13. A Ponzi scheme is "a fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." BLACK'S LAW DICTIONARY, Ponzi scheme (11th ed. 2019). A Ponzi scheme operates by using money from new investors to pay earlier investors, typically "without any operation or revenue-producing activity other than the continual raising of new funds." *Id.* "[A] Ponzi scheme is, as a matter of law, insolvent from its inception." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011).

14. The deeproot Entities commenced operations in 2012. The first entity formed was Policy Services, Inc. deeproot Funds, LLC is a direct subsidiary of Policy Services, Inc. The Subsidiary Funds were formed as direct subsidiaries of deeproot Funds, LLC.

15. Policy Services, Inc. and its subsidiaries never received an initial equity investment, and the deeproot Entities were all insolvent as of inception in 2012 and continued to operate at a loss. The deeproot Entities gave the appearance of profitability, which Mueller used to entice new

investors and obtain new money from investors. The deeproot Entities offered investments at higher-than-market levels of return—for example, deeproot BonusGrowth 5 Year Debenture Fund, LLC's five-year debenture bonds were offered for a 7% return in 2014, which was nearly seven times more than the national rate for five-year debenture bonds at the time, according to data available from the Board of Governors of the Federal Reserve.

16. There was no recorded capital investment on the balance sheet, and disbursements to Mueller and others were improperly recorded as assets rather than expenses, further boosting the appearance of profitability. After recharacterizing the disbursements as expenses, the equity for Policy Services, Inc. was $(1,490,187) for the year ending on December 31, 2013, and $(423,785) for the year ending on December 31, 2012. Policy Services and its subsidiaries had minimal revenue and had no net income as of at least December 31, 2012. Policy Services, Inc. continued to operate at a loss from the time of its inception and all of the deeproot Entities remained insolvent until filing for bankruptcy on December 9, 2021 ("**Petition Date**").

17. Since there was no source of revenue, the deeproot Entities relied on newly invested money to fund operations and make payments to earlier investors. From 2013 until 2021, deeproot Funds, LLC used new investor money to pay interest and dividends to earlier investors. For example, during the final three years of the deeproot Entities' operation, the following payments were made: (1) in 2019, deeproot Funds, LLC received $18,300,190.00 from new investors and used $1,074,885.00 to pay previous investors; (2) in 2020, deeproot Funds, LLC received $7,093,055.00 from new investors and used $1,333,554.00 to pay previous investors; and (3) in 2021, deeproot Funds, LLC received $10,827,147.00 from new investors and used $918,391.00 to pay previous investors.

18. Based upon the books and records of deeproot Funds, LLC, the entity only had $865 in income (beyond investor deposits) during the nine years of its existence. Policy Services, Inc. had only minimal revenue from the time of its inception in 2012.

19. On the Petition Date, the deeproot Entities each filed for relief under title 11 of the United States Code. The Bankruptcy Cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523.

20. On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of the Debtors' jointly administered Bankruptcy Cases.

B. **The Legal Advice**

21. At all relevant times, the deeproot Entities were represented by CPM through two of its securities law attorneys, Federico and Concilla. CPM was initially engaged to represent Policy Services in 2013, but Concilla has testified that the representation extended to the rest of the deeproot Entities as time went on. According to Mueller, as principal of Policy Services he communicated extensively with Concilla and Federico, he did not hide anything from the attorneys, and the attorneys were fully apprised of Mueller's plans for how to structure the pooled funds. Mueller relied on the legal advice provided by Federico and Concilla to draft an S-1 for filing with the SEC, as well as private placement memoranda ("**PPMs**") for the dGRD Fund and the 575 Fund.

22. Mueller has testified that he explained to Federico and Concilla that his plan was to raise money by selling fractionalized interests in life insurance policies to investors, with the added wrinkle that the investment fund into which investors' money would be placed would not actually own or hold the life insurance policies. This fact was omitted from the PPMs. Further, Mueller told Concilla and Federico that his intention was to pay previous investors from new

7

investor money. Mueller has testified that in response, Concilla responded that all "money is fungible," and did not advise Mueller of the risks associated with this method of handling investor funds. To the contrary, Mueller has stated that the attorneys continuously, throughout the representation, advised him that it was permissible to pay existing investors with new investor investments.

23. Mueller has testified that Concilla and Federico used intentionally broad language when they drafted a portion of the PPMs referencing how investor funds would be used. Specifically, they used the term "nominal administration expenses," knowing that payments to prior investors would be categorized as "nominal administration funds."

24. Concilla and Federico, under supervision of CPM, knew or should have known that Mueller was devising an illegal Ponzi scheme and was failing to disclose material information to investors and investment advisors/finders. The legal advice provided to the deeproot Entities fell far below the standard of care.

C. **Timeliness of the Trustee's Claims**

25. The Trustee's claim herein is subject to the discovery rule. The statute of limitations began to run no earlier the date that the Debtors could have discovered the injury caused by the legal advice given by CPM, Concilla, and Federico, which occurred when the SEC began its investigation. Because the statute of limitations had not run as of the Petition Date, pursuant to 11 U.S.C. § 108, the Trustee had two years from the Petition Date to file suit.

V. **CAUSE OF ACTION**

26. The Trustee brings this adversary proceeding to recover monetary damages on behalf of the jointly administered bankruptcy estates.

27. Paragraphs 1 through 26 are incorporated by reference into the cause of action that follows.

**Count 1 – Legal Malpractice**

28. In or about April of 2013, by and through its principal Mueller, Policy Services retained Concilla and Federico, attorneys at CPM, to represent it with respect to securities law matters, including drafting an S-1 for filing with the SEC and developing PPMs and other investor presentations for the dGRD Fund and the 575 Fund. Sometime later, the representation extended to the remaining deeproot Entities and to broader advice.

29. Defendants, as counsel to the deeproot Entities, owed the deeproot Entities a duty to exercise the standard of care that would be exercised by a reasonably prudent attorney.

30. Defendants breached their duty to the deeproot Entities by engaging in negligent acts or omissions, as described in more detail above. For example, Defendants did not adequately advise the deeproot Entities of the risks associated with investment funds selling fractionalized interests in life insurance policies that the funds did not actually own. Defendants further failed to adequately advise the deeproot Entities of the consequences associated with paying previous investors from the same pool that included new investor funds. Defendants failed to advise the deeproot Entities to employ safeguards to ensure that there was sufficient non-investor money to cover obligations or returns and to ensure that the representations made in the PPMs and other marketing materials were accurate.

31. Each of the above acts demonstrate that Defendants did not act with the diligence required under the proper standard of care and/or that they lacked the minimum degree of skill, prudence, and knowledge.

32. Defendants' breach was the proximate cause of injury to the deeproot Entities. The breach enabled the deeproot Entities to be operated by Mueller as a Ponzi scheme and, more generally, enabled Mueller's misappropriation and misuse of investor funds. Defendants' breach allowed the deeproot Entities to operate without sufficient non-investor money to cover obligations (such as required premium payments on the life insurance policies) or promised returns and to ensure that the representations made in the PPMs and other marketing materials were accurate. Defendants' breach enabled the 575 Fund and dGRD Fund to sell fractionalized interests in life insurance policies that those entities did not own, all but ensuring that the funds would fail. Generally, Defendants' breach allowed the deeproot Entities to engage in securities fraud, take in millions of dollars in investments from unsuspecting investors who would lose their investments, and end up in bankruptcy where the investors would receive pennies on the dollar.

33. Debtors suffered damages due to Defendants' above negligent acts or omissions.

34. The Trustee is thus entitled to recover, for the benefit of the Debtors' jointly administered estates, actual damages, punitive damages, prejudgment interest, postjudgment interest, and costs of court.

## VI. PRAYER

WHEREFORE, JOHN PATRICK LOWE, Chapter 7 Trustee for the jointly administered bankruptcy cases of deeproot Capital Management, LLC, prays for judgment in favor of the Chapter 7 Trustee against Defendants Carlile Patchen & Murphy LLP, Dennis J. Concilla, and Andrew J. Federico on all claims and relief sought herein, including but not limited to:

    a.    Actual damages;
    b.    Punitive damages;
    c.    Pre-judgment interest at the highest rate allowed by law;

d. Post-judgment interest at the highest rate allowed by law from the date of judgment until paid;

e. Costs of court; and

f. Such other relief as is just and proper.

Dated: December 8, 2023

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: */s/ Randall A. Pulman*
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Leslie Sara Hyman
Texas State Bar No. 00798274
lhyman@pulmanlaw.com
Anna K. MacFarlane
Texas State Bar No. 24116701
amacfarlane@pulmanlaw.com

**ATTORNEYS FOR JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.**

11

**FORM 104 (10/06)**

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** <br> John Patrick Lowe, Chapter 7 Trustee | **DEFENDANTS** <br> Carlile Patchen & Murphy, LLP, et al. |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> Pulman Cappuccio & Pullen, LLP (210) 222-9494 <br> 2161 NW Military Hwy., #400, San Antonio, TX 78213 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) <br> ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor   ☐ Other <br> ☒ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor   ☒ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Carlile Patchen & Murphy, by and through Concilla and Federico, provided Debtor(s) with legal advice far beneath the standard of care. Trustee seeks to recover monetary damages for legal malpractice.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other   **[1]**

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $   Unliquidated |

Other Relief Sought

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>deeproot Capital Management, LLC, et al. ||| BANKRUPTCY CASE NO.<br>21-51523 |
| DISTRICT IN WHICH CASE IS PENDING<br>Western Texas || DIVISIONAL OFFICE<br>San Antonio | NAME OF JUDGE<br>Michael M. Parker |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT || ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING || DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] ||||
| DATE<br>12/08/23 || PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Randall A. Pulman ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.