IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT
UNDER BANKRUPTCY RULE 9019 WITH RD&J, INC., ROGER W. JONES, INF SOLUTIONS, LLC,
RAPHAEL VALLIER, SCOTT MILBOURNE, FINANCIAL HORIZON CONCEPTS, LLC, PAUL
BURKE, JACQUELIN FARRAR, BRADFORD FARRAR, MICHAEL L. CALES, SR., DENNIS WIRTH
D/B/A FIRST FIDELITY TAX & INSURANCE OF HOUSTON, SAFE MONEY SOLUTIONS, HOLLIE
GANDY-DONOHUE, BLANCHARD & ASSOCIATES, INC., HUNTER BOAZ BLANCHARD,
JACK GARY NACE II, AND JPMORGAN CHASE BANK, N.A.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU
OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY
TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU
MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE
AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON
YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.
IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT
REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE
PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE MICHAEL M. PARKER, UNITED STATES BANKRUPTCY JUDGE:

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of
each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc., 21-51513* (2864); *In Re:
Wizard Mode Media, LLC*, 21-51514 (3205); *In Re: deeproot Pinball LLC*, 21-51515 (0320); *In Re:
deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046); *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404);
*In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731); *In Re: deeproot Bonus Growth
5 Year Debenture Fund, LLC*, 21-51519 (9661); *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot
Funds LLC*, 21-51521 (9404); *In Re: deeproot Studios LLC*, 21-51522 (6283); and *In Re: deeproot Capital
Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

1

Plaintiff John Patrick Lowe, the Chapter 7 Trustee (the "**Trustee**") for the jointly administered Bankruptcy Cases of deeproot Capital Management, LLC et al. ("**deeproot**"),[2] by and through his undersigned counsel Pulman, Cappuccio & Pullen, LLP, hereby files this *Motion to Approve Compromise and Settlement Under Bankruptcy Rule 9019 with RD&J, Inc., Roger W. Jones, INF Solutions, LLC, Raphael Vallier, Scott Milbourne, Financial Horizon Concepts, LLC, Paul Burke, Jacquelin Farrar, Bradford Farrar, Michael L. Cales, Sr., Dennis Wirth d/b/a First Fidelity Tax & Insurance of Houston, Safe Money Solutions, Hollie Gandy-Donohue, Blanchard & Associates, Inc., Hunter Boaz Blanchard, Jack Gary Nace, II, JPMorgan Chase Bank, N.A.* (the "**Motion**"), and in support respectfully shows the Court as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

2.      The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## II.  SUMMARY OF RELIEF REQUESTED

3.      The Trustee requests approval by the Court to enter into and confirm the nine settlements with eight finders and one vendor described below. Attached hereto as Exhibit A is the proposed order on the Motion.

   a.      RD&J, Inc. and its principal Roger W. Jones, finders, has agreed to pay $6,000.00 to the Trustee secured by an Agreed Final Judgment, in exchange for a release

---

[2] Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech LLC, deeproot Funds, LLC, deeproot Studios, LLC, and deeproot Capital Management, LLC are referred to herein as "**Debtors**" or the "**deeproot Entities**."

which is contained in the Settlement Agreement attached hereto as Exhibit B;

b.      INF Solutions, LLC and its principal Raphael Vallier, finders, have agreed to pay $10,000.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit C;

c.      Dennis Wirth d/b/a First Fidelity Tax & Insurance of Houston, a finder, has agreed to pay $15,000.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit D;

d.      Financial Horizon Concepts, LLC and its principal Paul Burke, finders, have agreed to pay $20,000.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit E;

e.      Michael L. Cales, Sr., a finder, has agreed to pay $7,500.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit F;

f.      Safe Money Solutions and its principal Hollie Gandy-Donohue, finders, have agreed to pay $3,000.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit G;

g.      Blanchard & Associates, Inc., and its principal Hunter Boaz Blanchard, a finder, have agreed to pay $3,000.00 to Trustee, secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit H.

h.      Jack Gary Nace II, a finder, has agreed to pay $10,000.00 to Trustee,

secured by an Agreed Final Judgment, in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit I;

i. JPMorgan Chase Bank, N.A., a vendor, has agreed to pay $135,000.00 to Trustee in exchange for a release which is contained in the Settlement Agreement attached hereto as Exhibit J.

### III. PROCEDURAL HISTORY

4. On December 9, 2021 (the "**Petition Date**"), each of the Debtors filed their respective voluntary petition under Chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"). The cases were ordered to be jointly administered under the lead case *In re: deeproot Capital Management, LLC*, 21-51523-mmp.

5. On or about December 21, 2021, John Patrick Lowe was appointed as Chapter 7 Trustee of all eleven bankruptcy cases comprising the jointly administered case. Doc. No. 19.

6. On or about December 7, 2022, the Trustee filed his Original Complaint against RD&J, Inc. ("**RD&J**") and Roger W. Jones ("**Jones,**" and, collectively, the "**RD&J Defendants**"), in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "**RD&J Adversary Proceeding**"). Adv. Proc. No. 22-05092-mmp.

7. On or about December 7, 2022, the Trustee filed his Original Complaint against Dennis Wirth d/b/a First Fidelity Tax & Insurance of Houston ("**Wirth**") in the Bankruptcy Court for the Western District of Texas (the "**Wirth Adversary Proceeding**"). Adv. Proc. No. 22-05095-mmp.

8. On or about December 7, 2022, the Trustee filed his Original Complaint against INF Solutions, LLC ("**INF**"), Raphael Vallier ("**Vallier**"), and Scott Milbourne ("**Milbourne,**"

4

and, collectively the "**INF Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**INF Adversary Proceeding**"). Adv. Proc. No. 22-05086-mmp.

9.       On or about December 7, 2022, the Trustee filed his Original Complaint against Financial Horizon Concepts, LLC ("**FHC**"), Paul Burke ("**Burke**"), Jacquelin Farrar ("**J. Farrar**"), and Bradford Farrar ("B. Farrar," and, collectively, the "**FHC Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**Financial Horizon Adversary Proceeding**").  Adv. Proc. No. 22-05085-mmp.

10.       On or about December 7, 2022, the Trustee filed his Original Complaint against Michael L. Cales, Sr. ("**Cales**") in the Bankruptcy Court for the Western District of Texas (the "**Cales Adversary Proceeding**"). Adv. Proc. No. 22-05084-mmp.

11.       On or about December 7, 2022, the Trustee filed his Original Complaint against Hollie Gandy-Donohue ("**Gandy-Donohue**") and Safe Money Solutions ("**SMS**," and, collectively, the "**SMS Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**SMS Adversary Proceeding**"). Adv. Proc. No. 22-05093-mmp.

12.       On or about January 31, 2023, the Trustee filed his Original Complaint against Blanchard & Associates, Inc. ("**B&A**") and Hunter Boaz Blanchard ("**Blanchard**" and, collectively, the "**Blanchard Defendants**") in the Bankruptcy Court for the Western District of Texas (the "**Blanchard Adversary Proceeding**"). Adv. Proc. No. 23-05022-mmp.

13.       On or about January 31, 2023, the Trustee filed his Original Complaint against Jack Gary Nace II ("**Nace**") in the Bankruptcy Court for the Western District of Texas (the "**Nace Adversary Proceeding**"). Adv. Proc. No. 23-05026-mmp.

14.     On or about April 20, 2023, the Trustee filed his Original Complaint against JPMorgan Chase Bank, N.A. ("**Chase Bank**") in the Bankruptcy Court for the Western District of Texas (the "**Chase Bank Adversary Proceeding**"). Adv. Proc. No. 23-05037-mmp.

15.     Attached hereto as <u>Exhibit B</u> is the executed settlement agreement with the RD&J Defendants (the "**RD&J Settlement Agreement**").

16.     Attached hereto as <u>Exhibit C</u> is the executed settlement agreement with the INF Defendants (the "**INF Settlement Agreement**").

17.     Attached hereto as <u>Exhibit D</u> is the executed settlement agreement with Wirth (the "**Wirth Settlement Agreement**").

18.     Attached hereto as <u>Exhibit E</u> is the executed settlement agreement with the FHC Defendants (the "**FHC Settlement Agreement**").

19.     Attached hereto as <u>Exhibit F</u> is the executed settlement agreement with Cales (the "**Cales Settlement Agreement**").

20.     Attached hereto as <u>Exhibit G</u> is the executed settlement agreement with the SMS Defendants (the "**SMS Settlement Agreement**").

21.     Attached hereto as <u>Exhibit H</u> is the executed settlement agreement with the Blanchard Defendants (the "**Blanchard Settlement Agreement**").

22.     Attached hereto as <u>Exhibit I</u> is the executed settlement agreement with Nace (the "**Nace Settlement Agreement**").

23.     Attached hereto as <u>Exhibit J</u> is the executed settlement agreement with Chase Bankj (the "**Chase Bank Settlement Agreement**").

4889-6661-1872, v. 2 / 1934.001

IV. <u>FACTUAL BACKGROUND</u>

a.     <u>Allegations against RD&J Defendants in Trustee's Original Complaint</u>

24.     In Trustee's Original Complaint against the RD&J Defendants, the Trustee alleged that the RD&J Defendants located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From August 2, 2016 to June 8, 2017, RD&J received $32,500.00 from Policy Services, Inc. (the "**RD&J Transfers**"). Policy Services, Inc.'s books and records reveal that the RD&J Transfers were booked as "Finder Fees." Jones, as the principal of RD&J, was the individual for whose benefit the RD&J Transfers were made.

25.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to the RD&J Defendants constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to the RD&J Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

26.     In connection with settlement negotiations, the RD&J Settlement Agreement was prepared and executed by the Trustee and the RD&J Defendants. Exhibit B.

b.     <u>Allegations against INF Defendants in Trustee's Original Complaint</u>

27.     In Trustee's Original Complaint against the INF Defendants, the Trustee alleged that the INF Defendants located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From July 13, 2016 to March 18, 2021, INF received $555,115.91 from Policy Services, Inc. (the "**INF Transfers**"). Policy Services, Inc.'s books and records reveal that the INF Transfers were booked as "Finders Fees." The Trustee further alleged that Vallier and Milbourne were the individuals for whose benefit the INF Transfers were made.

4889-6661-1872, v. 2 / 1934.001

28.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to INF constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to INF under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

29.     In connection with settlement negotiations between Trustee and the INF Defendants, a resolution was reached, and the INF Settlement Agreement was prepared and executed. Exhibit C.

**c.     Allegations against Wirth in Trustee's Original Complaint**

30.     In Trustee's Original Complaint against Wirth, the Trustee alleged that Wirth located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From January 29, 2015 and May 17, 2021, Wirth received $406,839.55 from Policy Services, Inc. (the "**Wirth Transfers**"). Policy Services, Inc.'s books and records reveal that the Wirth Transfers were booked as "Finder Fees."

31.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to Wirth constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to Wirth under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

32.     In connection with settlement negotiations, the Wirth Settlement Agreement was prepared and executed by the Trustee and Wirth. Exhibit D.

**d.     Allegations against the FHC Defendants in Trustee's Original Complaint**

8

33.     In Trustee's Original Complaint against the INF Defendants, the Trustee alleged that the FHC Defendants located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From July 17, 2015 and July 15, 2021, FHC received $818,596.30 from Policy Services, Inc. (the "**FHC Transfers**"). Policy Services, Inc.'s books and records reveal that the FHC Transfers were booked as "Finders Fees." The Trustee further alleged that Burke, J. Farrar, and B. Farrar were the individuals for whose benefit the FHC Transfers were made.

34.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to FHC constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to FHC under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

35.     In connection with settlement negotiations between Trustee and the FHC Defendants, a resolution was reached, and the FHC Settlement Agreement was prepared and executed. Exhibit E.

**e.     <u>Allegations against Cales in Trustee's Original Complaint</u>**

36.     In Trustee's Original Complaint against Cales, the Trustee alleged that Cales located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From July 7, 2016 to November 7, 2017, Cales received $74,500.00 from Policy Services, Inc. (the "**Cales Transfers**"). Policy Services, Inc.'s books and records reveal that the Cales Transfers were booked as "Finders Fees."

37.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to Cales constituted fraudulent transfers under

9

the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to Cales under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

38.     In connection with settlement negotiations between Trustee and Cales, a resolution was reached, and the Cales Settlement Agreement was prepared and executed. Exhibit F.

**f.     Allegations against the SMS Defendants in Trustee's First Amended Complaint**

39.     In Trustee's First Amended Complaint against the SMS Defendants, the Trustee alleged that the SMS Defendants located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From March 6, 2018 to June 24, 2020, SMS received $26,000.00 from Policy Services, Inc. (the "**SMS Transfers**"). Policy Services, Inc.'s books and records reveal that the Cales Transfers were booked as "Finders Fees." As the principal of SMS, Gandy-Donohue was the individual for whose benefit the SMS Transfers were made.

40.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to SMS constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to SMS under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

41.     In connection with the negotiations, the Trustee and the SMS Defendants have reached a resolution and the SMS Settlement Agreement was prepared and executed by the Trustee and the SMS Defendants. Exhibit G.

**g.     Allegations against the Blanchard Defendants in Trustee's Original Complaint**

42.     In Trustee's Original Complaint against the Blanchard Defendants, the Trustee alleged that the Blanchard Defendants located new investors for deeproot Funds, LLC and received

10

payments from Policy Services, Inc. in exchange. On June 18, 2019, B&A received $6,500.00 from Policy Services, Inc. (the "**Blanchard Transfers**"). Policy Services, Inc.'s books and records reveal that the Blanchard Transfers were booked as "Finders Fees." As the principal of B&A, Blanchard was the individual for whose benefit the SMS Transfers were made.

43.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to B&A constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover monies transferred to the Blanchard Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

44.     In connection with settlement negotiations between Trustee and the Blanchard Defendants, a resolution was reached, and the Blanchard Settlement Agreement was prepared and executed. Exhibit H.

**h.     Allegations against Nace in Trustee's Original Complaint**

45.     In Trustee's Original Complaint against Nace, the Trustee alleged that Nace located new investors for deeproot Funds, LLC and received payments from Policy Services, Inc. in exchange. From June 3, 2020 and June 8, 2021, Nace received $137,917.44 from Policy Services, Inc. (the "**Nace Transfers**"). Policy Services, Inc.'s books and records reveal that the Nace Transfers were booked as "Finders Fees."

46.     In his Original Complaint, the Trustee alleges that the deeproot Entities were operated as a Ponzi scheme and that the monies paid to Nace constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover

11

monies transferred to Nace under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at Chapter 24 of the Texas Business and Commerce Code.

47.     In connection with settlement negotiations between Trustee and Nace, a resolution was reached, and the Nace Settlement Agreement was prepared and executed. Exhibit I.

**i.     Allegations against Chase Bank in Trustee's First Amended Complaint**

48.     The Trustee's Original Complaint against Chase Bank alleges that Robert J. Mueller, the principal of all of the deeproot Entities, used the invested money to fund his lavish lifestyle. Specifically, from August 12, 2019 to January 12, 2017, $177,758.40 (the "**Mueller Transfers**") was charged by Mueller to a Southwest Rapid Rewards Card, account ending -7864, issued to Robert J. Muller in his individual capacity (the "**Chase Bank Card**").  Mueller paid Chase Bank for the personal expenses he charged to the Chase Bank Card using Debtor, Policy Services' bank account. Policy Services received nothing of value in return for the payments made to Chase Bank from Policy Services' bank accounts.

49.     In his Original Complaint against Chase Bank, the Trustee alleged that the deeproot Entities were operated as a Ponzi scheme and that the funds paid to Chase Bank from Policy Services' bank accounts were avoidable as actually and constructively fraudulent transfers. The Trustee brought claims to avoid and recover the Mueller Transfers from Chase Bank under 11 U.S.C. §§ 544(b), 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

50.     After lengthy settlement discussions, the Trustee and Chase Bank reached an agreement to resolve the dispute. In connection with these negotiations, the Chase Bank Settlement Agreement was prepared and executed by the Trustee and Chase Bank. Exhibit J.

## V.  PROPOSED SETTLEMENTS

### a.  Trustee's Settlement Agreement with the RD&J Defendants

51.     The Trustee and the RD&J Defendants have agreed to settle the dispute without further litigation pursuant to the following terms. the RD&J Defendants have agreed to pay a total of $6,000.00 (the "**RD&J Settlement Amount**") to Trustee in exchange for release of the Trustee's and the Bankruptcy Estates' claims against the RD&J Defendants related to the RD&J Transfers or any other transactions between the RD&J Defendants and the Debtors. The Trustee has agreed to accept the RD&J Settlement Amount in four consecutive equal payments in the amount of $1,500.00. The first payment has already been made to the Trustee together with the execution of the RD&J Settlement Agreement. As security for the RD&J Settlement Amount, the RD&J Defendants have executed an Agreed Final Judgment for the full amount of the RD&J Transfers which will be filed in the event of default.

52.     The RD&J Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided.

### b.  Trustee's Settlement with the INF Defendants

53.     The Trustee has agreed to accept payment of $10,000.00 from the INF Defendants in exchange for releasing his claims against the INF Defendants in the INF Adversary Proceeding (the "**INF Settlement Amount**"). The Trustee has agreed to accept the INF Settlement Amount in six (6) installments. The first payment in the amount of $2,500.00 has already been made to the Trustee together with the execution of the INF Settlement Agreement. The remaining five (5) installments shall be in the equal amount of $1,500.00. The Trustee has also agreed to release his claims against Milbourne because Milbourne received no commission payments from the sale of deeproot products. As security for the INF Settlement Amount, the INF Defendants have executed

13

an Agreed Final Judgment for the full amount of the INF Transfers which will be filed in the event of default.

54.     The INF Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**c.  Trustee's Settlement with Wirth**

55.     The Trustee has accepted payment of $15,000.00 from Wirth in exchange for releasing his claims against the Wirth in the Wirth Adversary Proceeding (the "**Wirth Settlement Amount**"). The Trustee has agreed to accept the Wirth Settlement Amount in six (6) consecutive monthly payments in the amount of $2,500.00. The first payment has already been made to the Trustee together with the execution of the Wirth Settlement Agreement. As security for the Wirth Settlement Amount, Wirth has executed an Agreed Final Judgment for the full amount of the Wirth Transfers which will be filed in the event of default.

56.     The Wirth Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**d.  Trustee's Settlement with the FHC Defendants**

57.     The Trustee has agreed to accept payment of $20,000.00 from the FHC Defendants in exchange for releasing his claims against the FHC Defendants in the FHC Adversary Proceeding (the "**FHC Settlement Amount**"). The Trustee has agreed to accept the FHC Settlement Amount in eight (8) consecutive monthly payments in the amount of $2,500.00. The first payment has already been made to the Trustee together with the execution of the FHC Settlement Agreement. As security for the FHC Settlement Amount, the FHC Defendants have executed an Agreed Final Judgment for the full amount of the FHC Transfers which will be filed in the event of default.

4889-6661-1872, v. 2 / 1934.001

58.     The FHC Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**e.   Trustee's Settlement with Cales**

59.     The Trustee has accepted payment of $7,500.00 from Cales in exchange for releasing his claims against Cales in the Cales Adversary Proceeding (the "**Cales Settlement Amount**"). The Trustee has agreed to accept the Cales Settlement Amount in six (6) consecutive equal payments in the amount of $1,250.00. The first payment has already been made to the Trustee together with the execution of the Cales Settlement Agreement. As security for the Cales Settlement Amount, Cales has executed an Agreed Final Judgment for the full amount of the Cales Transfers which will be filed in the event of default.

60.     Cales agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

**f.   Trustee's Settlement with the SMS Defendants**

61.     The Trustee has agreed to accept payment of $3,000.00 from the SMS Defendants in exchange for releasing his claims against the SMS Defendants (the "**SMS Settlement Amount**"). The SMS Defendants have agreed to pay the SMS Settlement Amount in two monthly payments of $1,500.00. The first payment has already been made to the Trustee together with the execution of the SMS Settlement Agreement. As security for the SMS Settlement Amount, the SMS Defendants have executed an Agreed Final Judgment for the full amount of the SMS Transfers which will be filed in the event of default.

62.     The SMS Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

4889-6661-1872, v. 2 / 1934.001

### g. **Trustee's Settlement with the B&A Defendants**

63.     The Trustee has agreed to accept payment of $3,000.00 from the B&A Defendants in exchange for releasing his claims against the B&A Defendants in the B&A Adversary Proceeding (the "**B&A Settlement Amount**"). The Premier Group Settlement Amount will be paid in one lump-sum payment in the amount of $3,000.00 to the Trustee. The full amount has already been paid to the Trustee together with the execution of the B&A Settlement Agreement. In the event the Court does not approve the compromise, the Trustee will return any amounts already received of the B&A Settlement Amount to the B&A Defendants.

64.     The B&A Defendants agree to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

### h. **Trustee's Settlement with Nace**

65.     The Trustee has agreed to accept payment of $10,000.00 from Nace in exchange for releasing his claims against Nace in the Nace Adversary Proceeding (the "**Nace Settlement Amount**"). The Nace Settlement Amount will be paid in nine (9) monthly payments to the Trustee. The first payment in the amount of $2,000.00 has already been made to the Trustee together with the execution of the Nace Settlement Agreement. The remaining eight (8) payments in the amount of $1,000.00 each will follow on a monthly basis. As security for the Nace Settlement Amount, the Nace Defendants have executed an Agreed Final Judgment for the full amount of the Nace Transfers which will be filed in the event of default.

66.     Nace agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

i.  **Trustee's Settlement with Chase Bank**

67.     The Trustee has agreed to accept payment of $135,000.00 from Chase Bank in exchange for releasing his claims against Chase Bank in the Chase Bank Adversary Proceeding (the "**Chase Bank Settlement Amount**"). The Chase Bank Settlement Amount will be paid in one lump sum within 30 days of the effective date of the Chase Bank Settlement Agreement.

68.     Chase Bank agrees to toll the statutes of limitation until the settlement becomes effective or is voided due to lack of court approval.

## VI. <u>REQUESTED RELIEF</u>

69.     Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the Court has discretionary authority to approve a compromise or settlement. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972); *In re Continental Airlines Corp.*, 907 F.2d 1500 (5th Cir. 1990). Whether to approve a proposed compromise is a matter within the discretion of the bankruptcy court. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984). Bankruptcy settlements "are a normal part of the process of reorganization" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly." *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

70.     According to the Fifth Circuit, in deciding whether to approve a settlement, a bankruptcy court should evaluate the following: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). This standard seeks to balance the risks and benefits

17

associated with pursuing a potential claim against the costs associated with the proposed settlement.

### a. Probability of Success with Due Consideration for Uncertainties in Law and Fact

71. The Trustee is confident that he would ultimately prevail in his claims against the RD&J Defendants, the INF Defendants, Wirth, the FHC Defendants, Cales, the SMS Defendants, the B&A Defendants, Nace, and Chase Bank. However, as with all litigation, there is never any guarantee of success.

72. Here, the RD&J Defendants, the INF Defendants, Wirth, the FHC Defendants, Cales, the SMS Defendants, the B&A Defendants, and Nace have provided financial documents for the Trustee's examination. Upon examining the documents and records, the Trustee has determined that the RD&J Defendants, the INF Defendants, Wirth, the FHC Defendants, Cales, the SMS Defendants, the B&A Defendants, and Nace are impecunious and insolvent. While the Trustee is confident that he would ultimately prevail in these lawsuits, settling the cases at this point is in the best interest of the estate.

73. Additionally, Chase Bank has agreed to pay the amount of cash needed to compensate unsecured creditors the same or more of what they would receive if the Trustee decided to pursue the claims asserted against Chase Bank in the adversary proceeding, particularly given the information learned by the Trustee during the negotiations. Given the fact that the Trustee has a heavier burden of proof on intent to defraud and Chase Bank is well versed and well capitalized defendant, the Trustee has weighed those considerations and decided to compromise. Chase Bank has agreed to pay the amount of cash needed to compensate unsecured creditors an amount which is within the range of the Policy Services Estate would receive if the Trustee decided to pursue the claims asserted against Chase Bank in the adversary proceeding.

**b.        Complexity, Duration and Expense of Continued Litigation**

74.        Prosecuting the pending adversary proceedings against RD&J Defendants, the INF

Defendants, Wirth, the FHC Defendants, Cales, the SMS Defendants, the B&A Defendants, Nace,

and Chase Bank would entail the Bankruptcy Estate incurring additional administrative expenses

in a range between $50,000.00 and $100,000.00 in each of the adversary proceedings through a

trial.    The Trustee's settlements with RD&J Defendants, the INF Defendants, Wirth, the FHC

Defendants, Cales, the SMS Defendants, the B&A Defendants, Nace, and Chase Bank provide for

the transfer of the Bankruptcy Estate's interest in deeproot Funds, LLC and Policy Services, Inc.'s

property, and assures recovery to unsecured creditors through a cash payment to the Bankruptcy

Estates without the need for further litigation. The settlements were reached before extensive

discovery, and without the need to incur additional costs for litigating a lawsuit, including further

written discovery, depositions, trials, and appeals. Given the face value of the claims, the amount

of the settlement proceeds, collectability issues, and the costs associated with continued litigation

against multiple defendants, the Trustee believes it is in the best interests of the Bankruptcy Estates

to enter into the RD&J Settlement Agreement, the INF Settlement Agreement, the Wirth

Settlement Agreement, the FHC Settlement Agreement, the Cales Settlement Agreement, the SMS

Settlement Agreement, the B&A Settlement Agreement, the Nace Settlement Agreement, and the

Chase Bank Settlement Agreement in exchange for release of claims.

**c.        Wisdom of the Compromises**

75.        Whether a settlement is a product of arm's length negotiation is a factor bearing on

the wisdom of a proposed compromise. *Conn. Gen. Life Ins. Co.*, 68 F.3d at 918. Generally, the

role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement

4889-6661-1872, v. 2 / 1934.001

agreement. Instead, the bankruptcy court should determine whether the agreement is fair and equitable and in the best interest of the estate. *Id.* at 917.

76.     The proposed RD&J Settlement Agreement, INF Settlement Agreement, Wirth Settlement Agreement, FHC Settlement Agreement, Cales Settlement Agreement, SMS Settlement Agreement, B&A Settlement Agreement, and Nace Settlement Agreement are the result of arms' length negotiations between the Trustee and counsel for each of the aforementioned defendants. Each of these eight defendants are represented by the same attorneys, who negotiated at length with Trustee's counsel to settle the disputes without further litigation. During the negotiations, each of the eight defendants provided detailed financial records for the Trustee's examination. Based on his examination, the Trustee has concluded that all of these defendants are insolvent and impecunious. It is the Trustee's business judgment to settle these cases without pursuing further litigation because there is little to no likelihood of obtaining a better financial result for the Bankruptcy Estate by proceeding through trial.

77.     The proposed Chase Bank Settlement Agreement is the result of arm's length negotiations between the Trustee and Chase Bank and reflects a fair compromise of the Trustee's and Bankruptcy Estate's claims against Chase Bank. A resolution by agreement of 75% of the claim is a good outcome for the Bankruptcy Estate.  Chase Bank has been represented by able counsel throughout this case, as has the Trustee, who conferred with Chase Bank's counsel and considered this compromise after conferring extensively with his own attorneys. The Trustee and his counsel have undertaken an analysis of the claims being settled, and it is the Trustee's business judgment that the settlement is in the best interest of the Bankruptcy Estate and its creditors. Incurring any additional attorneys' fees in pursuing these claims to recoup more than a 75% recovery would not be a prudent use of Bankruptcy Estate funds.

20

WHEREFORE, the Trustee respectfully requests that the Court enter an order approving the RD&J Settlement Agreement, INF Settlement Agreement, Wirth Settlement Agreement, FHC Settlement Agreement, Cales Settlement Agreement, SMS Settlement Agreement, B&A Settlement Agreement, Nace Settlement Agreement, and the Chase Bank Settlement Agreement as set forth herein, and grant such other and further relief, at law or in equity, as the Court deems to be just, proper, and equitable.

Dated: February 2, 2024

Respectfully submitted,

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
www.pulmanlaw.com
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By:  */s/ Randall A. Pulman*
     Randall A. Pulman
     Texas State Bar No. 16393250
     rpulman@pulmanlaw.com
     Anna K. MacFarlane
     Texas State Bar No. 24116701
     amacfarlane@pulmanlaw.com


**ATTORNEYS FOR JOHN PATRICK LOWE, PLAINTIFF AND CHAPTER 7 TRUSTEE FOR THE JOINTLY ADMINISTERED BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.**

21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2024, a true and correct copy of the foregoing document has been furnished via electronic mail to all parties receiving notice by CM/ECF, as set forth below, and via the methods indicated on the "parties in interest" also listed below; a copy will also be mailed to the parties on the limited service list in this matter, and a supplemental certificate of service will be filed evidencing such service.

**Via CM/ECF:** *pat.lowe.law@gmail.com*
John Patrick Lowe
2402 East Main Street
Uvalde, TX 78801

**Via CM/ECF:**
*USTPRegion07.SN.ECF@usdoj.gov*
*Aubrey.thomas@usdoj.gov*
United States Trustee - SA12/ A. Thomas
615 E Houston, Suite 533
San Antonio, TX 78295-1539

**Via CM/ECF:** *dodda@sec.gov*
Angela D. Dodd
U. S. Securities and Exchange Commission
175 Jackson Blvd. Suite 900
Chicago, IL 60604

**Via Counsel email:**
*catherine.curtis@wickphillips.com*
*;jason.rudd@wickphillips.com*
Policy Services, Inc.
deeproot Pinball, LLC
deeproot Growth Runs Deep Fund, LLC
deeproot 575 Fund, LLC
deeproot 3 Year Bonus Income Fund, LLC
deeproot BonusGrowth 5 Year Debenture Fund, LLC
deeproot Tech, LLC
deeproot Funds, LLC
deeproot Studios, LLC
deeproot Capital Management, LLC
12621 Silicon Dr.
San Antonio, TX 78249

**Via Counsel Via CM/ECF:**
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Wizard Mode Media, LLC
12227 S. Business Park Drive, Suite 130
Draper, UT 84020

**Via CM/ECF:**
*catherine.curtis@wickphillips.com;*
*jason.rudd@wickphillips.com*
Catherine A. Curtis/Jason M. Rudd
WICK PHILLIPS GOULD & MARTIN, LLP
3131 McKinney Ave, Suite 500
Dallas, TX 75204

**Via CM/ECF:** *don.stecker@lgbs.com*
Don Stecker
Linebarger Goggan et al.
112 E. Pecan, Suite 2200
San Antonio, TX 78205

**Via CM/ECF:** *rbattaglialaw@outlook.com*
Raymond W. Battaglia
LAW OFFICES OF RAY BATTAGLIA, PLLC
66 Granburg Circle
San Antonio, TX 78218

**Via CM/ECF:** *jpetree@mcslaw.com*
Jonathan Petree
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street Suite 2200
Dallas, TX 75201

**Via CM/ECF:** *jdunne@smfadlaw.com*
John C. Dunne
SHANNON, MARTIN et al.
1001 McKinney Street #1100
Houston, TX 77002

**Via CM/ECF:** *bk-cmurphy@oag.texas.gov*
Texas Workforce Commission
c/o Christopher S. Murphy
TEXAS ATTORNEY GENERAL'S OFFICE
PO Box 12548
Austin, TX 78711

4889-6661-1872, v. 2 / 1934.001

***Via CM/ECF:  pautry@branscomblaw.com***
Patrick H. Autry
BRANSCOMB PLLC
4630 N. Loop 1604 West, Suite 206
San Antonio, TX 78249

***Via CM/ECF:  lmjurek@jureklaw.com***
Lynne M. Jurek
THE JUREK LAW GROUP, PLLC
4309 Yoakum Blvd.
Houston, TX  77006

***Via CM/ECF:***
***stephen.humeniuk@lockelord.com***
Stephen J. Humeniuk
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701

***Via CM/ECF: tcunningham@lockelord.com***
Thomas J. Cunningham
Locke Lord LLP
777 South Flagler Drive #215
West Palm Beach, FL  33401

***Via CM/ECF:***
***jkathman@spencerfane.com;***
***msegura@spencerfane.com***
Jason Kathman
Misty Segura
Spencer Fane, LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024

**And to the following parties-in-interest via the method indicated:**

***Via email: hjobe@qslwm.com***
Hudson Jobe
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

***Via email: pcarothers@ch-legal.com***
Patrick W. Carothers
CAROTHERS & HAUSWIRTH, LLP
700 Milam Street, Suite 1300
Houston, Texas 77002

***Via email: ghauswirth@ch-legal.com***
Gregory W. Hauswirth
CAROTHERS & HAUSWIRTH, LLP
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220

*/s/ Randall A. Pulman*
Randall A. Pulman

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC, | § | |
| ET AL.,[1] | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | LEAD CASE |
| DEBTORS. | § | JOINTLY ADMINISTERED |

**ORDER GRANTING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT UNDER BANKRUPTCY RULE 9019 WITH RD&J, INC., ROGER W. JONES, INF SOLUTIONS, LLC, RAPHAEL VALLIER, SCOTT MILBOURNE, FINANCIAL HORIZON CONCEPTS, LLC, PAUL BURKE, JACQUELIN FARRAR, BRADFORD FARRAR, MICHAEL L. CALES, SR., DENNIS WIRTH D/B/A FIRST FIDELITY TAX & INSURANCE OF HOUSTON, SAFE MONEY SOLUTIONS, HOLLIE GANDY-DONOHUE, BLANCHARD & ASSOCIATES, INC., HUNTER BOAZ BLANCHARD, JACK GARY NACE II, AND JPMORGAN CHASE BANK, N.A.**

On this date came on to be considered the *Trustee's Motion to Approve Compromise and Settlement under Bankruptcy Rule 9019 with RD&J, Inc., Roger W. Jones, INF Solutions, LLC, Raphael Vallier, Scott Milbourne, Financial Horizon Concepts, LLC, Paul Burke, Jacquelin*

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc., 21-51513* (2864); *In Re: Wizard Mode Media, LLC,* 21-51514 (3205); *In Re: deeproot Pinball LLC,* 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC,* 21-51516 (8046); *In Re: deeproot 575 Fund, LLC,* 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC,* 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC,* 21-51519 (9661); *In Re: deeproot Tech LLC,* 21-51520 (9043); *In Re: deeproot Funds LLC,* 21-51521 (9404); *In Re: deeproot Studios LLC,* 21-51522 (6283); and *In Re: deeproot Capital Management, LLC,* 21-51523 (2638) (collectively, the "**Bankruptcy Estates**").

1 of 6

*Farrar, Bradford Farrar, Michael L. Cales, Sr., Dennis Wirth d/b/a First Fidelity Tax & Insurance of Houston, Safe Money Solutions, Hollie Gandy-Donohue, Blanchard & Associates, Inc., Hunter Boaz Blanchard, Jack Gary Nace, II, JPMorgan Chase Bank, N.A.* (the "**Motion**").[2]  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iii) the relief requested in the Motion is in the best interests of deeproot Funds, LLC, its Bankruptcy Estate, and the creditors; (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and (v) good and sufficient cause exists for the granting of the relief requested.

**I**T IS **T**HEREFORE **O**RDERED that the RD&J Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit B, and the Motion are, in all things, **A**PPROVED.

**O**RDERED that the INF Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit C, and the Motion are, in all things, **A**PPROVED. It is further

**O**RDERED that the Wirth Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit D, and the Motion are, in all things, **A**PPROVED. It is further

**O**RDERED that the FHC Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit E, and the Motion are, in all things, **A**PPROVED. It is further

**O**RDERED that the Cales Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit F, and the Motion are, in all things, **A**PPROVED. It is further

**O**RDERED that the SMS Settlement Agreement incorporated by reference herein and attached to the Motion as Exhibit G, and the Motion are, in all things, **A**PPROVED. It is further

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

4895-0049-5777, v. 1/1934.001

ORDERED that the B&A Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit H,</u> and the Motion are, in all things, **APPROVED.** It is further

ORDERED that the Nace Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit I,</u> and the Motion are, in all things, **APPROVED.** It is further

ORDERED that the Chase  Bank Settlement Agreement incorporated by reference herein and attached to the Motion as <u>Exhibit J,</u> and the Motion are, in all things, **APPROVED.** It is further

ORDERED that Trustee and the RD&J Defendants are hereby authorized and directed to take any and all actions necessary to consummate the RD&J Settlement Agreement and conclude the transactions proposed in the Motion. It is further

ORDERED that Trustee and the INF Defendants are hereby authorized and directed to take any and all actions necessary to consummate the INF Settlement Agreement and conclude the transactions proposed in the Motion. It is further

ORDERED that Trustee and Wirth are hereby authorized and directed to take any and all actions necessary to consummate the Wirth Settlement Agreement and conclude the transactions proposed in the Motion. It is further

ORDERED that Trustee and the FHC Defendants are hereby authorized and directed to take any and all actions necessary to consummate the FHC Settlement Agreement and conclude the transactions proposed in the Motion. It is further

ORDERED that Trustee and Cales are hereby authorized and directed to take any and all actions necessary to consummate the Cales Settlement Agreement and conclude the transactions proposed in the Motion. It is further

4895-0049-5777, v. 1/1934.001

**ORDERED** that Trustee and the SMS Defendants are hereby authorized and directed to take any and all actions necessary to consummate the SMS Financial Settlement Agreement and conclude the transactions proposed in the Motion. It is further

**ORDERED** that Trustee and the B&A Defendants are hereby authorized and directed to take any and all actions necessary to consummate the B&A Settlement Agreement and conclude the transactions proposed in the Motion. It is further

**ORDERED** that Trustee and Nace are hereby authorized and directed to take any and all actions necessary to consummate the Nace Settlement Agreement and conclude the transactions proposed in the Motion. It is further

**ORDERED** that Trustee and Chase Bank are hereby authorized and directed to take any and all actions necessary to consummate the Chase Bank Settlement Agreement and conclude the transactions proposed in the Motion. It is further

**ORDERED** that in the event the RD&J Settlement Agreement is voided by the Trustee or the RD&J Defendants, the Trustee shall file a notice with the Court that the RD&J Settlement Agreement is void and of no force and effect.  It is further

**ORDERED** that in the event the INF Settlement Agreement is voided by the Trustee or the INF Defendants, the Trustee shall file a notice with the Court that the INF Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the Wirth Settlement Agreement is voided by the Trustee or the Wirth, the Trustee shall file a notice with the Court that the Wirth Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the FHC Settlement Agreement is voided by the Trustee or the FHC Defendants, the Trustee shall file a notice with the Court that the FHC Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the Cales Settlement Agreement is voided by the Trustee or Cales, the Trustee shall file a notice with the Court that the Cales Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the SMS Settlement Agreement is voided by the Trustee or the SMS Defendants, the Trustee shall file a notice with the Court that the SMS Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the B&A Settlement Agreement is voided by the Trustee or the B&A Defendants, the Trustee shall file a notice with the Court that the B&A Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the Nace Settlement Agreement is voided by the Trustee or Nace, the Trustee shall file a notice with the Court that the Nace Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that in the event the Chase Bank Settlement Agreement is voided by the Trustee or Chase Bank, the Trustee shall file a notice with the Court that the Chase Bank Settlement Agreement is void and of no force and effect. It is further

**ORDERED** that this Court shall **RETAIN** jurisdiction to hear and determine all matters arising from the implementation of this Order.

# # #

**Submitted by:**
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
*ATTORNEYS FOR JOHN PATRICK LOWE,*
*CHAPTER 7 TRUSTEE FOR THE JOINTLY*
*ADMINISTERED BANKRUPTCY ESTATE OF*
*DEEPROOT CAPITAL MANAGEMENT, LLC, ET AL.*

4895-0049-5777, v. 1/1934.001

# EXHIBIT B

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of ___1/16/2024___ by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and RD&J, Inc. ("RD&J"), Roger W. Jones ("Jones" and, collectively with RD&J, the "Defendants", and collectively with the Trustee, the "Settling Parties").

## RECITALS

A. The Trustee alleges the following facts:

- Defendants entered into several Finder Agreements with deeproot Funds, LLC. Specifically, Jones signed five (5) Standard Four Month Finder Agreements, in his individual capacity, and one (1) Standard Six Month Finder Agreement on behalf of RD&J. The Finder Agreements provided that Defendants would receive Finder Fees in exchange for locating new investors. Between August 2, 2016 and June 8, 2017, RD&J received $32,500.00 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "RD&J Transfers"). Jones is the principal of RD&J and is the individual for whose benefit the RD&J Transfers were made.

B. On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C. On or about December 7, 2022, the Trustee filed his Original Complaint against the Defendants in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 22-05092-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to RD&J in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the RD&J Transfers from Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D. The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the RD&J Transfers, upon the terms and conditions set forth below.

E.      Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.      <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.      <u>Settlement Amount</u>.  Defendants shall pay Trustee a total of $6,000.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the RD&J Transfers.

3.      <u>Sequence of Payment</u>. Defendants agree to pay the Settlement Amount in four (4) equal installments. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, Defendants shall deliver to the Trustee the first installment in the amount of $1,500.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining three (3) monthly payments shall be in the amount of $1,500.00 made also in accordance with the payment instructions at Exhibit A.

4.      <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the RD&J Transfers that will be filed in the event that Defendants default under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Defendants default on paying the Settlement Amount within the agreed time periods above.

5.      <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.      <u>Effective Date of Settlement Agreement</u>. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Defendants.

7.      <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Defendants within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the

sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

8. <u>Release by Trustee</u>. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Defendants, their spouses, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Defendants, the RD&J Transfers, and any other transaction(s) between Defendants and the Debtors.

9. <u>Release by Defendants</u>. On the Effective Date, Defendants agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Defendants agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Defendants originally owned. Notwithstanding the foregoing, Defendants may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10. <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the RD&J Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11. <u>Enforcement of Settlement Agreement</u>. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12. <u>Expenses</u>. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13. <u>Severability</u>. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

3

DocuSign Envelope ID: B16507EA-E1BC-464E-9F61-9FE778689AC9

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

14. <u>Miscellaneous</u>.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b)

4870-3727-6049, v. 1 / 1934.035

DocuSign Envelope ID: 81A507EA-F1BC-4845-8F91-BEE778988A09

it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

5

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____

John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this 1/16/2024 _____.

DocuSigned by:

*Roger Jones*
52693F0F2C7247E...

_____

Roger W. Jones
President, RD&J, Inc.

SIGNED this 1/16/2024 _____.

DocuSigned by:

*Roger Jones*
52693F0E2C7247E...

_____

Roger W. Jones

6

DocuSign Envelope ID: B16507EA-F1BC-464E-9FG1-9FEE776698AC9

**Exhibit A**

**Payment Instructions**

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | BANKRUPTCY NO. 21-51523-MMP |
| LLC ET AL.,[1] | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |

| | | |
|---|---|---|
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 22-05092-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| RD&J, INC. AND ROGER W. JONES, | § | |
| DEFENDANTS | § | |

AGREED FINAL JUDGMENT

CAME ON FOR CONSIDERATION the Agreed Final Judgment against RD&J, Inc. and Roger W. Jones filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby

---

1 The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.,* 21-51513 (2864); *In Re: Wizard Mode Media, LLC,* 21-51514 (3205); *In Re: deeproot Pinball LLC,* 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC,* 21-51516 (8046); *In Re: deeproot 575 Fund, LLC,* 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC,* 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC,* 21-51519 (9661); *In Re: deeproot Tech LLC,* 21-51520 (9043); *In Re: deeproot Funds LLC,* 21-51521 (9404); *In Re: deeproot Studios LLC,* 21-51522 (6283); and *In Re: deeproot Capital Management, LLC,* 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

entered against RD&J, Inc., a Texas corporation, and Roger W. Jones, 109 Utica Avenue, Lubbock, Texas 79416 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $32,500.00. It is further

ORDERED, ADJUDGED, and DECREED that prejudgment interest at the rate of 5.30% per annum on $32,500.00 from October 21, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

ORDERED, ADJUDGED, and DECREED that all costs of court are adjudged against RD&J, Inc. and Roger W. Jones and other relief not expressly granted herein is DENIED. It is further

ORDERED, ADJUDGED, and DECREED that this judgment disposes of all claims and all parties and therefore is, in all things, FINAL. Defendants waive their right to appeal this judgment.

### 

4868-5010-5489, v. 1 / 1934.035

DocuSign Envelope ID: B16507EA-F1BC-464E-9F61-8EE778689AC9

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: _/s/_____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: _Gregory Hauswirth_____
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: _Roger Jones_____
    Roger W. Jones
    President, RD&J, Inc.

By: _Roger Jones_____
    Roger W. Jones

# EXHIBIT C

## SETTLEMENT AGREEMENT

       This settlement agreement (the "Settlement Agreement") is entered into as of _1/15/2024_ by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al,* and INF Solutions, LLC ("INF"), Scott Milbourne ("Milbourne"), and Raphael Vallier ("Vallier" and, collectively with INF and Milbourne, the "Defendants", and collectively with the Trustee, the "Settling Parties").

## RECITALS

A.    The Trustee alleges the following facts:

- INF entered into several Finder Agreements with deeproot Funds, LLC. Specifically, INF entered into eight (8) Standard Four Month Finder Agreements that were signed by Vallier, and four (4) Standard Six Month Finder Agreements that were signed by Milbourne. The Finder Agreements provided that INF would receive Finder Fees in exchange for locating new investors. Vallier also entered into three (3) Standard Four Month Finder Agreements and two (2) Standard Six Month Finder Agreements in his individual capacity. The Finder Agreements provided that Vallier would receive Finder Fees in exchange for locating new investors. Between July 13, 2016 and March 18, 2021, INF received $555,115.91 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "INF Transfers"). Vallier is the principal of INF and is the individual for whose benefit the INF Transfers were made.

B.    On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.    On or about December 7, 2022, the Trustee filed his Original Complaint against the Defendants in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 22-05086-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to INF in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the INF Transfers from Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D. The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the INF Transfers, upon the terms and conditions set forth below.

E. Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

<u>TERMS OF AGREEMENT</u>

1. <u>Recitals</u>. The recitals set forth above are incorporated herein by reference.

2. <u>Settlement Amount</u>. INF and Vallier shall pay Trustee a total of $10,000.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the INF Transfers.

3. <u>Sequence of Payment</u>. INF and Vallier agree to pay the Settlement Amount in six (6) installments. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, INF and Vallier shall deliver to the Trustee the first installment in the amount of $2,500.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining five (5) monthly payments shall be in the amount of $1,500.00 made also in accordance with the payment instructions at Exhibit A. For the avoidance of doubt, each of the remaining five (5) payments shall be due no later than the 25th day of each month until completion.

4. <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the INF Transfers that will be filed in the event that INF or Vallier default under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that INF and Vallier defaults on paying the Settlement Amount within the agreed time periods above.

5. <u>Approval Pursuant to Bankruptcy Rule 9019</u>. Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6. <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from INF and Vallier.

4889-2327-0545, v. 1 / 1934.016

7.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to INF and Vallier within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

8.     <u>Release by Trustee of Milbourne</u>. Upon execution of this Settlement Agreement, the Trustee shall release any subsequent transferee claims against Milbourne.

9.     <u>Release by Trustee of INF and Vallier</u>. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged INF and Vallier, their spouses, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with INF and Vallier, the INF Transfers, and any other transaction(s) between INF, Vallier, and the Debtors.

10.     <u>Release by Defendants</u>. On the Effective Date, Defendants agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Defendants agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Defendants originally owned. Notwithstanding the foregoing, Defendants may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

11.     <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the INF Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

12.     <u>Enforcement of Settlement Agreement</u>. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in

3

the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

13.     Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

14.     Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

15.     Miscellaneous.

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

4

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _JANUARY 17, 2024_ .

_____

John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 1/15/2024 .

DocuSigned by:

—588B2F86087143E...
Raphael Vallier
Manager, INF Solutions, LLC

SIGNED this 1/15/2024 .

DocuSigned by:

—588B2F86087143E...
Raphael Vallier

SIGNED this 1/15/2024 .

DocuSigned by:

Scott Milbourn
—8655FCF671FF453...
Scott Milbourne

6

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | BANKRUPTCY NO. 21-51523-MMP |
| LLC ET AL.,[1] | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 22-05086-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| INF SOLUTIONS, LLC, SCOTT MILBOURNE | § | |
| AND RAPHAEL VALLIER, | § | |
| DEFENDANTS | § | |

---

**AGREED FINAL JUDGMENT**

---

CAME ON FOR CONSIDERATION the Agreed Final Judgment against INF Solutions, LLC and Raphael Vallier filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby

---

1 The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.,* 21-51513 (2864); *In Re: Wizard Mode Media, LLC,* 21-51514 (3205); *In Re: deeproot Pinball LLC,* 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC,* 21-51516 (8046); *In Re: deeproot 575 Fund, LLC,* 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC,* 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC,* 21-51519 (9661); *In Re: deeproot Tech LLC,* 21-51520 (9043); *In Re: deeproot Funds LLC,* 21-51521 (9404); *In Re: deeproot Studios LLC,* 21-51522 (6283); and *In Re: deeproot Capital Management, LLC,* 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

entered against INF Solutions, LLC, a Texas limited liability company, and Raphael Vallier, 4614 Fountainhead Drive, Houston, Texas 77066 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $555,115.91. It is further

ORDERED, ADJUDGED, and DECREED that prejudgment interest at the rate of 5.30% per annum on $555,115.91 from October 18, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

ORDERED, ADJUDGED, and DECREED that all costs of court are adjudged against INF Solutions, LLC and Raphael Vallier and other relief not expressly granted herein is DENIED. It is further

ORDERED, ADJUDGED, and DECREED that this judgment disposes of all claims and all parties and therefore is, in all things, FINAL. Defendants waive their right to appeal this judgment.

### 

– 2 –

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/_____
     Randall A. Pulman
     Texas State Bar No. 16393250
     rpulman@pulmanlaw.com
     Anna K. MacFarlane
     Texas State Bar No. 24116701
     amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

AND

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: _Gregory Hauswirth_____
     Gregory W. Hauswirth
     Pennsylvania State Bar No. 307482
     ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: _____
     Raphael Vallier
     Manager, INF Solutions, LLC

By: _____
     Raphael Vallier

– 3 –

4864-1625-6657, v. 1 / 1934.016

# EXHIBIT D

## <u>SETTLEMENT AGREEMENT</u>

This settlement agreement (the "<u>Settlement Agreement</u>") is entered into as of <u>1/15/2024</u> by and among John Patrick Lowe, Chapter 7 Trustee ("<u>Trustee</u>") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and Dennis E. Wirth d/b/a First Fidelity Tax & Insurance of Houston ("<u>Wirth</u>" and, collectively with the Trustee, the "<u>Settling Parties</u>").

### <u>RECITALS</u>

A.     The Trustee alleges the following facts:

- Wirth entered into ten (10) deeproot Standard Four Month Finder Agreements and one (1) deeproot Standard Six Month Finder Agreement. The Finder Agreements provided that Wirth would receive Finder Fees in exchange for locating new investors. Between January 29, 2015 and May 17, 2021, Wirth received $406,839.55 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "<u>Wirth Transfers</u>").

B.     On December 9, 2021 (the "<u>Petition Date</u>"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "<u>Debtors</u>") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "<u>Bankruptcy Court</u>"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("<u>Bankruptcy Case</u>").

C.     On or about December 7, 2022, the Trustee filed his Original Complaint against Wirth and Agent Advisory Group, LLC[1] in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "<u>Adversary</u>"). Adv. Proc. No. 22-05095-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to Wirth in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the Wirth Transfers from Wirth under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Wirth Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by

---

[1] Trustee dismissed Agent Advisory Group, LLC from the lawsuit on February 3, 2023.

4885-4310-2572, v. 1 / 1934.012

and among the Settling Parties as follows:

TERMS OF AGREEMENT

1.    <u>Recitals</u>.  The recitals set forth above are incorporated herein by reference.

2.    <u>Settlement Amount</u>.  Wirth shall pay Trustee a total of $15,000.00 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Wirth Transfers.

3.    <u>Sequence of Payment</u>. Wirth agrees to pay the Settlement Amount in six (6) monthly payments in the amount of $2,500.00. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, Wirth shall deliver to the Trustee the first payment in the amount of $2,500.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining monthly payments shall be made also in accordance with the payment instructions at Exhibit A.

4.    <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the Wirth Transfers that will be filed in the event that Wirth defaults under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Wirth defaults on paying the Settlement Amount within the agreed time periods above.

5.    <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.    <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Wirth.

7.    <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Wirth within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

2

8. **Release by Trustee**. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Wirth, his spouse, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Wirth, the Wirth Transfers, and any other transaction(s) between Wirth and the Debtors.

9. **Release by Wirth**. On the Effective Date, Wirth agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Wirth agrees that he will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Wirth originally owned. Notwithstanding the foregoing, Wirth may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10. **Tolling of Limitations**. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Wirth Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11. **Enforcement of Settlement Agreement**. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12. **Expenses**. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13. **Severability**. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

3

14. <u>Miscellaneous</u>.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein,

4

(c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

4875-2262-5936, v. 1 / 1934.030

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____

John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this ___1/15/2024_____.

DocuSigned by:

*Dennis Wirth*

C35C56B9F7CB4E9...

Dennis Wirth d/b/a First Fidelity Tax & Insurance of Houston

DocuSign Envelope ID: 5054D021-78B1-4C35-8B5C-867294637820

## Exhibit A

## Payment Instructions

### If by check:

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

### If by wire:

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

4875-2262-5936, v. 1 / 1934.030

DocuSign Envelope ID: F054D021-78B1-4C75-BB5C-857264S27820

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.,1 | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 22-05095-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| DENNIS E. WIRTH D/B/A FIRST FIDELITY | § | |
| TAX & INSURANCE OF HOUSTON | § | |
| DEFENDANTS | § | |

## AGREED FINAL JUDGMENT

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Dennis E. Wirth d/b/a First Fidelity Tax & Insurance of Houston filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby entered against Dennis E. Wirth d/b/a First Fidelity Tax & Insurance of Houston, 819 Grace Lane, Humble, Texas 77338 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $406,839.55. It is further

**ORDERED, ADJUDGED,** and **DECREED** that prejudgment interest at the rate of 5.30% per annum on $406,839.55 from November 29, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

**ORDERED, ADJUDGED,** and **DECREED** that all costs of court are adjudged against Wirth and other relief not expressly granted herein is **DENIED.** It is further

**ORDERED, ADJUDGED,** and **DECREED** that this judgment disposes of all claims and all parties and therefore is, in all things, **FINAL.** Defendants waive their right to appeal this judgment.

### 

4885-2375-4384, v. 1 / 1934.030

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: _/s/_____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: _Gregory Hauswirth_____
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: _Dennis Wirth_____
    Dennis E. Wirth
    d/b/a First Fidelity Tax & Insurance of Houston

4885-2375-4384, v. 1 / 1934.030

# EXHIBIT E

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of **1/15/2024** by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and Financial Horizon Concepts, LLC ("FHC"), Paul Burke ("Burke" and collectively with FHC, the "FHC Defendants"), Jacquelin Farrar ("J. Farrar") and Bradford Farrar ("B. Farrar" and, collectively with the FHC Defendants and J. Farrar, the "Defendants" and, collectively with the Trustee, the "Settling Parties").

## RECITALS

A.     The Trustee alleges the following facts:

- FHC entered into two (2) Master Finder Agreements with deeproot Funds, LLC with FHC as the "Master Finder" and Burke, J. Farrar, and B. Farrar as "Downline Finders." Burke entered into seven (7) Standard Four Month Finder Agreements and two (2) Standard Six Month Finder Agreements in his individual capacity with deeproot Funds, LLC. All of the Finder Agreements provided that the Defendants would receive Finder Fees in exchange for locating new investors. Between July 17, 2015 and July 15, 2021, FHC received $818,596.30 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "FHC Transfers"). Burke, J. Farrar and B. Farrar were the individuals for whose benefit the FHC Transfers were made.

B.     On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.     On or about December 7, 2022, the Trustee filed his Original Complaint against Defendants in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 22-05085-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to FHC in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the FHC Transfers under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing

further litigation, have agreed to resolve all matters respecting the FHC Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.     <u>Recitals</u>.   The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>.   The FHC Defendants shall pay Trustee a total of $20,000.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the FHC Transfers.

3.     <u>Sequence of Payment</u>. The FHC Defendants agree to pay the Settlement Amount in eight (8) monthly payments in the amount of $2,500.00. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, the Defendants shall deliver to the Trustee the first payment in the amount of $2,500.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining monthly payments shall be made also in accordance with the payment instructions at Exhibit A.

4.     <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the FHC Transfers that will be filed in the event that FHC Defendants default under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that the FHC Defendants default on paying the Settlement Amount within the agreed time periods above.

5.     <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.     <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from the FHC Defendants.

7.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of

2

notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to the FHC Defendants within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

8.     <u>Release by Trustee of J. Farrar and B. Farrar</u>. Upon execution of this Settlement Agreement, the Trustee shall release any subsequent transferee claims against J. Farrar and B. Farrar.

9.     <u>Release by Trustee of FHC Defendants</u>. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged the FHC Defendants, their spouses, their attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with the FHC Defendants, the FHC Transfers, and any other transaction(s) between the FHC Defendants and the Debtors.

10.     <u>Release by all Defendants</u>. On the Effective Date, the Defendants agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. The Defendants agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that the Defendants originally owned. Notwithstanding the foregoing, the Defendants may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

11.     <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the FHC Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

12.     <u>Enforcement of Settlement Agreement</u>. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

DocuSign Envelope ID: DAAFFC41-756E-404D-9A0A-ADA388154155

13. <u>Expenses</u>. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

14. <u>Severability</u>. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

15. <u>Miscellaneous</u>.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority

4

to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

5

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this ___1/15/2024___.

_____
Paul Burke
Manager, Financial Horizon Concepts, LLC

SIGNED this ___1/15/2024___.

_____
Paul Burke

SIGNED this ___1/15/2024___.

_____
Jacquelin Farrar

SIGNED this ___1/15/2024___.

_____
Bradford Farrar

6

DocuSign Envelope ID: 9AAFFC41-756E-4049-9A0A-ADA388154155

**Exhibit A**

**Payment Instructions**

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.,1 | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| | § | |
| JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DEEPROOT CAPITAL MANAGEMENT, LLC ET AL., PLAINTIFF | § § § § § § | ADV. PROC. NO. 22-05085-MMP |
| | § | |
| v. | § | |
| | § | |
| PAUL BURKE, BRADFORD FARRAR, JACQUELIN FARRAR, AND FINANCIAL HORIZON CONCEPTS, LLC, DEFENDANTS | § § § § | |

### AGREED FINAL JUDGMENT

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Financial

Horizon Concepts, LLC and Paul Burke filed by John Patrick Lowe, the Chapter 7 Trustee, by and

through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record,

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

It is hereby ORDERED, ADJUDGED and DECREED that judgment for damages is hereby entered against Financial Horizon Concepts, LLC, a Texas limited liability company, and Paul Burke, 2914 E Lake Falls Cir., Spring, Texas 77386, under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $818,596.30. It is further

ORDERED, ADJUDGED, and DECREED that Financial Horizon Concepts, LLC and Paul Burke are jointly and severally liable for the judgment amount. It is further

ORDERED, ADJUDGED, and DECREED that prejudgment interest at the rate of 5.30% per annum on $818,596.30 from October 14, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

ORDERED, ADJUDGED, and DECREED that all costs of court are adjudged against Financial Horizon Concepts, LLC and Paul Burke, and other relief not expressly granted herein is DENIED. It is further

ORDERED, ADJUDGED, and DECREED that this judgment disposes of all claims and all parties and therefore is, in all things, FINAL. Defendants waive their right to appeal this judgment.

### ###

4872-7483-0736 v.1 / 1934.015

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/ _____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: *Gregory Hauswirth*
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: _____
    Paul Burke, Manager
    Financial Horizon Concepts, LLC

By: _____
    Paul Burke

4872-7483-0736 v. 1 / 1934.015

# EXHIBIT F

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of
_1/15/2024_____ by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the
jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and
Michael L. Cales, Sr. ("Cales" and, collectively with the Trustee, the "Settling Parties").

## RECITALS

A. The Trustee alleges the following facts:

- Cales entered into nine (9) deeproot Standard Four Month Finder Agreements. The
  Finder Agreements provided that Cales would receive Finder Fees in exchange for
  locating new investors. Between July 7, 2016 to November 7, 2017, Cales received
  $74,500.00 from Policy Services, Inc. in exchange for locating investors for the
  deeproot Funds (the "Cales Transfers").

B. On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode
Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund,
LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year
Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC,
deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy
cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing
voluntary petitions for relief in the United States Bankruptcy Court of the Western District of
Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as
Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C. On or about December 7, 2022, the Trustee filed his Original Complaint against
Cales in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the
"Adversary"). Adv. Proc. No. 22-05084-mmp. The Trustee alleged that the Debtors were operated
as a Ponzi scheme and that the monies paid to Cales in exchange for locating new investors
constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee
brought claims to avoid and recover the Cales Transfers from Cales under 11 U.S.C. §§ 544, 548,
and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas
Business and Commerce Code.

D. The Settling Parties have exchanged information, negotiated with one another, and
without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing
further litigation, have agreed to resolve all matters respecting the Cales Transfers, upon the terms
and conditions set forth below.

E. Now, therefore, for good and valuable consideration, the receipt and sufficiency of
which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by
and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.  <u>Recitals</u>. The recitals set forth above are incorporated herein by reference.

2.  <u>Settlement Amount</u>. Cales shall pay Trustee a total of $7,500.00 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Cales Transfers.

3.  <u>Sequence of Payment</u>. Cales agrees to pay the Settlement Amount in six (6) monthly payments in the amount of $1,250.00. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, Cales shall deliver to the Trustee the first payment in the amount of $1,250.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining monthly payments shall be made also in accordance with the payment instructions at Exhibit A.

4.  <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the Cales Transfers that will be filed in the event that Cales defaults under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Cales defaults on paying the Settlement Amount within the agreed time periods above.

5.  <u>Approval Pursuant to Bankruptcy Rule 9019</u>. Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.  <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Cales.

7.  <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Cales within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

8.    Release by Trustee. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Cales, his spouse, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Cales, the Cales Transfers, and any other transaction(s) between Cales and the Debtors.

9.    Release by Cales. On the Effective Date, Cales agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Cales agrees that he will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Cales originally owned. Notwithstanding the foregoing, Cales may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10.    Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Cales Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is  time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11.    Enforcement of Settlement Agreement. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12.    Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13.    Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

DocuSign Envelope ID: B5A75E4C-A8AA-481F-9887-6C7A8503E5A5

14. <u>Miscellaneous.</u>

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making

an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

4889-3741-7616, v. 1 / 1934.031

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this    1/15/2024    .

DocuSigned by:

Michael Cales

13447B6BBA3A4FD...

Michael Cales

6

DocuSign Envelope ID: 85A75E4C-A8AA-491F-988F-6C3A2B92B2AD

## Exhibit A

### Payment Instructions

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

DocuSign Envelope ID: B5A75E4C-A8AA-491F-9887-6C3A350B5A5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, LLC ET AL.,1 | § | BANKRUPTCY NO. 21-51523-MMP |
| | § | |
| | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 22-05084-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| MICHAEL L. CALES, SR., | § | |
| DEFENDANT | § | |

**AGREED FINAL JUDGMENT**

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Michael L. Cales, Sr. filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby entered against Michael L. Cales, Sr., 3705 Emerald Lane, Mulberry, Florida 33860 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $74,500.00. It is further

**ORDERED, ADJUDGED,** and **DECREED** that prejudgment interest at the rate of 5.30% per annum on $74,500.00 from October 21, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

**ORDERED, ADJUDGED,** and **DECREED** that all costs of court are adjudged against Cales and other relief not expressly granted herein is **DENIED.** It is further

**ORDERED, ADJUDGED,** and **DECREED** that this judgment disposes of all claims and all parties and therefore is, in all things, **FINAL.** Defendants waive their right to appeal this judgment.

### 

4892-9878-3376, v. 1 / 1934.031

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/ _____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: *Gregory Hauswirth*
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: *Michael Cales*
    Michael L. Cales, Sr.

# EXHIBIT G

# SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into __1/15/2024__ by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and Safe Money Solutions ("SMS") and Hollie Gandy-Donohue ("Gandy-Donohue" and, together with SMS, the "Defendants" and, collectively with the Trustee, the "Settling Parties").

## RECITALS

A.    The Trustee alleges the following facts:

- Gandy-Donohue entered into Finder Agreements with deeproot Funds, LLC. Specifically, Gandy-Donohue signed eight (8) Standard Four Month Finder Agreements and one (1) Standard Six Month Finder Agreement. The Finder Agreements provided that Gandy-Donohue would receive Finder Fees in exchange for locating new investors. Despite the fact that Gandy-Donohue executed the Finder Agreements in her individual capacity, the QuickBooks records of Policy Services, Inc. show that the Finder Fees were paid to SMS. Between March 6, 2018 and June 24, 2020, SMS received $26,000.00 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "SMS Transfers"). Based on the public information available, Gandy-Donohue is the principal of SMS and is the individual for whose benefit the SMS Transfers were made.

B.    On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.    On or about December 7, 2022, the Trustee filed his Original Complaint against the Defendants in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 22-05093-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to SMS in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the SMS Transfers from Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.    The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the SMS Transfers, upon the terms

and conditions set forth below.

E.      Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.      Recitals.   The recitals set forth above are incorporated herein by reference.

2.      Settlement Amount.   Defendants shall pay Trustee a total of $3,000.00 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the SMS Transfers.

3.      Sequence of Payment. Defendants agree to pay the Settlement Amount in two (1) equal installments in the amount of $1,500.00 each. The first installment of $1,500.00 shall be paid to the Trustee within ten (10) days of the execution of this Settlement Agreement by the Settling Parties. Defendants shall deliver to the Trustee the Settlement Amount in accordance with the instructions attached hereto as Exhibit A.

4.      Security for Payment. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the SMS Transfers that will be filed in the event that Defendants default under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as Exhibit B. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Defendants default on paying the Settlement Amount within the agreed time periods above.

5.      Approval Pursuant to Bankruptcy Rule 9019.  Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.      Effective Date of Settlement Agreement. This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "Effective Date"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Defendants.

7.      Voidability of Settlement Agreement. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Defendants within 10 days of the event that voids this

2

Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

8.   Release by Trustee. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Defendants, their spouses, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Defendants, the SMS Transfers, and any other transaction(s) between Defendants and the Debtors.

9.   Release by Defendants. On the Effective Date, Defendants agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Defendants agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Defendants originally owned. Notwithstanding the foregoing, Defendants may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10.  Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the SMS Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11.  Enforcement of Settlement Agreement. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12.  Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13.  Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

DocuSign Envelope ID: 3ECC9B05-9945-41F7-B061-B8996BFF1759

unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

14. <u>Miscellaneous</u>.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

4884-6759-9761, v. 1 / 1934.047

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

4884-6759-9761, v. 1 / 1934.047

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____
John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this   1/15/2024   .

DocuSigned by:

*Hollie Gandy*
A1A87A3A9F0D441...
_____
Hollie Gandy-Donohue
President, Safe Money Solutions

SIGNED this   1/15/2024   .

DocuSigned by:

*Hollie Gandy*
A1A87A3A9F0D441...
_____
Hollie Gandy-Donohue

6

**Exhibit A**

**Payment Instructions**

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

DocuSign Envelope ID: 3ECC9B05-8945-4157-8061-B8996B5F47F0

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | BANKRUPTCY NO. 21-51523-MMP |
| LLC ET AL.,[1] | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 22-05093-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| HOLLIE GANDY-DONOHUE AND | § | |
| SAFE MONEY SOLUTIONS, | § | |
| DEFENDANTS | § | |

## AGREED FINAL JUDGMENT

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Safe Money Solutions and Hollie Gandy-Donohue filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

---

1 The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864); *In Re: Wizard Mode Media, LLC*, 21-51514 (3205); *In Re: deeproot Pinball LLC*, 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046); *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661); *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot Funds LLC*, 21-51521 (9404); *In Re: deeproot Studios LLC*, 21-51522 (6283); and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby entered against Safe Money Solutions, a Texas entity, and Hollie Gandy-Donohue, 5801 W. Interstate 40, Suite 101, Amarillo, Texas 79106 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $26,000.00. It is further

**ORDERED, ADJUDGED,** and **DECREED** that prejudgment interest at the rate of 5.30% per annum on $26,000.00 from October 24, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

**ORDERED, ADJUDGED,** and **DECREED** that all costs of court are adjudged against Safe Money Solutions and Hollie Gandy-Donohue, and other relief not expressly granted herein is **DENIED.** It is further

**ORDERED, ADJUDGED,** and **DECREED** that this judgment disposes of all claims and all parties and therefore is, in all things, **FINAL.** Defendants waive their right to appeal this judgment.

### 

4878-8681-9985, v. 1 / 1934.047

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/ _____
        Randall A. Pulman
        Texas State Bar No. 16393250
        rpulman@pulmanlaw.com
        Anna K. MacFarlane
        Texas State Bar No. 24116701
        amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: *Gregory Hauswirth*
        ──CCF4F8732465468──
        Gregory W. Hauswirth
        Pennsylvania State Bar No. 307482
        ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: *Hollie Gandy*
        ──A1A87A3A9F0D441──
        Hollie Gandy-Donohue
        President, Safe Money Solutions

By: *Hollie Gandy*
        ──A1A87A3A9F0D441──
        Hollie Gandy-Donohue

– 3 –

# EXHIBIT H

## <u>SETTLEMENT AGREEMENT</u>

This settlement agreement (the "<u>Settlement Agreement</u>") is entered into as of _____ by and among John Patrick Lowe, Chapter 7 Trustee ("<u>Trustee</u>") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and Blanchard & Associates, Inc. ("<u>B&A</u>") and Hunter Boaz Blanchard ("<u>Blanchard</u>" and, together with B&A, the "<u>Defendants</u>" and, collectively with the Trustee, the "<u>Settling Parties</u>").

## RECITALS

A.     The Trustee alleges the following facts:

- Blanchard entered into Finder Agreements with deeproot Funds, LLC. Specifically, Blanchard signed two (2) Standard Four Month Finder Agreements on behalf of B&A. The Finder Agreements provided that B&A would receive Finder Fees in exchange for locating new investors. On June 18, 2019, B&A received $6,500.00 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "<u>B&A Transfers</u>"). Blanchard is the principal of B&A and is the individual for whose benefit the B&A Transfers were made.

B.     On December 9, 2021 (the "<u>Petition Date</u>"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "<u>Debtors</u>") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "<u>Bankruptcy Court</u>"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("<u>Bankruptcy Case</u>").

C.     On or about January 31, 2023, the Trustee filed his Original Complaint against the Defendants in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "<u>Adversary</u>"). Adv. Proc. No. 23-05022-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to B&A in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the B&A Transfers from Defendants under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the B&A Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by

and among the Settling Parties as follows:

TERMS OF AGREEMENT

1.      <u>Recitals</u>.   The recitals set forth above are incorporated herein by reference.

2.      <u>Settlement Amount</u>.  Defendants shall pay Trustee a total of $3,000.00 USD (the "<u>Settlement Amount</u>") in full and complete satisfaction of any and all claims arising from, or related to, the B&A Transfers.

3.      <u>Sequence of Payment</u>. Defendants agree to pay the Settlement Amount in one (1) lump sum payment within ten (10) days of the execution of this Settlement Agreement by the Settling Parties. Defendants shall deliver to the Trustee the Settlement Amount in accordance with the instructions attached hereto as <u>Exhibit A</u>.

4.      <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the B&A Transfers that will be filed in the event that Defendants default under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Defendants default on paying the Settlement Amount within the agreed time periods above.

5.      <u>Approval Pursuant to Bankruptcy Rule 9019</u>.  Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.      <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Defendants.

7.      <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Defendants within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

2

DocuSign Envelope ID: 8945DF44-8B78-48BE-91A4-74A68A62F659

8.    <u>Release by Trustee</u>. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Defendants, their spouses, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Defendants, the B&A Transfers, and any other transaction(s) between Defendants and the Debtors.

9.    <u>Release by Defendants</u>. On the Effective Date, Defendants agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Defendants agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Defendants originally owned. Notwithstanding the foregoing, Defendants may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10.    <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the B&A Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11.    <u>Enforcement of Settlement Agreement</u>. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12.    <u>Expenses</u>. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13.    <u>Severability</u>. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

3

DocuSign Envelope ID: 9945DE44-6B79-46B5-91A1-74A83A63F858

14. <u>Miscellaneous</u>.

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making

DocuSign Envelope ID: 8945DF44-CB70-48BF-9144-74A89A685695

an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

   (i) The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

   (j) This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

   (k) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

   (l) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

5

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this _____1/16/2024_____.

DocuSigned by:
_____
13EE2BD4A9B74E6...
Hunter Boaz Blanchard
President, Blanchard & Associates, Inc.

SIGNED this _____1/16/2024_____.

DocuSigned by:
_____
13EE2BD4A9B74E6...
Hunter Boaz Blanchard

4858-8784-0657, v. 1 / 1934.050

DocuSign Envelope ID: 39945DF44-CB70-40BE-91A4-74A83A68F85B

**Exhibit A**

**Payment Instructions**

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEEPROOT CAPITAL MANAGEMENT, | § | BANKRUPTCY NO. 21-51523-MMP |
| LLC ET AL.,[1] | § | |
| DEBTORS | § | JOINTLY ADMINISTERED |
| | § | |

| | | |
|---|---|---|
| | § | |
| JOHN PATRICK LOWE, | § | |
| CHAPTER 7 TRUSTEE | § | |
| FOR THE BANKRUPTCY ESTATE | § | |
| OF DEEPROOT CAPITAL | § | |
| MANAGEMENT, LLC ET AL., | § | ADV. PROC. NO. 23-05022-MMP |
| PLAINTIFF | § | |
| | § | |
| v. | § | |
| | § | |
| BLANCHARD & ASSOCIATES, INC. AND | § | |
| HUNTER BOAZ BLANCHARD, | § | |
| DEFENDANTS | § | |

## AGREED FINAL JUDGMENT

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Blanchard & Associates, Inc. and Hunter Boaz Blanchard filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

---

1 The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864); *In Re: Wizard Mode Media, LLC*, 21-51514 (3205); *In Re: deeproot Pinball LLC*, 21-51515 (0320); *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046); *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404); *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731); *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661); *In Re: deeproot Tech LLC*, 21-51520 (9043); *In Re: deeproot Funds LLC*, 21-51521 (9404); *In Re: deeproot Studios LLC*, 21-51522 (6283); and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby entered against Blanchard & Associates, Inc., a Texas corporation, and Hunter Boaz Blanchard, 2811 Alcove Ave., Lubbock, Texas 79407 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $6,500.00. It is further

**ORDERED, ADJUDGED,** and **DECREED** that prejudgment interest at the rate of 5.30% per annum on $6,500.00 from October 25, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

**ORDERED, ADJUDGED,** and **DECREED** that all costs of court are adjudged against Blanchard & Associates, Inc. and Hunter Boaz Blanchard, and other relief not expressly granted herein is **DENIED.** It is further

**ORDERED, ADJUDGED,** and **DECREED** that this judgment disposes of all claims and all parties and therefore is, in all things, **FINAL.** Defendants waive their right to appeal this judgment.

### 

4867-8548-7249, v. 1 / 1934.050

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/ _____
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,
JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: _Gregory Hauswirth_____
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: _____
    Hunter Boaz Blanchard
    President, Blanchard & Associates, Inc.

By: _____
    Hunter Boaz Blanchard

– 3 –

4867-8548-7249, v. 1 / 1934.050

# EXHIBIT I

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of _____1/14/2024_____ by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al,* and Jack Gary Nace II ("Nace" and, collectively with the Trustee, the "Settling Parties").

## RECITALS

A.     The Trustee alleges the following facts:

- Nace entered into one (1) Standard Four Month Finder Agreement and two (2) Standard Six Month Finder Agreements in his individual capacity. The Finder Agreements provided that Nace would receive Finder Fees in exchange for locating new investors. Between June 3, 2020 and June 8, 2021, Nace received $137,917.44 from Policy Services, Inc. in exchange for locating investors for the deeproot Funds (the "Nace Transfers").

B.     On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.     On or about January 31, 2023, the Trustee filed his Original Complaint against Nace in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Adversary"). Adv. Proc. No. 23-05026-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to Nace in exchange for locating new investors constituted fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the Nace Transfers from Nace under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D.     The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Nace Transfers, upon the terms and conditions set forth below.

E.     Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

DocuSign Envelope ID: CD649A1E-3FB6-48C3-9940-DF083F446E4A

## TERMS OF AGREEMENT

1.     <u>Recitals</u>. The recitals set forth above are incorporated herein by reference.

2.     <u>Settlement Amount</u>. Nace shall pay Trustee a total of $10,000.00 USD (the "Settlement Amount") in full and complete satisfaction of any and all claims arising from, or related to, the Nace Transfers.

3.     <u>Sequence of Payment</u>. Nace agrees to pay the Settlement Amount in nine (9) installments. Within ten (10) days of the execution of this Settlement Agreement by the Settling Parties, Nace shall deliver to the Trustee the first installment in the amount of $2,000.00 in accordance with the instructions attached hereto as <u>Exhibit A</u>. The remaining eight (8) monthly payments shall be in the amount of $1,000.00 made also in accordance with the payment instructions at Exhibit A.

4.     <u>Security for Payment</u>. As security for the payment plan, the Settling Parties have executed an Agreed Judgment for the full amount of the Nace Transfers that will be filed in the event that Nace defaults under this Settlement Agreement by nonpayment of the Settlement Amount. A true and correct copy of the Agreed Judgment is attached hereto as <u>Exhibit B</u>. Trustee's counsel shall only file the Agreed Judgment and the Bankruptcy Court shall only sign and enter the Agreed Judgment in the event that Nace defaults on paying the Settlement Amount within the agreed time periods above.

5.     <u>Approval Pursuant to Bankruptcy Rule 9019</u>. Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

6.     <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; and (iii) the date on which the Trustee has received the full Settlement Amount from Nace.

7.     <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the Settling Parties. In the event the Settlement Agreement becomes null and void as the result of notice of exercise of the option to void by either party, the Trustee will return any Settlement Amount received by the Trustee to Nace within 10 days of the event that voids this Settlement Agreement. If the full Settlement Amount is not received in accordance with the sequence of payment described in Paragraph 3 herein above, the Settlement Agreement is voidable at the option of the Trustee within 10 days of nonpayment.

4876-7487-4769, v. 1 / 1934.056

8.  Release by Trustee. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Nace, his spouse, attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtor, or the Debtor's bankruptcy estate, has, may have had, may have or may claim to have against the Releasees in connection with Nace, the Nace Transfers, and any other transaction(s) between Nace and the Debtors.

9.  Release by Nace. On the Effective Date, Nace agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Nace agrees that he will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Nace originally owned. Notwithstanding the foregoing, Nace may file assignment of claim notices corresponding to claims that they have been assigned by other creditors in the Bankruptcy Case.

10. Tolling of Limitations. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Nace Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

11. Enforcement of Settlement Agreement. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

12. Expenses. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

13. Severability. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

3

14. <u>Miscellaneous</u>.

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting.

(b)     Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e)     The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making

4

DocuSign Envelope ID: CD649A1E-3FB6-48G3-99E0-DED8F546E4A

an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

4876-7487-4769, v. 1 / 1934.056

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____.

_____

John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this _1/14/2024_____.

DocuSigned by:

*Jack Nace*
5A47CFDAEE7E497...

_____

Jack Gary Nace II

6

DocuSign Envelope ID: CD649A1E-3FB6-48C3-9940-DE0805448E4A

**Exhibit A**

**Payment Instructions**

**If by check:**

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

**If by wire:**

Bank Name: Axos Bank
Routing Number:
Account Name: Policy Services, Inc., Debtor
Account Number:

7

4876-7487-4769, v. 1 / 1934.056

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| deeproot Capital Management, | § | Bankruptcy No. 21-51523-mmp |
| LLC et al.,1 | § | |
| | § | |
| Debtors | § | Jointly Administered |
| | § | |
| | § | |
| John Patrick Lowe, | § | |
| Chapter 7 Trustee | § | |
| for the Bankruptcy Estate | § | |
| of deeproot Capital | § | |
| Management, LLC et al., | § | Adv. Proc. No. 23-05026-mmp |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| Jack Gary Nace II | § | |
| Defendant | § | |

### Agreed Final Judgment

CAME ON FOR CONSIDERATION the Agreed Final Judgment against Jack Gary Nace II filed by John Patrick Lowe, the Chapter 7 Trustee, by and through his counsel Pulman, Cappuccio & Pullen, LLP (the "**Judgment**"). Based on the record, the pleadings on file, and the agreement of the parties, the Court enters judgment as follows.

---

[1] The jointly administered chapter 7 cases, along with their respective case numbers and the last four digits of each Debtor's federal tax identification number, are: *In Re: Policy Services, Inc.*, 21-51513 (2864), *In Re: Wizard Mode Media, LLC*, 21-51514 (3205), *In Re: deeproot Pinball LLC*, 21-51515 (0320), *In Re: deeproot Growth Runs Deep Fund, LLC*, 21-51516 (8046), *In Re: deeproot 575 Fund, LLC*, 21-51517 (9404), *In Re: deeproot 3 Year Bonus Income Debenture Fund, LLC*, 21-51518 (7731), *In Re: deeproot Bonus Growth 5 Year Debenture Fund, LLC*, 21-51519 (9661), *In Re: deeproot Tech LLC*, 21-51520 (9043), *In Re: deeproot Funds LLC*, 21-51521 (9404), *In Re: deeproot Studios LLC*, 21-51522 (6283), and *In Re: deeproot Capital Management, LLC*, 21-51523 (2638) (collectively, the "**Bankruptcy Cases**").

It is hereby **ORDERED, ADJUDGED** and **DECREED** that judgment for damages is hereby entered against Jack Gary Nace II, 16 Rimby Way, Reading, Pennsylvania 19606 under 11 U.S.C §§ 548, 544, 550, and §§ 24.005(a)(1) & (a)(2), and 24.009(b) of the Texas Business and Commerce Code in the amount of $137,917.44. It is further

**ORDERED, ADJUDGED**, and **DECREED** that prejudgment interest at the rate of 5.30% per annum on $137,917.44 from October 20, 2022, until the date of judgment. Post judgment interest shall accrue from the date of judgment until paid at the federal rate. It is further

**ORDERED, ADJUDGED**, and **DECREED** that all costs of court are adjudged against Nace and other relief not expressly granted herein is **DENIED**. It is further

**ORDERED, ADJUDGED**, and **DECREED** that this judgment disposes of all claims and all parties and therefore is, in all things, **FINAL**. Defendants waive their right to appeal this judgment.

### 

– 2 –

**JUDGMENT AGREED TO BY:**

**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By: /s/
    Randall A. Pulman
    Texas State Bar No. 16393250
    rpulman@pulmanlaw.com
    Anna K. MacFarlane
    Texas State Bar No. 24116701
    amacfarlane@pulmanlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE**

**AND**

**CAROTHERS & HAUSWIRTH LLP**
680 Andersen Dr., Suite 230
Pittsburgh, Pennsylvania 15520
(302) 332-7181 Telephone

By: *Gregory Hauswirth*
    Gregory W. Hauswirth
    Pennsylvania State Bar No. 307482
    ghauswirth@ch-legal.com

**ATTORNEYS FOR DEFENDANTS**

By: *Jack Nace*
    Jack Gary Nace II

# EXHIBIT J

## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of the last date on the signature page below by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, and JPMorgan Chase Bank, N.A. ("Chase Bank" and, collectively with the Trustee, the "Settling Parties").

## RECITALS

A.     The Trustee alleges the following facts:

- Robert Mueller ("Mueller") served as the principal of all of the deeproot Entities and orchestrated a Ponzi scheme wherein he offered and sold securities to individuals for investment in pooled investment funds. Mueller then used the invested money to fund his other business ventures, including his pinball machine business. He also used the money to fund his lavish lifestyle. For purposes of this lawsuit, the key fact is that he used later investors' money to pay earlier investors. Mueller used approximately $2.1 million from the Debtors' bank accounts to pay his personal expenses, including his daughter's private school tuition, federal income tax payments, medical and dental bills, family vacations, his second wedding, his second divorce, his third wedding, jewelry for his second and third wives, and lifestyle spending for himself and his family. (the "Mueller Transfers").

- From August 12, 2019 to January 12, 2021, $177,758.40 of the Muller Transfers were charged by Mueller to his personal Southwest Rapid Rewards Card for an account at Chase Bank, account ending in -7864, (the "Chase Bank Card") that were paid by Debtor Policy Services, Inc. ("Policy Services"). Mueller paid Chase Bank for the personal credit card charges incurred on the Chase Bank Card from Policy Services' bank account at Wells Fargo ending in -3081.

- Policy Services received nothing of value in return for certain or all of the payments made to Chase Bank from Policy Services' bank accounts.

B.     On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

C.     On or about April 20, 2023, the Trustee filed his Original Complaint against Chase Bank in the Bankruptcy Court for the Western District of Texas, San Antonio Division (the

4885-4310-2572, v. 1 / 1934.062

"Adversary"). Adv. Proc. No. 23-05037-mmp. The Trustee alleged that the Debtors were operated as a Ponzi scheme and that the monies paid to Chase Bank for Mueller's personal credit cards were fraudulent transfers under the Bankruptcy Code and Texas law. As such, the Trustee brought claims to avoid and recover the Mueller Transfers from Chase Bank under 11 U.S.C. §§ 544, 548, and 550 and the Texas Uniform Fraudulent Transfer Act codified at chapter 24 of the Texas Business and Commerce Code.

D. The Settling Parties have exchanged information, negotiated with one another, and without admitting any claim or defense or any of the facts alleged by the other, in lieu of pursuing further litigation, have agreed to resolve all matters respecting the Mueller Transfers, upon the terms and conditions set forth below.

E. Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1. <u>Recitals</u>. The recitals set forth above are incorporated herein by reference.

2. <u>Non-Admission of Liability</u>. Nothing in this Settlement Agreement shall constitute or be construed as an admission of liability on behalf of Chase Bank or its agents, affiliates, assigns, parents, successors, subsidiaries, and/or successors, or an admission as to the validity of the allegations in the Adversary. It is also understood and agreed to by the Settling Parties that this Settlement Agreement does not constitute an order or finding of any violation of law related to fraudulent, manipulative, or deceptive conduct.

3. <u>Settlement</u>. Within thirty (30) days of the Effective Date (defined below) and receipt of an executed W-9 form from the Truste, Chase Bank shall pay $135,000.00 (the "<u>Settlement Amount</u>") in one lump sum payment to the Trustee according to the instructions at <u>Exhibit A</u>.

4. <u>Approval Pursuant to Bankruptcy Rule 9019</u>. Within a reasonable time following execution of this Settlement Agreement by the Settling Parties, the Trustee shall seek approval of the Settlement Agreement from the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019. Further, the Trustee agrees to zealously advocate for the approval of the Settlement Agreement. Prosecution of any appeals that may arise related to approval or denial of this Settlement Agreement will be subject to the Trustee's business judgment.

5. <u>Effective Date of Settlement Agreement.</u> This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "<u>Effective Date</u>"): (i) the Settling Parties have executed the Settlement Agreement; and (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order.

6. <u>Voidability of Settlement Agreement</u>. If the Settlement Agreement is not approved by the Bankruptcy Court, then this Settlement Agreement is voidable at the option of either of the

2

Settling Parties.

    7.    <u>Release by Trustee</u>. On the Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted, and discharged Chase Bank, its attorneys, accountants, financial advisors, directors, employees, officers, other agents, subsidiaries, affiliates and the successors and assigns of any of them (collectively, the "<u>Releasees</u>") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee, the Debtors, or the Debtors' bankruptcy estates, have, may have had, may have or may claim to have against the Releasees arising out of, in connection with, or in any way related to the Adversary, the Mueller Transfers, the Chase Bank Card, the Debtors, the Debtors' bankruptcy estates, and any other transaction(s) between the Releasees and the Debtors.

    8.    <u>Release by Chase Bank</u>. On the Effective Date, Chase Bank agrees to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. Chase Bank agrees that it will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case based upon any claim that Chase Bank originally owned. Notwithstanding the foregoing, Chase Bank may file assignment of claim notices corresponding to claims that it has been assigned by other creditors in the Bankruptcy Case.

    9.    <u>Tolling of Limitations</u>. Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Mueller Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

    10.    <u>Enforcement of Settlement Agreement</u>. If any of the Settling Parties breaches this Settlement Agreement, the non-breaching party shall have the authority to initiate a proceeding in any court of competent jurisdiction to enforce this Settlement Agreement. The prevailing party in such litigation shall be entitled to recover its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

    11.    <u>Expenses</u>. The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

    12.    <u>Severability</u>. The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

3

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13.    Tax Consequences. Trustee acknowledges and agrees that he is solely responsible for the payment of any and all federal, state, city, or local taxes which might be due and owing as a result of any term contained in this Settlement Agreement. The Settling Parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives in the course of these negotiations and each party is relying upon the advice of its own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Settlement Agreement. Trustee acknowledges that Chase Bank is required to comply with applicable federal, state, city, and local tax laws and regulations on information reporting and withholding, which may require Chase Bank to issue a Form 1099 or other tax form reporting consideration or forgiveness of debt to the Internal Revenue Service and/or other taxing authority.

14.    Miscellaneous.

Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) as may be necessary to disclose to an accountant for the purpose of tax advice or reporting. Notwithstanding the foregoing, any party may, without consent of any other parties, voluntarily disclose such information to any governmental agency, regulatory authority or self-regulatory organization.

(a)    Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(b)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(c)    This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(d)    The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer, or enforce the terms and provisions of, this Settlement Agreement.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(g)     In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(h)     The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(i)     This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto and order of the Bankruptcy Court.

(j)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Settling Parties hereto.

(k)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

5

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this _____ day of _____, 2023.

_____

John Patrick Lowe, Chapter 7 Trustee for the Jointly Administered Bankruptcy Estate of deeproot Capital Management, LLC, et al.

SIGNED this _____ day of _____, 2023.

JPMorgan Chase Bank, N.A.

E-SIGNED by randall imwalle
on 2023-11-30 17:56:02 GMT

By:_____

Name:_ randall imwalle _____

Title:_ Vice President _____

6

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this ____ day of _____, 2023.

_____

John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this ____ day of _____, 2023.

JPMorgan Chase Bank, N.A.

By:_____

Name:_____

Title:_____

6

**Exhibit A**

**Payment Instructions**

<u>If by check:</u>

John Patrick Lowe, Chapter 7 Trustee
c/o Pulman, Cappuccio & Pullen, LLP
2161 NW Military Hwy, Ste. 400
San Antonio, Texas 78213

<u>If by wire:</u>

Bank Name: Axos Bank
Routing Number: Provided via telephone only
Account Name: Policy Services, Inc., Debtor
Account Number: Provided via telephone only

7